UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DAISHAWN LAVON MILLER, doing business as
Daishawn Lavon Miller Living Express Trust

                        Plaintiff,

v.                                                                    5:23-CV-1051
                                                                      (BKS/ML)
DAVID PRIMO, Onondaga Family Court; SARAH
G MERRICK, Title IV-D Agency; PATRICIA
DeRUE, Onondaga Family Court; JEFFREY
ALAN DOMACHOWSKI, Onondaga Family Court;
and KELLY MURPHY, Director of Human Resources,

                        Defendants.
_____

APPEARANCES:                                          OF COUNSEL:

DAISHAWN LAVON MILLER
  Plaintiff, *Pro Se*
2363 James Street, #547
Syracuse, New York 13206

MIROSLAV LOVRIC, United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent this *pro se* Complaint (Dkt. No. 1) together with an application to

proceed *in forma pauperis* ("IFP") (Dkt. No. 2), an Amended Complaint (Dkt. No. 6), and an

amended IFP application (Dkt. No. 7) filed by Daishawn Lavon Miller ("Plaintiff") to the Court

for review. For the reasons discussed below, I (1) deny Plaintiff's IFP application (Dkt. No. 2)

as moot, (2) grant Plaintiff's amended IFP application (Dkt. No. 7), and (3) recommend that

Plaintiff's Amended Complaint (Dkt. No. 6) be dismissed in its entirety without prejudice (a) in

part with leave to amend, and (b) in part without leave to amend.

## I.     BACKGROUND

On August 24, 2023, Plaintiff commenced this action by the filing of a *pro se* Complaint against Defendants David Primo, Sarah G Merrick, Patrick DeRue, and Jeffrey Alan Domachowski.  (Dkt. No. 1.)  On September 25, 2023, Plaintiff filed an Amended Complaint, as of right, which supersedes his original Complaint.  (Dkt. No. 6); *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) ("It is well established that an amended complaint ordinarily supersedes the original, and renders it of no legal effect.").  Thus, presently before the undersigned for review pursuant to 28 U.S.C. § 1915, is Plaintiff's Amended Complaint.  (Dkt. No. 6.)

Liberally construed,[1] Plaintiff's Amended Complaint—which is on a form complaint alleging violations of civil rights—asserts that his rights were violated by Defendants David Primo, Sarah G Merrick, Patrick DeRue, Jeffrey Alan Domachowski, and Kelly Murphy (collectively "Defendants"), who were all involved in Plaintiff's state court family proceeding. (*See generally* Dkt. No. 6.)

The Amended Complaint is difficult to decipher and fails to provide sufficient factual information for the Court to review or for Defendants to have notice of the claims against them. (*See generally* Dkt. No. 6.)  From what the undersigned can glean, Plaintiff appears to allege that Defendants refuse to terminate Plaintiff's child support obligation.  (*Id*.)  As relief, Plaintiff requests that this court terminate the child support order, reimburse him for all amounts paid, and award him damages in the amount of three times what has been garnished from his wages.  (Dkt. No. 6 at 7.)

---

[1]     The court must interpret *pro se* complaints to raise the strongest arguments they suggest. *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Plaintiff also filed an application to proceed IFP and an amended IFP application.  (Dkt. Nos. 2, 7.)

## II.      PLAINTIFF'S APPLICATIONS TO PROCEED *IN FORMA PAUPERIS*

"When a civil action is commenced in a federal district court, the statutory filing fee, currently set at $402, must ordinarily be paid.  28 U.S.C. § 1914(a).  A court is authorized, however, to permit a litigant to proceed IFP status if a party "is unable to pay" the standard fee for commencing an action.  28 U.S.C. § 1915(a)(1).[2]  After reviewing Plaintiff's amended IFP application (Dkt. No. 7), the Court finds that Plaintiff meets this standard.[3]  Therefore, Plaintiff's amended application to proceed IFP is granted.[4]  In addition, Plaintiff's original application to proceed IFP is denied as moot.  (Dkt. No. 2.)

## III.     LEGAL STANDARD FOR INITIAL REVIEW OF COMPLAINT

"Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . (i) is

---

[2]      The language of that section is ambiguous because it suggests an intent to limit availability of IFP status to prison inmates.  *See* 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses").  The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria.  *Hayes v. United States*, 71 Fed. Cl. 366, 367 (Fed. Cl. 2006); *Fridman v. City of N.Y.*, 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

[3]      The Court notes that Section 1915(a)(1) does not set financial guideposts as standards for determining IFP eligibility.  Although Plaintiff's income appears to be above the federal poverty guidelines (Dkt. No. 7 at ¶ 2), based on his monthly expenses (*id*. at ¶ 6) and support contributions for his minor children (*id*. at ¶ 7), I find that he has established—albeit barely— that he is "unable" to pay the filing fee, or that paying the filing fee would pose a "serious hardship."

[4]      Plaintiff is reminded that, although his amended IFP application has been granted, he is still required to pay fees that he may incur in this action, including copying and/or witness fees.

frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks

monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2).

In determining whether an action is frivolous, the court must consider whether the

complaint lacks an arguable basis in law or in fact.  *Neitzke v. Williams*, 490 U.S. 319, 325

(1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well

as to discourage the waste of judicial resources.  *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*,

505 F.2d 802, 804 (8th Cir. 1974); *see Fitzgerald v. First East Seventh Street Tenants Corp*., 221

F.3d 362, 364 (2d Cir. 2000) (a district court "may dismiss a frivolous complaint *sua sponte* even

when the plaintiff has paid the required filing fee[.]"); *see also Pflaum v. Town of Stuyvesant,

Columbia Cnty., N.Y.*, 11-CV-0335, 2016 WL 865296, at *1, n.2 (N.D.N.Y. Mar. 2, 2016)

(Suddaby, C.J.) (finding that the Court had the power to address and dismiss additional theories

of the plaintiff's retaliation claim *sua sponte* because those theories were so lacking in arguable

merit as to be frivolous).

In order to state a claim upon which relief can be granted, a complaint must contain, *inter

alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.

R. Civ. P. 8(a)(2).  The requirement that a plaintiff "show" that he or she is entitled to relief

means that a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is *plausible* on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis

added) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 [2007]).  "Determining whether a

complaint states a plausible claim for relief . . . requires the . . . court to draw on its judicial

experience and common sense. . . . [W]here the well-pleaded facts do not permit the court to

infer more than the mere possibility of misconduct, the complaint has alleged–but it has not

shown–that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citation and punctuation omitted).

"In reviewing a complaint . . . the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

Courts are "obligated to construe a pro se complaint liberally." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009); *see also Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam) (reading the plaintiff's *pro se* complaint "broadly, as we must" and holding that the complaint sufficiently raised a cognizable claim).  "[E]xtreme caution should be exercised in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and [the] parties . . . have had an opportunity to respond." *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983).

## IV.   ANALYSIS

In addressing the sufficiency of a plaintiff's complaint, the court must construe his pleadings liberally. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Having reviewed Plaintiff's Amended Complaint with this principle in mind, I recommend that all causes of action be dismissed.

Plaintiff brings this action pursuant to Section 1983, which establishes a cause of action for "'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *German v. Fed. Home Loan Mortg. Corp.*, 885 F. Supp. 537, 573 (S.D.N.Y. 1995) (citing *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990) (quoting 42

U.S.C. § 1983)) (footnote omitted).  "Section 1983 itself creates no substantive rights, [but] . . . only a procedure for redress for the deprivation of rights established elsewhere."  *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citation omitted).  To establish liability under the statute, a plaintiff must plead that each government official defendant violated the Constitution through that official's own individual actions.  *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020).

Plaintiff's Amended Complaint is largely incomprehensible and must be dismissed for three reasons.

### A.      Frivolous

First, Rule 8 of the Fed. R. Civ. P. requires a "short and plain statement" of a claim, showing that "the pleader is entitled to relief."  *Whitfield v. Johnson*, 763 F. App'x 106, 107 (2d Cir. 2019) (quoting Fed. R. Civ. P. 8(a)).  Each statement must be "simple, concise, and direct,' and must give 'fair notice of the claims asserted."  *Whitfield*, 763 F. App'x at 107 (quoting *Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995)).  A pleading must also contain "a demand for the relief sought[.]"  *Id*.  "A complaint may be dismissed under Rule 8 if it is 'so confused, ambiguous, or otherwise unintelligible that its true substance, if any, is well disguised.'"  *Id*. Moreover, Rule 10 of the Fed. R. Civ. P. provides that "[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances[.]" Fed. R. Civ. P. 10(b).  Rule 10's purpose is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]"  *Clervrain v. Robbins*, 22-CV-1248, 2022 WL 17517312, at *2 (N.D.N.Y. Dec. 8, 2022) (Stewart, M.J.) (citation omitted), *report and recommendation adopted*, 2023 WL 3170384 (N.D.N.Y. May 1, 2023) (D'Agostino, J.).  A complaint that does not comply with these Rules "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the

Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, C.J.).

As it currently stands, Plaintiff's Amended Complaint wholly fails to provide fair notice of the claims he attempts to assert. Given its lack of clarity, the Court recommends dismissal of the Amended Complaint because it is not acceptable under Rules 8 and 10 of the Fed. R. Civ. P. and because Plaintiff's Section 1983 claims against Defendants are entirely unclear.

### B.       Failure to State a Claim Upon Which Relief May be Granted

Second, and in the alternative, I recommend that Plaintiff's Amended Complaint be dismissed because it fails to state a claim upon which relief may be granted.[5]

"To state a valid claim under § 1983, the plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen*

---

[5]       Due to the nature of Plaintiff's Amended Complaint, it is difficult to precisely determine exactly which doctrine applies, but his claims are also likely barred. "[I]n the event the underlying state court proceedings are concluded, such claims are likely barred by the *Rooker-Feldman* doctrine." *Walker v. O'Connor*, 22-CV-0581, 2022 WL 2341420, at *6 (N.D.N.Y. June 29, 2022) (Dancks, M.J.) (citing *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that *Rooker-Feldman* bars Phifer's challenges to the family court's decisions regarding custody, neglect, and visitation."); *Fernandez v. Turetsky*, 12-CV-4092, 2014 WL 5823116, at *4 (E.D.N.Y. Nov. 7, 2014) (collecting cases) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears."), *aff'd*, 645 F. App'x 103 (2d Cir. 2016)), *report and recommendation adopted*, 2022 WL 2805462 (N.D.N.Y. July 18, 2022) (Hurd, J.). "Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction." *Amato v. McGinty*, 21-CV-0860, 2022 WL 226798, at *10 (N.D.N.Y. Jan. 26, 2022) (Dancks, M.J.) (citing *Marshall v. Marshall*, 547 U.S. 293, 308 (2006)). In the event that Plaintiff's underlying state family court proceeding remains pending, his request for this Court's involvement may also implicate the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002).

*v. Cnty. of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir. 1994)).

Here, the Amended Complaint includes the following allegations related to actions taken by Defendants, in full:

> David Primo, Jeffrey Alan Domachowski, Sarah Merrick, and Patricia DeRue are all in breach of trust for refusing appointment by me to settle the account and terminate the unconditional bill of attainer they are refusing due to the cooperative arrangement they have in order to provide Title IV-D services.  The form is child support and the substance is securities because child support is not in the best interest of the child or mother it's in the states best interest

(Dkt. No. 6 at 4.)

These allegations fail to allege the personal involvement of any of Defendants in a violation of Plaintiff's rights.[6]

## C.     Immunity

Third and in the alternative, I recommend that Plaintiff's Amended Complaint be dismissed to the extent that it asserts claims against Defendants Primo, Merrick, Domachowski, and DeRue, because it seeks relief from individuals who are immune from suit.

---

[6]     The Court notes that the Amended Complaint includes two pages with each Defendant listed as a heading and a bullet point list under each heading.  (Dkt. No. 6 at 5-6.)  These pages do not contain factual allegations and instead appear to include legalese phrases that largely do not make sense.  By way of example, under the heading naming Defendant Primo, Plaintiff alleges:

- Breach of Agreement
- Securities fraud
- Trespass of my estate
- Neglect/failed to prevent
- Violation of the hierarchy of law

(Dkt. No. 6 at 5.)  The list also includes a heading for Defendant Murphy.  (Dkt. No. 6 at 6.)  However, the Amended Complaint fails to allege factual allegations plausibly suggesting any action taken by Defendant Murphy and therefore fails to allege her personal involvement in any violations.

### 1.   Defendant Primo

Absolute immunity extends to nonjudicial officers who perform acts that "are integrally related to an ongoing judicial proceeding." *Mitchell v. Fishbein*, 377 F.3d 157, 172-73 (2d Cir. 2004).  Plaintiff's Amended Complaint identifies Defendant Primo as "Chief Clerk of Onondaga County Family Court."  (Dkt. No. 6 at 2.)  Quasi-judicial immunity protects court clerks and sheriffs from suit "for performance of tasks which are judicial in nature and an integral part of the judicial process." *Garcia v. Hebert*, 08-CV-0095, 2013 WL 1294412, at *12 (D. Conn. Mar. 28, 2013) (quoting *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997)), *aff'd*, 594 F. App'x 26 (2d Cir. 2015) (summary order), *cert. denied*, No. 14-9720 (Oct. 5, 2015).

As a result, I recommend that Plaintiff's claims against Defendant Primo in his individual capacity be dismissed, because he is immune from suit. *See Leftridge v. Judicial Branch*, 22-CV-0411, 2023 WL 4304792, at *9 (D. Conn. June 30, 2023) (dismissing the plaintiff's claims against the state court clerks of court based on the doctrine of quasi-judicial immunity where "their alleged actions arose out of or related to [plaintiff]'s child support and child custody proceedings."); *Braithwaite v. Tropea*, 23-CV-1431, 2023 WL 4207907, at *4 (E.D.N.Y. June 27, 2023) (citing *Jackson v. Pfau*, 523 F. App'x 736, 737-38 (2d Cir. 2013) (affirming dismissal pursuant to Section 1915(e)(2)(B) of pro se plaintiff's Section 1983 claims against the Chief Clerks of several state courts based on the doctrine of judicial immunity)) (dismissing as frivolous the plaintiff's claims against the clerk of the court because he was entitled to absolute immunity); *Mendez v. Johnson*, 22-CV-6811, 2022 WL 3587600, at *2 (S.D.N.Y. Aug. 22, 2022) (citing *inter alia*, *Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA*, 17-CV-2164, 2018 WL 2138631, at *2 (D. Conn. May 9, 2018) (extending judicial immunity to a clerk of court); *Manko v. Ruchelsman*, 12-CV-4100, 2012 WL 4034038, at *2 (E.D.N.Y. Sept. 10,

2012) (same)) (noting that courts have routinely granted judicial immunity to "government officials, including clerks of court and other court employees, for their acts that assist a judge in the performance of his or her judicial duties.").

Moreover, I recommend that Plaintiff's claims against Defendant Primo in his official capacity as Chief Clerk of Onondaga Family Court be dismissed because the Onondaga County Family Court is an arm of the New York state court system and New York State is immune from suit pursuant to the Eleventh Amendment. *Braithwaite*, 2023 WL 4207907, at *4 (collecting cases) (holding that the plaintiff's claims against the Chief Clerk of the Suffolk County Court in his official capacity are barred by the Eleventh Amendment).

### 2.    Defendant Merrick

Defendant Merrick, as the Commissioner of Social Services-Economic Security, is "not entitled to judicial immunity because her responsibilities are not closely associated with the judicial process nor is her agency a quasi-judicial body. However, she [is] entitled to qualified immunity." *Parent v. New York*, 786 F. Supp. 2d 516, 537 (N.D.N.Y. 2011) (Hurd, J.), *aff'd*, 485 F. App'x 500 (2d Cir. 2012); *but see Ramos v. Putnam Family Court*, 15-CV-1443, 2017 WL 3083727, at *3 (D. Conn. July 18, 2017) (quoting *Lomtevas v. Cardozo*, 05-CV-2779, 2006 WL 229908, at *5 (D. Conn. Jan. 31, 2006)) (finding that "[o]fficials involved with . . . the enforcement of [a] child support order are entitled to 'absolute quasi-judicial immunity.'"). Defendant Merrick's conduct in "enforcing the petition [ordering Plaintiff to pay child support] did not violate any clearly established right.  There is no right to refuse to pay child support. Moreover, even if there was such a right and it was clearly established, it was objectively reasonable for [Defendant Merrick] to believe that carrying out her duties and enforcing the petition did not violate [P]laintiff's rights." *Parent*, 786 F. Supp. 2d at 537.  As a result, I

recommend that all claims against Defendant Merrick in her individual capacity be dismissed based on the doctrine of qualified immunity.  *See also Chris H. v. New York*, 16-CV-6807, 2017 WL 2880848, at *9 (S.D.N.Y. July 5, 2017) (finding that the plaintiff's claims against the New York City Human Resources Administration/Department of Social Services Commissioner were subject to dismissal pursuant to the doctrine of qualified immunity).[7]

### 3.    Defendants DeRue and Domachoski

Plaintiff's claims under § 1983 against Defendants DeRue and Domachowski, who acted as the support magistrate judges, are barred under the doctrine of judicial immunity.  Under this doctrine, judges are absolutely immune from suit for claims for damages for any actions taken within the scope of their judicial responsibilities.  *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature."  *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009).  "[E]ven allegations of bad faith or malice cannot overcome judicial immunity."  *Bliven*, 579 F.3d at 209.

Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete

---

[7]      However, the undersigned notes that Plaintiff's claims against Defendant Merrick in her official capacity are not barred by the Eleventh Amendment.  *Meyers v. Becker*, 23-CV-0173, 2023 WL 3079611, at *4 (N.D.N.Y. Apr. 5, 2023) (Hummel, M.J.), *report and recommendation adopted*, 2023 WL 3073495 (N.D.N.Y. Apr. 25, 2023) (Hurd, J.).  Notwithstanding that conclusion, I recommend that any claims against Defendant Merrick in her official capacity be dismissed because—in addition to the reasons set forth above—the Complaint fails to allege facts plausibly suggesting that Defendant Merrick's actions were pursuant to any policy or custom of Onondaga County.  Official capacity suits are merely an alternative way to plead a claim against an entity of which an officer is an employee.  *Kentucky v. Graham,* 473 U.S. 159, 165 (1985).  "[A] governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation."  *Graham,* 473 U.S. at 166 (quoting *Polk Cnty. v. Dodson,* 454 U.S. 312, 326 (1981)).  In an official capacity suit against a municipal employee, a plaintiff must show that the acts were performed pursuant to a policy or custom.  *Patterson v. Cnty. of Oneida,* 375 F.3d 206, 226 (2d Cir. 2004).

absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven,* 579 F.3d at 209-10 (describing actions that are judicial in nature).  However, "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman,* 435 U.S. 349, 356 (1978).  "District courts within this Circuit have applied this immunity doctrine to New York Family Court Support Magistrates," like Defendants DeRue and Domachowski.  *Roger of the Family Forest v. 45 C.F.R. § 75.2 IV-D Contractor Steve Banks*, 18-CV-10866, 2019 WL 4194332, at *4 (S.D.N.Y. Aug. 30, 2019) (collecting cases).

Plaintiff asserts claims that appear to arise from the efforts of Defendants DeRue and Domachowski, in their capacities as a New York Family Court Support Magistrates, to assess and collect child support that Plaintiff owes pursuant to Family Court orders and judgments. Defendants DeRue and Domachowski are therefore immune from suit under the doctrine of judicial immunity.  As a result, I recommend that Plaintiff's claims against Defendants DeRue and Domachowski in their individual capacities be dismissed based on the doctrine of judicial immunity.

Moreover, I recommend that Plaintiff's claims against Defendants DeRue and Domachowski in their official capacities be dismissed pursuant to the Eleventh Amendment.  *See Sundwall v. Leuba*, 28 F. App'x 11, 12 (2d Cir. 2001) (citing *K & A Radiologic Tech. Servs., Inc. v. Comm'r of the Dep't of Health*, 189 F.3d 273, 278 (2d Cir. 1999)) (holding that "state officers, if sued in their official capacities, are immunized from suit by private citizens under the Eleventh Amendment."); *King v. New York State*, 23-CV-3421, 2023 WL 5625440, at *4 (E.D.N.Y. Aug. 31, 2023) (citing *Thomas v. Martin-Gibbons*, 857 F. App'x 36, 37 (2d Cir. 2021) (affirming dismissal of *pro se* Section 1983 claims against the State of New York and a state court judge in his official capacity based on Eleventh Amendment immunity)) ("Eleventh Amendment

immunity extends to state officials acting in their official capacities, including state court judges."); *Aron v. Becker*, 48 F. Supp. 3d 347, 366-67 (N.D.N.Y. 2014) (McAvoy, J.) (dismissing the plaintiff's claims against a state court judge in his official capacity based on the doctrine of Eleventh Amendment immunity).

## V.    OPPORTUNITY TO AMEND

Generally, a court should not dismiss claims contained in a complaint filed by a *pro se* litigant without granting leave to amend at least once "when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Branum v. Clark*, 927 F.2d 698, 704-05 (2d Cir. 1991); *see also* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires."). An opportunity to amend is not required, however, where "the problem with [the plaintiff's] causes of action is substantive" such that "better pleading will not cure it." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *see also Cortec Indus. Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991) ("Of course, where a plaintiff is unable to allege any fact sufficient to support its claim, a complaint should be dismissed with prejudice."). Stated differently, "[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend." *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993); *accord, Brown v. Peters*, 95-CV-1641, 1997 WL 599355, at *1 (N.D.N.Y. Sept. 22, 1997) (Pooler, J.).[8]

---

[8]    *See also Carris v. First Student, Inc.*, 132 F. Supp. 3d 321, 340-41 n.1 (N.D.N.Y. 2015) (Suddaby, C.J.) (explaining that the standard set forth in *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 796 (2d Cir. 1999)—that the Court should grant leave to amend "unless the court can rule out any possibility, however unlikely it might be, that an amended complaint would be successful in stating a claim"—is likely not an accurate recitation of the governing law after *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)), *rev'd on other grounds*, 682 F. App'x 30.

Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above, which appear to apply to all claims against Defendants Primo, DeRue, and Domachowski.

Although I have serious doubts about whether Plaintiff can further amend the Amended Complaint to assert an actionable claim against Defendants Merrick and Murphy, given Plaintiff's *pro se* status and that Plaintiff has not had the benefit of the Court's analysis prior to amending, out of an abundance of caution, I recommend that Plaintiff's claims against Defendants Merrick and Murphy be dismissed without prejudice and with leave to amend.

If Plaintiff chooses to file a second amended complaint, he should note that the law in this circuit clearly provides that "'complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning.'" *Hunt v. Budd*, 895 F. Supp. 35, 38 (N.D.N.Y. 1995) (McAvoy, J.) (quoting *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987)); *accord Pourzancvakil v. Humphry*, 94-CV-1594, 1995 WL 316935, at *7 (N.D.N.Y. May 22, 1995) (Pooler, J.).  Therefore, in any second amended complaint, Plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act.  In addition, the revised pleading should allege facts demonstrating the specific involvement of any named defendant in the constitutional deprivations alleged in sufficient detail to establish that it was tangibly connected to those deprivations.  *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986). Finally, Plaintiff is informed that any such second amended complaint will replace the existing Amended Complaint and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court.  *See*

*Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's IFP application (Dkt. No. 2) is **DENIED as moot**; and it is further

**ORDERED** that Plaintiff's amended IFP application (Dkt. No. 7) is **GRANTED**; and it is further respectfully

**RECOMMENDED** that Plaintiff's Amended Complaint (Dkt. No. 6) be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITH LEAVE TO AMEND** Plaintiff's Amended Complaint (Dkt. No. 6) against Defendants Merrick and Murphy in their individual and official capacities, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further respectfully

**RECOMMENDED** that the Court **DISMISS WITHOUT PREJUDICE AND WITHOUT LEAVE TO AMEND** Plaintiff's Amended Complaint (Dkt. No. 6) against Defendants Primo, DeRue, and Domachowski in their individual and official capacities, pursuant to 28 U.S.C. § 1915(e)(2)(B); and it is further

**ORDERED** that the Clerk of the Court shall file a copy of this Order and Report-Recommendation on Plaintiff, along with copies of the unpublished decisions cited herein in accordance with the Second Circuit's decision in *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

15

**NOTICE:** Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[9]  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.  28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 6(a), 6(d), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)).

Dated: September 29, 2023
          Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge

---

[9]      If you are proceeding *pro se* and served with this report, recommendation, and order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date that the report, recommendation, and order was mailed to you to serve and file objections.  Fed. R. Civ. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  Fed. R. Civ. P. 6(a)(1)(C).

Case 5:23-cv-01051-BKS-ML Document 8 Filed 09/29/23 Page 17 of 158

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

2016 WL 865296

Only the Westlaw citation is currently available.

United States District Court, N.D. New York.

William PFLAUM, Individually and as a Citizen, Resident and Taxpayer of Town of Stuyvesant, Plaintiff,

v.

TOWN OF STUYVESANT, COLUMBIA CTY., N.Y.; and Valerie Bertram, Individually and as Supervisor of Town of Stuyvesant, Defendants.

1:11-CV-0335 (GTS/DJS)
|
Signed 03/02/2016

**Attorneys and Law Firms**

WILLIAM PFLAUM, Plaintiff, Pro Se [1], 3 Rybka Road, Box 40, Stuyvesant Falls, NY 12174.

BRYAN D. RICHMOND, ESQ., THOMAS J. MORTATI, ESQ., BURKE, SCOLAMIERO, MORTATI & HURD, LLP, Attorneys for Defendants, 9 Washington Square, Suite 201, P.O. Box 15085, Albany, NY 12212-5085.

## DECISION and ORDER

GLENN T. SUDDABY, Chief United States District Judge

**\*1** Currently before the Court, in this civil rights action filed by William Pflaum ("Plaintiff") against the Town of Stuyvesant ("Town") and Valerie Bertram, Town Supervisor ("Bertram") (collectively, "Defendants"), is Defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56. (Dkt. No. 59.) For the reasons set forth below, Defendants' motion is granted.

## I. RELEVANT BACKGROUND

### A. Plaintiff's Complaint

As a result of the Court's prior decisions (Dkt. Nos. 17, 26), Plaintiff's sole remaining claim in this action is his First Amendment retaliation claim. More specifically, as articulated in his Complaint (which was drafted by Plaintiff, *pro se*, and therefore must be construed with special solicitude), that claim alleges three separate ways he was retaliated against for publicly criticizing Town officials. [2]

First, Plaintiff alleges that, in retaliation for filing charges of ethical violations against Defendant Bertram, she (a) "collaborated with and supported" the Town's Fire Chief to deny and/or threaten to deny fire protection to Plaintiff, (b) "supported and encouraged" various Town employees to "illegal[ly] revo[ke] ... Plaintiff's permit to operate his business," and (c) "supported and encouraged" the Town Assessor's "campaign to intimidate Plaintiff by linking [his] political speech [with his] real estate assessment." (Dkt. No. 1, ¶¶ 20-23, 116 [Pl.'s Compl.].)

Second, Plaintiff alleges that, in retaliation for writing columns on his Internet blog regarding corruption among the Town's public officials, the Town filed false criminal charges against him. (*Id.*, ¶ 116.)

Third, and finally, Plaintiff alleges that, in retaliation for criticizing Bertram, the Town Assessor, and the Town, the Town Assessor used his authority to raise taxes in order to intimidate Plaintiff into silence. (*Id.*, ¶¶ 23, 39, 47, 116.)

### B. Defendants' Motion for Summary Judgment

**\*2** In their motion for summary judgment, Defendants request the dismissal of Plaintiff's Complaint in its entirety. (Dkt. No. 59.) In support of their motion, Defendants make the following four arguments. First, Defendants argue that there was no adverse action against Plaintiff in that there was no actual chilling of Plaintiff's First Amendment speech or any other damages. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law].)

Second, Defendants argue that, in any event, any such adverse action was not motivated or substantially caused by Plaintiff's First Amendment speech. (*Id.* at 5-6.)

Third, in the alternative, Defendants argue that Bertram was not personally involved in any deprivation of fire protection services to Plaintiff. (*Id.* at 5, 8-10.)

Fourth, and finally, Defendants argue that Bertram is entitled to qualified immunity. (*Id.*)

### C. Plaintiff's Opposition Memorandum of Law

Generally construed, Plaintiff makes five arguments in opposition to Defendants' motion. First, Plaintiff argues that he engaged in protected speech by creating an Internet blog on which he publicly criticized Town officials and exposed

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 18 of 158

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

their illegal activities. (Dkt. No. 65, at 3 [Pl.'s Opp'n Mem. of Law].)

Second, Plaintiff argues that Town officials took adverse action against him by issuing noise violations against him with respect to loud dog barking on his property, retaining special prosecutors to pursue civil suits and criminal charges against him, encouraging harassment and extra-judicial threats against him, and treating him differently from other residents. (*Id.* at 4-5.) As a result, Plaintiff argues that he suffered a chilling effect on his blogging as well as monetary damages due to the expense required to oppose the Town's retaliatory activities. (*Id.* at 6-8.)

Third, Plaintiff argues that the timing of these adverse actions, i.e., that they began after he created his blog, establishes the causal connection between his protected speech and the adverse actions. (*Id.* at 5.)

Fourth, Plaintiff argues that Bertram is not entitled to qualified immunity because it was not objectively reasonable to believe that her actions did not violate Plaintiff's First Amendment rights. (*Id.* at 5-6.) According to Plaintiff, these actions consisted of (1) threatening to fire the Town's Dog Control Officer if he did not serve Plaintiff with a criminal charge related to dog barking, and (2) retaining special prosecutors to pursue this charge against Plaintiff without first obtaining the Town's approval. (*Id.* at 9.)

Fifth, Plaintiff argues that municipal liability extends to the Town because of the actions of Bertram, the Town's supervisor, and her position as a policymaker. (*Id.* at 8-9.)

Finally, the Court notes that Plaintiff spends considerable time in his opposition papers arguing the merits of issues not raised by Defendants in their motion. For example, Plaintiff discusses the Town's denial of his FOIL requests, the Town's failure to respond appropriately to alleged vandalism of his property, and the sufficiency of the evidence that led to the issuance of noise violations related to dog barking. (*See generally id.*, at 3-4, 6-9; Dkt. No. 67, ¶¶ 4, 14, 25, 27, 36, 56-107 [Pl.'s Decl.].)

### D. Defendants' Reply Memorandum of Law
In reply to Plaintiff's opposition memorandum of law, Defendants make two arguments. First, Defendants argue that, because Plaintiff has not complied with Local Rule 7.1(a)(3) in his response to their statement of material facts, their

statement of material facts should be deemed admitted. (Dkt. No. 74, at 2-6 [Defs.' Reply Mem. of Law].)

**\*3** Second, Defendants argue that the record is devoid of any admissible evidence that Bertram was personally involved in an alleged deprivation of fire protection services with regard to Plaintiff's residence. (*Id.* at 6-7.) Furthermore, Defendants argue that Plaintiff cannot demonstrate that any adverse action was taken because he was never actually deprived of fire protection services and his subjective belief that the fire department may not respond to a fire at his residence is insufficient to create a genuine dispute of fact. (*Id.* at 7-8.)

### E. Statement of Material Facts

#### 1. Plaintiff's Failure to Comply with N.D.N.Y. Local Rule 7.1

Before reciting the material facts of this case, the Court must address Plaintiff's response to Defendant's Rule 7.1 Statement of Material Facts. Local Rule 7.1(a)(3) of the Local Rules of Practice for this Court requires a party moving for summary judgment to submit a statement of material facts supported by specific citations to the record where those facts are established. N.D.N.Y. L.R. 7.1(a)(3). The non-moving party's subsequent response must mirror the moving party's statement of material facts by (1) admitting and/or denying each of the moving party's factual assertions in matching numbered paragraphs and (2) supporting any denials with specific citations to the record where the factual issues arise. *Id.* Importantly, "[t]he Court shall deem admitted any properly supported facts set forth in the [moving party's] Statement of Material Facts that the [non-moving] party does not specifically controvert." *Id.*

This Court's "Local Rule requirements are not empty formalities." *Bombard v. Gen. Motors Corp.*, 238 F. Supp. 2d 464, 467 (N.D.N.Y. 2002) (Munson, J.) (stating that "[t]he courts of the Northern District have adhered to a strict application of Local Rule 7.1[a][3]'s requirement on summary judgment motions"); *accord, Cross v. Potter*, 09-CV-1293, 2013 WL 1149525, at *3 (N.D.N.Y. Mar. 19, 2013) (McAvoy, J.). Indeed, the underlying purpose of this rule "is to assist the court in framing the issues and determining whether there exist any triable issues of fact that would preclude the entry of summary judgment." *Youngblood v. Glasser*, 10-CV-1430, 2012 WL 4051846, at *4 (N.D.N.Y. Aug. 22, 2012) (Peebles, M.J.); *see also N.Y. Teamsters Conference Pension &*

Case 5:23-cv-01051-BKS-ML    Document 8    Filed 09/29/23    Page 19 of 158

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

*Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 649 (2d Cir. 2005) (noting that "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties'") (quoting 📁 *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 [2d Cir. 2001]).

In the present case, Plaintiff has failed to respond appropriately to Defendants' Rule 7.1 Statement of Material Facts. Specifically, Plaintiff has failed to admit and/or deny each of Defendants' factual assertions in matching numbered paragraphs. Indeed, Defendants' Rule 7.1 Statement contains 71 paragraphs of factual assertions, while Plaintiff's 7.1 Response contains only 11 paragraphs. (*Compare* Dkt. No. 62 [Defs.' Rule 7.1 Statement] *with* Dkt. No. 66 [Pl.'s Rule 7.1 Response].) Moreover, many of Plaintiff's responses are conclusory in nature and/or contain legal arguments. The Court notes that, when he responded to Defendants' motion, Plaintiff was represented by counsel. Accordingly, the Court will accept the factual assertions in Defendants' 7.1 Statement as true to the extent that the evidence in the record supports these facts. *See Davis v. Cumberland Farms, Inc.*, 10-CV-0480, 2013 WL 375477, at *4 (N.D.N.Y. Jan. 29, 2013) (Scullin, J.) (accepting the defendant's statement of material facts as true where plaintiff neither admitted nor denied defendant's factual assertions); 📁 *Aktas v. JMC Dev. Co., Inc.*, 877 F. Supp. 2d 1, 5 n.3 (N.D.N.Y. 2012) (D'Agostino, J.) (accepting the third-party defendants' statement of material facts as true because the defendant/third-party plaintiff failed to respond to it in accordance with Local Rule 7.1[a][3] ).

### 2. Undisputed Material Facts

**\*4** For purposes of this motion, the undisputed material facts are as follows. Gerald Ennis has served as the Zoning Enforcement Officer for the Town of Stuyvesant continuously since 2003. (Dkt. No. 62, ¶ 43 [Defs.' Rule 7.1 Statement].) In this capacity, Mr. Ennis issued Plaintiff a Class 2 Home Occupation Permit in August, 2009. (*Id.*, ¶ 44.) Under this permit, "[n]o unusual appearances, noise, vibration, smoke, dust, odors, heat, glare or electrical disturbances that exceed those normally produced by a resident shall be permitted." (*Id.*, ¶ 45.) Following the issuance of this permit, Mr. Ennis received numerous noise complaints from Plaintiff's neighbors in regard to increasingly loud barking

from dogs on Plaintiff's property. (*Id.*, ¶¶ 46-47.) Following an investigation into these complaints, Mr. Ennis concluded that Plaintiff's "home dog kennel which housed up to 50 dogs at a time was producing noise levels that exceeded those normally produced by a resident and, accordingly, [Plaintiff] was in violation of his Permit." (*Id.*, ¶ 48.)

On December 7, 2009, Mr. Ennis issued Plaintiff a notice of violation, which informed Plaintiff that the Town had received several complaints about the noise coming from his property and directed Plaintiff to remedy the violation by December 23, 2009. (*Id.*, ¶ 49.) Subsequently, Plaintiff contacted Mr. Ennis and requested that his phone number be given to those who had complained with instructions that they contact Plaintiff directly when there are noise issues so he can rectify any problems. (*Id.*, ¶ 50.) However, after a few months had passed, Plaintiff stopped answering his neighbors' phone calls; and, as a result, his neighbors made new complaints to Mr. Ennis. (*Id.*, ¶ 51.) After receiving these complaints and personally observing the loud noise emanating from Plaintiff's property, Mr. Ennis issued a second notice of violation to Plaintiff on April 26, 2010. (*Id.*, ¶¶ 52-53.) In response, Plaintiff advised Mr. Ennis that he would erect a sound barrier to remedy the issue. (*Id.*, ¶ 54.)

According to Mr. Ennis, he waited "some time" for Plaintiff to erect, or apply for a permit to construct, a sound barrier but neither action was taken. (*Id.*, ¶¶ 55-56.) After continuing to receive noise complaints, Mr. Ennis issued a third notice of violation to Plaintiff on August 9, 2010. (*Id.*, ¶ 56.) On the same day, Mr. Ennis met with Bertram and the Town Attorney to discuss the noise issue on Plaintiff's property. (*Id.*, ¶ 57.) The Town Attorney advised Bertram that Mr. Ennis had the authority to revoke Plaintiff's home occupation permit if he determined that Plaintiff was in violation of the permit's conditions. (*Id.*, ¶ 37.) As a result, Bertram advised Mr. Ennis that he may revoke Plaintiff's permit if he determined that the permit's conditions had been violated. (*Id.*, ¶ 38.) Later that same day (August 9, 2010), Mr. Ennis made the decision to revoke Plaintiff's permit and notified Plaintiff of that fact. (*Id.*, ¶¶ 39, 59.) Neither Plaintiff's statements concerning various issues in the Town nor his postings on various Internet sites had any bearing on the decision to revoke Plaintiff's permit. (*Id.*, ¶¶ 40, 61.)

Plaintiff testified at his deposition that the basis for his claim that he was deprived of fire protection services is that, "in 2011, or perhaps late 2010," a local fire department chief, Steve Montie, posted an online statement that Plaintiff should

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

Case 5:23-cv-01051-BKS-ML  Document 8  Filed 09/29/23  Page 20 of 158

move out of town. (*Id.*, ¶ 14.) Plaintiff testified that the post was made in response to one of his earlier posts on a local town Internet forum; in Plaintiff's post, he had complained of alleged ethical violations committed by Bertram. (*Id.*, ¶¶ 15-16.) The alleged post by Mr. Montie states in its entirety as follows:

> William,
>
> How much more of this are you going to do ? ? ? ? You are wasting more tax payer dollars than its worth. Man up correct your problems and move on, or better yet move out.
>
> S

(*Id.*, ¶ 19.) The author of this post is not identified by name but only by the email address stuyvesantchief@fairpoint.net; and, as indicated above, the post is signed only as "S." (*Id.*, ¶ 18.)

**\*5** Plaintiff testified that the statements in the alleged post amounted to a threatened denial of fire department services because "the fire chief told me I should move out of town, which makes me wonder if there was a fire at my house would he come." (*Id.*, ¶ 20.) However, Plaintiff testified that no one has ever told him that the fire department would not respond if there was a fire at his house. (*Id.*, ¶ 22.) In addition, Plaintiff testified that there are two distinct fire departments in the Town, Stuyvesant Company 1 and Stuyvesant Company 2, which divide their responses to emergency calls in the Town geographically. (*Id.*, ¶ 23.) Steve Montie is the Chief of Stuyvesant Company 1 and a different chief controls Company 2. (*Id.*, ¶ 25.) Plaintiff's property is located in the geographic area covered by Company 2. (*Id.*, ¶ 24.) According to Bertram, she did not "in any way direct any fire department to deprive or threaten to deprive [Plaintiff] of fire services." (*Id.*, ¶ 33.)

Finally, Plaintiff testified that there was "never" a time that he did not publicize or speak out against some issues based upon any actions by the Town and the alleged efforts to silence him did not work. (*Id.*, ¶ 26.) In fact, following the alleged actions by the Town, Plaintiff did more blogging and increased his "political activities against the Town." (*Id.*, ¶ 27.) With respect to his business, Plaintiff testified that, despite losing his business permit in August, 2010, he continued to operate his business uninterrupted without a permit as he had before it was issued in 2009. (*Id.*, ¶ 29.) Accordingly, there was

no interruption to Plaintiff's business as a result of his home business permit being revoked. (*Id.*, ¶¶ 28, 30.)

## II. STANDARD GOVERNING A MOTION FOR SUMMARY JUDGMENT

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is "genuine" if "the [record] evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). As a result, "[c]onclusory allegations, conjecture and speculation ... are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) (citation omitted); *see also* Fed. R. Civ. P. 56(e)(2). As the Supreme Court has famously explained, "[the non-moving party] must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585-86 (1986). As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movign party. Anderson, 477 U.S. at 255. In addition, "[the moving party] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the ... [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." Celotex v. Catrett, 477 U.S. 317, 323-24 (1986); *see also* Fed. R. Civ. P. 56(c), (e). However, when the moving party has met this initial burden of establishing the absence of any genuine issue of material fact, the nonmoving party must come forward with specific facts showing a genuine dispute of material fact for trial. Fed. R. Civ. P. 56(c), (e). Where the non-movant fails to deny the factual assertions contained in the movant's Rule 7.1 Statement of Material Facts in matching numbered paragraphs supported by a citation to admissible record evidence (as required by Local Rule 7.1[a][3] of the Court's Local Rules of Practice), the court may not rely solely on the movant's Rule 7.1 Statement; rather, the court must be

Case 5:23-cv-01051-BKS-ML Document 8 Filed 09/29/23 Page 21 of 158

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

satisfied that the citations to evidence in the record support the movant's assertions. *See* *Giannullo v. City of N.Y.*, 322 F.3d 139, 143, n.5 (2d Cir. 2003) (holding that not verifying in the record the assertions in the motion for summary judgment "would derogate the truth-finding functions of the judicial process by substituting convenience for facts").

## III. ANALYSIS

### A. Whether Plaintiff Suffered an Adverse Action

**\*6** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth in Defendants' memorandum of law and reply memorandum of law. (Dkt. No. 61, at 3-8 [Defs.' Mem. of Law]; Dkt. No. 74, at 6-8 [Defs.' Reply Mem. of Law].) To those reasons, the Court adds the following two points.

As this Court noted in its prior decisions, in order to state a claim for retaliation under the First Amendment, "a plaintiff must prove (1) his conduct was protected by the First Amendment, (2) the defendants' actions were motivated or substantially caused by the exercise of that right, and (3) defendants' actions effectively 'chilled' the exercise of plaintiff's First Amendment right." *Pflaum*, 937 F. Supp. 2d at 303 (citing *Dillon v. Morano*, 497 F.3d 247, 251 [2d Cir. 2007]). "In cases 'involving criticism of public officials by private citizens,' the Second Circuit has generally 'impose[d] an actual chill requirement for First Amendment retaliation claims[,]' i.e., a requirement that the plaintiff allege and ultimately prove an 'actual chill' of his First Amendment rights." *Hafez v. City of Schenectady*, 894 F. Supp. 2d 207, 221 (N.D.N.Y. 2012) (D'Agostino, J.) (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 381 [2d Cir. 2004]). "To establish this element, it is not enough for the plaintiff simply to show that he changed his behavior in some way; he must show that the defendant intended to, and did, prevent or deter him from exercising his rights under the First Amendment." *Hafez*, 894 F. Supp. 2d at 221. "However, 'where the retaliation is alleged to have caused an injury separate from any chilling effect, such as a job loss or demotion, an allegation as to a chilling effect is not necessary to state a claim.'" *Id.* (quoting *Puckett v. City of Glen Cove*, 631 F. Supp. 2d 226, 239 [E.D.N.Y. 2009]); *see also Brink v. Muscente*, 11-CV-4306, 2013 WL 5366371, at \*7 (S.D.N.Y. Sept. 25, 2013) (noting that, in private citizen cases, "various forms of concrete harm have been substituted for the 'actual chilling' requirement").

First, it is clear from Plaintiff's deposition testimony that there was no actual chilling of his protected speech as a result of Defendants' actions. As discussed above, Plaintiff admitted that he increased his political activities and continued to publicize his opinions against the Town in the face of its alleged efforts to silence him. "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001); *see also Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 120 (2d Cir. 1995) (finding no chilling effect where, after an arrest, the plaintiff continued to publish his newspaper through which he criticized the village government); *Spear v. Town of W. Hartford*, 954 F.2d 63, 67 (2d Cir. 1992) (finding no chilling effect where, after the filing of a lawsuit, the plaintiff continued to write criticizing editorials in the same manner as before the lawsuit).

Second, to the extent that Plaintiff argues that he perceived the online post regarding the loss of fire protection as a real threat, he is still required to show that his perception was objectively reasonable, i.e., "that the defendant[s'] actions had some actual, non-speculative chilling effect." *Colombo v. O'Connell*, 310 F.3d 115, 117 (2d Cir. 2002); *see also Laird v. Tatum*, 408 U.S. 1, 13-14 (1972) (holding that "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm"). Plaintiff's subjective belief that the online post constituted a real threat, without more, is insufficient to demonstrate an actual chilling effect on his First Amendment rights. Indeed, as discussed above in Point I.E.2. of this Decision and Order, Plaintiff admitted that no one had told him that the fire department would not respond if there was a fire at his house. Moreover, a different fire chief than the one who allegedly authored the online post is responsible for responding to fire calls in the location of Plaintiff's residence.

### B. Whether There Was a Causal Connection Between Plaintiff's Speech and Any Adverse Action

**\*7** After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

To establish the second element of his First Amendment retaliation claim, "plaintiff must provide specific proof of defendants' improper motivation with either circumstantial or direct evidence." *Media All., Inc. v. Mirch*, 09-CV-0659, 2011 WL 3328532, at \*5 (N.D.N.Y. Aug.

2, 2011) (D'Agostino, J.) (citing *Curley,* 285 F.3d at 73). "Circumstantial evidence includes close temporal proximity between plaintiff's speech and the alleged retaliatory act." ⚑ *Mirch,* 2011 WL 3328532, at *5.

"Regardless of the presence of retaliatory motive, however, a defendant may be entitled to summary judgment if he can show dual motivation, i.e., that even without the improper motivation the alleged retaliatory action would have occurred." ⚑ *Scott v. Coughlin,* 344 F.3d 282, 287-88 (2d Cir. 2003) (citing ⚑ *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287 [1977]). "Plaintiff has the initial burden of showing that an improper motive played a substantial part in defendant's action. The burden then shifts to defendant to show it would have taken exactly the same action absent the improper motive." ⚑ *Scott,* 344 F.3d at 288.

### 1. Revocation of Plaintiff's Business Permit

In denying Defendants' underlying motion to dismiss Plaintiff's First Amendment claim, this Court held that Plaintiff had sufficiently alleged a concrete harm through the loss of his business permit, and consequently, the loss of business income, as a result of Defendants' alleged retaliatory actions. *Pflaum,* 937 F. Supp. 2d at 308. Having carefully reviewed the record, the Court finds that Plaintiff has failed to create a genuine dispute of material fact regarding Defendants' alleged improper motive. Specifically, with respect to the revocation of his business permit, the undisputed facts establish that the Town received complaints regarding the noise emanating from Plaintiff's property. Plaintiff was given two [3] noise violations over the course of approximately one year and ample opportunity to rectify the problem. (Dkt. No. 67, Attach. 5.) Because the noise problem and complaints continued, Mr. Ennis revoked Plaintiff's permit. [4] Even if Plaintiff were able to establish that an improper motive played a part in this decision, it is clear to the Court that, under these circumstances, the revocation would have still occurred. Indeed, Plaintiff challenged the decision to revoke his permit in appeals made to the Town's Zoning Board of Appeals and in two actions filed in New York State Supreme Court. (Dkt. No. 67, Attachs. 1 & 2.) Although Plaintiff was successful in his state court actions, those decisions were based, in part, upon the Town's failure to follow proper procedure, rather than the merits of the Town's decision. (*Id.*)

### 2. Criminal Charges

**\*8** Plaintiff has also failed to demonstrate an improper motive with respect to his claim that he received false criminal charges in retaliation for comments on his website about corruption among public officials. Plaintiff relies on the temporal proximity of these charges with a meeting he had with Bertram and his filing of an Article 78 petition in New York State Supreme Court. More specifically, Plaintiff argues that he began an Internet blog on or about January 1, 2011, and in that blog reported on what he perceived to be the illegal activities of Town officials. (Dkt. No. 67, ¶ 15 [Pl.'s Decl.].)

For example, on January 1, 2011, Plaintiff wrote about the alleged inflation of billable time by the Town Attorney that was spent on work paid for by the Town. (*Id.* at 65:8-11.) Around the same time, Plaintiff met with Bertram to discuss his discovery of specific instances of corruption by public officials, including the alleged inflation of billable work by the Town Attorney. (Dkt. No. 59, Attach. 7, at 62:13-15; 64:9-15 [Pl.'s Dep. Tr.].) On January 15, 2011, a few days after this meeting occurred, Plaintiff was issued a criminal summons for the offense of "habitual loud barking," in violation of N.Y. Local Law § 1. (*Id.* at 61:19-22; Dkt. No. 68, Attach. 7 [Criminal Summons]; Dkt. No. 67, ¶ 15 [Pl.'s Decl.].) Plaintiff testified at his deposition that the Town Attorney went to great lengths to research the Local Law that he was charged under and assisted one of Plaintiff's neighbors in drafting an affidavit upon which the criminal summons was based. (Dkt. No. 59, Attach. 7, at 65:17-21 [Pl.'s Dep. Tr.; Dkt. No. 67, ¶ 107 [Pl.'s Decl.].) Plaintiff argues that he is the first Town resident to be charged under this section of the Local Law. (Dkt. No. 67, ¶¶ 100, 106 [Pl.'s Decl.].) Finally, Plaintiff argues that Bertram retained outside counsel to pursue this charge against him, which was later dismissed. (Dkt. No. 67, ¶¶ 5, 19, 21 [Pl.'s Decl.]; Dkt. No. 59, Attach. 7, at 57:16-18 [Pl.'s Dep. Tr.].)

Thereafter, in October 2011, Plaintiff filed an Article 78 petition in New York State Supreme Court challenging the Town's denial of Plaintiff's FOIL requests. (Dkt. No. 59, Attach. 7, at 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff sought disclosure of the information in the FOIL requests to substantiate his belief that Town officials were engaging in illegal activities. (Dkt. No. 67, ¶¶ 43-44 [Pl.'s Decl.].) One week after commencing that action, Plaintiff received a second criminal summons for the same offense related to loud

Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)

dog barking. (Dkt. No. 68, Attach. 7 [Appearance Ticket]; Dkt. No. 59, Attach. 7, at 56:16-19; 67:7-12 [Pl.'s Dep. Tr.].) Plaintiff testified that he had "almost no dogs" on his property in October 2011. (Dkt. No. 59, Attach. 7, at 67:8-10 [Pl.'s Dep. Tr.].) According to Plaintiff, that charge was neither dismissed nor withdrawn, but "vanished." (*Id.*, at 57:19-58:9.)

While Plaintiff's allegations may plausibly suggest that an improper motive played a role in the charges brought against him, Defendants have submitted admissible record evidence that establishes otherwise. (Dkt. No. 59, Attach. 17.) Specifically, the criminal information in question is signed by one of Plaintiff's neighbors, Frederick Platt, and states, in part, that "my complaint is that the dogs at Glencadia Dog Camp exhibit ongoing habitual barking/howling at any given time of day or night. This has been an issue since the Fall of 2009." (*Id.*) Furthermore, an affidavit filed by Wes Powell, the Town's Dog Control Officer, states that he received repeated complaints from Mr. Platt throughout 2010, culminating in the noise complaint that served as the basis for the criminal charge. (Dkt. No. 59, Attach. 16, ¶¶ 3-5 [Powell Aff.].) Mr. Powell states that the complaint was written by Mr. Platt in his presence and that no Town official directed Mr. Powell to serve Plaintiff with the criminal summons. (*Id.*, ¶¶ 7-10.)

**\*9** Conversely, Plaintiff has not submitted any admissible record evidence supporting his claim that the Town Attorney (who is not a party) played any role in the charge being filed against him or that he is the only resident to have ever been charged under this section of the Local Law. Similarly, Plaintiff's contention that the Town pressured Mr. Platt to file a complaint against him (Dkt. No. 67, ¶ 7[Pl.'s Decl.] ) is unsubstantiated. While the timing of the charge may appear suspicious, the Town cannot control when its residents decide to file a complaint and, in light of the record evidence demonstrating that there was a preexisting noise problem on Plaintiff's property, the complaint is unsurprising. Moreover, the fact that Plaintiff *believes* the Town shored up its criminal charge against him is of little, if any, materiality. Finally, because the second charge seemingly "vanished," no documentation or evidence (other than the appearance ticket itself) has been submitted with respect to that charge. In any event, because the charge was never prosecuted, Plaintiff has failed to support his claim that he suffered any harm. Accordingly, the Court finds that Plaintiff has failed to meet his burden in demonstrating an improper motive with respect to this charge.

### 3. Town Assessor Gleason

Plaintiff claims that Town Assessor Howard Gleason (also not a party) threatened to raise his property taxes for engaging in political activities when Mr. Gleason hand delivered a letter to Plaintiff before a public meeting. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason]; Dkt. No. 67, ¶ 29 [Pl.'s Decl.].) The only evidence submitted with respect to this claim is not the original letter from Mr. Gleason to Plaintiff but letter correspondence from Plaintiff to Mr. Gleason. (Dkt. No. 69, Attach. 18, at 3 [Letter from Pl. to Gleason].) Plaintiff's letter to Mr. Gleason, dated October 5, 2010, states that Plaintiff interpreted Mr. Gleason's attempt to speak with him about tax filings before a town hall meeting as threatening in nature due to the "timing and manner of the interaction." (*Id.*) This is because Plaintiff "had announced [his] intention to call for a referendum frequently and in many forums prior to appearing for the meeting." (*Id.*) Furthermore, Plaintiff requested that, in order to "avoid the impression that you coordinate your tax-related activities with other people in government in order to intimidate free speech, please do not present important information to me in such an information [sic] and unverifiable way." (*Id.*)

However, Mr. Gleason's response to Plaintiff's letter suggests that their interaction was not meant as a threat to raise Plaintiff's taxes or "was in any way politically motivated." (Dkt. No. 69, Attach. 18, at 4 [Letter from Pl. to Gleason].) More specifically, Mr. Gleason explains that he needed to re-assess Plaintiff's property in light of the fact that Plaintiff was now running a kennel (business) on his property and decided to hand deliver his letter knowing that Plaintiff would be present for the town hall meeting. (*Id.*) Moreover, Mr. Gleason reassured Plaintiff that politics do not dictate how he performs his job and promised that all future communication will be transmitted through mail rather than in-person. (*Id.*)

Plaintiff has failed to submit any additional evidence with respect to his tax assessment, that his taxes were improperly raised or that Mr. Gleason acted with a retaliatory animus. [5] Similarly, no evidence has been submitted to substantiate Plaintiff's claim that Bertram encouraged Mr. Gleason to use his authority as Town Assessor to intimidate Plaintiff. In sum, Plaintiff has wholly failed to satisfy his burden demonstrating that he suffered harm as a result of any action taken by Mr. Gleason and that Mr. Gleason acted with an improper motive.

**\*10** For all of these reasons, the Court finds that Plaintiff has failed to create a genuine dispute of material fact with respect to his First Amendment claim. Because the Court has reached this conclusion, it need not, and does not, consider the merits of Defendant Bertram's alternative qualified immunity argument.

**ACCORDINGLY**, it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 59) is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendants and close this case.

**All Citations**

Not Reported in Fed. Supp., 2016 WL 865296

## Footnotes

1  Although Plaintiff is currently proceeding *pro se*, the Court notes that he had counsel when preparing his response to Defendant's motion for summary judgment. Accordingly, no need exists to construe Plaintiff's response with the special solicitude ordinarily afforded to *pro se* litigants.

2  The Court notes that, while it did not previously (i.e., in its prior decisions) liberally construe Plaintiff's retaliation claim as arising under three separate theories, it does so now. The Court further notes that it has the power to address these two additional theories for each of two alternative reasons: (1) because Defendants moved for dismissal of Plaintiff's retaliation claim in its entirety, Plaintiff has had sufficient notice and an opportunity to be heard with respect to the two theories in question; and (2) in any event, even if Plaintiff cannot be said to have had such notice and an opportunity to be heard, he filed his Complaint *pro se* and the Court finds the two theories to be so lacking in arguable merit as to be frivolous, *see Fitzgerald v. First E. Seventh St. Tenants Corp.*, 221 F.3d 362, 363 (2d Cir. 2000) (recognizing that district court has power to *sua sponte* dismiss *pro se* complaint based on frivolousness notwithstanding fact that plaintiff has paid statutory filing fee).

3  As discussed above, Plaintiff was actually given three noise violations. However, because his permit was revoked on the same day that he received the third violation, the Court will disregard the third violation for purposes of this analysis.

4  The Court notes that Plaintiff spends considerable time in his opposition papers disputing the sufficiency of the evidence and procedures that were followed that led to the issuance of noise violations. (*See generally* Dkt. No. 67, ¶¶ 56-95 [Pl.'s Decl.].) However, this Court is not the proper forum for that dispute. Furthermore, to the extent that the New York Supreme Court observed that there appeared "to have been a disproportionate amount of time and money spent on [the noise violation] notice," and that the records did not "reveal a real issue with dog-barking," those observations are not binding upon this Court. (Dkt. No. 67, Attach. 2, at 6.) Setting aside the fact that the observations constitute dicta, Defendants have submitted admissible record evidence demonstrating that Mr. Ennis acted upon complaints made to him by residents of the Town, which Plaintiff has failed to properly dispute.

5  For example, with regard to this lack of additional evidence regarding retaliatory animus, Plaintiff has failed to adduce admissible record evidence establishing that, even assuming Mr. Gleason knew of Plaintiff's intent to engage in protected speech, the so-called "manner of the interaction" by Mr. Gleason (i.e., the hand delivery of the letter) was in fact unusual for Mr. Gleason given the date of the letter and the date of the public meeting. Moreover, Plaintiff has failed to adduce admissible record evidence that the so-called "timing ...

**Pflaum v. Town of Stuyvesant, Columbia Cty., N.Y., Not Reported in Fed. Supp. (2016)**

of the interaction" is significant, given his rather constant exercise of his First Amendment rights during the time in question.

---

**End of Document**                                  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 17517312
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, et al., Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed December 8, 2022

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, Plaintiff, Pro Se, Anderson, IN 46013.

### REPORT-RECOMMENDATION and ORDER

DANIEL J. STEWART, United States Magistrate Judge

 **\*1**  The Clerk has forwarded for review what has been docketed as a civil complaint filed by Plaintiff. Dkt. No. 1, Compl. Plaintiff has not paid the filing fee but has submitted an application to proceed *in forma pauperis* ("IFP"), Dkt. No. 2, which the Court has granted. [1]

### I. SUFFICIENCY OF THE COMPLAINT

#### A. Governing Legal Standard

 28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "(2) ... the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). [2] Thus, even if a plaintiff meets the financial criteria to commence an action *in forma pauperis*, it is the court's responsibility to determine whether the plaintiff may properly maintain the complaint that he filed in this District before the court may permit the plaintiff to proceed with this action *in forma pauperis. See id.*

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint ... is frivolous, malicious, or fails to state a claim upon which relief may be granted; or ... seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A; *see also Carr v. Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (*per curiam*);  *Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both  sections 1915 and 1915A are available to evaluate *pro se* prisoner complaints).

In reviewing a *pro se* complaint, the court has a duty to show liberality toward *pro se* litigants, *see Nance v. Kelly*, 912 F.2d 605, 606 (2d Cir. 1990) (*per curiam*), and should exercise "extreme caution ... in ordering sua sponte dismissal of a pro se complaint *before* the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond."  *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983) (internal citations omitted). Therefore, a court should not dismiss a complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing  *Bell Atl. Corp. v. Twombly*, 550 U.S. at 556).

 **\*2**  Although a court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing  *Bell Atl. Corp. v. Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief."  *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)). Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556

U.S. at 678 (citing 🚩 *Bell Atl. Corp. v. Twombly,* 550 U.S. at 555). Thus, a pleading that only "tenders naked assertions devoid of further factual enhancement" will not suffice. *Id.* (internal quotation marks and alterations omitted).

### B. Analysis of the Complaint

A court's initial review of a complaint under 🚩 § 1915(e) must encompass the applicable standards of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading must contain:

> (1) a short and plain statement of the grounds for the court's jurisdiction ...;
>
> (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and
>
> (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

FED. R. CIV. P. 8(a). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz,* 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting *Powell v. Marine Midland Bank,* 162 F.R.D. 15, 16 (N.D.N.Y. 1995)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **(b) Paragraphs; Separate Statements.** A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). The purpose of Rule 10 is to "provide an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Sandler v. Capanna,* 1992 WL 392597, at *3 (E.D. Pa. Dec. 17, 1992).

A complaint that fails to comply with basic pleading requirements presents too heavy a burden for defendants to craft a defense "and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed. 🚩 *Gonzales v. Wing,* 167 F.R.D. 352, 355 (N.D.N.Y. 1996).

Plaintiff's Complaint clearly does not satisfy these requirements. The nature of the Complaint is unclear. The Complaint recites a wide variety of federal statutes and case law, but a thorough review of the main Complaint and the numerous attachments does not provide clarity as to what federal claim Plaintiff seeks to pursue in this Court. It is unclear what relationship the individuals identified by Plaintiff as Defendants have to Plaintiff and how he alleges they violated his rights.

Given its lack of clarity, the Complaint is clearly subject to dismissal. "[A] court should not dismiss a complaint filed by a *pro se* litigant without granting leave to amend at least once 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.' " *Bruce v. Tompkins Cty. Dep't of Soc. Servs. ex rel. Kephart,* 2015 WL 151029, at *4 (N.D.N.Y. Jan. 7, 2015) (quoting 🚩 *Branum v. Clark,* 927 F.2d 698, 704-05 (2d Cir. 1991)). Accordingly, the Court recommends that the Complaint be dismissed, but that Plaintiff be afforded an opportunity to amend.

**\*3** The Court advises Plaintiff that should he be permitted to amend his Complaint, any amended pleading she submits must comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Any such amended complaint, **which shall supersede and replace in its entirety the previous Complaint filed by Plaintiff**, must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. Thus, if Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he should include a corresponding number of paragraphs in his amended complaint for each such allegation, with each paragraph specifying (i) the alleged act of misconduct; (ii) the date, including the year, on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the

nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

Plaintiff is further cautioned that no portion of his prior Complaint shall be incorporated into his amended complaint by reference. Any amended complaint submitted by Plaintiff must set forth all of the claims he intends to assert against the defendants and must demonstrate that a case or controversy exists between the Plaintiff and the defendants which Plaintiff has a legal right to pursue and over which this Court has jurisdiction. If Plaintiff is alleging that the named defendant violated a law, he should specifically refer to such law.

## II. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Plaintiff's Complaint be **DISMISSED with leave to amend**; and it is

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) [3] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

**All Citations**

Slip Copy, 2022 WL 17517312

## Footnotes

1    Plaintiff has also moved for leave to file electronically. Dkt. No. 3. Given the recommended disposition of this case, that Motion is denied with leave to renew if Plaintiff files a complaint that survives review under section 1915.

2    To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).

3    If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

2023 WL 3170384
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Manetirony CLERVRAIN, Plaintiff,

v.

Jonathan ROBBINS, Jean-Max Bellerive,
Josue Pierre-Louis, Garry Conille, Jean-Claude
Theogene, Barthelemy Anteno, Kwasi Amoako-
Attah, and Victor (Ito) Bisono Haza, Defendants.

1:22-CV-1248 (MAD/DJS)
|
Signed May 1, 2023

**Attorneys and Law Firms**

MANETIRONY CLERVRAIN, 4326 South Scatterfield
Road, Suite 153, Anderson, Indiana 46013, Plaintiff, Pro Se.

**ORDER**

Mae A. D'Agostino, United States District Judge:

**\*1** On November 22, 2022, *pro se* Plaintiff Manetirony
Clervrain ("Plaintiff") filed a complaint against Defendants
consisting of 70 pages of forms and documents, *see* Dkt. No.
1, "recit[ing] a wide variety of federal statutes and case law,"
Dkt. No. 7 at 5, and around two hundred pages of attachments.
*See* Dkt. Nos. 1-1, 1-5, 1-6. On the same day, Plaintiff moved
for leave to proceed *in forma pauperis* ("IFP"), *see* Dkt. No.
2, and to obtain an ECF login and password. *See* Dkt. No. 3.

On December 8, 2022, Magistrate Judge Daniel J. Stewart
granted Plaintiff's motion to proceed IFP. *See* Dkt.
No. 6. Additionally, Magistrate Judge Stewart issued a
Report-Recommendation and Order recommending that the
complaint be dismissed with leave to amend. *See* Dkt.
No. 7. Plaintiff has not filed an objection to the Report-
Recommendation and Order.

When a party declines to file objections to a magistrate judge's
report-recommendation or files "[g]eneral or conclusory
objections or objections which merely recite the same
arguments [presented] to the magistrate judge," the district
court reviews those recommendations for clear error. *O'Diah
v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, \*1 (N.D.N.Y.
Mar. 16, 2011) (citations and footnote omitted); *see also*

*McAllan v. Von Essen*, 517 F. Supp. 2d 672, 679 (S.D.N.Y.
2007). After the appropriate review, "the court may accept,
reject, or modify, in whole or in part, the findings or
recommendations made by the magistrate judge." 28
U.S.C. § 636(b)(1).

"[I]n a *pro se* case, the court must view the submissions
by a more lenient standard than that accorded to 'formal
pleadings drafted by lawyers.' " *Govan v. Campbell*, 289
F. Supp. 2d 289, 295 (N.D.N.Y. 2007) (quoting *Haines v.
Kerner*, 404 U.S. 519, 520 (1972)) (other citations omitted).
The Second Circuit has held that the court is obligated to
" 'make reasonable allowances to protect *pro se* litigants' "
from inadvertently forfeiting legal rights merely because they
lack a legal education. *Govan*, 289 F. Supp. 2d at 295
(quoting *Taguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)).

Having reviewed the December 8, 2022 Report-
Recommendation and Order, Plaintiff's complaint and the
applicable law, the Court finds that Magistrate Judge Stewart
correctly determined that the complaint should be dismissed.
The complaint is largely incomprehensible and suffers from
several deficiencies. Rule 8(a) of the Federal Rules of Civil
Procedure provides that a pleading must contain "a short
and plain statement of the claim showing that the pleader is
entitled to relief." Fed. R. Civ. P. 8(a)(2). Plaintiff's complaint
is neither short nor plain. *See* Dkt. No. 1. As currently
drafted, and even with the leniency given to a *pro se* litigant's
pleadings, Plaintiff failed to meet pleading standards such
that the Court is unable to meaningfully analyze whether
Plaintiff can allege any colorable claim against Defendants.
*See Canning v. Hofmann*, No. 1:15-CV-0493, 2015 WL
6690170, \*5 (N.D.N.Y. Nov. 2, 2015) ("[H]aving found
that none of the allegations in Plaintiff's meandering and
indecipherable Complaint raise a cognizable cause of action,
the Court concludes that the Complaint fails to state a claim
upon which relief may be granted and is subject to dismissal")

(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

**\*2** Finally, the Court agrees with Magistrate Judge Stewart
that Plaintiff should be granted an opportunity to amend out
of deference to Plaintiff's *pro se* status. *See Nielsen
v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (" 'Generally,
leave to amend should be freely given, and a *pro se*
litigant in particular should be afforded every reasonable
opportunity to demonstrate that he has a valid claim' ")

(quotation omitted). Should Plaintiff choose to amend the complaint, the Court urges Plaintiff to review Magistrate Judge Stewart's suggestions in the Report-Recommendation and Order thoroughly. *See* Dkt. No. 7 at 4-6.

Accordingly, the Court hereby

**ORDERS** that the Report-Recommendation and Order (Dkt. No. 7) is **ADOPTED in its entirety**; and the Court further

**ORDERS** that Plaintiff's complaint (Dkt. No. 1) is **DISMISSED with leave to amend**; and the Court further

**ORDERS** that Plaintiff shall file his amended complaint within **thirty (30) days** of the date of this Order; and the Court further

**ORDERS** that, if Plaintiff fails to file an amended complaint within thirty (30) days of the date of this Order, the Clerk of the Court shall enter judgment in Defendants' favor and close this case without further order from this Court; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

**All Citations**

Slip Copy, 2023 WL 3170384

---

End of Document

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

**WESTLAW**   © 2023 Thomson Reuters. No claim to original U.S. Government Works.   2

KeyCite Yellow Flag - Negative Treatment
Opinion Supplemented by  Garcia v. Hebert,  D.Conn.,  March 28, 2014

2013 WL 1294412
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Fortunato GARCIA, Plaintiff,

v.

Robert HEBERT et al., Defendants.

No. 3:08CV95 (DFM).
|
March 28, 2013.

**Attorneys and Law Firms**

Gabriel North Seymour,  Gabriel North Seymour,  Falls Village, CT,  Whitney North Seymour, Jr., New York, NY, for Plaintiff.

Edward R. Giacci,  Shelton, CT,  Maite Barainca,  Nicole Demers,  Thomas J. Davis, Jr., Attorney General's Office, Hartford, CT, for Defendants.

*RULING ON MOTIONS FOR SUMMARY JUDGMENT*

DONNA F. MARTINEZ,  United States Magistrate Judge.

 **\*1**   Plaintiff Fortunato Garcia brings this action against police officers and courthouse employees alleging misconduct in connection with his arrest and prosecution on state criminal charges. Pending before the court are plaintiff's Motion in Limine (doc. # 225), defendants' Motions for Summary Judgment (docs. # 217, # 218 and # 220) and plaintiff's Cross–Motions for Summary Judgment (docs. # 227, # 230 and # 233). For the reasons that follow, plaintiff's Motion in Limine is denied, the defendants' Motions for Summary Judgment are granted and plaintiff's Cross–Motions are denied.

**I.** *Procedural History*

Plaintiff commenced this action in January 2008. (Doc. # 1.) His Second Amended Complaint alleges deprivations of his rights under the Fourth, Fifth, Sixth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983; false arrest, malicious prosecution, abuse of process under § 1983

and state law; and defamation and intentional infliction of emotional distress under state law. (Doc. # 137.) The case has been partially resolved by way of rulings. In June 2008, the court granted default judgment against defendant Robert Hebert. (Doc. # 39.) In March 2009, the court dismissed defendant Assistant State's Attorneys Magdalena Campos and Andrew Wittstein and dismissed the official capacity claims against defendant Lisa Killiany. (Docs.# 94, # 99.) In April 2009, the court denied plaintiff's motion for summary judgment against those defendants as moot. (Doc. # 100.) In December 2009, the Second Circuit affirmed the rulings of dismissal on interlocutory appeal. (Doc. # 127.) In December 2011, the court declined to vacate its ruling of dismissal as to the official capacity claims against Killiany, and it dismissed the official capacity claims against defendant Jane Serafini. (Docs.# 192, # 193, # 202.) In April and May 2012, the parties filed the pending cross-motions for summary judgment, with separate statements of facts from each party pertaining to each of the six motions. [1] In September 2012, they consented to the authority of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. (Doc. # 276.)

**II.** *Jurisdiction*

Plaintiff brings both federal and state claims. The court has original jurisdiction over the federal claims under 28 U.S.C. § 1331. Because the state-law claims "derive from a common nucleus of operative fact," *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), and "the values of judicial economy, convenience, fairness, and comity" militate in favor of supplemental jurisdiction, *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988), the court exercises supplemental jurisdiction under 28 U.S.C. § 1367(a). [2]

**III.** *Undisputed Facts*

The following facts are undisputed. On November 23, 2006, a Thanksgiving holiday, defendant Robert Hebert went shopping at a Kmart in Torrington with defendant Lisa Killiany. The two were married at the time, and Hebert recently had begun working as a police officer in the Town of Winchester. (Hebert Dep. at 7; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 2; Killiany's 56(a)(2), doc. # 259 at ¶ 2.) A store surveillance video from that day shows that Hebert reached the cash register at 12:49 p.m. He handed his wallet to Killiany, who removed cash, handed it back and walked away. Hebert placed

his wallet on a side counter and proceeded to unload the shopping cart. After the cashier had scanned all his purchases, Hebert paid with a credit card and walked away without retrieving his wallet. (Kmart Video, doc. # 223 at 12:49–51.) Plaintiff Fortunato Garcia was the next customer in line. (Garcia Dep., doc. # 222–11 at 105.) Plaintiff placed his wallet on the main counter in front of him. Then he took Hebert's wallet from the side counter, placed it on top of his own wallet and covered it with his hand, concealing it from the cashier. (Kmart Video, doc. # 223 at 12:52.) Plaintiff handed cash to the cashier and, when she turned to the cash register, he put both wallets in his jacket pocket. Simultaneously, Hebert appeared at the end of the checkout line, looking all around. (Kmart Video at 12:52.) Hebert panicked because his wallet contained money, credit cards and his police badge. He said to Killiany: "I don't know what I'm going to do." (Hebert Dep. at 12; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 3; Killiany's 56(a)(2) at ¶ 3.) Plaintiff received change from the cashier and walked away with his receipt and purchases. (Kmart Video, doc. # 223 at 12:53.) As plaintiff walked toward the exit, Hebert and Killiany stopped him and asked in in English, "Did you see a wallet on the counter?" Plaintiff said "No" and walked out of the store. (Hebert Dep. at 12; Killiany Dep. at 10–11; Garcia Dep. at 105–106.)

**\*2** Defendant Hebert had only been employed as a police officer for a short while and was anxious that his employer would "bust his stones" for losing his badge. (Hebert Dep. at 13; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 3; Killiany's 56(a)(2) at ¶ 3.) He could have been written up. (Hebert Dep. at 29–32.) He notified the Winchester Police Department, which logged the incident as "Officer lost wallet." (Hebert Dep. at 13; Activity Log, doc. # 233–11.) Hebert then reported the incident to the Torrington Police Department. The duty officer was defendant Officer John Guerrera, who was in his seventh year as a police officer with the Torrington Police Department. (Guerrera Dep. at 6; Pl. 56(a)(1), doc. # 233–1 at ¶ 1.) Officer Guerrera met Hebert at Kmart, where they viewed a surveillance video of the incident. ((Pl.'s 56(a)(1), doc. # 233–1 at ¶¶ 2–3; Guerrera's 56(a)(2), doc. # 254 at ¶¶ 2–3; Killiany's 56(a)(1), doc. # 219 at ¶¶ 7–8, Pl.'s 56(a)(2), doc. # 229 at ¶¶ 7–8.) Officer Guerrera took the video to the Torrington Police Department, where it was viewed by another police officer. (Pl.'s 56(a)(1), doc. # 230–1 at ¶ 4; Killiany's 56(a)(1) at ¶ 13.) That officer thought he recognized the man who took the wallet as someone named Weston, and he went out in a patrol car to look for him. (Pl.'s 56(a)(1), doc. # 233–1 at ¶¶ 3–4; Guerrera's 56(a)(2), doc. # 254 at ¶¶ 3–4.)

Later that afternoon, plaintiff and a relative brought Hebert's wallet to the Torrington Police Department. Defendants Killiany and Hebert were there. On seeing plaintiff, Killiany said "Remember me, motherf——er?" (Killiany Dep. at 33; Pl.'s 56(a)(1), docs. # 233–1 at ¶ 5, # 230–1 at ¶ 5.) She was angry and frustrated because she and Hebert had missed their Thanksgiving dinner while looking for Hebert's wallet. (Killiany Dep. at 132; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 21.) Defendant Officer Guerrera knew that Killiany worked at the Superior Court in Bantam because he occasionally delivered paperwork to her office. (Pl.'s 56(a)(1), doc. # 233–1 at ¶ 6, Guerrera's 56(a)(2) at ¶ 6.)

Plaintiff was wearing the same brown jacket he had worn at Kmart, with the same maroon cap in his pocket. He stated that he did not speak English. Another policeman spoke with him in Spanish. (Incident Report, doc. # 222–5 at 2; Guerrera Dep. at 20–21, 26, 36.) Officer Guerrera was not aware that plaintiff had made any attempts to return the wallet prior to arriving at the police station.[3] (Pl.'s 56(a)(1), doc. # 233–1 at ¶ 8; Guerrera's 56(a)(2) at ¶ 8.)

Defendant Officer Guerrera arrested plaintiff on a charge of larceny in the 6th degree. (Guerrera's 56(a)(1), doc. # 222 at ¶ 19; Pl.'s 56(a)(1), doc. # 233–1 at ¶ 15.) Other officers processed the arrest (Guida Dep. at 62–65; Pl.'s 56(a)(1), doc. # 233–1 at ¶ 11) and seized a Kmart receipt from plaintiff's wallet. (Seizure Inventory, doc. # 222–3.) Hebert signed a victim statement positively identifying plaintiff as the man that was in line behind them at Kmart and stating: "I wish to press charges against this male for the theft of my wallet." Killiany signed the statement as a witness. (Doc. # 222–6.) Guerrera worked an extra half-hour after the end of his shift to complete the investigative paperwork. (Guerrera Dep. at 54; Pl.'s 56(a)(1) doc. # 233–1 at ¶ 16.) Police returned the wallet to Hebert, and he found nothing missing. (Pl.'s 56(a)(1), doc. # 230–1 at ¶ 9; Killiany's 56(a)(2) at ¶ 9.)

**\*3** In a letter to the Torrington police chief dated November 30, 2006, defendant Killiany commended the police officers for their efforts. Her letter states: "I heard several times from your officers that they wanted to 'help one of their own.' " (Doc. # 233–4.)

On December 4, 2006, plaintiff went to the Bantam courthouse for his first court date on the larceny charge. Defendant Killiany worked at the Bantam courthouse in the Family Services Unit. (Killiany Dep. at 5–7; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 1; Killiany's 56(a)(2), doc. # 259 at

¶ 1.) When she saw plaintiff, she pointed him out to her friend, Assistant State's Attorney Magdalena Campos. (Pl.'s 56(a)(1), doc. # 230–1 at ¶ 18; Killiany's 56(a)(2) at ¶ 18.) Attorney Campos conversed with plaintiff in the vestibule of the prosecutor's office.[4] (Campos Dep. at 91–97, 150–53.) After the conversation, plaintiff left the courthouse. (Serafini's 56(a)(1), doc. # 217–1 at ¶ 5; Pl.'s 56(a)(2), doc. # 226 at ¶ 5.) As plaintiff was leaving the courthouse, Killiany told him, "I wish you would say you were sorry. I missed my Thanksgiving." Plaintiff's sister informed Killiany they had tried to return the wallet to defendant Hebert's prior residence. (Killiany Dep. at 69–70, 121; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 17.)

After plaintiff left the building, State's Attorney Campos called his case in court. She requested a continuance date, and Superior Court Judge Richard M. Marano granted it. (Tr. 12/4/06, doc. # 28 at 3–4.) Defendant Jane Serafini, who was acting as courtroom clerk that day, marked the court file "NG" to indicate a plea of not guilty, checked the box for jury election and wrote "1–5" as the continuance date. (Court File, doc. # 150 at 6; Serafini's 56(a)(1) at ¶ 7; Pl.'s 56(a)(2), doc. # 226 at ¶ 7.)

Serafini had been working as an administrative assistant for the Superior Court at Bantam for fourteen years. (Serafini Dep. at 6–8; Pl.'s 56(a)(1), doc. # 227–1 at ¶¶ 3–4.) She has no formal legal education. (Serafini Aff., # 217–4 at ¶ 2; Serafini's 56(a)(1), doc. # 217–1 at ¶ 3; Pl.'s 56(a)(2), doc. # 226 at ¶ 3.) Her work required her to attend court proceedings and make notations in the court file of procedural developments. (Serafini Dep. at 6–8; Pl.'s 56(a)(1), doc. # 227–1 at ¶¶ 3–4.) Serafini did not witness plaintiff's conversation with Assistant State's Attorney Campos. (Serafini's 56(a)(1), doc. # 217–1 at ¶ 5; Pl.'s 56(a)(2), doc. # 226 at ¶ 5.) When she entered notations in plaintiff's case file on December 4, 2006, Serafini assumed that Attorney Campos had informed him of the continuance date. It was common practice at the Bantam courthouse for the state's attorney to meet with a criminal defendant on the first appearance date and give him a continuance date, after which the state's attorney would announce the continuance date in court in the defendant's absence. This practice occurred multiple times per week. (Serafini Dep. at 119–29; Wittstein Dep. at 57; Serafini's 56(a)(1) at ¶¶ 12–13; Pl.'s 56(a)(2), doc. # 226 at ¶¶ 12–13.)

**\*4** On January 5, 2007, defendant Serafini again was acting as courtroom clerk when plaintiff's case was called by

Superior Court Judge Charles D. Gill. Plaintiff did not appear, and the judge ordered his rearrest on a charge of failure to appear. Supervising State's Attorney Andrew Wittstein recommended a "substantial bond," and the judge set a $5000 cash or surety bond.[5] (Tr. 1/5/07, doc. # 28 at 7–8.) On January 29, 2007, the order of rearrest and bond was noted in the police blotter of a local newspaper, the Torrington Register–Citizen. (Doc. # 231–8.)

On January 10, 2007, defendant Serafini generated an arrest warrant application on the failure to appear charge. The application included a form affidavit stating that "the accused" was "directed to appear" and "failed to appear ... when legally called according to terms of his/her bail bond promise to appear" and that the court "ordered that a warrant be issued for the arrest of the accused for failure to appear and set the following conditions for release." Serafini filled in plaintiff's case data including the charge of larceny in the 6th degree, the date on which he failed to appear (January 5, 2007), the $5000 cash or surety bond and the new charge of Failure to Appear in the 2nd degree. She then dated and signed the affidavit. (Arrest Warrant, doc. # 150 at 9.) In a typical week, Serafini signs ten such affidavits after confirming the data in the case file, after which a state's attorney signs the warrant application and submits it to a judge. (Serafini's 56(a)(1) at ¶ 20; Pl.'s 56(a)(2), doc. # 226 at ¶ 20.) On January 11, 2007, a state's attorney signed the application portion of the document, and Judge Marano signed the warrant. (Doc. # 150 at 9.) Plaintiff was arrested and charged with failure to appear in the 2nd degree. (Serafini's 56(a)(1) at ¶ 22; Pl.'s 56(a)(2), doc. # 226 at ¶ 22.)

On March 1, 2007, at a hearing before Judge Marano at which defendant Serafini was acting as courtroom clerk, plaintiff argued through counsel that he had not been arraigned properly. At the judge's request, Serafini read her notations from the court file. State's Attorney Wittstein then explained that plaintiff had not physically appeared before a judge on December 4, 2006 but instead had spoken to Attorney Campos, who gave plaintiff a continuance date. Judge Marano asked Serafini to read the charges, took plaintiff's not-guilty pleas and jury election and set a continuance date. (Tr. 3/1/07 at 9–10, 13.)

On April 17, 2007, at his next appearance before Judge Marano, plaintiff moved to dismiss the failure to appear charge, arguing that on December 4, 2006 he had neither appeared before a judge nor received notice of the January 5th continuance date. (Tr. 4/17/07, doc. # 88–6 at 43–44.)

The State objected that Attorney Campos had orally conveyed the continuance date to plaintiff on December 4th, after which the court "entered a not guilty plea automatically as it does for statistical purposes." (*Id.* at 45–46.) Judge Marano indicated that he understood the parties' positions. (*Id.* at 48–50.) On May 8, 2007, in a written ruling, Judge Marano found probable cause to sustain the failure to appear charge and denied plaintiff's motion to dismiss. (Doc. # 88–12 at 22–25.) On May 24, 2007, Judge Marano denied plaintiff's motion for reconsideration. (Doc. # 88–12 at 32–33, 41.)

**\*5** On September 25, 2007, the State entered a *nolle prosequi,* explaining that difficulties with witnesses made it unwise to proceed with the prosecution. On plaintiff's motion, the charges were dismissed. (Tr. 9/25/07, doc. 88–6 at 62.)

During the pendency of the criminal case, defendants Killiany and Officer Guerrera had contact with the prosecuting attorneys. Defendant Killiany spoke to Assistant State's Attorney Campos four times about the case. (Killiany Dep. at 61; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 21; Killiany's 56(a)(2) at ¶ 21.) She spoke to Supervisory Assistant State's Attorney Wittstein about the case three times. The first time was during a court recess [6] when she described the Thanksgiving Day incident to him. The second time he informed her that plaintiff had been rearrested, and the third time he informed her that the case would be dismissed. Attorney Wittstein made notes on the prosecutor's file including "Do *Not* Nolle," and "speaks English." He also wrote "Victim Pissed" in reference to Killiany. He assumed that she was speaking both for herself and for Hebert and thought of her as the "combined victim." (Prosecutor's File, doc. # 230–9; Wittstein Dep. at 28–41; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 21; Killiany's 56(a) (2) at ¶ 21 .) The prosecutor's file also contained an undated, typed victim's letter with Hebert's name listed at the bottom. (Doc. # 230–5.) Killiany "contributed" to this letter. Hebert did not write the letter. (Killiany Dep. at 118–20; Hebert Dep. at 47–48, 86–90; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 24; Killiany's 56(a)(2) at ¶ 24.) The letter included the following statement: "Given [plaintiff's] skillful and swift actions, I am certain this is not the first time this man has stolen from someone. What was also concerning was that the arresting police officer stated that Mr. Garcia is employed as a CNA. It is frightening to think that a thief could be working [with] elderly and sick people who are easy targets for being victimized." (Doc. # 230–5.)

At some point while the criminal case was pending, Attorney Wittstein asked defendant Officer Guerrera to contact plaintiff's employer to ask whether plaintiff understood and spoke English. The employer responded that plaintiff needed to speak and understand English for his job. Guerrera verbally informed Attorney Wittstein, who asked him not to generate a supplemental written report. (Guerrera Letter, doc. # 222–7; Guerrera Dep. at 85–86; Pl.'s 56(a)(1), doc. # 233–1 at ¶ 35.)

During the period in which she took clerical actions in plaintiff's criminal case, defendant Serafini did not speak to anyone about the larceny charge or the underlying incident. (Serafini Dep. at 33–34; Serafini Aff., doc. # 217–4 at 3–4; Serafini's 56(a)(1) at ¶ 24; Pl.'s 56(a)(2), doc. # 226 at ¶ 24.)

## IV. *Standard of Review*

A party is entitled to summary judgment if the record, including pleadings, depositions, answers to interrogatories, admissions and affidavits, establishes that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56. The moving party has the initial burden of showing an absence of evidence to support an essential element of the opposing party's claim. *See* Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). To overcome this showing, the party opposing summary judgment "bears the burden of going beyond the pleadings, and 'designating specific facts showing that there is a genuine issue for trial.' " *Amnesty Am. v. Town of W. Hartford,* 288 F.3d 467, 470 (2d Cir.2002) (quoting Celotex, 477 U.S. at 324). The court must view the evidence in the record in the light most favorable to the nonmoving party, drawing all reasonable inferences in that party's favor. *See* Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir.2000). On cross motions for summary judgment, the same standard applies. Morales v. Quintel Entertainment, Inc., 249 F.3d 115, 121 (2d Cir.2001). Each party's motion is examined on its own merits, and the court need not enter judgment for either party. *Id.;* Marcoux v. American Airlines, Inc., 645 F.Supp.2d 68 (E.D.N.Y.2008).

**\*6** "On a summary judgment motion, the district court properly considers only evidence that would be admissible at trial." Nora Beverages v. Perrier Group of Am., 164 F.3d 736, 746 (2d Cir.1998).

## V. *Plaintiff's Motion in Limine (doc. # 225)*

As a preliminary matter, plaintiff seeks to exclude from consideration the Kmart surveillance video offered by

defendants Officer Guerrera and Killiany. (Docs.# 93, # 223.) He argues that it is inadmissible on two grounds.

Plaintiff's first ground for exclusion is authenticity. He argues that the video cannot be properly authenticated because it is a duplicate copy. Rule 1002 of the Federal Rules of Evidence provides that "[a]n original writing, recording, or photograph is required in order to prove its content unless these rules or a federal statute provides otherwise." However, Rule 1003 provides that "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate." At his deposition, plaintiff admitted that the video shows him taking defendant Hebert's wallet. (Garcia Dep. at 96–105.) The police evidence custodian affirmed that the exhibit is an authentic copy of that video. (Murphy Aff., doc. # 251–1 at ¶¶ 18–19.) In view of this evidence, there is no genuine question as to authenticity.

Plaintiff's second ground for exclusion of the video is based on a series of suppositions. When defendants showed the video to plaintiff at his deposition, he admitted that it shows him taking defendant Hebert's wallet. He agreed that he saw a video of these events on a prior occasion but thought it had been shot from a different angle. (Garcia Dep., doc. # 222–11 at 96–102.) From that testimony, plaintiff speculates that there must have been two videos, one shot from the other angle (which he labels the "original" video) and the one defendants offer into evidence (which he labels the "substitute" video). Plaintiff next seizes on a notation in the evidence log stating "Destroy per Kmart." (Doc. # 225–6 at 3.) Although other pages in the evidence file clarify that the video was not among the items destroyed (docs.# 225–9, # 251–3), plaintiff advances an argument that defendants destroyed the alleged "original" video because the so-called "substitute" was more favorable to their case. (Pl.'s Mem., doc. # 225–1 at 4–5.)

The court is not persuaded that defendants have concealed, destroyed or substituted video evidence. The affidavit of the police evidence custodian affirms that he destroyed other evidence but not the surveillance video. [7] (Murphy Aff., doc. # 251–1 at ¶¶ 9–12.) The custodian adds: "I made two true and accurate DVD copies of the [original video]tape for Officer Guerrera for use in this case. A second or substitute tape has never existed. The original VHS tape was not destroyed. It remains in my custody." (Id. at ¶¶ 18–19.) In light of the foregoing, the exhibit is admitted for purposes of summary judgment.

VI. *Guerrera Cross Motions (docs.# 220, # 233)*

**\*7** As to defendant Officer John (Giovanni) Guerrera, plaintiff claims false arrest, malicious prosecution and other Fourth Amendment violations under 42 U.S.C. § 1983 (Counts Two and Four) and state law (Counts One and Three). He also brings a state-law claim of intentional infliction of emotional distress (Count Twelve).

### A. *False Arrest and Malicious Prosecution*

To prevail on a § 1983 claim for either false arrest or malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment by establishing the elements of the parallel claim under state law.[8] Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir.2002) (false arrest); Davis v. Rodriguez, 364 F.3d 424, 433–34 (2d Cir.2004) (malicious prosecution). Claims of false arrest and malicious prosecution implicate the Fourth Amendment right to be free from unreasonable seizures. Jocks v. Tavernier, 316 F.3d 128, 134 (2d Cir.2003). Under Connecticut law, a plaintiff claiming false arrest or malicious prosecution has the burden of proving the absence of probable cause. Estrada v. Torres, 646 F.Supp.2d 253, 257 (D.Conn.2009) (citing Bhatia v. Debek, 287 Conn. 397, 410–11, 948 A.2d 1009 (2008) (malicious prosecution); Beinhorn v. Saraceno, 23 Conn.App. 487, 491, 582 A.2d 208 (1990) (false arrest)). The existence of probable cause is an absolute defense to claims of false arrest and malicious prosecution. Ruttkamp v. De Los Reyes, No. 3:10cv392(SRU), 2012 WL 3596064, at \*5 (D.Conn. Aug. 20, 2012) (citing Caldarola v. Calabrese, 298 F.3d 156, 161 (2d Cir.2002)).

Officer Guerrera seeks summary judgment on the ground that he had probable cause to arrest and charge plaintiff with larceny in the 6th degree.[9] "Probable cause to arrest exists when the officers have knowledge of, or reasonably trustworthy information as to, facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed by the person to be arrested." Zellner v. Summerlin, 494 F.3d 344, 368 (2d Cir.2007). In other words, the court must assess "whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." Jaegly v. Couch, 439 F.3d 149, 153 (2d Cir.2006) (citing

*Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)). Because probable cause "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity," it is a lower standard than preponderance of the evidence. *United States v. Juwa,* 508 F.3d 694, 701 (2d Cir.2007) (quoting *Illinois v. Gates,* 462 U.S. 213, 243 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)).

Plaintiff offers several arguments against probable cause. He argues that because one form of larceny, a charge of larceny of mislaid property, requires "fail[ure] to take reasonable measures to restore the property to a person entitled to it," Conn. Gen.Stat. § 53a–119(4), his alleged attempt to return the wallet to Hebert's home address and his eventual delivery of the wallet to the police station insulated him from liability. [10] He also accuses Officer Guerrera of failing to investigate thoroughly, making the arrest without a positive identification, and basing the probable cause determination on "false material" and "omitted information."

**\*8** None of these arguments is availing. When plaintiff arrived at the police station, he had the wallet in his possession, Officer Guerrera recognized his jacket from the surveillance video, and Killiany verbally identified him as the man she had seen earlier. [11] On the video, Officer Guerrera saw plaintiff concealing the wallet from the cashier, and he was aware that plaintiff, regardless of his English proficiency, had declined an opportunity to interact with Hebert as he exited the store with Hebert's wallet. These facts were sufficient for a person of reasonable caution to believe that plaintiff had committed larceny. Once he had probable cause to arrest, Officer Guerrera was not required to investigate whether plaintiff had attempted to return the wallet, nor was he required to believe to a certainty that the charge would be successfully prosecuted despite plaintiff's delivery of the wallet to the police station. As the Second Circuit has instructed, once a police officer has probable cause, he is not "required to explore and eliminate every theoretically plausible claim of innocence" before arresting a suspect. *Panetta v. Crowley,* 460 F.3d 388, 398 (2d Cir.2006) (quoting *Curley v. Village of Suffern,* 268 F.3d 65, 70 (2d Cir.2001)). In fact, he is "neither required nor allowed" to continue investigating, sifting and weighing information. *Id.* (quoting *Krause v. Bennett,* 887 F.2d 362, 372 (2d Cir.1989)). Nor is the officer required to "believe with certainty that the arrestee will be successfully prosecuted."

*Id.* at 396 (quoting *Curley,* 268 F.3d at 70). *See also Southerland v. City of New York,* 681 F.3d 122, 127 (2d Cir.2012) ("[w]hile probable cause requires more than 'mere suspicion,' ... it does not demand 'hard certainties' ") (citations omitted); *cf. Dawkins v. Williams,* 511 F.Supp.2d 248, 276 (N.D.N.Y.2007) (no probable cause to charge where evidence before police investigator included "conspicuous exculpatory statements").

Finally, plaintiff's argument that the probable cause determination was based on "false material" and "omitted information" is inapt. He bases his argument on case law involving issues of false statements or material omitted from arrest warrant affidavits presented to a magistrate. *See, e.g., Golino v. New Haven,* 950 F.2d 864, 870 (2d Cir.1991) (summary judgment properly denied where arrest warrant affidavit contained false statements and omitted information that was critical to finding of probable cause). Here, Officer Guerrera effected a warrantless arrest, so case law regarding the content of a warrant affidavit does not apply.

Because Officer Guerrera had probable cause to arrest and charge him, plaintiff cannot prevail on his claims of false arrest and malicious prosecution under § 1983.

B. *Other § 1983 Fourth Amendment Claims* [12]

Plaintiff next maintains that Officer Guerrera violated his Fourth Amendment rights when he searched his wallet and seized the Kmart receipt after plaintiff was arrested. The claim cannot be levied at Officer Guerrera given plaintiff's concession that his wallet was searched by a different police officer. (Doc. # 237 at 12, 29–30.) Regardless, "it is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson,* 414 U.S. 218, 224 (1973).

**\*9** In addition, plaintiff argues that Officer Guerrera handcuffed him unreasonably. There is no evidence to support the claim that Officer Guerrera handcuffed him. [13] Nonetheless, even assuming that Officer Guerrera did handcuff him and that a jury could find this use of force unreasonable, Officer Guerrera is entitled to qualified immunity. Qualified immunity shields government officials from liability for civil damages unless (1) viewed in the light most favorable to the party asserting the injury, the facts as

alleged amount to a violation of a constitutional or statutory right, and (2) the right was "clearly established" at the time of the alleged misconduct. 🚩 *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). At the time of plaintiff's arrest, " '[n]either the Supreme Court nor the Second Circuit [had] established that a person has a right not to be handcuffed in the course of a particular arrest.' " *Warner v. Gyle,* No. 3:09–CV–199(RNC), 2010 WL 3925211, at *2 (D.Conn. Sept.30, 2010) (quoting 🏴 *Soares v. Connecticut,* 8 F.3d 917, 922 (2d Cir.1993)).

### C. *Intentional Infliction of Emotional Distress*

Plaintiff also claims intentional infliction of emotional distress (Count Twelve) in connection with his arrest. To prevail on a claim of intentional infliction of emotional distress in Connecticut, a plaintiff must prove:

> (1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe.

🚩 *Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." 🏴 *Appleton v. Board of Educ. of Town of Stonington,* 254 Conn. 205, 210–11, 757 A.2d 1059 (2000) (citing 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965)). This is initially a question for the court and becomes a factual issue only where reasonable minds disagree. 🏴 *Id.* at 210, 757 A.2d 1059.

As a matter of law, absent other factors that may constitute "extreme and outrageous" conduct, a routine arrest will not be considered intentional infliction of emotional distress if the arresting officer has probable cause to arrest. *Moreno v.*

*City of New Haven Dept. of Police Service,* 604 F.Supp.2d 364, 376 (D.Conn.2009). Here, Officer Guerrera had probable cause to effect the routine arrest, and he is entitled to summary judgment on the intentional infliction claim.

### VII. *Killiany Cross–Motions (docs.# 218, # 230)*

With respect to defendant Lisa Killiany, plaintiff claims false arrest and malicious prosecution in connection with the larceny charge under 🏴 42 U.S.C. § 1983 (Counts Two and Four) and state law (Counts One and Three). He brings the same claims under 🏴 § 1983 (Counts Six and Eight) and state law (Counts Five and Seven) in connection with the failure to appear charge. Finally, he brings state-law claims of defamation (Count Eleven) and intentional infliction of emotional distress (Count Twelve).

### A. *False Arrest and Malicious Prosecution*

**\*10** Although defendant Killiany did not directly arrest or charge plaintiff with larceny and failure to appear, plaintiff alleges that she collaborated with defendant Officer Guerrera, defendant Serafini and State's Attorneys Campos and Wittstein to trump up charges against him as revenge for ruining her Thanksgiving dinner and to shield defendant Hebert from discipline for losing his police badge. [14] "Claims for false arrest or malicious prosecution, brought under 🏴 § 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." [15] 🏴 *Jocks v. Tavernier,* 316 F.3d 128, 134 (2d Cir.2003). Under Connecticut law, a plaintiff claiming false arrest or malicious prosecution has the burden of proving the absence of probable cause. *Estrada v. Torres,* 646 F.Supp.2d 253, 257 (D.Conn.2009) (citing 🏴 *Bhatia v. Debek,* 287 Conn. 397, 410–11, 948 A.2d 1009 (2008) (malicious prosecution); 🏴 *Beinhorn v. Saraceno,* 23 Conn.App. 487, 491, 582 A.2d 208 (1990) (false arrest)). The existence of probable cause is an absolute defense to claims of false arrest and malicious prosecution. *Ruttkamp v. De Los Reyes,* No. 3:10cv392(SRU), 2012 WL 3596064, at *5 (D.Conn. Aug. 20, 2012) (citing ⚠️ *Caldarola v. Calabrese,* 298 F.3d 156, 161 (2d Cir.2002)).

In light of the court's finding *supra* that Officer Guerrera had probable cause to arrest plaintiff, Killiany is entitled to summary judgment on the claims of false arrest and

malicious prosecution regarding the larceny charge. As for the failure to appear charge, that was a secondary development in the criminal case for which no reasonable jury would find Killiany responsible. She was not present when Attorney Campos allegedly gave plaintiff a continuance date or at any of the subsequent court proceedings. There is no evidence that she sought rearrest or encouraged prosecution on the failure to appear charge. She did not discuss plaintiff's case with Serafini, the administrative assistant who prepared the rearrest warrant. In fact, Killiany first learned of the failure to appear charge in a passing conversation with Attorney Wittstein after rearrest already had been ordered. Negative inferences from Killiany's thank-you letter to the Torrington Police Department, friendship with Attorney Campos and communication with the prosecution as a purported victim are not sufficient to establish that she instigated plaintiff's rearrest and prosecution on the charge of failure to appear. For these reasons, she is entitled to summary judgment on the claims of false arrest and malicious prosecution. [16]

### B. Defamation

Killiany is also entitled to summary judgment on plaintiff's claim that she defamed him by calling him "motherf——er" at the police station in Torrington. [17] To establish a *prima facie* case of defamation, a plaintiff must demonstrate that (1) the defendant published a defamatory statement; (2) the defamatory statement identified the plaintiff to a third person; (3) the defamatory statement was published to a third person; and (4) the plaintiff's reputation suffered injury as a result of the statement. *Cweklinsky v. Mobil Chemical Co.,* 267 Conn. 210, 217, 837 A.2d 759 (2004). A communication injures a plaintiff's reputation if it "tends to ... lower him in the estimation of the community or to deter third persons from associating or dealing with him." 3 Restatement (Second), Torts § 559, *quoted in* QSP, Inc. v. Aetna Cas. and Sur. Co., 256 Conn. 343, 356, 773 A.2d 906 (2001). No reasonable jury could find that directing a general expletive at plaintiff in the presence of his relative and several police officers caused an actionable injury to his standing in the community or would deter third persons from associating or dealing with him.

### C. Intentional Infliction of Emotional Distress

**\*11** Plaintiff next claims of intentional infliction of emotional distress (Count Twelve). To prevail on a claim of intentional infliction of emotional distress in Connecticut, a plaintiff must prove:

(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress and (4) that the emotional distress sustained by the plaintiff was severe.

*Petyan v. Ellis,* 200 Conn. 243, 253, 510 A.2d 1337 (1986). "Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Appleton v. Board of Educ. of Town of Stonington,* 254 Conn. 205, 210–11, 757 A.2d 1059 (2000) (citing 1 Restatement (Second), Torts § 46, comment (d), p. 73 (1965)). This is initially a question for the court and becomes a factual issue only where reasonable minds disagree. *Id.* at 210, 757 A.2d 1059.

Plaintiff contends that Killiany exploited her connections as a courthouse employee and wife of a police officer to convince the police, the prosecutors and the courtroom clerk to prosecute him with unusual vigor. He theorizes that she wanted revenge because her Thanksgiving holiday was ruined and her husband was embarrassed in front of his brother officers, citing circumstantial evidence such as Killiany's use of an expletive at the police station, her thank-you note to the Torrington police for treating Hebert as "one of your own," her conversations with prosecutors and her drafting of a letter to the prosecutor over Hebert's name.

Although the circumstances of plaintiff's initial appearance at the Bantam courthouse are disturbing, [18] Killiany's own conduct was not extreme or outrageous. With respect to the expletive, "[c]onduct on the part of the defendant that is merely insulting or displays bad manners or results in hurt feelings is insufficient to form the basis for an action based upon intentional infliction of emotional distress." *Appleton v. Board of Educ. of Town of Stonington,* 254 Conn. 205, 211, 757 A.2d 1059 (2000). As for her

communication with prosecutors, Article 1, § 8 of the Constitution of the State of Connecticut gives a victim of a crime the right to communicate with the prosecution and the right to notification of court proceedings. *See also* Conn. Gen.Stat. § 1–1k ("crime victim" means an individual who suffers direct or threatened physical, emotional or financial harm as a result of a crime). It is apparent by their notations on the case file that Assistant State's Attorneys Campos and Wittstein considered Killiany to be a crime victim. As a result, her communications with the state's attorneys were within the "bounds of decency" as expressed in the state constitution. To the extent that plaintiff might be contending that the state's attorneys gave Killiany a degree of access to which she was not entitled by statute, the responsibility for that decision is theirs. In sum, Killiany is entitled to summary judgment on the claim of intentional infliction of emotional distress.

VIII. *Serafini Cross–Motions (docs.# 217, # 227)*

**\*12** Turning to the allegations against defendant Jane Serafini, plaintiff claims false arrest, malicious prosecution and abuse of process [19] under 42 U.S.C. § 1983 (Counts Six, Eight and Ten) and state law (Counts Five, Seven and Nine) in connection with his arrest and prosecution on the failure to appear charge. He also claims intentional infliction of emotional distress (Count Twelve) under state law.

The relevant undisputed facts are as follows. Although plaintiff was not present when his case was called on his initial court date, courtroom clerk Serafini entered a continuance date, not-guilty plea and jury election in the court file on December 4, 2006. After he failed to appear on the continuance date and the judge ordered his rearrest, Serafini generated an arrest warrant affidavit stating that he had been "directed to appear" on the continuance date. Finally, she read the contents of the court file when so ordered by the judge during a subsequent proceeding. Both the notations in the file and the generation of the affidavit were undertaken pursuant to established courthouse practices. Plaintiff urges the court to infer from Serafini's actions that she deliberately misled the court so as to trump up charges against plaintiff at defendant Killiany's behest.

Serafini maintains that she is entitled to absolute quasi-judicial immunity because her actions were part of the judicial process. Judicial immunity does not attach *per se.* It depends on "the nature of the function performed, not the identity of the actor who performed it." Forrester v. White, 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988). Under

this functional approach,[20] court clerks are immune from suit "for performance of tasks which are judicial in nature and an integral part of the judicial process." Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir.1997). Specifically, quasi-judicial immunity attaches when a court clerk undertakes "discretionary acts that implement judicial decisions or that are performed at the discretion or under the supervision of a judge." Bliven v. Hunt, No. 05–CV–4852 (SJF/LB), 2005 WL 3409620, \*2 (E.D.N.Y. Dec.12, 2005) (citations omitted). Additionally, court clerks are absolutely immune from suit for "functions which are administrative in nature if the task was undertaken pursuant to the explicit direction of a judicial officer or pursuant to the established practice of the court."[21] Humphrey v. Court Clerk for the Second Circuit, No. 5:08–CV–0363, 2008 WL 1945308, at \*2 (N.D.N.Y. May 1, 2008). The Connecticut state courts apply the same "functional approach" to determine whether quasi-judicial immunity attaches to state-law claims. *See* Gross v. Rell ("Gross I"), 585 F.3d 72, 81–82 (2d Cir.2009) (citing Carrubba v. Moskowitz, 274 Conn. 533, 542–43, 877 A.2d 773 (2005)), *question certified to* Gross v. Rell, 304 Conn. 234, 273–281 (2012) (applying *Cleavinger* factors).

Defendant Serafini's actions in this case were an integral part of the judicial process. Her notations in the court file, generation and signing of an affidavit and recitation of the file contents were done either at a judge's direction or pursuant to established practices of the state court at Bantam. *See, e.g.,* McKnight v. Middleton, 699 F.Supp.2d 507, 525–26 (E.D.N.Y.2010) (court clerk immune from claim that he "failed to process" plaintiff's submissions), Humphrey v. Court Clerk for the Second Circuit, No. 5:08–CV–0363, 2008 WL 1945308, at \*2 (N.D.N.Y. May 1, 2008) (court clerk immune from claim that she failed to timely inform plaintiff that his appeal was dismissed and neglected to update him on status of appeal); Pikulin v. Gonzales, No. 07–CV–412, 2007 U.S. Dist. LEXIS 25551, \*6, 2007 WL 1063353 (E.D.N.Y. April 5, 2007) (filing and docketing tasks are integral part of judicial process); Humphrey v. Court Clerk, NDNY, No. 5:05–CV–1159 (NAM), 2005 WL 2490155, \* (N.D.N.Y. Oct.7, 2005) (court clerks immune from claim that they failed to advise plaintiff that e-mail address was not acceptable under local rule for purposes of service and correspondence). The fact that Serafini's actions were subject to review by the judge—and, moreover, were reviewed—is

further indication of their quasi-judicial nature. *See Gross v. Rell ("Gross II"),* 695 F.3d 211, 213–14 (2d Cir.2012) (citing *Cleavinger* factors including "the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct"); *Bimler v. Crouch,* No. 3:04CV1478 (WWE), 2005 WL 1074419, at *3 (D.Conn. May 02, 2005) (support enforcement officer immune from claim that he "misrepresented material facts" when drafting order because family support magistrate reviewed the order).

**\*13** For these reasons, Serafini is entitled to absolute quasi-judicial immunity on all claims.

## IX. *Civil Conspiracy*

Finally, plaintiff claims that Officer Guerrera, Killiany and Serafini are civil conspirators and therefore liable for the tortious acts of the other defendants. Civil conspiracy is not an independent cause of action. Under § 1983, a claim of civil conspiracy requires proof of an underlying violation of a federal right. *Singer v. Fulton County Sheriff,* 63 F.3d 110, 119 (2d Cir.1995) ("the [conspiracy] lawsuit will stand only insofar as the plaintiff can prove the *sine qua non* of a § 1983 action: the violation of a federal right"). Similarly, under Connecticut law, "a claim of civil conspiracy must be joined with an allegation of a substantive tort." *Master–Halco, Inc. v. Scillia, Dowling & Natarelli, LLC,* 739 F.Supp.2d 104, 106–107 (D.Conn.2010) (quoting *Macomber v. Travelers*

*Property & Casualty Corp.,* 277 Conn. 617, 636, 894 A.2d 240 (2006)). Because the defendants are entitled to summary judgment on all underlying substantive claims, the civil conspiracy claims fail as a matter of law. *DeStefano v. Duncanson,* No. 08 CIV. 3419(GBD), 2011 WL 651452, at *4 (S.D.N.Y. Feb.10, 2011) (dismissing § 1983 conspiracy claim); *Presley v. Pepperidge Farm, Inc.,* 356 F.Supp.2d 109, 136–37 (D.Conn.2005) (summary judgment on state conspiracy claim).

## X. *Conclusion*

For the foregoing reasons, plaintiff's Motion in Limine (doc. # 225) is DENIED; defendants' Motions for Summary Judgment (docs.# 217, # 218, # 220) are GRANTED; and plaintiff's Cross–Motions (docs.# 227, # 230, # 233) are DENIED.

This is not a recommended ruling. The parties have consented to the authority of a magistrate judge in all proceedings in this case including the entry of final judgment pursuant to 28 U.S.C. 636(c) and Fed.R.Civ.P. 73. (Doc. # 276.)

SO ORDERED at Hartford, Connecticut this 27th day of March, 2013.

**APPENDIX of Filings by ECF Number**

| **P's Motion in Limine** | | | **# 225** |
| --- | --- | --- | --- |
| **P's Memo** | | | # 225–1 |
| **Ds' Responses** | | | # 251, 261 |
| **P's Reply** | | | # 267 (268) |

| | *Serafini* | *Killiany* | *Guerrera* |
| --- | --- | --- | --- |
| **D's SJ** | **# 217** | **# 218** | **# 220** |
| **D's 56(a)(1)** | # 217–1 | # 219 | # 222 |
| **D's Memo** | # 217–2 | # 219–8 | # 221 |
| **P's 56(a)(2)** | # 226 | # 229 | # 232–1 |
| **P's Cross–SJ** | **# 227** | **# 230** | **# 233** |
| **P's 56(a)(1)** | # 227–1 | # 230–1 | # 233–1 (232) |

| | | | |
|---|---|---|---|
| **P's Memo/Response** | # 236 (239) | # 235 (238) | # 237 (240) |
| **D's Response/Reply** | # 256 | # 258 (260) | # 252 (253) |
| **D's 56(a)(2)** | # 257 | # 259 | # 266 (254) |
| **P's Reply** | # 270 | # 271 | # 269 |

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 1294412

## Footnotes

1      The filings that pertain to the pending motions are voluminous. *See* Appendix of Filings by ECF Number.

2      The court is mindful that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."

     *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720, (1988), *quoted in* *Valencia ex rel. Franco v. Lee,* 316 F.3d 299, 305 (2d Cir.2003). Here, considerations of economy, convenience and fairness militate in favor of supplemental jurisdiction. Discovery is complete, and all issues are ripe for adjudication. The court has decided a motion for default judgment and two motions to dismiss, one of which was relitigated in an interlocutory appeal and motion to vacate. Plaintiff also filed a prior motion for summary judgment, which the court denied as moot. There are no novel questions of state law. *See, e.g.,*

     *Raucci v. Town of Rotterdam,* 902 F.2d 1050, 1055 (2d Cir.1990) (exercising supplemental jurisdiction where discovery was complete; the court had decided three dispositive motions; the case was trial-ready; and the state-law claims involved only settled principles).

3      Plaintiff alleges that after he left Kmart, he attempted to return the wallet at a condominium address listed on Hebert's driver's license. No one answered the door, so plaintiff left a note with his sister's phone number. On his way home, his sister informed him that the resident of the condominium had called to say that he had not lost a wallet. Plaintiff's relative then telephoned the Winchester Police Department and reported that plaintiff had found Hebert's wallet. The duty officer told them to take the wallet to the Torrington Police Department. (Second Am. Compl., doc. # 137 at 4–5.)

4      Campos testified that she gave plaintiff a continuance date of January 5, 2007. (Campos Dep. at 150–53.) Plaintiff disputes that testimony.

5      Sometimes when a defendant missed a court appearance, judges at the Bantam courthouse ordered a warning to be mailed (called a bail notice) in lieu of immediate rearrest. (Campos Dep. at 54–56.) Plaintiff alleges that Attorney Wittstein advocated for rearrest and substantial bond in this case at Killiany's behest.

6      Killiany was often in court because it was her duty to make recommendations to the court during arraignment proceedings on domestic violence charges. (Killiany Dep. at 5–7; Pl.'s 56(a)(1), doc. # 230–1 at ¶ 1.)

7    The full inventory of evidence was two Kmart receipts and one surveillance video. The receipts were destroyed pursuant to a state court order because they were not claimed after six months. (Docs.# 225–6, # 225–9, # 251–3.)

8    The Connecticut Supreme Court has articulated the elements of these claims as follows. To prevail on a claim of false arrest, a plaintiff must prove that "his physical liberty has been restrained by the defendant and that the restraint was against his will, that is, that he did not consent to the restraint or acquiesce in it willingly." *Berry v. Loiseau,* 223 Conn. 786, 820, 614 A.2d 414 (1992). With respect to malicious prosecution, a plaintiff must prove that: "(1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *McHale v. W.B.S. Corp.,* 187 Conn. 444, 447, 446 A.2d 815 (1982).

9    Officer Guerrera urges the court to apply the doctrine of collateral estoppel to bar plaintiff from challenging probable cause, an issue that the state court addressed in the criminal case. Plaintiff responds that collateral estoppel should not apply because he did not receive a full and fair hearing in the Superior Court. (Pl's Mem., doc. # 237 at 35–36.) Because the court finds that Officer Guerrera had probable cause, it need not reach collateral estoppel.

10    "A person commits larceny when, with intent to deprive another of property or to appropriate the same to himself or a third person, he wrongfully takes, obtains or withholds such property from an owner. Larceny includes, but is not limited to: ... (4) Acquiring property lost, mislaid or delivered by mistake. A person who comes into control of property of another that he knows to have been lost, mislaid, or delivered under a mistake as to the nature or amount of the property or the identity of the recipient is guilty of larceny if, with purpose to deprive the owner thereof, he fails to take reasonable measures to restore the property to a person entitled to it." Conn. Gen.Stat. § 53a–119. "A person is guilty of larceny in the sixth degree when he commits larceny as defined in section 53a–119 and the value of the property or service is five hundred dollars or less." Conn. Gen.Stat. § 53a–125b.

11    After Officer Guerrera brought the surveillance video to the police station, another police officer misidentified the man on the video as a transient named "Weston." That officer then went out looking for Weston. (Guida Dep. at 49–60.) Plaintiff appears to argue that he was arrested on the basis of his resemblance to Weston and/or because he is "a dark-skinned Hispanic." (Pl.'s Mem., doc. # 237 at 11–12, 28–29.) The argument is unpersuasive in light of the facts known to Officer Guerrera at the time of plaintiff's arrest.

12    Besides his Fourth Amendment allegations, plaintiff contends that Officer Guerrera violated his "Fifth and Sixth [A]mendment guarantees against self-incrimination and right to counsel." (Pl.'s Mem., doc. # 237 at 18.) Because he supplies no evidence or argument to substantiate the contentions, the court does not address them. Plaintiff also argues that procedural deficiencies in the April 17, 2007 court proceeding deprived him of his right to confront witnesses under the Sixth Amendment. (*Id.* at 37, 446 A.2d 815.) This is a futile argument. The state court, not Officer Guerrera, decided how the criminal case would proceed.

13    Plaintiff testified that "another policeman came, a younger guy. He cuffed me, and took me to the back." (Garcia Dep. at 80.) Officer Guerrera testified that he could not recall who processed the arrest. (Guerrera Dep. at 38–39.) In deposition testimony, a different police officer inferred from the paperwork that he (not Guerrera) had booked plaintiff but could not recall handcuffing him. (Guida Dep. at 62–64.)

14    Plaintiff alleges without further explanation that Killiany was acting under color of state law. Although Killiany was a state employee, "mere employment by the state does not mean that the employee's every act can

properly be characterized as state action." *Patterson v. County of Oneida, N.Y.,* 375 F.3d 206, 230 (2d Cir.2004) (citing *West v. Atkins,* 487 U.S. 42, 49–50, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988) ("generally, a public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law")). Alternatively, a private individual may be deemed a state actor for § 1983 purposes "if he or she willfully collaborated with an official state actor in the deprivation of the federal right." *Dwares v. City of New York,* 985 F.2d 94, 98 (2d Cir.1993); *see also Khulumani v. Barclay Nat. Bank Ltd.,* 504 F.3d 254, 316 (2d Cir.2007) (private actor "must jointly participate in the wrongful conduct, pursuant to a common design or plan"); *Shattuck v. Town of Stratford,* 233 F.Supp.2d 301, 313 (D.Conn.2002) (private actor may be liable for § 1983 false arrest or malicious prosecution if she instigated the arrest or commenced the proceedings). Because the claim fails on other grounds, the court need not linger on this issue.

15    *See* elements of false arrest and malicious prosecution *supra* at n. 8.

16    In Counts Four and Eight, plaintiff appears to allege that Killiany is responsible for the fact that he was not informed on December 4, 2006 of an indigent's Sixth Amendment right to appointed counsel. (Second Am. Compl., doc. # 137 at ¶¶ 19B, 36, 54.) Because he supplies no evidence or argument to substantiate the contentions, the court does not address it.

17    In his brief, plaintiff also claims that he was defamed by the mention of his rearrest in the newspaper's police blotter (doc. # 234–8) and by Killiany's statements in the victim letter in his court file (doc. # 230–5). These claims were not alleged in the complaint (doc. # 137) and cannot be raised for the first time on summary judgment. Regardless, Killiany is not liable for the newspaper's statement because she did not make it. Nor for that matter could any party be liable for publishing the fact of plaintiff's rearrest. *Holmes v. Town of East Lyme,* 866 F.Supp.2d 108, 133 (D.Conn.2012) ("truth is a complete defense to a claim of defamation"). As for Killiany's contributions to the victim letter, those statements are privileged from a claim of defamation because they were made for the purpose of marshaling the state's evidence for a judicial proceeding. *See Rioux v. Barry,* 283 Conn. 338, 343, 927 A.2d 304 (2007) (public policy justifies immunity from defamation suit for "those who provide information in connection with judicial and quasi-judicial proceedings"); *Kelley v. Bonney,* 221 Conn. 549, 572–74, 606 A.2d 693 (1992) (communications made to discrete group for purpose of marshaling evidence for quasi-judicial proceeding were privileged from defamation suit).

18    The Second Circuit affirmed this court's dismissal of plaintiff's claims against the state's attorneys on the basis of absolute prosecutorial immunity but noted that it was "disturbed by the allegations of prosecutorial conduct" and described the practices as "if not unconstitutional, likely illegal and certainly improper." *Garcia v. Hebert,* No. 09–1615–CV, 352 Fed. Appx. 602 (unpublished), 2009 WL 3765549 (2d Cir. Nov.12, 2009).

19    *See* elements of false arrest and malicious prosecution *supra* at n. 8. To prevail on a claim of abuse of process, a plaintiff must prove that the defendant used a legal process against another primarily to accomplish a purpose for which it was not designed. *Mozzochi v. Beck,* 204 Conn. 490, 494, 529 A.2d 171 (1987).

20    Whether quasi-judicial immunity attaches under the functional approach may be determined by the so-called *Cleavinger* factors:

(a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling

unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

🚩*Cleavinger v. Saxner,* 474 U.S. 193, 202, 106 S.Ct. 496, 88 L.Ed.2d 507 (1985), *cited in Gross v. Rell ("Gross II"),* 695 F.3d 211 (2d Cir.2012).

21    By contrast, court officers are not entitled to quasi-judicial immunity when they perform "purely ministerial and administrative" tasks that are non-judicial in nature or when they act outside the scope of her official duties. *Quitoriano v. Raff & Becker, LLP,* 675 F.Supp.2d 444, 450 (S.D.N.Y.2009). *See, e.g.,* 🚩*Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988) (judge not entitled to absolute immunity for decision to demote and fire probation officer); 🚩*Atherton v. D.C. Office of Mayor,* 567 F.3d 672, 683–86 (D.C.Cir.2009) (court officer's dismissal of allegedly disruptive grand juror was administrative, not adjudicative, and not subject to absolute quasi-judicial immunity).

---

**End of Document**                                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.

KeyCite Blue Flag – Appeal Notification

Appeal Filed by    LEFTRIDGE v. JUDICIAL BRANCH,    2nd Cir.,    July
14, 2023

2023 WL 4304792
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Vernon J. LEFTRIDGE, Jr., Plaintiff,

v.

State of Connecticut JUDICIAL
BRANCH et al., Defendants.

No. 3:22-cv-411 (JAM)
|
Signed June 30, 2023

**Attorneys and Law Firms**

Vernon J. Leftridge, Jr., Hagerstown, MD, Pro Se.

Blake Thomas Sullivan, Timothy J. Holzman, State of CT,
Office of the Attorney General, Hartford, CT, for Defendants
Judicial Branch, Joan Andrews, Cassandra Williams, Andrea
Gaines, Steven Samalot, Richard Julius, Carolyn Anderson,
David Gage, Leanne Shaughnessy.

Tanya Feliciano DeMattia, State of CT, Office of the
Attorney General, Hartford, CT, for Defendant Connecticut
Department of Social Services.

Bobbi Lynn Wallace, Office of the Attorney General,
Baltimore, MD, Timothy J. Holzman, State of CT, Office of
the Attorney General, Hartford, CT, for Defendant Alyson
Saunders.

### ORDER GRANTING DEFENDANTS'
### MOTIONS TO DISMISS

Jeffrey Alker Meyer, United States District Judge

**\*1** The plaintiff has filed a complaint *pro se* and *in
forma pauperis* against the Connecticut Department of Social
Services, the Connecticut Judicial Branch, several state court
employees, state prosecutors, and other state employees for
actions relating to the plaintiff's various child support and
child custody cases. For the reasons set forth below, I will
grant the defendants' motions to dismiss.

### BACKGROUND

The complaint spans 97 pages—not including 226 pages of
exhibits—and numbers 361 paragraphs. [1] Here I recite only
those alleged facts that appear relevant to this ruling and I
assume these alleged facts to be true solely for purposes of
this ruling.

Plaintiff Vernon J. Leftridge is a disabled African American
and Native American male. [2] Leftridge has a minor child,
R.L., who resides in Maryland, and an adult child, Juwan
James Leftridge ("Juwan"), who resides in Maine. [3] His
claims in this case revolve around custody and child support
orders entered by the state courts of Connecticut and
Maryland.

In 2005, Norwich Superior Court Judge Cynthia Sweinton
awarded Leftridge primary custody of Juwan. [4] At some
point, David Gage, Chief Clerk of New London and Norwich
Judicial Districts, along with Norwich Superior Court
Deputy Chief Clerks Corinne McCarthy and Cara Parkinson,
modified the court order to remove Leftridge's custody
award and insert a $50 weekly child support requirement. [5]
Leftridge and his attorney were "victims of severe racial
discrimination, harassment, racism and unlawfully kicked
out" of the Norwich Superior Courthouse by Gage and a
Connecticut Assistant Attorney General. [6] The Appellate
Court of Connecticut later vacated and remanded Judge
Sweinton's order on the ground that Leftridge had not been
served with Connecticut's motion to modify the child support
obligation. [7] See *Leftridge v. Wiggins*, 44 A.3d 217, 220–21
(Conn. App. 2012).

Fast forward to 2017, when R.L.'s mother, Niambi Kafi
Heyward, filed a paternity and support petition in Maryland. [8]
Leftridge was not served with Heyward's petition and was
not notified of the subsequent hearing. [9] On the date of the
hearing, in which Connecticut Assistant Attorney General
Andrea Gaines represented the State of Connecticut, Family
Magistrate Judge David A. Dee ordered Heyward to file
an amended petition. [10] The Hartford Interstate Support
Enforcement Supervisor removed the court order from the
website of the State of Connecticut Judicial Branch ("Judicial
Branch"). [11]

In April 2018, Judge Dee entered a default order for retroactive child support without notifying Leftridge or Heyward. [12] During the course of these proceedings, Gaines appeared *ex parte* before Judge Dee and made numerous misrepresentations. [13] In August 2018, Uniform Interstate Family Support Act ("UIFSA") Support Enforcement Supervisor Richard Julius falsely certified that Leftridge has been served with process in the Heyward action. [14]

 **\*2** In January 2019, Leftridge asked Gaines for a copy of documents in the Heyward action, but Gaines refused and "became very hostile towards plaintiff in a racially motivated derogatory t[o]ne of voice." [15] Leftridge then filed a misconduct complaint against Gaines with the Connecticut Statewide Grievance Committee, which he followed up with two additional complaints against Gaines. [16]

On May 9, 2019, Family Magistrate Judge Glady I. Nieves modified Leftridge's child support obligations and arrearage to zero because Leftridge became unable to work due to disability. [17] Nieves ordered Gaines and Connecticut Assistant Attorney General Steven Samalot to produce documents relating to the child support proceedings pertaining to Juwan, but they did not do so. [18] Leftridge subsequently served discovery requests on Heyward, who did not complete them because Gaines told her not to. [19] Leftridge also alleges that Gaines and "unknown defendants she involved" "robbed [him] of his favorable May 9, 2019 court ruling." [20]

In September 2019, Family Court Clerk Cassandra Williams, Family Court Clerk Carolyn Anderson, and Gaines disclosed Leftridge's medical records to Judicial Branch employees. [21] Family Court Clerk Manager Leanne Shaughnessy is Williams's and Anderson's supervisor. [22] Leftridge filed requests for electronic access and for information relating to his court records, but the Judicial Branch and Williams denied them. [23]

At a December 2019 hearing before Family Magistrate Judge Donald Green, Gaines, Anderson, and Williams made numerous misrepresentations, withheld documents, and refused to produce witness statements. [24] Leftridge also alleges that Williams, Anderson, and unknown employees modified court records and that Gaines, Williams, and Anderson attempted to have Leftridge "arrested, prosecuted,

and convicted" for not paying his child support. [25] As a result of the hearing, the Connecticut Department of Social Services ("DSS") reported Leftridge's credit information to credit reporting agencies. [26] The day after the hearing, Judge Green's rulings at the hearing were vacated but Judge Nieves's modification of Leftridge's child support obligation to zero was not restored, which Leftridge alleges was because of "continued lies by [Connecticut Assistant Attorney General] Andrews and Anderson." [27]

In September 2021, Leftridge requested family court records from Child Support Specialist Alyson Saunders, an employee of the Maryland Department of Human Services, who denied his requests. [28] In October 2021, Leftridge attended an appeals hearing before Judge Klau and alleges that Andrews once again made misrepresentations to the court. [29] Later that month, Williams denied Leftridge's request for copies of court documents, and Judicial Branch Deputy Chief Clerk Rene L. Roberston returned his motion for review on the ground that it was premature. [30]

 **\*3** In April 2022, DSS refused to provide Leftridge with documents that form the basis of DSS's negative reports to credit bureaus. [31] DSS also refused to alter the credit information that it reported to credit bureaus. [32]

I previously entered an order to show cause explaining that Leftridge's original complaint did not comply with Rule 8 of the Federal Rule of Civil Procedure. This rule requires that pleadings contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each allegation must be simple, concise, and direct." *See Leftridge v. Jud. Branch*, 2022 WL 867543, at \*2–3 (D. Conn. 2022) (quoting Fed. R. Civ. P. 8(a)(2) and 8(d)(1)). I also noted that it was unclear whether Leftridge's original complaint complied with Rule 20's limits on permissive joinder of claims against multiple defendants. *See id.* at \*3.

Now Leftridge has filed an amended complaint *pro se* and *in forma pauperis* alleging 26 claims against the following defendants: Assistant Attorney General for the Connecticut Office of the Attorney General Andrea Gaines, Assistant Attorney General Joan Andrews, Assistant Attorney General Steven Samalot, UIFSA Support Enforcement Supervisor Richard Julius, Family Court Clerk Carolyn Anderson, Family Court Clerk Cassandra Williams, Family Court Clerk Manager Leanne Shaughnessy, Maryland

Department of Human Services Child Support Specialist Alyson Saunders, Chief Clerk of New London and Norwich Judicial Districts David Gage, "unknown employees," the Connecticut Department of Social Services, and the State of Connecticut Judicial Branch.[33] Leftridge names all but the last two defendants in their individual and official capacities.[34]

*Counts One and Seventeen.* Leftridge alleges that the defendants deprived him of his Fourteenth Amendment due process rights as enforceable under 42 U.S.C. § 1983.[35]

*Count Two.* Leftridge alleges that the defendants violated the common law by engaging in the spoliation of evidence.[36]

*Count Three.* Leftridge alleges that the defendants engaged in witness tampering, manipulation of court records, and obstruction of court proceedings in violation of the United States Constitution and the Connecticut Constitution.[37] Leftridge does not cite which provision of the United States Constitution the defendants violated, but I will presume that he alleges a violation of his due process rights under the Fourteenth Amendment as enforceable under 42 U.S.C. § 1983.

*Count Four.* Leftridge alleges that the defendants discriminated against him on the basis of his gender and race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.,* and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a–60 *et seq.*[38]

*Count Five.* Leftridge alleges that the defendants discriminated against him on the basis of disability in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101 *et seq.*[39]

**\*4** *Count Six.* Leftridge alleges that Shaughnessy engaged in negligent supervision of her employees Williams and Anderson.[40]

*Count Seven.* Leftridge alleges that the Judicial Branch denied Leftridge access to public accommodation by denying him electronic access to the court system.[41] Leftridge does not specify the statute the Judicial Branch violated, but I will presume that he alleges a violation of the ADA.

*Count Eight.* Leftridge alleges that the Judicial Branch denied him equal protection under state law.[42]

*Count Nine.* Leftridge alleges that DSS denied him equal protection under the law, violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.,* and violated Title IV-D of the Social Security Act ("SSA"), 42 U.S.C. § 651 *et seq.*[43]

*Counts Ten and Thirteen.* Leftridge alleges that the defendants violated the FCRA and state tort law, and that they discriminated against him on the basis of his age.[44] Leftridge does not specify which law the defendants violated in discriminating on the basis of age, but I will presume that he alleges a violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*

*Count Eleven.* Leftridge alleges that the defendants violated his First Amendment right to freedom of speech as enforceable under 42 U.S.C. § 1983.[45]

*Count Twelve.* Count Twelve is titled "pendent cause of action" and repeats several causes of action already alleged in prior counts. It also alleges that the defendants committed extortion and violated section 504 of the Rehabilitation Act of 1973 ("RA"), 29 U.S.C. § 794.[46]

*Count Fourteen.* Leftridge alleges that the defendants violated the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*[47]

*Count Fifteen.* Leftridge alleges that the defendants violated the "Consumer Fraud Act."[48] There is no federal statute by that name. Accordingly, I will assume he is trying to allege a claim under Connecticut's consumer-fraud statute: the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42–110a *et seq.*

*Count Sixteen.* Leftridge alleges that the defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*[49]

*Count Eighteen.* Leftridge alleges that the defendants violated the Fourth Amendment as enforceable under 42 U.S.C. § 1983 by prosecuting him without probable cause. [50]

**\*5** *Count Nineteen.* Leftridge alleges that the defendants violated § 1983 by failing to intervene in the deprivation of his constitutional rights. [51]

*Count Twenty.* Leftridge alleges that the defendants violated § 1983 by conspiring to deprive him of his civil rights. [52]

*Count Twenty-One.* Leftridge alleges that the Judicial Branch and DSS promulgated policies that resulted in the violation of Leftridge's constitutional rights. [53]

*Count Twenty-Two.* Leftridge alleges that the defendants maliciously prosecuted him. [54]

*Count Twenty-Three.* Leftridge alleges that the defendants engaged in intentional infliction of emotional distress. [55]

*Count Twenty-Four.* Leftridge alleges that the defendants conspired to deprive him of his rights in violation of state law. [56]

*Count Twenty-Five.* Leftridge alleges that the supervisor defendants are liable for the misconduct of their employees under the principle of *respondeat superior.* [57]

*Count Twenty-Six* (mislabeled as Count Twenty). Leftridge alleges that the government agencies of which the defendants are members are obligated to indemnify their employees and agents for their torts. [58]

Leftridge seeks compensatory and punitive damages, injunctive and declaratory relief, and attorney's fees and costs. [59] The defendants have moved to dismiss all of Leftridge's claims. [60] For the reasons set forth below, I will grant the defendants' motions.

## DISCUSSION

The standard that governs a motion to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) is well

established. A complaint may not survive unless it alleges facts that, taken as true, give rise to plausible grounds to sustain the Court's subject-matter jurisdiction as well as the plaintiff's grounds for relief. *See* *Brownback v. King*, 141 S. Ct. 740, 749 (2021); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). [61] The Court must "accept as true all factual allegations and draw from them all reasonable inferences," but it is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Hernandez v. United States*, 939 F.3d 191, 198 (2d Cir. 2019).

The Court must read the allegations of a *pro se* complaint liberally to raise the strongest arguments that they suggest. *See* *Meadows v. United Servs., Inc.*, 963 F.3d 240, 243 (2d Cir. 2020) (*per curiam*). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See ibid.*

### Federal claims against DSS, the Judicial Branch, and the individual defendants in their official capacities

**\*6** DSS and the Judicial Branch are agencies of the State of Connecticut, and the individual defendants are employees of various state agencies. The Eleventh Amendment and related principles of state sovereign immunity generally divest the federal courts of subject matter jurisdiction over lawsuits by private citizens against the States, state government entities, and state government officials in their official capacities.

*See generally* *Lewis v. Clarke*, 137 S. Ct. 1285, 1290–91 (2017); *T.W. v. N.Y. State Bd. of L. Examiners*, 996 F.3d 87, 92 (2d Cir. 2021). "The Eleventh Amendment, however, is not without exception." *We the Patriots USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 579 F. Supp. 3d 290, 300 (D. Conn. 2022). "Congress may abrogate a state's immunity by statute, a state may waive its immunity, or a state official may be sued in his or her official capacity under the *Ex Parte Young* doctrine." *Ibid.* (citing *In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007)); *see also* *Ex parte Young*, 209 U.S. 123 (1908).

I will dismiss Leftridge's claims alleging violations of 42 U.S.C. § 1983, the FCRA, the FDCPA, SSA Title IV-D, the TILA, and the ADEA because they do not fall within any exception to Eleventh Amendment sovereign immunity. First, Congress has not abrogated Eleventh Amendment immunity for claims arising under 42 U.S.C. § 1983, the FCRA, the

FDCPA, SSA Title IV-D, and TILA. *See* 🚩*Quern v. Jordan*, 440 U.S. 332, 340–45 (1979) (🚩*§ 1983*); *Badger v. CUNY Graduate Ctr.*, 2023 WL 35223, at *5 (S.D.N.Y. 2023) (citing, *inter alia*, 🚩*Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 59 (1996)) (FCRA); *Banks v. ACS Educ.*, 638 F. App'x 587, 589 (9th Cir. 2016) (citing 🚩*15 U.S.C. § 1692a(6)(C)*) (FDCPA); *Parent v. New York*, 786 F. Supp. 2d 516, 531 (N.D.N.Y. 2011) (SSA Title IV-D), *aff'd*, 485 F. App'x 500 (2d Cir. 2012); 🏳️*Patel v. Univ. of Md. Coll. Park*, 2023 WL 2023264, at *4 (D. Md. 2023) (citing, *inter alia*, 15 U.S.C. § 1612(b)) (TILA). The Supreme Court has rejected Congress's attempt to abrogate state sovereign immunity under the ADEA. *See* 🚩*Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 66–67 (2000). Nor has Leftridge alleged that Connecticut has waived its immunity with respect to any of these laws. *Cf.* 🚩*Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 400 (2d Cir. 2017) ("[T]he plaintiff bears the burden of establishing that her claims fall within an applicable waiver.").

Finally, the *Ex parte Young* exception, which permits prospective injunctive and declaratory relief against state officials, does not apply. To invoke *Ex parte Young*, a plaintiff must "(a) allege[ ] an ongoing violation of federal law and (b) seek[ ] relief properly characterized as prospective." *In re Deposit Ins. Agency*, 482 F.3d at 618. Leftridge's claims arise out of alleged actions taken by the defendants in 2005, 2017–2019, and 2021–2022, but Leftridge does not state what, if any, actions of the defendants constitute ongoing violations of his federal rights. Nor does his request for injunctive relief—blanket requests that the Court order the defendants to "fully comply" with various federal laws—shed light on the matter. [62]

As best I can discern, the only ongoing harm Leftridge alleges is DSS's refusal to alter the credit information it reports to credit bureaus. But the *Ex parte Young* exception to state sovereign immunity "has no application in suits against the States and their agencies." 🚩*Silva v. Farrish*, 47 F.4th 78, 84 (2d Cir. 2022). And in any event, an injunction must "be 'more specific than a simple command that the defendant obey the law.' " *L.V.M. v. Lloyd*, 318 F. Supp. 3d 601, 620 (S.D.N.Y. 2018) (quoting 🚩*City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 144 (2d Cir. 2011)).

**\*7** For example, in 🚩*Burns v. Rovella*, 2020 WL 12863774 (D. Conn. 2020), the Court denied a plaintiff's "request[ ] that this court 'prohibit[ ] defendants from denying his rights protected by the [Family and Medical Leave Act],' and 'denying him his rights ... [under] the Fourteenth Amendment Due Process clause of the United [S]tates Constitution.' " *Id.* at *12. The Court reasoned that "[t]hese are simply requests that the court command the defendant to obey the law, and therefore, are insufficient to seek injunctive relief." *Ibid.* Like the plaintiff in *Burns*, the injunctive relief Leftridge seeks—a court order that defendants obey the law—does not give rise to a valid claim for injunctive relief.

The same goes for Leftridge's request for declaratory relief in the form of a "declar[ation] that the acts of the Defendants alleged in applicable Counts with respect to the acts, policies, practices, and customs deprived Plaintiff of federal rights." [63] "Courts are not obliged to entertain actions for declaratory judgment not seeking prospective relief but merely declaring past wrongs." *Huminski v. Connecticut*, 2015 WL 1650845, at *5 (D. Conn. 2015). Leftridge's request for declaratory relief "asks the Court only to recognize a past wrong, which, in the context of declaratory relief, does not in itself 'amount to that real and immediate threat of injury necessary to make out a case or controversy.' " 🚩*Morales v. City of New York*, 59 F. Supp. 3d 573, 581 (S.D.N.Y. 2014) (quoting 🚩*City of Los Angeles v. Lyons*, 461 U.S. 95, 103 (1983)); *see also H.B. v. Byram Hills Cent. Sch. Dist.*, 648 F. App'x 122, 125 (2d Cir. 2016) ("[T]he requested declaratory relief is aimed at past conduct, a target that is impermissible."). In short, Leftridge is not entitled to declaratory relief that would fall within the *Ex parte Young* exception to Eleventh Amendment immunity.

Given that no exception to Eleventh Amendment immunity applies, I will dismiss Leftridge's claims arising under 🚩*§ 1983*, the FCRA, the FDCPA, SSA Title IV-D, the TILA, and the ADEA with respect to the agency defendants and the individual defendants in their official capacities.

The defendants further argue that Eleventh Amendment immunity also bars Leftridge's ADA claims. [64] They cite *Hamzik v. Office for People with Developmental Disabilities*, 859 F. Supp. 2d 265, 276 (N.D.N.Y. 2012) and 🚩*Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 374 (2001), for the proposition that Title I did not abrogate the states' sovereign immunity. [65] But Title I of the ADA applies to disability discrimination by employers,

*see* 42 U.S.C. § 12112(a), and Leftridge does not allege that he was employed by any of the entities involved in the lawsuit. As for Title II, which forbids discrimination by public services, programs, and activities, *see id.* § 12132, the extent to which Congress has abrogated the states' sovereign immunity remains unclear after the Supreme Court's decision in *United States v. Georgia*, 546 U.S. 151 (2006), which held that "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly abrogates state sovereign immunity." *Id.* at 159. *See Schmiege v. New York*, 2022 WL 16922123, at *3 n.6 (W.D.N.Y. 2022) ("Since *Georgia*, courts in this Circuit have taken different approaches when faced with the question of whether Congress has validly abrogated sovereign immunity under Title II."). [66]

**\*8** But "the Court need not wade into these turbulent constitutional waters." *Matagrano v. N.Y. State Dep't of Corr. & Cmty. Supervision*, 2020 WL 7338586, at *18 (N.D.N.Y. 2020). The state entity bears the burden of demonstrating that Eleventh Amendment immunity applies. *See Woods v. Rondout Valley Cent. Sch. Dist. Bd of Educ.*, 466 F.3d 232, 237 (2d Cir. 2006). Because the defendants make no argument and cite no law regarding Title II of the ADA, they have not carried their burden and I will consider Leftridge's ADA claims on the merits. I will similarly consider the merits of Leftridge's claims arising under the Rehabilitation Act and Title VII because the defendants do not contest that Congress waived the states' sovereign immunity for these two statutes. *See* 42 U.S.C. § 2000d–7 ("A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of section 504 of the Rehabilitation Act of 1973."); *Fin. Oversight & Mgmt. Bd. for Puerto Rico v. Centro de Periodismo Investigativo, Inc.*, 143 S. Ct. 1176, 1178 (2023) ("Title VII of the Civil Rights Act abrogates the immunity of "governments" and "governmental agencies" from all actions it authorizes.") (citing 42 U.S.C. §§ 2000e(a)–(b)).

I will begin with Leftridge's ADA and Rehabilitation Act claims. "[F]or a plaintiff to establish a *prima facie* violation under these Acts, she must demonstrate (1) that she is a qualified individual with a disability; (2) that the defendants are subject to one of the Acts; and (3) that she was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was

otherwise discriminated against by defendants, by reason of her disability." *Powell v. Nat'l Bd. of Med. Examiners*, 364 F.3d 79, 85 (2d Cir.), *opinion corrected on other grounds*, 511 F.3d 238 (2d Cir. 2004).

Leftridge's complaint fails to state a claim under the ADA or the Rehabilitation Act because it does not allege that he was discriminated against because of his disability. Leftridge's claims center on the defendants' "denying equal access to electronic filing, public accommodations and access to Judicial state government' programs and services that was critical to plaintiff being able to file pleadings electronically for his defense of, and presentation of, his case in the Family Support Court." [67] But "[Leftridge's] complaint contains no plausible allegations that ... the Defendants' actions were taken *by reason* of his [disability], or even that they were *aware* of his [disability]." *Barone v. Lawyers' Fund for Client Prot.*, 2023 WL 1975783, at *2 (2d Cir. 2023). Without more, Leftridge fails to state a claim under the ADA, *see ibid.*, or the Rehabilitation Act, *see Harris v. Mills*, 572 F.3d 66, 75 (2d Cir. 2009).

Leftridge's Title VII claim fails as well. Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). "Consequently, the existence of an employer-employee relationship is a primary element of Title VII claims." *Gulino v. N.Y. State Educ. Dep't*, 460 F.3d 361, 370 (2d Cir. 2006). Because Leftridge does not allege that he had an employment relationship with any of the defendants, his Title VII claim fails. *See, e.g.*, *Pandozy v. Tobey*, 335 F. App'x 89, 91 (2d Cir. 2009) ("[Plaintiff's] complaint fails to state a cause of action under Title VII, since he does not allege an employer-employee relationship between himself and any of the Defendants.").

**\*9** Accordingly, I will dismiss Leftridge's claims arising under the ADA, the Rehabilitation Act, and Title VII with respect to the agency defendants and the individual defendants in their official capacities. Having already dismissed Leftridge's claims arising under § 1983, the FCRA, the FDCPA, SSA Title IV-D, the TILA, and the ADEA with respect to the agency defendants and the

individual defendants in their official capacities, I will turn to Leftridge's claims against the individual defendants in their individual capacities.

### Federal claims against the individual defendants in their individual capacities

The individual defendants filed motions to dismiss Leftridge's individual-capacity claims on various grounds.[68] For the reasons set forth below, I will grant their motions.

Defendants Anderson, Williams, Shaughnessy, and Gage are state court clerks or supervisors of state court clerks. Defendant Julius is a UIFSA Support Enforcement Supervisor who Leftridge alleges had falsely certified that Leftridge had been served in the 2017 paternity and support action brought by Heyward.

"Courts have extended the absolute judicial immunity afforded judges to individuals, such as prosecutors and witnesses, who perform functions closely associated with the judicial process." *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997). "[A]cts arising out of, or related to, individual cases before the judge" are entitled to absolute quasi-judicial immunity because they are considered "judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). The relevant inquiry "is the nature and function of the act, not the act itself." *Mireles v. Waco*, 502 U.S. 9, 13 (1991). "A defendant entitled to quasi-judicial immunity loses that privilege only if she acts 'in the clear absence of all jurisdiction.'" *Finn v. Anderson*, 592 F. App'x 16, 19 (2d Cir. 2014) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978)). That a defendant is alleged to have acted erroneously, maliciously, dishonestly, in bad faith, or in excess of her authority does not undermine quasi-judicial immunity. *See ibid.*; *Mireles*, 502 U.S. at 11.

For example, in *Leftridge v. Support Enforcement Services*, 2013 WL 1947174 (D. Conn. 2013), the Court determined that quasi-judicial immunity barred Leftridge's claims against Support Enforcement Officers and court employees for actions related to Leftridge's child custody and child support proceedings "since all of the allegations asserted against these defendants pertain to their performance of official duties integral to the judicial process." *Id.* at *6; *see also Skipp v. Conn. Jud. Branch*, 2015 WL 1401989, at *8 (D. Conn. 2015) ("As all of the challenged actions of court employees

were taken in relation to plaintiff's divorce and custody proceedings, the court employees and agents are immune from a claim for money damages.").

Leftridge does not allege that Anderson, Williams, Shaughnessy, Gage, or Julius acted in the clear absence of all jurisdiction. Instead, all of their alleged actions arose out of or related to Leftridge's child support and child custody proceedings before Judge Sweinton, Judge Dee, Judge Nieves, Judge Green, and Judge Klau. Accordingly, quasi-judicial immunity bars Leftridge's claims against these five defendants.

The state prosecutor defendants—Gaines, Andrews, and Samalot—are entitled to absolute immunity as well. "Prosecutors are entitled to absolute immunity with respect to their prosecutorial functions, which include their actions as advocates and when their conduct involves the exercise of discretion." *Bouchard v. Olmsted*, 775 F. App'x 701, 703 (2d Cir. 2019). For example, in *Barrett v. United States*, 798 F.2d 565 (2d Cir. 1986), the Second Circuit held that an Assistant Attorney General, "representing [the] state as its attorney" in state court, was entitled to absolute immunity. *Id.* at 573. According to the Court, "[t]he fact that [the attorney] may or may not have engaged in questionable or harmful conduct during the course of his representation of the State in that litigation is irrelevant. The immunity attaches to his function, not to the manner in which he performed it." *Ibid.*; *see also Contreras v. Perimenis*, 562 F. App'x 50, 51 (2d Cir. 2014) (affirming district court's finding that Assistant Attorney General for the Connecticut Department of Children and Families "was entitled to absolute immunity because he was sued in his capacity as a government advocate prosecuting child welfare cases").

**\*10** And again, in *Leftridge v. Support Enforcement Services.*, 2013 WL 1947174, the Court determined that absolute immunity barred Leftridge's claims concerning "assistant attorney generals' conduct in carrying out their jobs as assistant attorney generals." *Id.* at *6; *see also Coke v. Samalot*, 2021 WL 4034168, at *7 (D. Conn. 2021) ("As an Assistant Attorney General, Mr. Samalot has immunity while serving in his function as an advocate for the state.").

As with the court-affiliated defendants, Leftridge's allegations regarding Gaines, Andrews, and Samalot pertain exclusively to their roles in Leftridge's child support and child custody

proceedings. Absolute prosecutorial immunity thus bars Leftridge's claims against these three defendants.

I turn next to Leftridge's claims against defendant Saunders. Saunders is a Child Support Specialist employed by the Maryland Department of Human Services who Leftridge alleges refused his requests for family court records.

Saunders has moved to dismiss in part for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b) (2). [69] A court lacks personal jurisdiction over an out-of-state defendant if the defendant is not subject under state law to the "long-arm" jurisdiction of the courts of that State, or if exercise of jurisdiction over the defendant would not comport with constitutional principles of fairness and due process. *See U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 149 (2d Cir. 2019); *Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 327 (2d Cir. 2016). "[T]he plaintiff bears the burden of establishing personal jurisdiction over the defendant." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012). "Prior to trial, however, when a motion to dismiss for lack of jurisdiction is decided on the basis of affidavits and other written materials, the plaintiff need only make a *prima facie* showing." *Ibid.* "The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits," *ibid.*, but the Court may dismiss for lack of personal jurisdiction when the plaintiff "failed to controvert the defendants' affidavits showing that the court lacked personal jurisdiction," *Emiabata v. Seton Healthcare Fam.*, 2021 WL 4256846, at *2 (2d Cir. 2021).

Under Connecticut's long-arm statute, "a court may exercise personal jurisdiction over any non-resident individual ... who in person or through an agent ... commits a tortious act outside the state causing injury to a person or property within the state ... if such person or agent (A) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (B) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Conn. Gen. Stat. § 52–59b(a). The statute also extends to any person or agent who "uses a computer ... or a computer network ... located within the state." *Ibid.*

Saunders has attached to her motion an affidavit stating that she has been a Maryland resident since 2003, she has worked as a Maryland state employee for the Montgomery County Office of Child Support for the past 15 years, she has never transacted or solicited business in Connecticut, she does not engage in any persistent course of conduct or derive substantial revenue from goods used or consumed or services rendered in Connecticut, and she does not use a computer or computer network in Connecticut. [70]

**\*11**  To make out a *prima facie* case, a plaintiff must plead "non-conclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." *Chirag v. MT Marida Marguerite Schiffharts*, 604 F. App'x 16, 19 (2d Cir. 2015). Leftridge has not done so. Saunders and Leftridge are Maryland residents, and all of Saunders's alleged actions took place in Maryland in her capacity as an employee for the Maryland Department of Human Services. [71] Moreover, Leftridge does not controvert Saunders's affidavit. He does not allege, even in conclusory fashion, that Saunders satisfies prong (A) or (B) of § 52–59b(a), that Saunders uses a computer or computer network in Connecticut, or that Saunders's actions otherwise satisfy Connecticut's long-arm statute. Because there is no statutory long-arm jurisdiction over Saunders, I need not consider whether exercising jurisdiction over Saunders would be consistent with constitutional due process.

Even if the Court had personal jurisdiction over Saunders, dismissal would nonetheless be proper because Leftridge does not state a plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6) and because the complaint does not comply with Rule 8's pleading requirements. Leftridge's only allegations against Saunders—appearing in 3 of the complaint's 361 paragraphs—are that Saunders refused to provide him with family court records. Leftridge does not explain how Saunders's conduct violated state or federal law. Indeed, none of the 26 counts in his complaint mention Saunders at all. Instead, some counts mention defendants other than Saunders, and the remaining counts refer collectively to the "Defendants," of whom there are at least 11.

Drafting a complaint in this way runs afoul of Rule 8's requirement that each defendant have "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Mohammad v. N.Y. State Higher Educ. Servs. Corp.*, 422 F. App'x 61, 62–63 (2d Cir. 2011); *see also* Fed. R. Civ. P. 8(a) ("A pleading that states a claim for relief must contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief."). A complaint does not

satisfy Rule 8 "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct." Atuahene v. City of Hartford, 10 F. App'x 33, 34 (2d Cir. 2001); see also Jackson v. Bank of Am., N.A., 898 F.3d 1348, 1356 (11th Cir. 2018) (affirming dismissal of "shotgun pleading" complaint on Rule 8 grounds where it was "nearly impossible for Defendants and the Court to determine with any certainty which factual allegations give rise to which claims for relief"). Because the Court lacks personal jurisdiction over Saunders and Leftridge does not state a plausible or Rule-8-compliant claim for relief against her, I will grant Saunders's motion to dismiss.

In sum, I will grant the individual defendants' motions to dismiss Leftridge's claims against them in their individual capacities. With no federal claims remaining against the defendants in either their individual or official capacities, the Court finds it unnecessary to address the defendants' additional arguments for dismissal on grounds of qualified immunity, litigation privilege, the *Rooker-Feldman* doctrine, or improper service of process.

### Federal claims against unknown employees

Leftridge mentions "unknown employees" at various points in his complaint, whom he identifies as either employees of the Judicial Branch or the Executive Branch of Connecticut. [72] As explained above, Rule 8 requires that the complaint gives each defendant "fair notice of what the plaintiff's claim is and the ground upon which it rests." *Mohammad*, 422 F. App'x at 62–63. Naming "unknown employees" or "unknown defendants" does not comply with Rule 8's fair notice requirement where, as here, the allegations are so vague as to make it impossible to identify them. *See, e.g., Matthews v. NYPD*, 2023 WL 3505634, at *1–2 (S.D.N.Y. 2023) (dismissing *pro se* complaint against "unknown employees" because "Plaintiff's complaint does not include allegations about 'unknown employees' that are sufficient to put them or the Court on notice of her claims against them. She also does not plead facts that are sufficient to identify such Defendants."); Ritchie v. N. Leasing Sys., Inc., 14 F. Supp. 3d 229, 237 (S.D.N.Y. 2014) ("Although courts sometimes allow plaintiffs to plead causes of action against a 'John Doe' defendant where a plaintiff does not know the defendant's identity, they ultimately require plaintiffs, under Rule 8(a), to allege specific facts that would aid in identifying the defendant and thereby allow defendants to prepare a defense.").

*12 In any event, there are no freestanding allegations of wrongdoing by the unknown employees. All mentions of unknown employees are tacked on to allegations against other employees of the Judicial Branch and the Office of the Connecticut Attorney General. Having already concluded that all claims against the named employees fail, I will dismiss the claims against the unknown employees on the same grounds.

*See, e.g., Gabriel Cap., L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251, 269–70 (S.D.N.Y. 2000) ("I assume ... that the theory of liability [against the John Doe defendants] is the same as that pled against [named defendants]. As these claims have been dismissed, there is no reason to allow the [complaint] to stand against the Does. Therefore, the claims against John Does 1 through 50 are also dismissed.").

### State law claims

Having dismissed Leftridge's federal law claims, I turn to his state law claims. Leftridge argues that the Court has diversity jurisdiction over his state law claims because "[t]he plaintiff[ ] and some of the defendants to this case live in the State of Maryland." [73] *See* 28 U.S.C. § 1332 (federal diversity jurisdiction statute). But diversity jurisdiction exists only if there is "complete" diversity among the opposing parties—in other words, only if the plaintiff is a citizen of a different state than all of the defendants. *See Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998); *Strawbridge v. Curtis*, 3 Cranch 267 (1806) (Marshall, C.J.). And as explained above, both Saunders and Leftridge are Maryland residents. In the absence of federal diversity jurisdiction, and because there are no facially plausible federal claims against the defendants, I conclude that the state courts of Connecticut are best positioned to address Leftridge's state law claims. *See* 28 U.S.C. § 1367(c)(3); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 117–18 (2d Cir. 2013); *Williams v. Katz*, 2022 WL 3646200, at *6 (D. Conn. 2022). Accordingly, I decline to exercise supplemental jurisdiction over Leftridge's state law claims, which I will dismiss without prejudice to Leftridge's right to seek any relief that may be available in state court.

### CONCLUSION

For the reasons set forth above, the Court GRANTS the defendants' motions to dismiss (Doc. #81, Doc. #123). In

light of the granting of the motions to dismiss, the Court DENIES as moot all other pending motions (Docs. #136, #138, #140, and #150).

It is so ordered.

**All Citations**

Slip Copy, 2023 WL 4304792

## Footnotes

1    *See* Doc. #18.

2    *Id.* at 3 (¶¶ 6–7).

3    *Id.* at 8 (¶¶ 20, 22).

4    *Ibid.* (¶ 25).

5    *Id.* at 8–11 (¶¶ 25–30, 34).

6    *Id.* at 10 (¶ 33). Leftridge does not specify the name of the Assistant Attorney General.

7    *Id.* at 39 (¶ 153).

8    *Id.* at 11 (¶ 35).

9    *Id.* at 12–13 (¶¶ 41–42).

10   *Id.* at 12 (¶¶ 38–39).

11   *Ibid.* (¶ 40). Leftridge does not specify the name of the Hartford Interstate Support Enforcement Supervisor.

12   *Id.* at 13 (¶ 43).

13   *Id.* at 12–15 (¶¶ 38–50).

14   *Id.* at 16 (¶¶ 55–57).

15   *Id.* at 18 (¶ 64).

16   *Ibid.* (¶ 64).

17   *Id.* at 21–22 (¶¶ 81–85).

18   *Id.* at 22 (¶¶ 87–88).

19   *Id.* at 25–27 (¶¶ 98, 102–03), 36 (¶ 141).

20   *Id.* at 56 (¶ 219).

21   *Id.* at 28–29 (¶¶ 109, 111).

22   *Id.* at 38 (¶ 150).

23    *Id.* at 29–30 (¶¶ 113, 118), 32 (¶ 124).

24    *Id.* at 32–36 (¶¶ 125–31, 137–39), 50–55 (¶¶ 191–204, 210, 212–17).

25    *Id.* at 34 (¶ 133), 40 (¶¶ 156–58), 53–54 (¶¶ 205, 207, 211), 56 (¶ 218).

26    *Id.* at 34 (¶ 132).

27    *Id.* at 34–35 (¶ 134), 37 (¶ 144).

28    *Id.* at 41–42 (¶¶ 162–64).

29    *Id.* at 44–45 (¶¶ 170–72).

30    *Id.* at 45 (¶¶ 173–74).

31    *Id.* at 47–48 (¶ 181).

32    *Id.* at 48 (¶ 182).

33    *Id.* at 1; *see id.* at 3–7 (¶¶ 9–19) (defendants' full names and positions); *id.* at 61–94 (¶¶ 237–361) (causes of action).

34    *Id.* at 1.

35    *Id.* at 61 (¶¶ 237–39), 75–80 (¶¶ 285–304).

36    *Id.* at 61 (¶¶ 240–42).

37    *Id.* at 61–62 (¶¶ 243–45).

38    *Id.* at 62–63 (¶¶ 246–48).

39    *Id.* at 63–64 (¶¶ 249–51).

40    *Id.* at 64–67 (¶¶ 252–54).

41    *Id.* at 67–68 (¶¶ 255–57).

42    *Id.* at 68 (¶¶ 258–60).

43    *Id.* at 68–69 (¶¶ 261–63).

44    *Id.* at 69–70 (¶¶ 264–66), 72–73 (¶¶ 273–75). Count Ten also alleges that the defendants violated the ADA, the Civil Rights Act of 1964, and the Connecticut Fair Employment Practices Act—allegations that are duplicative of the allegations in Counts Four and Five.

45    *Id.* at 70–71 (¶¶ 267–69).

46    *Id.* at 71–72 (¶¶ 270–72).

47    *Id.* at 73 (¶¶ 276–78).

48    *Id.* at 73–74 (¶¶ 279–81).

49    *Id.* at 74–75 (¶¶ 282–84).

50   *Id.* at 79–80 (¶¶ 297–304). Count Eighteen also alleges that the defendants deprived him of his Fourteenth Amendment due process rights as enforceable under 🚩 42 U.S.C. § 1983—an allegation that is duplicative of the allegations in Counts One, Three, and Seventeen.

51   *Id.* at 80–82 (¶¶ 305–12).

52   *Id.* at 82–83 (¶¶ 313–19).

53   *Id.* at 83–89 (¶¶ 320–40). Count Twenty-One also mentions policies of three additional agencies—the Maryland Department of Human Services, Montgomery Count Office; the Office of the Connecticut Attorney General; and the Connecticut Interstate Government UIFSA Department—but the complaint does not name these agencies as defendants. *See ibid.*

54   *Id.* at 89–91 (¶¶ 341–46).

55   *Id.* at 91 (¶¶ 347–49).

56   *Id.* at 91–92 (¶¶ 350–54).

57   *Id.* at 92–93 (¶¶ 355–57).

58   *Id.* at 93–94 (¶¶ 358–61).

59   *Id.* at 94–96.

60   Doc. #81; Doc. #123.

61   Unless otherwise indicated, this order omits internal quotation marks, alterations, citations, and footnotes in text quoted from court decisions.

62   Doc. #18 at 95–96.

63   *Id.* at 95 (¶ 8).

64   Doc. #81-1 at 8–9; Doc. #123-1 at 15–16.

65   Doc. #81-1 at 8–9.

66   To the extent Leftridge alleges that the defendants violated Title *III* of the ADA, Leftridge fails to state a claim because "Title III is not applicable to public entities." *Morales v. New York*, 22 F. Supp. 3d 256, 266–67 (S.D.N.Y. 2014) (citing cases).

67   Doc. #18 at 63–64 (¶ 250). Leftridge does not explain what acts the defendants took that violate the RA, but the Court takes them to be the same as those acts that Leftridge alleges violated the ADA. *Cf. Paystrup v. Benson*, 2015 WL 506682, at *11 (D. Utah 2015) (assuming plaintiff's RA claim to be "based on the same actions as the ADA claims" where it was unclear which of defendants' actions were alleged to violate the RA).

68   Doc. #81 at 10–22, Doc. #123 at 9–15, 17–22.

69   Doc. #123 at 11–14.

70   Doc. #123-3 at 1–2 (¶¶ 1–2, 5).

71    *See* Doc. #18-1 at 1, 7; Doc. #137 at 9 (Leftridge's opposition to defendants' motion to dismiss stating that "[t]he plaintiff[ ] ... live[s] in the State of Maryland").

72    Doc. #18 at 58 (¶¶ 225–26).

73    Doc. #137 at 9.

---

**End of Document**                                          © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 4207907
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Keston BRAITHWAITE, Plaintiff,

v.

Frank TROPEA, Clerk of Court, County
Court, Suffolk County; Honorable John B.
Collins, Justice Supreme Court; and Susan
Conner, Senior Court Reporter, Defendants.

23-CV-1431(JS)(AYS)
|
Signed June 27, 2023

**Attorneys and Law Firms**

For Plaintiff: Keston Braithwaite, pro se, 22B4593, Sing Sing Correctional Facility, 354 Hunter Street, Ossinig, New York 10562.

For Defendants: No appearance.

## MEMORANDUM AND ORDER

SEYBERT, District Judge:

**\*1** By Order dated March 2, 2023 (the "Order"), the Court granted the Application to Proceed in District Court Without Paying Fees or Costs (Application, ECF No. 2) filed by incarcerated Plaintiff Keston Braithwaite ("Plaintiff") together with his pro se Complaint (Compl., ECF No. 1).[1] (See Order, ECF No. 9.) The Complaint is brought pursuant to ⚑ 42 U.S.C. § 1983 (⚑ Section 1983") against Frank Tropea, the Clerk of the Court, County Court Suffolk County ("Tropea"), Honorable John B. Collins ("Judge Collins"), and Susan Conner,[2] Senior Court Reporter ("Conner"; collectively, the "Defendants").

Upon review of Plaintiff's Complaint (ECF No. 1) in accordance with 28 U.S.C. § 1915A(a), the Court finds that Plaintiff has not alleged a plausible claim for relief. Accordingly, for the reasons that follow, the Complaint is DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A(b). Given the dismissal of the Complaint, Plaintiff's motion seeking a preliminary injunction (ECF No. 4) is DENIED.

## RELEVANT BACKGROUND AND SUMMARY OF THE COMPLAINT

Plaintiff is a prolific filer in this Court; excluding the instant action, since January 2022, he has filed eight unsuccessful pro se in forma pauperis complaints relating to his arrest and state court criminal prosecution. See Braithwaite v. Gaitman, No. 22-CV-0974, 2022 WL 14059127, at \*1 n.2 (E.D.N.Y. Oct. 24, 2022) (identifying those eight other actions). In his present ⚑ Section 1983 Complaint, which relates to his arrest and state court criminal prosecution,[3] Plaintiff asserts that: (1) (a) even though Plaintiff requested specific documents and his entire state-court file from May 5, 2022 from the County Court, (b) the County Court responded to Plaintiff's request indicating those documents were available, consisted of 220 pages, and would cost $143 to copy, and (c) Plaintiff submitted the $143 copying fee (as a money order), Tropea failed to turn over the requested copies of Plaintiff's state-court file (see Compl. at ECF pp. 5-7, 11-12); (2) thereafter, "Tropea chose to forward Plaintiff's $143 money order to Judge John B. Collins" (id. at ECF p. 16); (3) in turn, Judge Collins returned Plaintiff's $143 money order to Plaintiff's defense attorney in open court "to block Plaintiff from inspecting his Court file" (id. at ECF pp. 9, 12); and (4) on July 5, 2022, Plaintiff's defense attorney handed Plaintiff a partial copy of his state-court file, which did not include filings made prior to June 2022 (see id.; see also id. at ECF p. 16), and which Plaintiff believes was done under Tropea's and Judge Collin's directives (see id. at ECF p. 15).

**\*2** As to Conner, Plaintiff alleges: "Conner[ ] deliberately [sic] falsified documents for the District Attorney of Suffolk County and Judge Collins to hinder Plaintiff's appeal," (id. at ECF p. 16), to wit, "Conner[ ]chose not to record Plaintiff's Statement 'Ping Data' in favor for her colleagues [sic] Jacob Kubetz [the Assistant District Attorney] and Judge Collins." (Id. at ECF p. 18.) Moreover, despite Plaintiff's requests that Conner correct the sentencing transcript during which Plaintiff referred to "Ping Data", she has not done so. (See id.)

Based upon these allegations, Plaintiff claims his First, Fifth, Sixth, and Fourteenth Amendment Constitutional rights have been violated. (See Compl. at ECF p. 4.) He further asserts the following ten purported causes of action:

1. denial of judicial records;

2. fraud on the court;

3. concealment of records;

4. falsify evidence/documents;

5. altered transcripts;

6. procedural due process;

7. substantive due process;

8. Fourteenth Amendment violation;

9. Conspiracy to interfere with civil rights; and

10. Deprivation of civil rights.

(Compl. at ECF p. 19.) By way of relief, Plaintiff requests:

> [d]eclaratory relief, injunctive relief in that my court file that consist of 220 pages that was filed before May 5th, 2022, that the Clerk of the Court including Frank Tropea refrain from falsifying documents for the District Attorney Suffolk County, and Judge Collins such as back dating and filing Search and Arrest warrants after they admitted that there was no Search and Arrest warrants filed in their office, and Susan O'Conner [sic] fix errors in my sentencing transcripts so I can bring up those issues in my appeal. I am seek [sic] compensatory damages in that I would like my entire Court file with no pages missing (Certified, true and accurate filing dates), a True and accurate copy of my sentencing transcript, and the costs and fees I spent to prosecute this action, Past and future damages, Punitive damages. I would like all money damages in the sum of $30,000,000.00.

(Id. at ECF pp. 20-21.)

DISCUSSION

I. Legal Standards

   A. Consideration of the Complaint Under 28 U.S.C. § 1915A

Section 1915A of Title 28 requires federal district courts to screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. See Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's civil rights complaint, or any portion of that complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b); see also Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). The Court is required to dismiss the action as soon as it makes such a determination. See 28 U.S.C. § 1915A; Avant v. Miranda, No. 21-CV-0974, 2021 WL 1979077, at *2 (E.D.N.Y. May 18, 2021).

Courts are obliged to construe the pleadings of a pro se plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id.; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

   B. Section 1983

**\*3** Section 1983 provides:

[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983; accord Rehberg v. Paulk, 566 U.S. 356 (2012). To state a claim under Section 1983, a plaintiff must " ' allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.' " Rae v. County of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)).

Plaintiff alleges a deprivation of his First, Fifth, Sixth, and Fourteenth Amendment rights (Compl., ECF No. 1, at 4 (Section II.B)) and, as liberally construed, the Complaint purports to allege denial of a fair trial, as well as procedural and substantive due process claims.

C. Application

Before addressing the merits of Plaintiff's Section 1983 claims, the Court first considers several threshold barriers to the adjudication of his claims.

1. Immunity

a. Absolute Judicial Immunity

Plaintiff's Section 1983 claims against Judge Collins are subject to dismissal because, as a judge employed by the state of New York, he is absolutely immune from suit. It is well-established that judges "generally have absolute immunity" from suit for judicial acts performed in their judicial capacities. Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (citing Mireles v. Waco, 502 U.S. 9,

11 (1991)); Hardy-Graham v. Southampton Just. Ct., No. 20-CV-0981, 2021 WL 260102, at *5 (E.D.N.Y. Jan. 25, 2021) (Seybert, J.). This absolute "judicial immunity is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his authority." Mireles, 502 U.S. at 11, 13 (internal quotation marks and citation omitted; ellipsis in original). Rather, judicial immunity is overcome in only two instances. The first instance is "liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." Bliven, 579 F.3d at 209 (quoting Mireles, 502 U.S. at 11). The second instance is liability arising from actions taken " 'in the complete absence' of all jurisdiction.' " Basile v. Connolly, 538 F. App'x 5, 7 (2d Cir. 2013) (quoting Mireles, 502 U.S. at 11-12; emphasis in the original).

Here, even upon a liberal construction, Plaintiff's allegations do not suggest that either exception applies to overcome absolute judicial immunity. Clearly Judge Collins acted within his jurisdiction given that the alleged conducted occurred in open court during the criminal prosecution that lead to Plaintiff's state court conviction. There can be no doubt that state court prosecution for violations of state laws relating to drug possession and weapon possession is the very kind of case over which state courts have jurisdiction. Accordingly, Judge Collins is shieled from suit by absolute immunity. [4]

*4    The absolute immunity afforded to judges is not limited to judges alone, but also extends to "certain others who perform functions closely associated with the judicial process." Oliva v. Heller, 839 F.2d 37, 39 (2d Cir. 1988) (citation omitted); see also McKeown v. N.Y. State Comm'n on Judicial Conduct, 377 F. App'x 121, 124 (2d Cir. 2016). Here, Tropea is entitled to absolute immunity given that Plaintiff's allegations against him concern conduct that is "closely related to the judicial process." Jackson v. Pfau, 523 F. App'x 736, 737-38 (2d Cir. 2013) (affirming dismissal pursuant to Section 1915(e)(2)(B) of pro se plaintiff's Section 1983 claims against judicial law clerk, the N.Y.S. Chief Administrative Judge, court attorneys, and the Chief Clerks of several state courts, finding "defendants were entitled to judicial immunity, because [ ][the] allegations against each of them concerned actions that were judicial in nature or closely related to the judicial process") (citing Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997)

(noting that "[c]ourts have extended the absolute judicial immunity afforded judges to individuals ... who perform functions closely associated with the judicial process," and holding that judges and their supporting staff are absolutely immune in matters regarding "[a] court's inherent power to control its docket")).

As a result, Plaintiff's Section 1983 claims against Judge Collins and Tropea are not plausible as a matter of law and are, therefore, DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A(b). See Mills v. Fischer, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

### b. Eleventh Amendment Immunity

" '[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogate[d] the states' Eleventh Amendment immunity....' " Griggs v. Crim. Ct. of City of N.Y., No. 21-CV-1899, 2021 WL 1535056, at *2 (S.D.N.Y. Apr. 19, 2021), appeal dismissed (Oct. 28, 2021) (quoting Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, alteration in original)). "This immunity shields States from claims for money damages, injunctive relief, and retrospective declaratory relief." Griggs, 2021 WL 1535056, at *2 (citing Green v. Mansour, 474 U.S. 64, 72-74 (1985); Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984)).

Plaintiff claims that Tropea failed to perform his duties; yet, there are no allegations that Tropea acted outside of his official capacity. (See Compl., in toto.) Indeed, Tropea is a state officer because he is the Chief Clerk of the Suffolk County Court, and the Suffolk County Court is an arm of the New York state court system.[5] See Gollomp, 568 F.3d at 366–67 ("[E]very court to consider the question of whether the New York State Unified Court System is an arm of the State has concluded that it is, and is therefore protected by Eleventh Amendment sovereign immunity."); Fishman v. Off. of Ct. Admin. N.Y.S. Cts., No. 18-CV-0282, 2020 WL 1082560, at *7 (S.D.N.Y. Mar. 5, 2020), aff'd, No. 20-1300, 2021 WL 4434698 (2d Cir. Sept. 28,

2021) ("[T]he Second Circuit has specifically held that the New York State Unified Court System is unquestionably an arm of the State, and is entitled to Eleventh Amendment sovereign immunity." (internal quotation marks and citation omitted)). Accordingly, Tropea is shielded from suit by the Eleventh Amendment, and Plaintiff's Section 1983 claims are therefore implausible. See Watanmaker v. Clark, No. 09-CV-3877, 2010 WL 3516344, at *7 (E.D.N.Y. Aug. 31, 2010) (dismissing Section 1983 claims alleged against the Chief Clerk of the Suffolk County District Court as barred by the Eleventh Amendment (citing Casaburro v. Guiliani, 986 F. Supp. 176, 182 (S.D.N.Y. 1997) (granting state court clerk's motion to dismiss official capacity suit on Eleventh Amendment grounds)); Davis v. State of N.Y., No. 90-CV-6170, 1991 WL 156351, at *2 (S.D.N.Y. Aug. 6, 1991) (dismissing claim against state-court officials on Eleventh Amendment grounds), aff'd 106 F. App'x 82 (2d Cir. 2004); see also Manko v. Steinhardt, No. 11-CV-5430, 2012 WL 213715, at *3 (E.D.N.Y. Jan. 24, 2012) (finding clerk of court immune from claims arising from alleged failure to perform duties where there were no allegations that clerk of court acted in individual capacity); Peterkin v. Carr, No. 20-CV-0524, 2020 WL 7186796, *3 (E.D.N.Y. Dec. 7, 2020) (finding court staff member named in his official capacity entitled to judicial immunity (citing Treistman v. McGinty, 804 F. App'x 98 (2d Cir. 2020)) (affirming district court's determination that family court employees were immune from suit)). Thus, Plaintiff's Section 1983 claims against Tropea are also barred by the Eleventh Amendment and are DISMISSED WITH PREJUDICE as pursuant to 28 U.S.C. § 1915A(b).[6]

### c. Qualified Immunity

**\*5** Plaintiff's Section 1983 claims against Conner are not plausible because she is entitled to qualified immunity. Qualified immunity shields government officials from civil liability resulting from the performance of their discretionary functions only where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Wallace v. Suffolk County Police Dep't, 396 F. Supp. 2d 251, 265 (E.D.N.Y. 2005) (Seybert, J.) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity applies, courts consider "whether the facts shown make out

a violation of a constitutional right and whether the right at issue was clearly established at the time of the defendant's alleged misconduct." Tankleff v. County of Suffolk, No. 09-CV-1207, 2017 WL 2729084, at *17 (E.D.N.Y. June 23, 2017) (Seybert, J.) (quoting Estate of Devine v. Fusaro, 676 F. App'x 61, at *1 (2d Cir. 2017) (cleaned up)). Whether a right was clearly established should be analyzed from the perspective of a reasonable official, and the relevant inquiry is whether "it would be clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted." Id.

The United State Supreme Court has long extended qualified immunity to court reporters, such as Conner, where their conduct does not violate clearly established statutory or constitutional rights. See Antoine v. Byers & Anderson Inc., 508 U.S. 429 (1993) (holding that court reporters are qualifiedly, not absolutely, immune from suit); Harlow, 457 U.S. at 818 (discussing standard for establishing qualified immunity); see also Green v. v. Maraio, 722 F. 2d 1013, 1019 (2d Cir. 1983) (finding Rule 12(b)(6) dismissal of claim against court reporter on grounds of qualified immunity was appropriate where the complaint alleged court reporter acted pursuant to judge's explicit instructions). Indeed, "there is no constitutional or federal statutory right to an absolutely accurate trial transcript." Burrell v. Swartz, 558 F. Supp. 91, 92 (S.D.N.Y. 1983). Thus, insofar as Plaintiff complains that Conner excluded the words "ping data" at pages 86 and 87 from the 121-page sentencing transcript, in the absence of any constitutional or federal statutory right to an "absolutely accurate" transcript, Conner is protected by qualified immunity. [7] McCaw v. McPartland, No. 17-CV-6431, 2018 WL 10701609, at *1 (S.D.N.Y. Apr. 2, 2018).

**\*6** Accordingly, Plaintiff's Section 1983 claims against Conner are not plausible and are thus DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A(b). See Green, 722 F. 2d at 1019 (affirming dismissal of claims against court reporter on basis of qualified immunity and stating: "allowing ... dismissal whenever the basis for finding qualified immunity applicable is established by the complaint itself 'permit[s] "[i]nsubstantial lawsuits [to] be quickly terminated" ' ") (quoting Harlow, 457 U.S. at 814; further citation omitted); Griggs v. Crim. Ct. of City of N.Y., No. 21-CV-1899, 2021 WL 1535056, at *3 (S.D.N.Y. Apr. 19, 2021), appeal dismissed (Oct. 28, 2021) (sua sponte dismissing Section 1983 claims pursuant to 28 U.S.C. § 1915(e)

(2)(B) against two court reports in the absence of "any facts that suggest that the court reporters' conduct violated any of [p]laintiff's clearly established statutory or constitutional rights").

Given the dismissal of Plaintiff's federal claims against the Defendants on immunity grounds, the Court need not reach the merits. However, in light of his pro se status, the Court explains, to the extent that Plaintiff complains that the allegedly inaccurate sentencing transcript "deprived him of due process, such a claim would fail, because New York has adequate procedures for correcting alleged inaccuracies in transcripts." See id., (citing Curro, 884 F. Supp. at 720-23); Collins v. N.Y. City, No. 19-CV-7156, 2019 WL 4805692, at *3 (S.D.N.Y., 2019) (sua sponte dismissing Section 1983 claims upon initial screening, explaining "[t]o the extent [p]laintiff attempts to assert that inaccurate transcriptions deprived him of due process, such a claim would fail, because New York has adequate procedures for correcting alleged inaccuracies in transcripts") (citing Curro, 884 F. Supp. at 720-23) (discussing New York's transcript settlement procedures and finding they provide all the process due plaintiff). Notwithstanding having filed a complaint with the Tenth District Administrative Office, Suffolk County ("Tenth District AO") (see Compl. at ECF p. 18), Plaintiff has not alleged to have availed himself of other available transcript settlement procedures and Plaintiff has other means to seek the correction of his sentencing transcript. See Curro, 884 F. Supp. at 718 ("In addition [to available N.Y.S. post-deprivation remedies], any significant unresolved questions concerning the transcript's accuracy could be raised on appeal, and if found to be substantial, would permit a remand of the proceedings back to the original trial judge to resettle the transcript.") (citations omitted). [8]

Moreover, "[a] claim that deficiencies in the trial transcripts were so great that the plaintiff's constitutional rights on appeal were violated is 'a direct challenge to the validity of the conviction and the legality of plaintiff's confinement.' " Stokes v. Kreidler, No. 18-CV-0113, 2018 WL 1226027, at *3 (N.D.N.Y. Jan. 30, 2018), report and recommendation adopted, 2018 WL 1229699 (N.D.N.Y. Mar. 8, 2018) (citing Davison v. Reyes, No. 11-CV-0167, 2012 WL 948591, at *3 (E.D.N.Y. Mar. 20, 2012)). The sole remedy for a challenge to Plaintiff's conviction is under 28 U.S.C. § 2254, after exhausting his state court remedies. See, e.g., Bridgeforth v. County of Rensselaer, No. 08-CV-0779, 2008 WL 5156936,

at *4 (N.D.N.Y. Dec. 8, 2008), adhered to on denial of reconsideration, 2009 WL 102959 (N.D.N.Y. Jan. 13, 2009) (dismissing 🚩 Section 1983 claims alleging, inter alia, that the prosecutor, judge, and court reporter conspired to alter official court records because "any attack on the sentence for which Plaintiff is currently serving cannot be attacked in a 🚩 § 1983 action without an indication that such sentence has been reversed") (citing 🚩 Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)).

**\*7** Accordingly, as is readily apparent, Plaintiff's 🚩 Section 1983 claims are not plausible even if the Court were to consider the merits.

II. Leave to Amend
Given the Second Circuit's guidance that a pro se complaint should not be dismissed without leave to amend unless amendment would be futile, see 🚩 Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), the Court has carefully considered whether leave to amend is warranted. Here, because Plaintiff could not cure the substantive deficiencies set forth above with better pleading, amendment would be futile. Accordingly leave to amend the Complaint is DENIED.

CONCLUSION

Accordingly, **IT IS HEREBY ORDERED** that, upon this Court's Section 1915A(a) screening of the Complaint, Plaintiff fails to allege a plausible claim for relief for the reasons set forth above; and

**IT IS FURTHER ORDERED** that the Complaint is DISMISSED pursuant to 28 U.S.C. § 1915A(b) given that it fails to state a claim and seeks monetary relief from Defendants who are immune from such relief and it is frivolous; and

**IT IS FURTHER ORDERED** that Plaintiff's motion seeking a preliminary injunction (ECF No. 4) is DENIED; and

**IT IS FURTHER ORDERED** that, pursuant to 🚩 28 U.S.C. § 1915(a)(3), the Court certifies any appeal from this Order would not be taken in good faith. Therefore, in forma pauperis status is DENIED for the purpose of any appeal. See 🚩 Coppedge v. United States, 369 U.S. 438, 444-45 (1962); and

**IT IS FURTHER ORDERED** that the Clerk of Court mail a copy of this Order to the pro se Plaintiff at his address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**All Citations**

Slip Copy, 2023 WL 4207907

**Footnotes**

1    The Order also denied Plaintiff's Motion for Order to Show Cause seeking an order: (1) directing Defendants to show cause "why a preliminary injunction should not issue" enjoining "them from denying the Plaintiff access to the Records in his Case, County Court Ind. No. 308C-2020 and falsifying documents in the past and in the future," and (2) requesting Defendants temporarily be ordered to "restrain[ ] from commiting [sic] crimes including concealment of Records and falsifying documents." (Order at 1-2 (citing OSC Motion, ECF. No. 4, and Pl.'s Support Aff., ECF No. 4-1).) The Court ruled on Plaintiff's OSC Motion to the extent it sought a temporary restraining order ("TRO") and held in abeyance any determination regarding Plaintiff's request for a preliminary injunction pending its initial screening of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. (See Order at 2 n.1.)

2    Notably, the Sentencing Transcript filed by Plaintiff as Exhibit 18 to his Complaint (see ECF No. 7-4 at 2) reflects that the Court Reporter's sur-name is "Connors" rather than "Conner". For consistency with Plaintiff's Complaint, the Court will use "Conner" in this Memorandum and Order.

3    The Court presumes familiarity with Plaintiff's underlying state court criminal action, but notes that according to the information maintained by the New York State Office of Court Administration on its public website, in Suffolk County Court, Criminal Term, Case No. 00308C-2020, on July 18, 2022, Plaintiff was convicted by a jury on a multi-count indictment including Operating as a Major Trafficker, a class A-1 felony, and Conspiracy in the Second Degree, a class B felony. See https://iapps.courts.state.ny.us/webcrim (last visited on Sept. 16, 2022). In sum, Plaintiff challenges his arrest and conviction, asserting that he was illegally apprehended, and then convicted, based upon cellphone "ping data" collected without a warrant; he also maintains that evidence used against him at trial was illegally obtained via a warrantless search of his apartment. (See Sept. 23, 2022 Sent'g Hr'g Tr., ECF No. 7-4, at ECF pp. 81-87; see also Compl. at ECF pp. 16-17, 19.)

4    Although "[t]he doctrine of judicial immunity does not shield judges from claims for prospective declaratory relief," Krupp v. Todd, No. 14-CV-0525, 2014 WL 4165634, at *4 (N.D.N.Y. Aug. 19, 2014), "[a]bsolute judicial immunity bars declaratory judgment claims that are retrospective in nature in that they seek a declaration that a judge's past behavior has violated the Constitution." Leathersich v. Cohen, No. 18-CV-6363, 2018 WL 3537073, at *4 (W.D.N.Y. July 23, 2018) (internal quotation omitted) (citing cases); see also Moore v. City of N.Y., No. 12-CV-4206, 2012 WL 3704679, at *2 (E.D.N.Y. Aug. 27, 2012) ("Judicial immunity also bars ... claims for retrospective declaratory relief."). A review of the Complaint makes clear that it is targeted at Judge Collins's conduct in Plaintiff's concluded state court action. (See Compl., ECF No. 1, in toto.) Indeed, Plaintiff seeks not to vindicate some prospective right, but a declaration that Judge Collins's prior judicial actions were erroneous. Given that Plaintiff seeks retrospective relief, such claims are barred. Montesano v. New York, Nos. 05-CV-9574, 05-CV-10624, 2006 WL 944285, at *4 (S.D.N.Y. Apr. 12, 2006) (neither "injunctive nor declaratory relief is available to be used as a vehicle for disgruntled litigants to reverse adverse judgments") (citing 🚩⚠️Huminski v. Corsones, 396 F.3d 53 (2d Cir. 2005)).

5    Although Plaintiff alleges Tropea is the Clerk of the Court, County Court of Suffolk County (see ECF No. 1 at 2), the information maintained by the New York State Office of Court Administration on its public website reflects that Tropea is the Chief Clerk of that court. See https://ww2.nycourts.gov/courts/10jd/suffolk/county.shtml (last visited on June 16, 2023).

6    Similarly, given that Judge Collins is also a New York state employee, he too is shielded from liability in his official capacity by the Eleventh Amendment. See Silvels v. New York, 81 F. App'x 361, 362 (2d Cir. 2003) (affirming dismissal of 📁Section 1983 claims sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) on the grounds of judicial and Eleventh Amendment immunity). Moreover, given Conner's apparent employment by the New York State Office of Court Administration as an Official Senior Court Reporter, she too would be shielded from liability in her official capacity by the Eleventh Amendment. However, the Court need not reach that question for the reasons that follow.

7    Insofar as Plaintiff complains that the alleged transcript errors prejudice an appeal of his conviction, such facts may form the basis of a proper 📁Section 1983 claim at the appropriate time. A criminal defendant possesses a due process right to a "substantially accurate" transcript in a criminal proceeding. Argentieri v. Majerowicz, 158 F. App'x 306, 307 (2d Cir. 2005) (summary order). However, "[m]ore than an inaccurate transcript is necessary to state a claim, [ ] [and] a [p]laintiff must also show that the alleged inaccuracies adversely affected the outcome of her proceedings." Wilson v. Richards, No. 14-CV-2459, 2014 WL 6682579, at *2 (S.D.N.Y. Nov. 25, 2014) (citing Tedford v. Hepting, 990 F.2d 745, 748 (3d Cir. 1993) (internal quotation marks omitted); also citing Argentieri, 158 F. App'x at 308 (affirming summary judgment for defendant because plaintiff was

not "deprived in any way of his access to courts or right to an effective appeal")). Any such claim is premature at this juncture given that the appeal filed by Plaintiff is not yet perfected. See People v. Braithwaite, No. 2022-09001, May 5, 2023 Decision and Order (N.Y. App. Div., 2d Dep't 2023) (granting Braithwaite leave to prosecute the appeal as a poor person, assigning appellate counsel, and granting extension to perfect appeal). In turn, any related claim of prejudice is currently speculative, making it implausible. See Burrell, 558 F. Supp. at 92 ("[I]f a state official intentionally alters a transcript in a way that prejudices a defendant's appeal, the due process clause of the fourteenth amendment might be violated.... To prove such a violation plaintiff would have to show ... the existence of intentional tampering; then, he would have to prove the alleged errors and omissions in the trial transcript prejudice his statutory right to appeal." (citations omitted)); Godfrey v. Irvin, 871 F. Supp. 577, 584 (W.D.N.Y. 1994) ("In order to demonstrate denial of a fair appeal, [plaintiff] must show prejudice resulting from the missing or incomplete transcript."). Thus, any substantive due process claim is not plausible given the absence of any allegation that Plaintiff suffered "some tangible harm." Curro v. Watson, 884 F. Supp. 708, 720 (E.D.N.Y. 1995), aff'd, 100 F.3d 942 (2d Cir. 1996); see also Collins, 438 F. Supp. 2d 399, 415–16 (2d Cir. 2006) (plaintiff alleging violation of right to access to the courts must allege an "actual injury"). Upon careful review of the Complaint, Plaintiff has not alleged any tangible harm. (See Compl., in toto.) Plaintiff does not allege that he was not successful in his Article 78 proceedings. Even if he was unsuccessful in those proceedings, he does not allege that any such failure stemmed from the transcriptions. Compare Collins, 438 F. Supp. 2d at 417 (prisoner adequately alleged tangible harm where he alleged that his Article 78 proceeding was dismissed when prison officials failed to provide him with necessary copies of documents).

8    Plaintiff's allegation that the transcript was deliberately tampered with does not save his procedural due process claim because the state provides adequate post-deprivation remedies. See Curro, 884 F. Supp. at 717–19 (prisoner who alleged that court reporters deliberately altered the transcript of his criminal trial did not state procedural due process claim because New York provides a procedure for challenging inaccuracies in trial transcripts).

---

**End of Document**    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 3587600
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

Hiram Noel MENDEZ, Plaintiff,

v.

Reginald J. JOHNSON; Stephen A. Ronco;
Spencer Guerrero; Tina Cardinale; Belle Bowen;
Officer Dycktra; Officer Santos, Defendants.

22-CV-6811 (LTS)
|
Signed August 22, 2022

**Attorneys and Law Firms**

Hiram Noel Mendez, Cortland Manor, NY, Pro Se.

ORDER TO AMEND

LAURA TAYLOR SWAIN, Chief United States District
Judge:

**\*1** Plaintiff, who is appearing *pro se*, invokes the
Court's federal question jurisdiction, alleging that Defendants
violated his civil rights. The Court construes the complaint
as asserting claims under 42 U.S.C. § 1983. Named as
Defendants are City of Peekskill Judge Reginald J. Johnson;
Assistant District Attorney (ADA) Stephen A. Ronco; City of
Peekskill Clerk of Court Spenser Guerrero; City of Peekskill
Chief Clerk Belle Bowen;[1] Tina Cardinale; and Officers
Dycktra and Santos. By order dated August 10, 2022, the
Court granted Plaintiff's request to proceed *in forma pauperis*
(IFP), that is, without prepayment of fees.

For the reasons set forth below, the Court dismisses Plaintiff's
claims against Judge Johnson, Clerk of Court Guerrero, and
Chief Clerk Bowen, and grants Plaintiff leave to file an
amended complaint with respect to the remaining defendants
within 60 days of the date of this order.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or any portion
of the complaint, that is frivolous or malicious, fails to state
a claim on which relief may be granted, or seeks monetary

relief from a defendant who is immune from such relief. 28
U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack
Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court
must also dismiss a complaint when the Court lacks subject
matter jurisdiction of the claims raised. *See* Fed. R. Civ. P.
12(h)(3).

While the law mandates dismissal on any of these grounds,
the Court is obliged to construe *pro se* pleadings liberally,
*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and
interpret them to raise the "strongest [claims] that they
*suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d
471, 474 (2d Cir. 2006) (internal quotation marks and
citations omitted) (emphasis in original). But the "special
solicitude" in *pro se* cases, *id.* at 475 (citation omitted), has
its limits – to state a claim, *pro se* pleadings still must comply
with Rule 8 of the Federal Rules of Civil Procedure, which
requires a complaint to make a short and plain statement
showing that the pleader is entitled to relief.

**BACKGROUND**

The complaint alleges that Plaintiff's claims arose on January
12, 2020, in Peekskill, New York. The "facts" section of the
complaint states in its entirety:[2]

> I bealieve and do believe that I have
> concerning fiduciary relationships
> in the matter of HIRAM NOEL
> MENDEZ Estate Peekskill City Court
> claimed to be fiduciary's trustees over
> one's estate and they're also claiming
> to be beneficiaries so they're collecting
> on the estate I'm standing in there
> courts venue being auctioned off
> without my knowledge or consent or
> authorization and at the same time
> they're collecting. They want me to pay
> whether it's in my physical being or
> FRN what have you [F]ederal Reserve
> Notes. I do not wish to bring liability
> issues upon that court however my life
> has been place in jeopardy. I am being
> targeted and I require an advocate and
> the underline subject here is I don't

want to be a party of any tax fraud. Nunc pro tunc.

**\*2**  (ECF 2, at 5.)

Plaintiff describes his injuries as the following: "I had to go to the hospital because my handcuff I mean there had cuffs hurt me so bad I was bleading I needed to get professional help." (*Id.* at 6.)

In the section of the complaint form to state the relief he is seeking, Plaintiff writes,

> I demand compensation from the state in the amount of $240,000.00 for the commercial injuries I have sustained from the loss of my property, loss of time from work and cost certify mailings and affidavit notice of man's and parties involved the cost of filing and according as well the expensive and curve traveling as resolved to being deprived of use my private property automobile.

(*Id.*)

## DISCUSSION

Because Plaintiff states that Defendants violated his civil rights, the Court construes the complaint as asserting claims under 42 U.S.C. § 1983. To state a claim under Section, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

### A. Judicial and Quasi-Judicial Immunity

The Court dismisses Plaintiff's claims against Judge Johnson, Clerk of Court Guerrero, and Chief Clerk Bowen. Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities.

*Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* (citations omitted). This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation ...." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 9-10; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

This immunity also applies to government officials, including clerks of court and other court employees, for their acts that assist a judge in the performance of his or her judicial duties.

*See Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985); *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999); *see also Ali v. Pollak*, 182 F.3d 898 (2d Cir. 1999) (unpublished opinion) (extending judicial immunity to a pro se law clerk); *Oliva v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988) (extending judicial immunity to a judge's law clerk); *Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA*, No. 3:17-CV-2164, 2018 WL 2138631, at \*2 (D. Conn. May 9, 2018) (extending judicial immunity to a clerk of court); *Manko v. Ruchelsman*, No. 12-CV-4100, 2012 WL 4034038, \*2 (E.D.N.Y. Sept. 10, 2012) (same), *appeal dismissed*, 12-4080 (2d Cir. Jan. 31, 2013); *Gibson v. Brown*, No. 12-CV-0622, 2012 WL 1744845, at \*4-5 (E.D.N.Y. May 16, 2012) (extending judicial immunity to a pro se writ clerk), *appeal dismissed*, No. 12-2748 (2d Cir. Dec. 20, 2012).

**\*3**  Although the factual basis is not entirely clear, it appears that Plaintiff's claims against Johnson, Guerrero, and Bowen arise from actions taken with respect to a case before

Judge Johnson in the Peekskill City Court. Plaintiff fails to allege any facts showing that these defendants acted beyond the scope of their judicial responsibilities or outside their jurisdiction. *See Mireles*, 509 U.S. at 11-12. Because Plaintiff sues Johnson, Guerrero, and Bowen for "acts arising out of, or related to, individual cases before" Judge Johnson, these defendants are immune from suit for such claims. *Bliven*, 579 F.3d at 210. The Court therefore dismisses Plaintiff's claims against Johnson, Guerrero, and Bowen because they seek monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *See Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis* statute].").

**B. Claims against ADA Ronco**

Plaintiff also asserts claims against ADA Ronco. However, prosecutors are immune from civil suits for damages for acts committed within the scope of their official duties where the challenged activities are not investigative in nature but, rather, are " 'intimately associated with the judicial phase of the criminal process.' " *Giraldo v. Kessler*, 694 F.3d 161, 165 (2d Cir. 2012) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (absolute immunity is analyzed under a "functional approach" that "looks to the nature of the function performed, not the identity of the actor who performed it" (internal quotation marks and citations omitted)). In addition, prosecutors are absolutely immune from suit for acts that may be administrative obligations but are "directly connected with the conduct of a trial." *Van de Kamp v. Goldstein*, 555 U.S. 335, 344 (2009); *see also Ogunkoya v. Monaghan*, 913 F.3d 64, 70-72 (2d Cir. 2019) (holding that ADAs' direction as to where criminal defendant would be arraigned was in preparation for a court proceeding in which the prosecutors were acting as advocates, and ADAs were therefore shielded by absolute immunity (citing, *inter alia, Van de Kamp*)).

Because the complaint does not allege any facts explaining how ADA Ronco allegedly violated Plaintiff's rights, the Court is unable to determine whether prosecutorial immunity applies. If Plaintiff believes that Ronco has committed acts outside of the scope of his official duties as a prosecutor that have violated Plaintiff's rights, Plaintiff may reassert his claims against Ronco in the amended complaint, and Plaintiff must allege facts suggesting that prosecutorial immunity does not apply.

**C. Claims against Dycktra, Santos, and Cardinale**

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

Here, Plaintiff does not allege facts suggesting a plausible Section 1983 claim against Officer Dycktra, Officer Santos, or Tina Cardinale. Plaintiff names the two police officers as defendants and states that he was bleeding due to handcuffs, but he does not allege any facts explaining how these two defendants were personally involved in causing such injuries. Furthermore, Plaintiff names Tina Cardinale as a defendant in the caption, but the complaint does not allege any facts regarding Cardinale, including who she is or how she was personally involved in violating Plaintiff's rights. The Court therefore grants Plaintiff leave to file an amended complaint that alleges facts suggesting that Officer Dycktra, Officer Santos, and Tine Cardinale violated his rights.

**LEAVE TO AMEND**

**\*4** Plaintiff proceeds in this matter without the benefit of an attorney. District courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988).

Indeed, the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because it is not clear at this point that amendment would be futile, the Court grants Plaintiff 60 days' leave to amend his complaint to detail his Section 1983 claims against ADA Ronco, Tina Cardinale, and Officers Dycktra and Santos. If Plaintiff chooses to reassert his claims against Ronco, he must allege facts suggesting that Ronco has committed acts outside of the scope of his official duties as a prosecutor that have violated Plaintiff's rights.

In the "Statement of Claim" section of the amended complaint form, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, Plaintiff must provide it. Plaintiff should include all of the information in the amended complaint that Plaintiff wants the Court to consider in deciding whether the amended complaint states a claim for relief. That information should include:

    a) the names and titles of all relevant people;

    b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

    c) a description of the injuries Plaintiff suffered; and

    d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's amended complaint should tell the Court: who violated his federally protected rights and how; when and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's amended complaint will completely replace, not supplement, the original complaint, any facts or claims that Plaintiff wants to include from the original complaint must be repeated in the amended complaint.

**CONCLUSION**

The Court dismisses Plaintiff's claims against Johnson, Guerrero, and Bowen because they seek monetary relief against a defendant who is immune from such relief, 28 U.S.C. § 1915(e)(2)(B)(iii), and, consequently, as frivolous, 28 U.S.C. § 1915(e)(2)(B)(i). *See Mills*, 645 F.3d at 177 ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis* statute].").

Plaintiff is granted leave to file an amended complaint that complies with the standards set forth above. Plaintiff must submit the amended complaint to this Court's Pro Se Intake Unit within sixty days of the date of this order, caption the document as an "Amended Complaint," and label the document with docket number 22-CV-6811 (LTS). An Amended Civil Rights Complaint form is attached to this order. No summons will issue at this time. If Plaintiff fails to comply within the time allowed, and he cannot show good cause to excuse such failure, the complaint will be dismissed for failure to state a claim upon which relief may be granted.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

SO ORDERED.

Attachment

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____
_____
_____

*(In the space above enter the full name(s) of the plaintiff(s).)*

-against-

_____
_____
_____
_____
_____
_____

*(In the space above enter the full name(s) of the defendant(s). If you cannot fit the names of all of the defendants in the space provided, please write "see attached" in the space above and attach an additional sheet of paper with the full list of names. The names listed in the above caption must be identical to those contained in Part I. Addresses should not be included here.)*

**AMENDED
COMPLAINT**

under the Civil Rights Act,
42 U.S.C. § 1983

Jury Trial:  ☐ Yes    ☐ No
(check one)

___ Civ. _____ ( )

**I.    Parties in this complaint:**

A.    List your name, identification number, and the name and address of your current place of confinement. Do the same for any additional plaintiffs named. Attach additional sheets of paper as necessary.

Plaintiff's        Name _____
            ID# _____
            Current Institution _____
            Address _____
            _____

B.    List all defendants' names, positions, places of employment, and the address where each defendant may be served. Make sure that the defendant(s) listed below are identical to those contained in the above caption. Attach additional sheets of paper as necessary.

Defendant No. 1    Name _____    Shield #_____
            Where Currently Employed _____
            Address _____
            _____

*Rev. 01/2010*                    1

Defendant No. 2    Name _____    Shield #_____
            Where Currently Employed _____
            Address _____
            _____

Defendant No. 3    Name _____    Shield #_____
            Where Currently Employed _____
            Address _____
            _____

Defendant No. 4    Name _____    Shield #_____
            Where Currently Employed _____
            Address _____
            _____

Defendant No. 5    Name _____    Shield #_____
            Where Currently Employed _____
            Address _____
            _____

**II.    Statement of Claim:**

State as briefly as possible the facts of your case. Describe how each of the defendants named in the caption of this complaint is involved in this action, along with the dates and locations of all relevant events. You may wish to include further details such as the names of other persons involved in the events giving rise to your claims. Do not cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Attach additional sheets of paper as necessary.

A.    In what institution did the events giving rise to your claim(s) occur?
    _____
    _____

B.    Where in the institution did the events giving rise to your claim(s) occur?
    _____
    _____

C.    What date and approximate time did the events giving rise to your claim(s) occur?
    _____
    _____
    _____

D.    Facts:_____
    _____
    _____
    _____

*Rev. 01/2010*                    2

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

**III.    Injuries:**

If you sustained injuries related to the events alleged above, describe them and state what medical treatment, if any, you required and received.

_____
_____
_____
_____
_____
_____

**IV.    Exhaustion of Administrative Remedies:**

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Administrative remedies are also known as grievance procedures.

A.    Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?
    Yes _____    No _____

*Rev. 01/2010*                    3

If YES, name the jail, prison, or other correctional facility where you were confined at the time of the events giving rise to your claim(s).
_____
_____
_____

B.    Does the jail, prison, or other correctional facility where your claim(s) arose have a grievance procedure?
    Yes _____    No _____    Do Not Know _____

C.    Does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claim(s)?
    Yes _____    No _____    Do Not Know _____
    If YES, which claim(s)?

D.    Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose?
    Yes _____    No _____
    If NO, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?
    Yes _____    No _____

E.    If you did file a grievance, about the events described in this complaint, where did you file the grievance?

    1.    Which claim(s) in this complaint did you grieve?
        _____

    2.    What was the result, if any?
        _____

    3.    What steps, if any, did you take to appeal that decision? Describe all efforts to appeal to the highest level of the grievance process.
        _____
        _____
        _____

F.    If you did not file a grievance.

    1.    If there are any reasons why you did not file a grievance, state them here:
        _____
        _____

*Rev. 01/2010*                    4

2.  If you did not file a grievance but informed any officials of your claim, state who you informed, when and how, and their response, if any:
_____
_____
_____
_____
_____

G.  Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.
_____
_____
_____
_____
_____
_____

Note:  You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.

V.  Relief:

State what you want the Court to do for you (including the amount of monetary compensation, if any, that you are seeking and the basis for such amount).
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Rev. 01/2010                    5

_____
_____
_____

VI.  Previous lawsuits:

A.  Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?
Yes ____   No ____

B.  If your answer to A is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another sheet of paper, using the same format.)
1.  Parties to the previous lawsuit:
Plaintiff _____
Defendants _____
2. Court (if federal court, name the district; if state court, name the county) _____
____  3.  Docket or Index number _____
____  4.  Name of Judge assigned to your case _____
5.  Approximate date of filing lawsuit _____
6.  Is the case still pending? Yes ____  No ____
If NO, give the approximate date of disposition_____
7.  What was the result of the case? (For example: Was the case dismissed? Was there judgment in your favor? Was the case appealed?) _____
_____
_____

C.  Have you filed other lawsuits in state or federal court otherwise relating to your imprisonment?
Yes ____   No ____

D.  If your answer to C is YES, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another piece of paper, using the same format.)
1.  Parties to the previous lawsuit:
Plaintiff _____
Defendants _____
2.  Court (if federal court, name the district; if state court, name the county) _____
____  3.  Docket or Index number _____
____  4.  Name of Judge assigned to your case _____
5.  Approximate date of filing lawsuit _____

Rev. 01/2010                    6

6.  Is the case still pending? Yes ____  No ____
If NO, give the approximate date of disposition_____
7.  What was the result of the case? (For example: Was the case dismissed? Was there judgment in your favor? Was the case appealed?) _____
_____
_____

I declare under penalty of perjury that the foregoing is true and correct.
Signed this ____ day of _____, 20___.

Signature of Plaintiff  _____
Inmate Number          _____
Institution Address    _____
                       _____
                       _____

Note:  All plaintiffs named in the caption of the complaint must date and sign the complaint and provide their inmate numbers and addresses.

I declare under penalty of perjury that on this _____ day of _____, 20__, I am delivering this complaint to prison authorities to be mailed to the *Pro Se* Office of the United States District Court for the Southern District of New York.

Signature of Plaintiff  _____

Rev. 01/2010                    7

**All Citations**

Slip Copy, 2022 WL 3587600

**Footnotes**

WESTLAW   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

1    Plaintiff sometimes lists this defendant's last name as "Bowmen."

2    Plaintiff writes using irregular capitalization. For readability, the Court uses standard capitalization when quoting from the complaint. The Court otherwise quotes from the complaint verbatim and all grammar, spelling and punctuation are as in the original.

---

**End of Document**                                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA, Not Reported in Fed....

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 73 of 158

2018 WL 2138631
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Linda Lan CHMURA, Plaintiff,

v.

NORTON, HAMMERSLEY, LOPEZ & SKOKOS
INVERSO PA, Acme Investment Group LLC,
John W. Deidre Jago, Sanctuary Pelican Pointe
Hoa, Progressive Community MGT Inc., Judd,
Ulrich, Scarlett, Wickman, Simmonti & Dean, PA,
Stephen H. Kurvin, Judges LoGalbo Jr., Haworth,
Bennett Jr., Dakin, Roberts, Rushing, Sheriff
Thomas Knight, The Florida Bar, Defendants.

No. 3:17-cv-2164 (MPS)
|
Signed 05/09/2018

**Attorneys and Law Firms**

Linda Lan Chmura, Stamford, CT, pro se.

**INITIAL REVIEW ORDER**

Michael P. Shea, U.S.D.J.

**I. Background**

**\*1** Plaintiff Linda Lan Chmura, appearing *pro se*, brings this action under 42 U.S.C. §§ 1983, 1985, the Racketeer Influences and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1965(a), *et seq.*, and other statutory provisions. She seeks declaratory and injunctive relief, as well as punitive damages, in connection with a foreclosure action filed against her in Sarasota County, Florida.

Ms. Chmura's complaint arises out of a foreclosure of a property she owned in Sarasota County, Florida ("the Property"). Ms. Chmura alleges that she retained a law firm, Norton, Hammersley, Lopez & Skokos PA ("Norton Hammersley"), to represent her in the foreclosure action. Eventually, as a result of disagreements between Ms. Chmura and her counsel, Norton Hammersley terminated its representation. Ms. Chmura filed a legal malpractice action against the firm in Florida state court (Case No. 09 CC 001986 NC) and retained attorney Stephen Kurvin to represent her. Norton Hammersley asserted counterclaims, including that

Ms. Chmura owed the firm unpaid fees. Ms. Chmura fired Kurvin in May 2010 and ultimately lost the suit against Norton Hammersley. On September 13, 2010, Judge LoGalbo of the Florida Circuit Court for Sarasota County entered final judgment against Ms. Chmura and in favor of Norton Hammersley. (ECF No. 1-2 at 36-38.)

On May 26, 2011, Sheriff Thomas Knight executed the judgment by foreclosing upon and selling the Property to Acme Investment Group, LLC ("Acme"). (ECF No. 1-2 at 50.) Ms. Chmura then filed another lawsuit (Case No. 11 CA 004853 NC) against Norton Hammersley and Acme, seeking a declaratory judgment that the foreclosure sale was void. (ECF No. 1-2 at 91-94.) On October 28, 2011, Judge Roberts of the Florida Circuit Court for Sarasota County entered final judgment against Ms. Chmura and in favor of Norton Hammersley and Acme, stating that Acme owned the Property. (ECF No. 1-2 at 34.)

Ms. Chmura brings this action against Norton Hammersley, Acme Investment Group, her former attorney Stephen Kurvin, the Florida state court judges who rendered rulings against her, Clerk of Court Karen Rushing, Sheriff Thomas Knight, the Florida Bar, and various other individuals and entities. She seeks a declaration that the Sheriff's foreclosure sale was void, an injunction granting her the right to repossess the Florida property, and punitive damages.

**II. Legal Standard**

Because Ms. Chmura seeks to proceed *in forma pauperis*, the Court must evaluate her complaint and determine whether it should advance. 28 U.S.C. § 1915(e)(2) ("[T]he court shall dismiss [a] case at any time if the court determines that [the action] is frivolous or malicious; fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief.") The Court must construe *pro se* pleadings liberally, Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest arguments that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 472 (2d Cir. 2006). A *pro se* plaintiff, however, still must meet the standard of facial plausibility. See Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013) ("[A] *pro se* complaint must state a plausible claim for relief.") (citing Harris v. Mills, 572 F.3d 66, 73 (2d Cir. 2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA, Not Reported in Fed....

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 74 of 158

the reasonable inference that the defendant is liable for the misconduct alleged." 🚩 *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## III. Discussion

### A. Absolute Judicial Immunity

**\*2** Ms. Chmura's claims against Florida state court judges fail under the doctrine of absolute judicial immunity, which renders judges immune from suit for damages for judicial acts. 🚩 *Mireles v. Waco*, 502 U.S. 9, 11 (1991). "[A]cts arising out of, or related to, individual cases before the judge are considered judicial in nature." 🚩 *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). Absolute judicial immunity protects judges from liability for their judicial acts, even when the plaintiff alleges that the judge acted "maliciously or corruptly." 🚩 *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). Absolute immunity shields judges from all civil suits for damages, including suits under 🚩 Section 1983, 🚩 Section 1985, or civil RICO. *See, e.g., Peia v. U.S. Bankruptcy Court*, 62 Fed.Appx. 394, 396 (2d Cir. 2003) (summary order affirming dismissal of RICO claim as barred by judicial immunity); 🚩 *Turner v. Boyle*, 116 F. Supp. 3d 58, 81-82 (D. Conn. 2015) (dismissing 🚩 Section 1983 and 🚩 1985 claims as barred by judicial immunity).

Absolute immunity also bars Ms. Chmura's 🚩 Section 1983 claim for injunctive relief. The 1996 amendments to 🚩 Section 1983 make injunctive relief unavailable for claims against judges for actions taken in their judicial capacity "unless a declaratory decree was violated or declaratory relief was unavailable." 🚩 *Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999).

Ms. Chmura's claims against Defendants LoGalbo, Haworth, Bennett, Dakin, and Roberts arise from acts the judges took in their judicial capacities while presiding over Ms. Chmura's Florida lawsuits. Ms. Chmura does not allege that any of the actions violated a declaratory decree or that declaratory relief was unavailable. Therefore, the claims against Florida state court Judges LoGalbo, Haworth, Bennett, Dakin, and Roberts are dismissed under the doctrine of judicial immunity and because they are frivolous. *See* 🚩 28 U.S.C. § 1915(e) (2)(B)(i), (iii); 🚩 *Mills v. Fischer*, 645 F.3d 176, 177 (2d

Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the *in forma pauperis*] statute.").

### B. Absolute Quasi-Judicial Immunity

Clerk of Court Karen Rushing and Sheriff Thomas Knight are also immune from suit based on Ms. Chmura's allegations that Rushing entered writs of execution and Knight completed a Sheriff's sale as part of the foreclosure proceedings. Absolute immunity extends to nonjudicial officers who perform acts that "are integrally related to an ongoing judicial proceeding." 🚩 *Mitchell v. Fishbein*, 377 F.3d 157, 172-73 (2d Cir. 2004). Quasi-judicial immunity protects court clerks and sheriffs from suit "for performance of tasks which are judicial in nature and an integral part of the judicial process." 🚩 *Garcia v. Hebert*, No. 3:08CV95 (DFM), 2013 WL 1294412, at \*12 (D. Conn. Mar. 28, 2013) (quoting 🚩 *Rodriguez v. Weprin*, 116 F.3d 62, 66 (2d Cir. 1997) ), *aff'd*, 594 Fed.Appx. 26 (2d Cir. 2015) (summary order), *cert. denied*, No. 14-9720 (Oct. 5, 2015). *See also* 🚩 *Tornheim v. Eason*, 363 F. Supp. 2d 674, 677 (S.D.N.Y. 2005) (sheriff had absolute quasi-judicial immunity for effectuating a judgment's mandate). Ms. Chmura's claims against Rushing and Knight arise out of acts that were integrally related to the Florida foreclosure proceedings. Therefore, the Court dismisses Ms. Chmura's claims against Rushing and Knight as frivolous.

### C. *Rooker-Feldman* Doctrine

The Court must also dismiss this action because it lacks jurisdiction over Ms. Chmura's claims under the *Rooker-Feldman* doctrine. *See* 🚩 *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415-16 (1923); 🚩 *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482-86 (1983). That doctrine precludes federal district courts from reviewing final judgments of state courts. *See* 🚩 *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005) (holding that federal district courts are barred from deciding cases "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments"). The *Rooker-Feldman* doctrine applies where the plaintiff (1) lost in state court, (2) complains of injuries caused by the state-court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 75 of 158

Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA, Not Reported in Fed....

after the state-court judgment was rendered. 🚩 *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014). The *Rooker-Feldman* doctrine "concerns a district court's subject-matter jurisdiction." 🚩 *Lance v. Coffman*, 549 U.S. 437, 439 n.* (2007).

**\*3** Ms. Chmura lost her cases in the Florida state courts before she filed this suit. She complains of injuries that she suffered as a result of those losses and requests that this Court declare that the foreclosure sale was void and order that she may take possession of the Property. Thus, Ms. Chmura's federal claims are "inextricably intertwined" with the Florida state court judgments, and this Court lacks jurisdiction to hear those claims. *See, e.g., Andrews v. Citimortgage, Inc.*, No. 14-CV-1534 (JS)(AKT), 2015 WL 1509511, at \*4 (E.D.N.Y. Mar. 31, 2015) (holding that *Rooker-Feldman* doctrine precluded federal court jurisdiction over claims alleging injuries that occurred as a result of a state court foreclosure judgment); *Done v. Option One Mortg.*, No. 09-CV-4770, 2011 WL 1260820, at \*7 (E.D.N.Y. Mar. 30, 2011) ("Although plaintiff has made a cursory reference to seeking monetary damages, it is abundantly clear that the whole purpose of this action is to undo the foreclosure judgment. Therefore, *Rooker-Feldman* clearly applies."). Therefore, the Court dismisses Ms. Chmura's claims for lack of subject matter jurisdiction. *See* 🚩 Fed. R. Civ. P. 12(h)(3).[1]

**D. Statute of Limitations**

Ms. Chmura's claims also fail because they are barred by the statute of limitations. The statute of limitations for a 🚩 section 1983 claim is "that which the State provides for personal-injury torts." 🚩 *Wallace v. Kato*, 549 U.S. 384, 387 (2007). The Connecticut statute of limitations for personal injury actions is three years. "When a 🚩 § 1983 action is filed in the District of Connecticut, it is subject to a three-year statute of limitations." 🚩 *Walker v. Jastremski*, 159 F.3d 117,

119 (2d Cir. 1998). "RICO claims are subject to a four-year statute of limitations." 🚩 *Koch v. Christie's Intern. PLC*, 699 F.3d 141, 148 (2d Cir. 2012). "A cause of action to recover damages based on [a] RICO injury accrues to plaintiff at the time [she] discovered or should have discovered the injury." *Eno Farms Co-op. Ass'n., Inc. v. Corp. for Indep. Living*, 2007 WL 3308016, at \*4 (D. Conn. Nov. 5, 2007) (quoting 🚩 *Bankers Trust Co. v. Rhoades*, 859 F.2d 1096, 1102 (2d Cir. 1988) ) (alterations omitted).

Here, all of the conduct underlying Ms. Chmura's claims occurred more than four years ago, with the most recent conduct occurring on October 28, 2011, when Judge Roberts entered final judgment against Ms. Chmura and in favor of Norton Hammersley and Acme. Ms. Chmura does not allege that she discovered her injuries at a later point in time. Therefore, Ms. Chmura's claims are barred by the statutes of limitations applicable to both 🚩 Section 1983 and RICO claims and must be dismissed.[2]

**IV. Conclusion**

**\*4** For the reasons stated above, Plaintiff's claims are DISMISSED. The Court certifies under 🚩 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. The motion for leave to proceed *in forma pauperis* (ECF No. 2), emergency petitions (ECF Nos. 3 and 7), and motion to appoint counsel (ECF No. 6) are DENIED as moot.

IT IS SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2018 WL 2138631

**Footnotes**

1     Further, the complaint fails to plead facts showing why the Court would have personal jurisdiction over any of the defendants. *See* Fed. R. Civ. P. 8(a)(1) (requiring allegations showing that the court has jurisdiction);

Chmura v. Norton, Hammersley, Lopez & Skokos Inverso PA, Not Reported in Fed....

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 76 of 158

⚑ *Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.,* 619 F.3d 207, 213 (2d Cir. 2010) (where defendants have not appeared in a case, the court may dismiss a case *sua sponte* for lack of personal jurisdiction).

2    While the statute of limitations is an affirmative defense, the Court may consider it upon the filing of the complaint if "it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." ⚑ *Staehr v. Hartford Fin. Servs. Grp.,* 547 F.3d 406, 425 (2d Cir. 2008). Further, while the statute of limitations may be avoided where equitable tolling or other tolling doctrines apply, in this case the inapplicability of such doctrines is apparent because Ms. Chmura pleads no facts demonstrating that she was reasonably diligent in pursuing her claims and that extraordinary circumstances prevented her from filing her complaint within the limitations period. *See* ⚑ *Walker v. Jastremski,* 430 F.3d 560, 564 (2d Cir. 2005). The facts alleged indicate not only that she knew of the cause of action but that she was actively litigating related claims in another forum at a time that is well beyond the statute of limitations. Ms. Chmura asserts a "fraud upon the court" but pleads no facts alleging "fraudulent concealment of the existence of a cause of action," as required for equitable tolling on the basis of "fraud." *See* ⚑ *Pearl v. City of Long Beach,* 296 F.3d 76, 84 (2d Cir. 2002).

---

**End of Document**                                                              © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2012 WL 4034038
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Nella MANKO, Plaintiff,

v.

Leon RUCHELSMAN, individually and in his official capacity as Justice of the N.Y.S. Supreme Court of Kings County; Kagan, individually and in his official capacity as Law Clerk of Part 16 of the Supreme Court of Kings County; Leslie Torres, individually and in her official capacity as Deputy Commissioner of the N.Y.S. Division of Housing and Community Renewal Office of Rent Administration; Jerry M. Scher, individually and in his official capacity as Rent Administrator of the N.Y.S. Division of Housing and Community Renewal Office of Rent Administration; Mary Elizabeth Lacerenza, Esq., individually and in her official capacity as Attorney of the N.Y.S. Division of Housing and Community Renewal Office of Rent Administration; Susan E. Kearns, Esq., individually and in her official capacity as Attorney of the N.Y.S. Division of Housing and Community Renewal Office of Rent Administration; New York State Division Of Housing And Community Renewal Office Of Rent Administration; Shorefront Apartment Co., in its individual and professional capacities; Shorefront Apartments, LLC, in its individual and professional capacities; Alan Polen, in his individual and professional capacities; Robert Polen, in his individual and professional capacities HOward M. File, P.C., in his individual and professional capacities; Sylvia O. Hinds–Radix, individually and in her official capacity as Administrative Judge of the Supreme Court of Kings County; Kings County Supreme Court of the State of New York; Supreme Court of the State of New York, Kings County; Chief Clerk Nancy T. Sunshine, individually and in her official capacity as County Clerk of the Kings County Clerk's Office; Kings County Clerk's Office; William F. Mastro, Presiding Justice, Appellate Division of the N.Y.S. Supreme Court (Second Department); Appellate Division of the N.Y.S. Supreme Court (Second Department); A. Gail Prudenti, Former Presiding Justice, Appellate Division of the N.Y.S. Supreme Court (Second

Department); CHief Judge Jonathan Lippman; New York Court of Appeals; John Doe 1, individually and in official capacity; John Doe 2, individually and in official capacity; JOHN DOE 3, individually and in official capacity; John Doe 4, individually and in official capacity; John Doe 5, individually and in official capacity; State of New York, Defendants.

No. 12–CV–4100 (KAM)(LB).
|
Sept. 10, 2012.

**Attorneys and Law Firms**

Nella Manko, Brooklyn, NY, pro se.

### *MEMORANDUM AND ORDER*

MATSUMOTO, District Judge.

**\*1** On August 13, 2012, *pro se* plaintiff Nella Manko filed this action pursuant to 42 U.S.C. §§ 1983 and 1985, alleging that defendants violated and conspired to violate her constitutional rights during her 2008 and 2010 state court housing actions, Kings County Supreme Court Index Numbers 26610/2008 and 21055/2010. Plaintiff also alleges various pendent state law claims. Plaintiff seeks damages in the amount of $12 million. (*See* ECF No. 1, Complaint ("Compl.") at 37–38.) Plaintiff's request to proceed *in forma pauperis* is granted solely for the purpose of this Memorandum and Order, but the action is hereby dismissed under 28 U.S.C. § 1915(e)(2)(B).

#### 1. Litigation History

Plaintiff has filed five prior actions in this court, all of which challenge decisions made in state court actions and allege constitutional violations by judges, attorneys, court officers, court reporters, and the courts involved in those state court actions. *See Manko v. Finkelstein,* No. 11–CV–5054 (KAM) (E.D.N.Y. filed Oct. 14, 2011, dismissed Feb. 7, 2012); *Manko v. Steinhardt,* No. 11–CV–5103 (KAM) (E.D.N.Y. filed Oct. 17, 2011, dismissed Jan. 27, 2012); *Manko v. Steinhardt,* No. 11–CV–5430 (KAM) (E.D.N.Y. filed Oct. 31, 2011, dismissed Jan. 27, 2012); *Manko v. Steinhardt,* No. 12–CV–1472 (KAM) (E.D.N.Y. filed March 21, 2012, dismissed April 20, 2012); *Manko v. Steinhardt,* No. 12–CV–

2964 (KAM) (E.D.N.Y. filed June 12, 2012, dismissed June 20, 2012).

Although each of the five actions plaintiff previously filed in this court names slightly different parties, each seeks to challenge the proceedings and outcomes of state court actions and alleges that the defendants violated her constitutional rights during the course of the proceedings. In every instance, plaintiff's case has been dismissed on the bases of the *Rooker–Feldman,* [1] res judicata, or judicial and sovereign immunity doctrines.

By Order dated February 7, 2012, under docket number 1 l–CV–5054, the court requested that the plaintiff "abstain from filing further duplicative or frivolous litigation in this court." *Manko v. Finkelstein,* 2012 WL 407092, at *1 (E.D.N.Y. Feb.7, 2012). In addition, under docket number 12–CV–1472, the court "notifie[d] plaintiff that similar future filings will subject her to a filing injunction." *Manko v. Steinhardt,* 12–CV–1472 (KAM), Order dated April 17, 2012, at 3, 6–7 (setting forth plaintiff's litigation history and giving notice that similar future filings will likely subject her to a filing injunction). Then, in its Order dated May 15, 2012, denying plaintiff's motion for reconsideration in *Manko v. Steinhardt,* No. 11–CV–5103 (KAM), the court reiterated its warning but did not yet enjoin plaintiff because she "filed this motion to reconsider on the same day that the court entered the Memorandum and Order in the subsequent action, *Manko v. Steinhardt,* 12–CV–1472." *Manko v. Steinhardt,* 2012 WL 1744836, at *2 (E.D.N.Y. May 15, 2012).

**\*2** Finally, by Order dated June 20, 2012, the court dismissed plaintiff's fifth duplicative action and ordered plaintiff to show cause within thirty days why she should not be barred from filing any new actions under the *in forma pauperis* statute without first obtaining the court's permission to do so. *Manko v. Steinhardt,* No. 12–CV–2964, slip op. at 7–8 (E.D.N.Y. June 20, 2012). On July 20, 2012, plaintiff requested an extension of time until August 20, 2012, to respond to the order to show cause. Although the court granted plaintiff's request, plaintiff's response failed to address the court's order to show cause. On August 30, 2012, the court entered an Order barring plaintiff from filing any new actions under the *in forma pauperis* statute without first obtaining the court's permission. Plaintiff filed this action on August 13, 2012, without seeking or obtaining prior court permission.

**2. Standard of Review**

Under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." A court must construe a *pro se* litigant's pleadings liberally, however, *see Chavis v. Chappius,* 618 F.3d 162, 171 (2d Cir.2010), especially when those pleadings allege civil rights violations. *See Erickson v. Pardus,* 551 U.S. 89, 94, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Sealed Plaintiff v. Sealed Defendant # 1,* 537 F.3d 185, 191–93 (2d Cir.2008).

**3. Deficiencies in the Complaint**

Plaintiff is advised that, as currently stated, the complaint is barred by the doctrines of *Rooker–Feldman* and judicial, quasi-judicial and sovereign immunity. In *Hoblock v. Albany Cnty. Bd. of Elections,* the Second Circuit set forth four factors to determine whether the Rooker–Feldman doctrine applies: (1) plaintiff lost in state court; (2) plaintiff complains of the injury caused by the state court order; (3) plaintiff wants this court to review and reject the state court's determinations, and (4) the state court determinations in question were rendered before this action was commenced. 422 F.3d 77, 85 (2d Cir.2005). Each of the *Hoblock* requirements are met in the instant case which, in essence, asks for relief from a state court order against the plaintiff. Therefore, because the district court lacks subject-matter jurisdiction over this action, the court dismisses the complaint pursuant to Federal Rule of Civil Procedure 12(h)(3). *See id.* at 86.

In addition, each of the named state court employee defendants are protected from suit by absolute immunity. Because the claims against the judges are based solely on judicial acts performed in their judicial capacity, such claims against the judicial defendants are barred by the doctrine of judicial immunity. *Bliven v. Hunt,* 579 F.3d 204, 209 (2d Cir.2009). Moreover, a clerk of court, like defendant Sunshine named herein, and law clerks, like defendant Kagan, are absolutely immune from claims arising from their failure to properly manage the court calendar. *See Rodriguez v. Weprin,* 116 F.3d 62, 66 (2d Cir.1997) (finding that the court's "inherent power to control its docket is part of its function of resolving disputes between parties" and is therefore "a

function for which judges and their supporting staff are afforded absolute immunity"); *Oliva v. Heller,* 839 F.2d 37, 39–40 (2d Cir.1988).

**\*3** Plaintiff has also named as defendants a host of private parties, including her apartment building and its operators. These private parties are not subject to suit under 42 U.S.C. § 1983. *Rendell–Baker v. Kohn,* 457 U.S. 830, 838–42, 102 S.Ct. 2764, 73 L.Ed.2d 418 (1982) (affirming dismissal of § 1983 claim because defendants not state actors); *Flagg Bros. Inc. v. Brooks,* 436 U.S. 149, 155–57, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (stating § 1983 reaches only deprivations of rights by persons acting under color of law); *Moose Lodge No. 107 v. Irvis,* 407 U.S. 163, 173, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972) (distinguishing private conduct from state action).

Finally, plaintiff has named as defendants the State of New York, the New York State Division of Housing and Community Renewal Office of Rent Administration ("HCR"), and several New York state courts. All of these parties are absolutely immune from suit. The Eleventh Amendment bars § 1983 claims against states, absent their consent. *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100–01, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *Gollomp v. Spitzer,* 568 F.3d 355, 366 (2d Cir.2009) (the New York State Unified Court System is an arm of the State, and therefore protected by Eleventh Amendment immunity); *Morris v. Katz,* No. 11–CV–3556, 2011 WL 3918965, at \*5 (E.D.N.Y. Sept.4, 2011) (HCR is immune from suit under the Eleventh Amendment); *Mullin v. P & R Educ. Servs., Inc.,* 942 F.Supp. 110, 112–13 (E.D.N.Y.1996) (holding that § 1983 claims against former DMV Commissioners are barred by the Eleventh Amendment).

Finally, the court finds that the filing of this action is frivolous and malicious. 28 U.S.C. § 1915(e)(2)(B)(i).

### CONCLUSION

For the reasons set forth above, the complaint is dismissed. 28 U.S.C. § 1915(e)(2)(B). The court's Order enjoining plaintiff from filing any new *in forma pauperis* action without first obtaining permission from the court remains in effect.

The court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See Coppedge v. United States,* 369 U.S. 438, 444–45, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962).

The Clerk of the Court is respectfully requested to serve a copy of this Memorandum and Order on plaintiff and note service on the docket.

SO ORDERED.

### All Citations

Not Reported in F.Supp.2d, 2012 WL 4034038

---

## Footnotes

1     Under the *Rooker–Feldman* doctrine, cases "brought by [a] state-court loser[ ] complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments" are barred in federal courts, which lack subject-matter jurisdiction over such actions. *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).

---

2023 WL 4207907

Only the Westlaw citation is currently available.

United States District Court, E.D. New York.

Keston BRAITHWAITE, Plaintiff,

v.

Frank TROPEA, Clerk of Court, County
Court, Suffolk County; Honorable John B.
Collins, Justice Supreme Court; and Susan
Conner, Senior Court Reporter, Defendants.

23-CV-1431(JS)(AYS)
|
Signed June 27, 2023

**Attorneys and Law Firms**

For Plaintiff: Keston Braithwaite, pro se, 22B4593, Sing Sing
Correctional Facility, 354 Hunter Street, Ossinig, New York
10562.

For Defendants: No appearance.

MEMORANDUM AND ORDER

SEYBERT, District Judge:

**\*1** By Order dated March 2, 2023 (the "Order"), the
Court granted the Application to Proceed in District Court
Without Paying Fees or Costs (Application, ECF No. 2)
filed by incarcerated Plaintiff Keston Braithwaite ("Plaintiff")
together with his pro se Complaint (Compl., ECF No. 1).[1]
(See Order, ECF No. 9.) The Complaint is brought pursuant
to ⚑ 42 U.S.C. § 1983 (⚑ Section 1983") against Frank
Tropea, the Clerk of the Court, County Court Suffolk County
("Tropea"), Honorable John B. Collins ("Judge Collins"),
and Susan Conner,[2] Senior Court Reporter ("Conner";
collectively, the "Defendants").

Upon review of Plaintiff's Complaint (ECF No. 1) in
accordance with 28 U.S.C. § 1915A(a), the Court finds
that Plaintiff has not alleged a plausible claim for relief.
Accordingly, for the reasons that follow, the Complaint is
DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. §
1915A(b). Given the dismissal of the Complaint, Plaintiff's
motion seeking a preliminary injunction (ECF No. 4) is
DENIED.

RELEVANT BACKGROUND AND
SUMMARY OF THE COMPLAINT

Plaintiff is a prolific filer in this Court; excluding the instant
action, since January 2022, he has filed eight unsuccessful
pro se in forma pauperis complaints relating to his arrest and
state court criminal prosecution. See Braithwaite v. Gaitman,
No. 22-CV-0974, 2022 WL 14059127, at *1 n.2 (E.D.N.Y.
Oct. 24, 2022) (identifying those eight other actions). In his
present ⚑ Section 1983 Complaint, which relates to his arrest
and state court criminal prosecution,[3] Plaintiff asserts that:
(1) (a) even though Plaintiff requested specific documents
and his entire state-court file from May 5, 2022 from the
County Court, (b) the County Court responded to Plaintiff's
request indicating those documents were available, consisted
of 220 pages, and would cost $143 to copy, and (c) Plaintiff
submitted the $143 copying fee (as a money order), Tropea
failed to turn over the requested copies of Plaintiff's state-
court file (see Compl. at ECF pp. 5-7, 11-12); (2) thereafter,
"Tropea chose to forward Plaintiff's $143 money order to
Judge John B. Collins" (id. at ECF p. 16); (3) in turn, Judge
Collins returned Plaintiff's $143 money order to Plaintiff's
defense attorney in open court "to block Plaintiff from
inspecting his Court file" (id. at ECF pp. 9, 12); and (4) on July
5, 2022, Plaintiff's defense attorney handed Plaintiff a partial
copy of his state-court file, which did not include filings made
prior to June 2022 (see id.; see also id. at ECF p. 16), and
which Plaintiff believes was done under Tropea's and Judge
Collin's directives (see id. at ECF p. 15).

**\*2** As to Conner, Plaintiff alleges: "Conner[ ] deliberately
[sic] falsified documents for the District Attorney of Suffolk
County and Judge Collins to hinder Plaintiff's appeal," (id. at
ECF p. 16), to wit, "Conner[ ]chose not to record Plaintiff's
Statement 'Ping Data' in favor for her colleagues [sic] Jacob
Kubetz [the Assistant District Attorney] and Judge Collins."
(Id. at ECF p. 18.) Moreover, despite Plaintiff's requests
that Conner correct the sentencing transcript during which
Plaintiff referred to "Ping Data", she has not done so. (See id.)

Based upon these allegations, Plaintiff claims his First, Fifth,
Sixth, and Fourteenth Amendment Constitutional rights have
been violated. (See Compl. at ECF p. 4.) He further asserts
the following ten purported causes of action:

  1. denial of judicial records;

2. fraud on the court;

3. concealment of records;

4. falsify evidence/documents;

5. altered transcripts;

6. procedural due process;

7. substantive due process;

8. Fourteenth Amendment violation;

9. Conspiracy to interfere with civil rights; and

10. Deprivation of civil rights.

(Compl. at ECF p. 19.) By way of relief, Plaintiff requests:

> [d]eclaratory relief, injunctive relief in that my court file that consist of 220 pages that was filed before May 5th, 2022, that the Clerk of the Court including Frank Tropea refrain from falsifying documents for the District Attorney Suffolk County, and Judge Collins such as back dating and filing Search and Arrest warrants after they admitted that there was no Search and Arrest warrants filed in their office, and Susan O'Conner [sic] fix errors in my sentencing transcripts so I can bring up those issues in my appeal. I am seek [sic] compensatory damages in that I would like my entire Court file with no pages missing (Certified, true and accurate filing dates), a True and accurate copy of my sentencing transcript, and the costs and fees I spent to prosecute this action, Past and future damages, Punitive damages. I would like all money damages in the sum of $30,000,000.00.

(Id. at ECF pp. 20-21.)

## DISCUSSION

### I. Legal Standards

#### A. Consideration of the Complaint Under 28 U.S.C. § 1915A

Section 1915A of Title 28 requires federal district courts to screen complaints brought by prisoners who seek relief against a governmental entity or an officer or employee of a governmental entity. See Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915A(a). The Court must dismiss a prisoner's civil rights complaint, or any portion of that complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915A(b); see also Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007). The Court is required to dismiss the action as soon as it makes such a determination. See 28 U.S.C. § 1915A; Avant v. Miranda, No. 21-CV-0974, 2021 WL 1979077, at *2 (E.D.N.Y. May 18, 2021).

Courts are obliged to construe the pleadings of a pro se plaintiff liberally. See Sealed Plaintiff v. Sealed Defendant, 537 F.3d 185, 191 (2d Cir. 2008); McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004). However, a complaint must plead sufficient facts to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Id.; accord Wilson v. Merrill Lynch & Co., 671 F.3d 120, 128 (2d Cir. 2011). While "detailed factual allegations" are not required, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 555).

#### B. Section 1983

**\*3** Section 1983 provides:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured....

42 U.S.C. § 1983; accord Rehberg v. Paulk, 566 U.S. 356 (2012). To state a claim under Section 1983, a plaintiff must " ' allege that (1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States.' " Rae v. County of Suffolk, 693 F. Supp. 2d 217, 223 (E.D.N.Y. 2010) (quoting Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999)).

Plaintiff alleges a deprivation of his First, Fifth, Sixth, and Fourteenth Amendment rights (Compl., ECF No. 1, at 4 (Section II.B)) and, as liberally construed, the Complaint purports to allege denial of a fair trial, as well as procedural and substantive due process claims.

### C. Application

Before addressing the merits of Plaintiff's Section 1983 claims, the Court first considers several threshold barriers to the adjudication of his claims.

#### 1. Immunity

##### a. Absolute Judicial Immunity

Plaintiff's Section 1983 claims against Judge Collins are subject to dismissal because, as a judge employed by the state of New York, he is absolutely immune from suit. It is well-established that judges "generally have absolute immunity" from suit for judicial acts performed in their judicial capacities. Bliven v. Hunt, 579 F.3d 204, 209 (2d Cir. 2009) (citing Mireles v. Waco, 502 U.S. 9,

11 (1991)); Hardy-Graham v. Southampton Just. Ct., No. 20-CV-0981, 2021 WL 260102, at *5 (E.D.N.Y. Jan. 25, 2021) (Seybert, J.). This absolute "judicial immunity is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his authority." Mireles, 502 U.S. at 11, 13 (internal quotation marks and citation omitted; ellipsis in original). Rather, judicial immunity is overcome in only two instances. The first instance is "liability for nonjudicial actions, i.e., actions not taken in the judge's judicial capacity." Bliven, 579 F.3d at 209 (quoting Mireles, 502 U.S. at 11). The second instance is liability arising from actions taken " 'in the complete absence of all jurisdiction.' " Basile v. Connolly, 538 F. App'x 5, 7 (2d Cir. 2013) (quoting Mireles, 502 U.S. at 11-12; emphasis in the original).

Here, even upon a liberal construction, Plaintiff's allegations do not suggest that either exception applies to overcome absolute judicial immunity. Clearly Judge Collins acted within his jurisdiction given that the alleged conducted occurred in open court during the criminal prosecution that lead to Plaintiff's state court conviction. There can be no doubt that state court prosecution for violations of state laws relating to drug possession and weapon possession is the very kind of case over which state courts have jurisdiction. Accordingly, Judge Collins is shieled from suit by absolute immunity. [4]

**\*4** The absolute immunity afforded to judges is not limited to judges alone, but also extends to "certain others who perform functions closely associated with the judicial process." Oliva v. Heller, 839 F.2d 37, 39 (2d Cir. 1988) (citation omitted); see also McKeown v. N.Y. State Comm'n on Judicial Conduct, 377 F. App'x 121, 124 (2d Cir. 2016). Here, Tropea is entitled to absolute immunity given that Plaintiff's allegations against him concern conduct that is "closely related to the judicial process." Jackson v. Pfau, 523 F. App'x 736, 737-38 (2d Cir. 2013) (affirming dismissal pursuant to Section 1915(e)(2)(B) of pro se plaintiff's Section 1983 claims against judicial law clerk, the N.Y.S. Chief Administrative Judge, court attorneys, and the Chief Clerks of several state courts, finding "defendants were entitled to judicial immunity, because [ ][the] allegations against each of them concerned actions that were judicial in nature or closely related to the judicial process") (citing Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997)

(noting that "[c]ourts have extended the absolute judicial immunity afforded judges to individuals ... who perform functions closely associated with the judicial process," and holding that judges and their supporting staff are absolutely immune in matters regarding "[a] court's inherent power to control its docket")).

As a result, Plaintiff's ⚑ Section 1983 claims against Judge Collins and Tropea are not plausible as a matter of law and are, therefore, DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A(b). See ⚑ Mills v. Fischer, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

### b. Eleventh Amendment Immunity

" '[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogate[d] the states' Eleventh Amendment immunity....' " Griggs v. Crim. Ct. of City of N.Y., No. 21-CV-1899, 2021 WL 1535056, at *2 (S.D.N.Y. Apr. 19, 2021), appeal dismissed (Oct. 28, 2021) (quoting ⚑ Gollomp v. Spitzer, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, alteration in original)). "This immunity shields States from claims for money damages, injunctive relief, and retrospective declaratory relief." Griggs, 2021 WL 1535056, at *2 (citing ⚑ Green v. Mansour, 474 U.S. 64, 72-74 (1985); ⚑ Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984)).

Plaintiff claims that Tropea failed to perform his duties; yet, there are no allegations that Tropea acted outside of his official capacity. (See Compl., in toto.) Indeed, Tropea is a state officer because he is the Chief Clerk of the Suffolk County Court, and the Suffolk County Court is an arm of the New York state court system.[5] See ⚑ Gollomp, 568 F.3d at 366–67 ("[E]very court to consider the question of whether the New York State Unified Court System is an arm of the State has concluded that it is, and is therefore protected by Eleventh Amendment sovereign immunity."); ⚑ Fishman v. Off. of Ct. Admin. N.Y.S. Cts., No. 18-CV-0282, 2020 WL 1082560, at *7 (S.D.N.Y. Mar. 5, 2020), aff'd, No. 20-1300, 2021 WL 4434698 (2d Cir. Sept. 28, 2021) ("[T]he Second Circuit has specifically held that the New York State Unified Court System is unquestionably an arm of the State, and is entitled to Eleventh Amendment sovereign immunity." (internal quotation marks and citation omitted)). Accordingly, Tropea is shielded from suit by the Eleventh Amendment, and Plaintiff's ⚑ Section 1983 claims are therefore implausible. See Watanmaker v. Clark, No. 09-CV-3877, 2010 WL 3516344, at *7 (E.D.N.Y. Aug. 31, 2010) (dismissing ⚑ Section 1983 claims alleged against the Chief Clerk of the Suffolk County District Court as barred by the Eleventh Amendment (citing ⚑ Casaburro v. Giuliani, 986 F. Supp. 176, 182 (S.D.N.Y. 1997) (granting state court clerk's motion to dismiss official capacity suit on Eleventh Amendment grounds)); Davis v. State of N.Y., No. 90-CV-6170, 1991 WL 156351, at *2 (S.D.N.Y. Aug. 6, 1991) (dismissing claim against state-court officials on Eleventh Amendment grounds), aff'd 106 F. App'x 82 (2d Cir. 2004); see also Manko v. Steinhardt, No. 11-CV-5430, 2012 WL 213715, at *3 (E.D.N.Y. Jan. 24, 2012) (finding clerk of court immune from claims arising from alleged failure to perform duties where there were no allegations that clerk of court acted in individual capacity; Peterkin v. Carr, No. 20-CV-0524, 2020 WL 7186796, *3 (E.D.N.Y. Dec. 7, 2020) (finding court staff member named in his official capacity entitled to judicial immunity (citing Treistman v. McGinty, 804 F. App'x 98 (2d Cir. 2020)) (affirming district court's determination that family court employees were immune from suit)). Thus, Plaintiff's ⚑ Section 1983 claims against Tropea are also barred by the Eleventh Amendment and are DISMISSED WITH PREJUDICE as pursuant to 28 U.S.C. § 1915A(b).[6]

### c. Qualified Immunity

**\*5** Plaintiff's ⚑ Section 1983 claims against Conner are not plausible because she is entitled to qualified immunity. Qualified immunity shields government officials from civil liability resulting from the performance of their discretionary functions only where their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ⚑ Wallace v. Suffolk County Police Dep't, 396 F. Supp. 2d 251, 265 (E.D.N.Y. 2005) (Seybert, J.) (quoting ⚑ Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). To determine whether qualified immunity applies, courts consider "whether the facts shown make out

a violation of a constitutional right and whether the right at issue was clearly established at the time of the defendant's alleged misconduct." Tankleff v. County of Suffolk, No. 09-CV-1207, 2017 WL 2729084, at *17 (E.D.N.Y. June 23, 2017) (Seybert, J.) (quoting Estate of Devine v. Fusaro, 676 F. App'x 61, at *1 (2d Cir. 2017) (cleaned up)). Whether a right was clearly established should be analyzed from the perspective of a reasonable official, and the relevant inquiry is whether "it would be clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted." Id.

The United State Supreme Court has long extended qualified immunity to court reporters, such as Conner, where their conduct does not violate clearly established statutory or constitutional rights. See Antoine v. Byers & Anderson Inc., 508 U.S. 429 (1993) (holding that court reporters are qualifiedly, not absolutely, immune from suit); Harlow, 457 U.S. at 818 (discussing standard for establishing qualified immunity); see also Green v. v. Maraio, 722 F. 2d 1013, 1019 (2d Cir. 1983) (finding Rule 12(b)(6) dismissal of claim against court reporter on grounds of qualified immunity was appropriate where the complaint alleged court reporter acted pursuant to judge's explicit instructions). Indeed, "there is no constitutional or federal statutory right to an absolutely accurate trial transcript." Burrell v. Swartz, 558 F. Supp. 91, 92 (S.D.N.Y. 1983). Thus, insofar as Plaintiff complains that Conner excluded the words "ping data" at pages 86 and 87 from the 121-page sentencing transcript, in the absence of any constitutional or federal statutory right to an "absolutely accurate" transcript, Conner is protected by qualified immunity.[7] McCaw v. McPartland, No. 17-CV-6431, 2018 WL 10701609, at *1 (S.D.N.Y. Apr. 2, 2018).

 *6 Accordingly, Plaintiff's Section 1983 claims against Conner are not plausible and are thus DISMISSED WITH PREJUDICE pursuant to 28 U.S.C. § 1915A(b). See Green, 722 F. 2d at 1019 (affirming dismissal of claims against court reporter on basis of qualified immunity and stating: "allowing ... dismissal whenever the basis for finding qualified immunity applicable is established by the complaint itself 'permit[s] "[i]nsubstantial lawsuits [to] be quickly terminated" ' ") (quoting Harlow, 457 U.S. at 814; further citation omitted); Griggs v. Crim. Ct. of City of N.Y., No. 21-CV-1899, 2021 WL 1535056, at *3 (S.D.N.Y. Apr. 19, 2021), appeal dismissed (Oct. 28, 2021) (sua sponte dismissing Section 1983 claims pursuant to 28 U.S.C. § 1915(e)

(2)(B) against two court reports in the absence of "any facts that suggest that the court reporters' conduct violated any of [p]laintiff's clearly established statutory or constitutional rights").

Given the dismissal of Plaintiff's federal claims against the Defendants on immunity grounds, the Court need not reach the merits. However, in light of his pro se status, the Court explains, to the extent that Plaintiff complains that the allegedly inaccurate sentencing transcript "deprived him of due process, such a claim would fail, because New York has adequate procedures for correcting alleged inaccuracies in transcripts." See id., (citing Curro, 884 F. Supp. at 720-23); Collins v. N.Y. City, No. 19-CV-7156, 2019 WL 4805692, at *3 (S.D.N.Y., 2019) (sua sponte dismissing Section 1983 claims upon initial screening, explaining "[t]o the extent [p]laintiff attempts to assert that inaccurate transcriptions deprived him of due process, such a claim would fail, because New York has adequate procedures for correcting alleged inaccuracies in transcripts") (citing Curro, 884 F. Supp. at 720-23) (discussing New York's transcript settlement procedures and finding they provide all the process due plaintiff). Notwithstanding having filed a complaint with the Tenth District Administrative Office, Suffolk County ("Tenth District AO") (see Compl. at ECF p. 18), Plaintiff has not alleged to have availed himself of other available transcript settlement procedures and Plaintiff has other means to seek the correction of his sentencing transcript. See Curro, 884 F. Supp. at 718 ("In addition [to available N.Y.S. post-deprivation remedies], any significant unresolved questions concerning the transcript's accuracy could be raised on appeal, and if found to be substantial, would permit a remand of the proceedings back to the original trial judge to resettle the transcript.") (citations omitted).[8]

Moreover, "[a] claim that deficiencies in the trial transcripts were so great that the plaintiff's constitutional rights on appeal were violated is 'a direct challenge to the validity of the conviction and the legality of plaintiff's confinement.' " Stokes v. Kreidler, No. 18-CV-0113, 2018 WL 1226027, at *3 (N.D.N.Y. Jan. 30, 2018), report and recommendation adopted, 2018 WL 1229699 (N.D.N.Y. Mar. 8, 2018) (citing Davison v. Reyes, No. 11-CV-0167, 2012 WL 948591, at *3 (E.D.N.Y. Mar. 20, 2012)). The sole remedy for a challenge to Plaintiff's conviction is under 28 U.S.C. § 2254, after exhausting his state court remedies. See, e.g., Bridgeforth v. County of Rensselaer, No. 08-CV-0779, 2008 WL 5156936,

at *4 (N.D.N.Y. Dec. 8, 2008), adhered to on denial of reconsideration, 2009 WL 102959 (N.D.N.Y. Jan. 13, 2009) (dismissing ⚐Section 1983 claims alleging, inter alia, that the prosecutor, judge, and court reporter conspired to alter official court records because "any attack on the sentence for which Plaintiff is currently serving cannot be attacked in a ⚐§ 1983 action without an indication that such sentence has been reversed") (citing ⚐Heck v. Humphrey, 512 U.S. 477, 486-87 (1994)).

*7  Accordingly, as is readily apparent, Plaintiff's ⚐Section 1983 claims are not plausible even if the Court were to consider the merits.

II. Leave to Amend
Given the Second Circuit's guidance that a pro se complaint should not be dismissed without leave to amend unless amendment would be futile, see ⚐Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000), the Court has carefully considered whether leave to amend is warranted. Here, because Plaintiff could not cure the substantive deficiencies set forth above with better pleading, amendment would be futile. Accordingly leave to amend the Complaint is DENIED.

<u>CONCLUSION</u>

Accordingly, **IT IS HEREBY ORDERED** that, upon this Court's Section 1915A(a) screening of the Complaint, Plaintiff fails to allege a plausible claim for relief for the reasons set forth above; and

**IT IS FURTHER ORDERED** that the Complaint is DISMISSED pursuant to 28 U.S.C. § 1915A(b) given that it fails to state a claim and seeks monetary relief from Defendants who are immune from such relief and it is frivolous; and

**IT IS FURTHER ORDERED** that Plaintiff's motion seeking a preliminary injunction (ECF No. 4) is DENIED; and

**IT IS FURTHER ORDERED** that, pursuant to ⚐28 U.S.C. § 1915(a)(3), the Court certifies any appeal from this Order would not be taken in good faith. Therefore, in forma pauperis status is DENIED for the purpose of any appeal. See ⚐Coppedge v. United States, 369 U.S. 438, 444-45 (1962); and

**IT IS FURTHER ORDERED** that the Clerk of Court mail a copy of this Order to the pro se Plaintiff at his address of record, including the notation "LEGAL MAIL" on the mailing envelope.

**All Citations**

Slip Copy, 2023 WL 4207907

## Footnotes

1    The Order also denied Plaintiff's Motion for Order to Show Cause seeking an order: (1) directing Defendants to show cause "why a preliminary injunction should not issue" enjoining "them from denying the Plaintiff access to the Records in his Case, County Court Ind. No. 308C-2020 and falsifying documents in the past and in the future," and (2) requesting Defendants temporarily be ordered to "restrain[ ] from commiting [sic] crimes including concealment of Records and falsifying documents." (Order at 1-2 (citing OSC Motion, ECF. No. 4, and Pl.'s Support Aff., ECF No. 4-1).) The Court ruled on Plaintiff's OSC Motion to the extent it sought a temporary restraining order ("TRO") and held in abeyance any determination regarding Plaintiff's request for a preliminary injunction pending its initial screening of Plaintiff's Complaint pursuant to 28 U.S.C. § 1915A. (See Order at 2 n.1.)

2      Notably, the Sentencing Transcript filed by Plaintiff as Exhibit 18 to his Complaint (see ECF No. 7-4 at 2) reflects that the Court Reporter's sur-name is "Connors" rather than "Conner". For consistency with Plaintiff's Complaint, the Court will use "Conner" in this Memorandum and Order.

3      The Court presumes familiarity with Plaintiff's underlying state court criminal action, but notes that according to the information maintained by the New York State Office of Court Administration on its public website, in Suffolk County Court, Criminal Term, Case No. 00308C-2020, on July 18, 2022, Plaintiff was convicted by a jury on a multi-count indictment including Operating as a Major Trafficker, a class A-1 felony, and Conspiracy in the Second Degree, a class B felony. See https://iapps.courts.state.ny.us/webcrim (last visited on Sept. 16, 2022). In sum, Plaintiff challenges his arrest and conviction, asserting that he was illegally apprehended, and then convicted, based upon cellphone "ping data" collected without a warrant; he also maintains that evidence used against him at trial was illegally obtained via a warrantless search of his apartment. (See Sept. 23, 2022 Sent'g Hr'g Tr., ECF No. 7-4, at ECF pp. 81-87; see also Compl. at ECF pp. 16-17, 19.)

4      Although "[t]he doctrine of judicial immunity does not shield judges from claims for prospective declaratory relief," Krupp v. Todd, No. 14-CV-0525, 2014 WL 4165634, at *4 (N.D.N.Y. Aug. 19, 2014), "[a]bsolute judicial immunity bars declaratory judgment claims that are retrospective in nature in that they seek a declaration that a judge's past behavior has violated the Constitution." Leathersich v. Cohen, No. 18-CV-6363, 2018 WL 3537073, at *4 (W.D.N.Y. July 23, 2018) (internal quotation omitted) (citing cases); see also Moore v. City of N.Y., No. 12-CV-4206, 2012 WL 3704679, at *2 (E.D.N.Y. Aug. 27, 2012) ("Judicial immunity also bars ... claims for retrospective declaratory relief."). A review of the Complaint makes clear that it is targeted at Judge Collins's conduct in Plaintiff's concluded state court action. (See Compl., ECF No. 1, in toto.) Indeed, Plaintiff seeks not to vindicate some prospective right, but a declaration that Judge Collins's prior judicial actions were erroneous. Given that Plaintiff seeks retrospective relief, such claims are barred. Montesano v. New York, Nos. 05-CV-9574, 05-CV-10624, 2006 WL 944285, at *4 (S.D.N.Y. Apr. 12, 2006) (neither "injunctive nor declaratory relief is available to be used as a vehicle for disgruntled litigants to reverse adverse judgments") (citing 🚩⚠ Huminski v. Corsones, 396 F.3d 53 (2d Cir. 2005)).

5      Although Plaintiff alleges Tropea is the Clerk of the Court, County Court of Suffolk County (see ECF No. 1 at 2), the information maintained by the New York State Office of Court Administration on its public website reflects that Tropea is the Chief Clerk of that court. See https://ww2.nycourts.gov/courts/10jd/suffolk/county.shtml (last visited on June 16, 2023).

6      Similarly, given that Judge Collins is also a New York state employee, he too is shielded from liability in his official capacity by the Eleventh Amendment. See Silvels v. New York, 81 F. App'x 361, 362 (2d Cir. 2003) (affirming dismissal of 🚩 Section 1983 claims sua sponte pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) on the grounds of judicial and Eleventh Amendment immunity). Moreover, given Conner's apparent employment by the New York State Office of Court Administration as an Official Senior Court Reporter, she too would be shielded from liability in her official capacity by the Eleventh Amendment. However, the Court need not reach that question for the reasons that follow.

7      Insofar as Plaintiff complains that the alleged transcript errors prejudice an appeal of his conviction, such facts may form the basis of a proper 🚩 Section 1983 claim at the appropriate time. A criminal defendant possesses a due process right to a "substantially accurate" transcript in a criminal proceeding. Argentieri v. Majerowicz, 158 F. App'x 306, 307 (2d Cir. 2005) (summary order). However, "[m]ore than an inaccurate transcript is necessary to state a claim, [ ] [and] a [p]laintiff must also show that the alleged inaccuracies adversely affected the outcome of her proceedings." Wilson v. Richards, No. 14-CV-2459, 2014 WL 6682579, at *2 (S.D.N.Y. Nov. 25, 2014) (citing Tedford v. Hepting, 990 F.2d 745, 748 (3d Cir. 1993) (internal quotation marks omitted); also citing Argentieri, 158 F. App'x at 308 (affirming summary judgment for defendant because plaintiff was

not "deprived in any way of his access to courts or right to an effective appeal")). Any such claim is premature at this juncture given that the appeal filed by Plaintiff is not yet perfected. See People v. Braithwaite, No. 2022-09001, May 5, 2023 Decision and Order (N.Y. App. Div., 2d Dep't 2023) (granting Braithwaite leave to prosecute the appeal as a poor person, assigning appellate counsel, and granting extension to perfect appeal). In turn, any related claim of prejudice is currently speculative, making it implausible. See Burrell, 558 F. Supp. at 92 ("[I]f a state official intentionally alters a transcript in a way that prejudices a defendant's appeal, the due process clause of the fourteenth amendment might be violated.... To prove such a violation plaintiff would have to show ... the existence of intentional tampering; then, he would have to prove the alleged errors and omissions in the trial transcript prejudice his statutory right to appeal." (citations omitted)); Godfrey v. Irvin, 871 F. Supp. 577, 584 (W.D.N.Y. 1994) ("In order to demonstrate denial of a fair appeal, [plaintiff] must show prejudice resulting from the missing or incomplete transcript."). Thus, any substantive due process claim is not plausible given the absence of any allegation that Plaintiff suffered "some tangible harm." Curro v. Watson, 884 F. Supp. 708, 720 (E.D.N.Y. 1995), aff'd, 100 F.3d 942 (2d Cir. 1996); see also Collins, 438 F. Supp. 2d 399, 415–16 (2d Cir. 2006) (plaintiff alleging violation of right to access to the courts must allege an "actual injury"). Upon careful review of the Complaint, Plaintiff has not alleged any tangible harm. (See Compl., in toto.) Plaintiff does not allege that he was not successful in his Article 78 proceedings. Even if he was unsuccessful in those proceedings, he does not allege that any such failure stemmed from the transcriptions. Compare Collins, 438 F. Supp. 2d at 417 (prisoner adequately alleged tangible harm where he alleged that his Article 78 proceeding was dismissed when prison officials failed to provide him with necessary copies of documents).

8    Plaintiff's allegation that the transcript was deliberately tampered with does not save his procedural due process claim because the state provides adequate post-deprivation remedies. See Curro, 884 F. Supp. at 717–19 (prisoner who alleged that court reporters deliberately altered the transcript of his criminal trial did not state procedural due process claim because New York provides a procedure for challenging inaccuracies in trial transcripts).

---

**End of Document**                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:23-cv-01051-BKS-ML Document 8 Filed 09/29/23 Page 88 of 158

Ramos v. Putnam Family Court, Not Reported in Fed. Supp. (2017)

2017 WL 3083727
Only the Westlaw citation is currently available.
United States District Court, D. Connecticut.

Jose Eric RAMOS, Plaintiff,

v.

PUTNAM FAMILY COURT, et al., Defendants.

No. 15-cv-1443 (VAB)
|
Signed 07/18/2017

**Attorneys and Law Firms**

Jose Eric Ramos, Suffield, CT, pro se.

**INITIAL REVIEW ORDER**

Victor A. Bolden, United States District Judge

\*1   Jose Eric Ramos ("Plaintiff"), currently incarcerated at MacDougall-Walker Correctional Institute ("MacDougall-Walker"), brings this case *pro se* under 🚩42 U.S.C. § 1983 ("🚩Section 1983"), against the Putnam Family Court, Peter Barbone from Social Family Services at the Putnam Superior Court, Judge Michael E. Riley of the Connecticut Superior Court, Support Enforcement Agent Johara Craig at the Putnam Superior Court, and Connecticut Support Enforcement Services at the Putnam Superior Court (collectively, "Defendants"). ECF No. 1.

**I. STANDARD OF REVIEW**

Under 28 U.S.C. § 1915A(b), the Court must review prisoner civil complaints against governmental actors and "dismiss ... any portion of [a] complaint ... [that] is frivolous, malicious, or fails to state a claim upon which relief may be granted," or that "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Although detailed allegations are not required, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

🚩*Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint that includes only "labels and conclusions," "a formulaic recitation of the elements of a cause of action" or "naked assertions devoid of further factual enhancement," does not meet the facial plausibility standard. *Id.* (internal quotation marks omitted) (citing 🚩*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555, 557 (2007)). Although courts have an obligation to interpret "a *pro se* complaint liberally," a *pro se* complaint must still include sufficient factual allegations to meet the standard of facial plausibility. *See* 🚩*Harris v. Mills,* 572 F.3d 66, 72-73 (2d Cir. 2009) ("Even after *Twombly,* though, we remain obligated to construe a pro se complaint liberally.... We conclude, nonetheless, that the amended complaint fails to state [a claim] ... even under liberal standards of review for *pro se* pleadings.").

**II. FACTUAL ALLEGATIONS**

Mr. Ramos's allegations arise from an underlying custody case in the Putnam Family Court. Compl. at 3, ECF No. 1. Mr. Ramos alleges that he was "denied equal rights, privileges [and] immunity of the law as well as equal protection of the law" in the custody case by all Defendants. *Id.* Mr. Ramos requests money damages, "to be reconnected [sic] with [his] children," to be able to resume contact with his children, and "visitation upon release." *Id.* at 6.

Mr. Ramos alleges that he filed for visitation rights and for joint custody of his children at the Putnam Superior Court, and that he was instructed to meet with Mr. Barbone, an employee of Family Services. Compl. at 5. Mr. Ramos alleges that he complied "with all stipulations nd instructions mandated by the court," and that Judge Riley than ruled that Mr. Ramos be granted "visitation and contact rights" as to his children. *Id.*

\*2   Mr. Ramos alleges that, throughout the course of his underlying family court case, the mother of his children "did not comply [with court orders] or appear for court on multiple occasions." Compl. at 5. Mr. Ramos alleges that, in response, he contacted and spoke with Mr. Barbone and Judge Riley multiple times and filed motions for contempt multiple times, but that they took no action. *Id.* Mr. Ramos further alleges that the mother then moved the children out of state without consulting him first, and that Mr. Barbone and Judge Riley took no action, even after Mr. Riley spoke to them and filed

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 89 of 158

Ramos v. Putnam Family Court, Not Reported in Fed. Supp. (2017)

motions for contempt. *Id.* Mr. Ramos alleges that the law provided that no party to a custody case could remove the children from the state while the custody case was pending, and that if a party failed to appear before the court, the court should rule in favor of the opposing party. *Id.* at 6. He alleges that Mr. Barbone and Judge Riley denied him the protection of those laws and caused him harm. *Id.*

Mr. Ramos further alleges that Child Support Enforcement Services has a mission statement "to provide for people who pay support." Compl. at 6. Mr. Ramos implies that because he paid child support, he is allegedly entitled to have a relationship with and see his children, and that he has been denied access to his children. *Id.* He claims that some of the Defendants, without specifying which of the Defendants, still "want [him] to pay [child] support even though they claim to not even know where or how my kids are." *Id.*

Mr. Ramos also alleges that Defendants, without specifying which of the Defendants, issued a warrant for his arrest because he allegedly missed one court date in March of 2009, for which he had not received notice. Compl. at 6.

## III. DISCUSSION

All of the allegations in Mr. Ramos's Complaint arise from a Connecticut state court adjudication of his custody case, state court decisions as to child support, and the state's enforcement of child support orders. As explained below, the Court concludes that all of Mr. Ramos's claims, against all Defendants, are barred by the *Rooker-Feldman* doctrine.

*See* 🚩 *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462 (1983); 🚩 *Rooker v. Fidelity Trust Co.,* 263 U.S. 413 (1923).* Furthermore, certain of his claims would also be barred on other grounds, including by Eleventh Amendment sovereign immunity, by judicial immunity, and by the domestic relations exception.

### A. *Rooker-Feldman* Doctrine

"The *Rooker-Feldman* doctrine ... is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries causes by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." 🚩 *Exxon Mobil Corp. v. Saudi Basic Industries Corp.,* 544 U.S. 280, 284 (2005). Under the *Rooker-Feldman* doctrine, "federal district courts do not have jurisdiction over claims that have already been decided, or that are 'inextricably intertwined' with issues that have already been decided, by a state court." 🚩 *Mitchell v. Fishbein,* 377 F.3d 157, 165 (2d Cir. 2004). "The *Rooker–Feldman* doctrine provides that the lower federal courts lack subject matter jurisdiction over a case if the exercise of jurisdiction over that case would result in the reversal or modification of a state court judgment," because "within the federal system, only the Supreme Court may review a state court judgment." 🚩 ⚠ *Hachamovitch v. DeBuono,* 159 F.3d 687, 693 (2d Cir. 1998).

Specifically, the *Rooker-Feldman* doctrine "directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." 🚩 *McKithen v. Brown,* 626 F.3d 143, 154 (2d Cir. 2010). Under the doctrine, "federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature." 🚩 *Gentner v. Shulman,* 55 F.3d 87, 89 (2d Cir. 1995).

**\*3** Claims based on the actions of state officials, such as those affiliated with the department of child support enforcement or with social or family services, are generally claims that are "inextricably intertwined" with the family "court proceedings themselves," and therefore also barred by the *Rooker-Feldman* doctrine. *Inkel v. Connecticut Dep't of Children & Families,* 421 F. Supp. 2d 513, 522 (D. Conn. 2006) (finding suit against Connecticut Department of Children and Families barred where plaintiff alleged that DCF officials gave false information that contributed to the family court's adverse determinations against them). A plaintiff's allegations that he or she was denied "due process and equal protection" in the context of child support determinations and the enforcement thereof are therefore barred by the *Rooker-Feldman* doctrine. ⚠ *Cogswell v. Rodriguez,* 304 F. Supp. 2d 350, 355-56 (E.D.N.Y. 2004) (holding that plaintiff's claims that she was not given notice of child support hearing or of the fact that her car could be seized for failure to pay child support are "inextricably intertwined with the state court's determinations and could have been raised in state court" and barred by *Rooker-Feldman*).

All of the allegations in Mr. Ramos's Complaint are "inextricably intertwined" with the underlying family court

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 90 of 158

Ramos v. Putnam Family Court, Not Reported in Fed. Supp. (2017)

proceedings regarding the custody of his children and his child support obligations. *See Inkel*, 421 F. Supp. 2d at 522. Thus, under the *Rooker-Feldman* doctrine, the Court has no jurisdiction to review Mr. Ramos's claims. *See, e.g., Exxon Mobil*, 544 U.S. at 284. The Court therefore dismisses Mr. Ramos's entire Complaint under 28 U.S.C. § 1915A(b). As discussed below, the Court could also dismiss Mr. Ramos's Complaint on additional grounds.

### B. Judicial Immunity

#### 1. Judge Riley

As a judicial officer, Judge Riley is protected by judicial immunity. Judges are immune from suit, not just from the ultimate assessment of damages. *See Mirales v. Waco*, 502 U.S. 9, 11 (1991). Judicial immunity applies even if "the action [the judge] took was in error, was done maliciously, or was in excess of his authority." *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978)); *see also Heath v. Justices of Supreme Court*, 550 Fed.Appx. 64 (2d Cir. 2014) (summary order) ("Judges when acting in a judicial capacity, are entitled to absolute immunity" (internal quotation marks omitted)).

Judicial immunity is overcome in only two situations. A judge is not immune from suit for actions "not taken in [his] judicial capacity" or for actions that are judicial in nature but "taken in the complete absence of all jurisdiction." *See Mirales*, 502 U.S. at 11-12. "[T]he Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). The allegations against Judge Riley concern actions taken during the adjudication of a state custody case. Thus, neither exception applies. Judge Riley is immune from suit. All claims against Judge Riley must also, therefore, be dismissed under 28 U.S.C. § 1915A(b) on judicial immunity grounds.

#### 2. Mr. Barbone and Ms. Craig

Judicial immunity also entitles state officials that make decisions as to child support payments and enforcement to "absolute quasi-judicial immunity" because, in that capacity, their "actions [are] the same as those of a judge," in that their decisions are "both judicial in nature and subject to review." *See Lomtevas v. Cardozo*, No. 05-CV-2779 (DLI)(LB), 2006 WL 229908, at *5 (E.D.N.Y. Jan. 31, 2006) (finding absolute judicial immunity applicable to New York support magistrate in New York family court despite plaintiff's contention that the support magistrate is "not a 'judge,' but only a 'government attorney' "). Such "[a]bsolute immunity" under "the doctrine of quasi-judicial immunity" applies where a "private actor's acts are integrally related to an ongoing judicial proceeding," and has been found to apply to "social workers and child welfare workers whose challenged actions involve the initiation and prosecution of child custody or dependency proceedings, guardians ad litem in child custody proceedings," for instance. *McKnight v. Middleton*, 699 F. Supp. 2d 507, 526-27 (E.D.N.Y. 2010), *aff'd*, 434 Fed.Appx. 32 (2d Cir. 2011) (citing *Mitchell v. Fishbein*, 377 F.3d 157, 172-73 (2d Cir. 2004)). According to Mr. Ramos's Complaint, Mr. Barbone works for Social Family Services at the Putnam Superior Court and Ms. Craig is a Support Enforcement Agent at the Putnam Superior Court. *See* Compl. at 1-3. Officials involved with making decisions as to child support payments and the enforcement of child support order are entitled to "absolute quasi-judicial immunity." *Lomtevas*, 2006 WL 229908 at *5. All claims against Mr. Barbone and Ms. Craig must also, therefore, be dismissed under 28 U.S.C. § 1915A(b) under quasi-judicial immunity grounds.

### C. Eleventh Amendment Sovereign Immunity

 **\*4**  To the extent that Mr. Ramos seeks money damages, his claims against the Putnam Family Court and Connecticut Support Enforcement Services at the Putnam Family Court are also barred by the Eleventh Amendment of the United States Constitution.

Under the Eleventh Amendment, "as a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer*, 568 F.3d 355, 365-66 (2d Cir. 2009) (internal quotation marks omitted). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Id.* (internal quotation marks omitted). Section 1983 does not abrogate state sovereign immunity. *See*

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 91 of 158

Ramos v. Putnam Family Court, Not Reported in Fed. Supp. (2017)

*Quern v. Jordan*, 440 U.S. 332, 343 (1979); *Sargent v. Emons*, 582 Fed.Appx. 51, 52 (2d Cir. 2014) (summary order) ("[I]t is well established that Congress did not abrogate state sovereign immunity in enacting 42 U.S.C. § 1983.").

The Putnam Family Court and the Support Enforcement Services division under the Putnam Family Court are, "unquestionably an 'arm of the State' " and therefore "entitled to Eleventh Amendment sovereign immunity." *Gollomp*, 568 F.3d at 368 (discussing New York State Unified Court System and finding that it was an arm of the state); *see also Zahl v. Kosovsky*, No. 08-CIV-8308 (LTS)(THK), 2011 WL 779784, at *7 (S.D.N.Y. Mar. 3, 2011), *aff'd*, 471 Fed.Appx. 34 (2d Cir. 2012) ("Therefore, Plaintiff's claims against [New York's Unified Court System] and [Office of Court Administration] ... are barred by the Eleventh Amendment."). Mr. Ramos has provided no evidence suggesting that the State has waived immunity. Thus, any claims for damages against the Putnam Family Court and the Support Enforcement Services division of the Putnam Family Court must also be dismissed under 28 U.S.C. § 1915A(b) on Eleventh Amendment Grounds.

### D. Domestic Relations Exception

To the extent that Mr. Ramos's Complaint also requests that the Court "reconnect[ ]" him with his children and "visitation upon release," his claims are barred by the domestic relations exception. Compl. at 6. Under the "domestic relations exception," federal court have no "power to issue divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) ("We conclude, therefore, that the domestic relations exception ... divests the federal courts of power to issue divorce, alimony, and child custody decrees."). "Though the domestic relations doctrine has been narrowly construed, covering only matrimonial actions, i.e., cases on the subjects of divorce, alimony, or the custody of children, a number of courts have recognized that federal courts should nevertheless abstain from exercising jurisdiction when issues are 'on the verge' of being matrimonial in nature if full and fair adjudication is available in state courts. Abstention is particularly urged for cases concerning visitation rights." *Lomtevas*, 2006 WL 229908 at *3 (internal quotation marks omitted) (citing *Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990)). Furthermore "[a]bstention under the domestic relations doctrine is also warranted when a plaintiff makes frivolous constitutional

claims that are actually impermissible attempts to embroil the federal courts in matrimonial matters best left to the states." *Id.* (internal quotation marks omitted) (citing *Hernstadt v. Hernstadt*, 373 F.2d 316, 318 (2d Cir. 1967)) (rejecting constitutional due process and equal protection claims arising from underlying custody case and noting that while plaintiff "frames his claims in constitutional terms, he is effectively asking this court to affirm or reverse a child custody decree and determine visitation rights").

**\*5** Even to the extent that Mr. Ramos requests monetary relief, his claims may still be precluded by the domestic relations exception. *See Schottel v. Kutyba*, No. 06-1577-CV, 2009 WL 230106, at *1 (2d Cir. Feb. 2, 2009) ("Even if [plaintiff] had only requested monetary damages ... federal jurisdiction would still be lacking. Although we recognize that the domestic relations exception is very narrow, a plaintiff cannot obtain federal jurisdiction merely by rewriting a domestic dispute as a tort claim for monetary damages." (internal quotation marks omitted)) (summary order).

All of Mr. Ramos's constitutional claims are essentially about the state court's disposition of his custody case, and are "impermissible attempts to embroil the federal courts in matrimonial matters best left to the states." *Lomtevas*, 2006 WL 229908 at *3. Thus, whether he requests visitation rights and the right to contact his children or whether he requests monetary damages, the Court will abstain from deciding his claims on domestic relations exception grounds. *See Ankenbrandt*, 504 U.S. at 703 (preventing federal courts from deciding divorce, alimony, and child custody issues); *Schottel*, 2009 WL 230106 at *1 (2d Cir. Feb. 2, 2009) (applying domestic relations exception to monetary damages claim). All of Mr. Ramos's claims can, therefore, be dismissed under U.S.C. § 1915A(b) on domestic relations exception grounds.

### IV. CONCLUSION

For the foregoing reasons, all of Mr. Ramos's claims against all of the Defendants are **DISMISSED** under 28 U.S.C. § 1915A(b). The Clerk of the Court is directed to enter judgment accordingly and to close this case.

SO ORDERED at Bridgeport, Connecticut, this 18th day of July, 2017.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 3083727

---

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

Chris H. v. New York, Not Reported in Fed. Supp. (2017)

Case 5:23-cv-01051-BKS-ML    Document 8    Filed 09/29/23    Page 93 of 158

2017 WL 2880848
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.

CHRIS H., Plaintiff,
v.
The State of NEW YORK, et al., Defendants.

16 Civ. 6807 (LGS)
|
Signed 07/05/2017

**Attorneys and Law Firms**

Chris H., New York, NY, pro se.

Angel Manuel Guardiola, II, New York State Office of the Attorney General, Evan F. Jaffe, New York City Law Depart. Office of the Corporation Counsel, Gary Moy, New York City Law Department, New York, NY, for Defendants.

Department of Social Services, pro se.

**OPINION AND ORDER**

Lorna G. Schofield, United States District Judge

 *1  Pro se Plaintiff Christopher Henry brings this action against the State of New York ("State"), the City of New York ("City"), Police Officer Orlando Rios, the Commissioner of the New York City Human Resources Administration/Department of Social Services ("Commissioner"), Justice Tandra L. Dawson, Support Magistrate Paul Ryneski and Support Magistrate Tionnei Clarke (collectively, "Defendants"), asserting claims under federal and state law arising from Plaintiff's arrest and unrelated state court proceedings. Defendants move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, Defendants' motion is granted.

**I. BACKGROUND**

The following facts are based on the Complaint and court records from Plaintiff's state court proceedings, of which the Court is entitled to take judicial notice. See Apotex Inc. v. Acorda Therapeutics, Inc., 823 F.3d 51, 60 (2d Cir. 2016) (at motion to dismiss stage, court may take judicial notice

of documents that are publicly available and whose accuracy cannot reasonably be questioned); In re WorldCom, Inc., 708 F.3d 327, 339 n.63 (2d Cir. 2013) (taking judicial notice of court records). These facts are accepted as true solely for the purpose of this motion. See Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56–57 (2d Cir. 2016).

**A. Initiation of Matrimonial Proceedings**

Plaintiff Christopher Henry is a black male who resides in New York County. On January 2, 2009, Plaintiff's wife Marisa Henry filed a family offense petition against Plaintiff following an alleged incident of domestic violence. On March 12, 2009, Plaintiff initiated divorce proceedings against his wife in the Supreme Court of the State of New York, New York County.

On April 2, 2009, the Criminal Court of the City of New York entered a Temporary Order of Protection directing Plaintiff stay away from his wife and her home—the marital residence —from April 2, 2009, to May 21, 2009.

**B. May 2009 Arrest and Imprisonment**

On May 10, 2009, Plaintiff was walking outside the marital residence when he was knocked to the ground by City police officers including Defendant Rios. Plaintiff was assaulted, handcuffed and placed in the back of a patrol car, after which he was transported to the 30th Precinct. Plaintiff was charged with resisting arrest, disorderly conduct and violating an order of protection. If the police officers had looked into the address listed on the order of protection, they would have learned that Plaintiff was the owner of the marital residence. Supervisory police officers had the authority and ability to prevent Plaintiff's arrest. The Complaint alleges conclusorily that Plaintiff was arrested and assaulted pursuant to City policy and practice and that inadequate training and procedure led to his injuries.

Plaintiff was held in a cell at the 30th Precinct for approximately 24 hours, after which he was transported by van to the New York Supreme Court. During the ride to the Supreme Court, Plaintiff was kept in handcuffs and slammed into the side of the van multiple times. Once at the Supreme Court, he was placed in a basement cell with approximately 45 other people. The cell was crowded, dirty, smelly and slimy. Plaintiff's clothes became soiled from sitting on the floor, and Plaintiff did not sleep well due to fear of assault from the other detainees. He was held in this cell for 24 hours before being

Chris H. v. New York, Not Reported in Fed. Supp. (2017)

Case 5:23-cv-01051-BKS-ML    Document 8    Filed 09/29/23    Page 94 of 158

arraigned in Manhattan Criminal Court. At his arraignment, Plaintiff pleaded not guilty to all charges and was eventually released. The Complaint does not specify when Plaintiff was released, but alleges both that all charges were terminated in Plaintiff's favor on or about March 10, 2010, and that the criminal proceedings against Plaintiff continued until March 2012.

### C. Continuation of Matrimonial Proceedings

**\*2** Separate from Plaintiff's arrest, Plaintiff's divorce proceeding was transferred from the Supreme Court Matrimonial Term to the Supreme Court Integrated Domestic Violence Part on May 8, 2009, where it was assigned to Tandra L. Dawson, an Acting Justice of the New York Supreme Court and a Judge on the New York Family Court. On June 28, 2009, Justice Dawson issued a warrant for Plaintiff's arrest and issued an order of protection directing Plaintiff to stay away from the marital property.

On July 16, 2010, Justice Dawson issued a Final Order of Protection requiring Plaintiff to stay away from his wife, and to stay away from the marital home except as per court order. From June 2009 until October 2010, Plaintiff kept away from the marital home. Sometime thereafter, Plaintiff states that he learned the protective order was void and had no legal effect. Plaintiff questioned Justice Dawson about the "void Order of Protection" on or about July 31, 2012, leading to an extremely contentious environment in the courtroom.

From March 2009 to October 2012, Justice Dawson permitted Donnie Williams, a convicted felon, to live and work in the marital property. While Williams lived there, Plaintiff paid housing expenses of approximately $40,000 on the property.

On October 21, 2010, Plaintiff sold the marital residence. On March 1, 2012, Plaintiff's wife filed an action for fraudulent conveyance relating to the sale. Justice Dawson referred the action to a special referee, who recommended that the sale of the marital residence be deemed a fraudulent conveyance. Justice Dawson confirmed the special referee's report in orders dated March 29, 2016, and May 13, 2016.

In handling the matrimonial proceedings, Justice Dawson made a number of additional rulings that were adverse to Plaintiff. For instance, on October 8, 2015, Justice Dawson denied Plaintiff's motion for access to court documents. In addition, the Complaint alleges that Justice Dawson falsely stated in a February 27, 2015, Decision and Order that Plaintiff had violated a direct order of the Supreme Court and

that she wanted to charge Plaintiff with a criminal offense. Though the February 27, 2015, Decision and Order states that Plaintiff had brought "an exorbitant number" of unnecessary motions, it does not reference wanting to charge Plaintiff with a criminal offense.

### D. Child Support Proceedings

On January 26, 2009, Plaintiff appeared before Support Magistrate Matthew Troy in Family Court. At that hearing, Plaintiff submitted a receipt showing a mortgage payment of approximately $2,000.

Sometime later, Plaintiff appeared before Support Magistrate Paul Ryneski. On November 26, 2010, Plaintiff sought a downward modification of a support order entered on October 15, 2009. On April 27, 2011, his wife sought increased child support from Plaintiff. On October 5, 2012, Support Magistrate Ryneski modified the October 15, 2009, support order and ordered Plaintiff to pay approximately $150 more in basic child support and $250 less in child care costs per cycle than the 2009 order. Plaintiff objected to the modification, and on January 16, 2013, Justice Dawson found that two of Plaintiff's seven objections required remand. However, Justice Dawson rejected Plaintiff's claim that he was entitled to a credit for his housing payments.

On April 11, 2013, Support Magistrate Ryneski issued a revised order of support. Plaintiff objected to that order, and Justice Dawson denied the objection in its entirety on June 7, 2013.

**\*3** According to the Complaint, Support Magistrate Ryneski took affirmative steps to falsify evidence and eliminate the receipt that Plaintiff submitted to Support Magistrate Troy in order to ensure that Plaintiff paid the maximum amount of child support permitted by law. The Complaint further alleges that Support Magistrate Ryneski lives within a fifteen-minute drive of the marital property, and could not believe that a black man owned property in his neighborhood.

Between February 2009 and the date the Complaint was filed, Support Magistrate Ryneski authorized the Child Support Enforcement Unit ("CSEU") to take over $100,000 in wages from Plaintiff. As a result of these garnishments, Plaintiff did not have enough money to pay his mortgage, and was forced into foreclosure in October 2012. He was homeless for several months.

At some point, Justice Dawson and Support Magistrate Ryneski "conspire[ed]" to "fabricate [Plaintiff]'s total income ... to ensure that the maximum amount of child support payments was sent" to CSEU and the State Treasury. On or about July 19, 2011, Support Magistrate Ryneski "ordered that Plaintiff should spend six months in jail." On or about January 30, 2015, Justice Dawson affirmed Support Magistrate Ryneski's Findings of Fact despite the findings containing "false information."

On or about September 15, 2015, the Commissioner served Plaintiff with a notice to appear in Family Court. On or about February 8, 2016, Plaintiff filed a Notice of Special Appearance stating that he would not accept the jurisdiction of the Family Court. Nonetheless, on March 8, 2016, Support Magistrate Tionnei Clarke issued an Order of Money Judgment against Plaintiff and in favor of the Commissioner in the amount of $26,000. Plaintiff objected to the decision in May 2016. On May 17, 2016, Justice Dawson denied the objection in its entirety.

### E. Letters of Complaint
Plaintiff submitted multiple letters to State and City authorities regarding the allegedly unlawful actions taken by Magistrate Ryneski, Justice Dawson and Officer Rios. The authorities declined to take action in response to the letters.

### F. Racial Animus
In undertaking the actions outlined above, each of the Defendants was motivated by a "desire to injure, oppress, threaten and intimidate Plaintiff because of his African-American race."

Plaintiff commenced this action on August 30, 2016.

## II. STANDARD
On a motion to dismiss, a court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the non-moving party. *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Courts are obligated to construe pro se pleadings liberally. *See Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012). A pro se complaint must be afforded "special solicitude, interpreting the complaint to raise the strongest claims that it suggests." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 122 (2d Cir. 2016) (citation omitted).

## III. DISCUSSION
Plaintiff alleges 39 causes of action, including 26 causes of action arising under federal law (Counts 1–7, 10–26, 33 and 34). A majority of these causes of action are brought against multiple Defendants for unrelated reasons. Where a cause of action relates to multiple events, the Opinion addresses it separately as to each event.

### A. Federal Claims Arising from Plaintiff's May 2009 Arrest and Imprisonment
**\*4** Plaintiff brings 15 claims under 42 U.S.C. § 1983 against either or both Officer Rios and the City [1] arising from his May 10, 2009, arrest and subsequent imprisonment (Counts 1–3, 10, 14–19, 24–26, 33 and 34). The claims against Officer Rios are dismissed as time barred. The claims against the City are dismissed because of insufficient pleading.

The Complaint alleges a violation of Plaintiff's First Amendment right to assemble outside his property, racially motivated assault, false arrest and imprisonment, failure of supervisors to intervene to prevent his allegedly unlawful arrest, failure to ensure his safety while in custody, excessive force, malicious prosecution, violation of his due process rights and violation of his Fourth Amendment rights (Counts 1–3, 10, 14–19 and 33). [2] The Complaint also alleges that the City systemically developed and maintained policies that permit violations of constitutional rights and engaged in a conspiracy to establish policies that let the police believe they can use excessive force with impunity in violation of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) (Counts 14, 17, 24–26 and 34).

In addition, Plaintiff brings three claims against Officer Rios and the City under 42 U.S.C. § 1985 for conspiracy to

Chris H. v. New York, Not Reported in Fed. Supp. (2017)

Case 5:23-cv-01051-BKS-ML    Document 8    Filed 09/29/23    Page 96 of 158

threaten his rights and deny him equal protection (Counts 20–22) and one claim against the same Defendants under 42 U.S.C. § 1986 for failure to report police brutality to supervisors, which allegedly allowed the claimed conspiracy to continue (Count 23). [3]

Section 1983 actions filed in New York are "subject to a three-year statute of limitations," which generally accrues when the "plaintiff knows or has reason to know of the injury" which is the basis of his action. Milan v. Wertheimer, 808 F.3d 961, 963 (2d Cir. 2015) (internal quotation marks and citation omitted).

The statute of limitations on the § 1983 claims against Officer Rios for assault, excessive force and loss of Plaintiff's First Amendment rights during the course of his May 10, 2009, arrest all accrued when the alleged injuries occurred that day. See Milan, 808 F.3d at 963. The statute of limitations for claims related to those injuries thus expired on May 10, 2012. As this action was commenced in 2016, these claims are untimely.

**\*5** The statute of limitations on § 1983 claims of false arrest, false imprisonment and failure to prevent false arrest begins to run "when the alleged false imprisonment ends" and "the victim becomes held pursuant to [legal] process," including upon arraignment. Wallace v. Kato, 549 U.S. 384, 389 (2007). As Plaintiff was arraigned on May 12, 2009, the statute of limitations for his false arrest and false imprisonment claims against Officer Rios began to run on that day and expired on May 12, 2012, rendering those claims untimely.

Applying the pro se presumption in favor of Plaintiff, the last possible date of injury pertaining to Plaintiff's claims of excessive force in custody, failure to ensure safety in custody, failure to provide a duty of care in custody, malicious prosecution, violation of due process and violation of his Fourth Amendment rights was in March 2012, when the Complaint states that criminal proceedings against Plaintiff ended. Thus, the statute of limitations for these claims expired in March 2015 at the latest. See, e.g., Milan, 808 F.3d at 963; Poventud v. City of New York, 750 F.3d 121, 130–31 (2d Cir. 2014) (malicious prosecution claim accrues upon termination of proceeding in favor of defendant). As the Complaint was not filed until August 25, 2016, the portions

of Counts 1, 2, 10, 14, 15, 16, 17, 18, 19 and 33 that relate to Plaintiff's May 2009 arrest and imprisonment are dismissed as time barred as they relate to Officer Rios.

Plaintiff's §§ 1985 and 1986 claims against Officer Rios are likewise untimely. Claims brought under § 1985 are subject to a three-year statute of limitations. See Allen v. Antal, 665 Fed.Appx. 9, 12 (2d Cir. 2016) (summary order); Cornwell v. Robinson, 23 F.3d 694, 703 (2d Cir. 1994). Claims under § 1986 are subject to a one-year statute of limitations. See 42 U.S.C. 1986; see also Paige v. Police Dep't of Schenectady, 264 F.3d 197, 199 n.2 (2d Cir. 2001). Like § 1983 claims, §§ 1985 and 1986 claims accrue when a plaintiff knew or had reason to know of his injury. See, e.g., Andrews v. Fremantlemedia, N.A., Inc., 613 Fed.Appx. 67, 68 (2d Cir. 2015) (summary order); Young v. Lord & Taylor, LLC, 937 F. Supp. 2d 346, 354 (E.D.N.Y. 2013). As explained above, each of Plaintiff's alleged injuries occurred on or before March 2012. Thus, Plaintiff was required—but failed—to file his §§ 1985 and 1986 claims by March 2015 at the latest. The portions of Counts 20, 21, 22 and 23 that relate to Plaintiff's May 2009 arrest and imprisonment are therefore dismissed as to Officer Rios.

The claims against the City are dismissed for failure to state a claim on which relief can be granted. In order to sue a municipality for a constitutional violation under § 1983 or § 1985, a plaintiff must allege facts sufficient to demonstrate that "the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality" and that "the municipality was the moving force behind the injury alleged" through the municipality's own deliberate conduct. Jones ex rel. Jones v. Town of E. Haven, 691 F.3d 72, 80–81 (2d Cir. 2012) (citation omitted) (applying Monell to § 1983 claims); accord Mitchell v. City of New York, 841 F.3d 72, 80 (2d Cir. 2016) (same); Zherka v. City of New York, 459 Fed.Appx. 10, 12 (2d Cir. 2012) (summary order) (citing Owen v. Haas, 601 F.2d 1242, 1247 (2d Cir. 1979)) (applying Monell to § 1985 claims). Boilerplate allegations of unconstitutional policies are insufficient to plead a municipality's liability under § 1983 or § 1985.

*See, e.g., Butler v. Brito,* No. 15 Civ. 9718, 2017 WL 2116687, at \*6 (S.D.N.Y. May 15, 2017).

 **\*6**  The Complaint does not allege any facts that would support a finding of any City policy or practice that led to the deprivation of Plaintiff's rights in conjunction with his May 2009 arrest and imprisonment. The portions of Counts 3, 14, 15, 16, 17, 18, 19, 20, 21, 22, 24, 25, 26, 33 and 34 that assert claims against the City arising out of Plaintiff's May 2009 arrest and imprisonment are therefore dismissed.

Because a viable § 1985 claim against the City is required to allege a viable § 1986 claim against the City, *see, e.g., Noonan v. City of New York,* No. 14 Civ. 4084, 2015 WL 3948836, at \*6 (S.D.N.Y. June 26, 2015) (citing *Gagliardi v. Vill. of Pawling,* 18 F.3d 188, 194 (2d Cir. 1994)), the portion of Count 23 that asserts claims against the City arising from Plaintiff's May 2009 arrest and imprisonment is also dismissed.

Should Plaintiff seek to replead to allege more specifically a policy or custom, those repleaded *Monell* claims may or may not be timely. The statute of limitations for *Monell* claims may begin to run later than it did for the claims against Officer Rios. In *Pinaud v. Cty. of Suffolk,* 52 F.3d 1139 (2d Cir. 1995), the Court of Appeals stated:

> Since an actionable [*Monell*] claim ... against a ... municipality depends on a harm stemming from the municipality's "policy or custom," ... a cause of action against the municipality does not necessarily accrue upon the occurrence of a harmful act, but only later when it is clear, or should be clear, that the harmful act is the consequence of a [municipality's] "policy or custom."

*Id.* at 1157 (2d Cir. 1995) (citing *Monell,* 436 U.S. at 694); *see also Birch v. City of New York,* 675 Fed.Appx. 43, 45 (2d Cir. 2017) (summary order) ("In light of *Pinaud,* the limitations period for [plaintiff's] *Monell* claims did not begin until such time as he should have known that his adverse actions resulted from the City's 'policy or custom.' "). However, the Second Circuit has also referred to its

discussion of limitations periods for *Monell* claims in *Pinaud* as "demonstrably *dictum.*" *Lawson v. Rochester City Sch. Dist.,* 446 Fed.Appx. 327, 329 (2d Cir. 2011) (summary order).

Plaintiff ultimately would have to show that he neither knew nor should have known that the City's challenged conduct resulted from a policy or custom until on or after August 30, 2013, three years before this action was filed. Any Amended Complaint would be subject to dismissal if it were plain on its face that Plaintiff knew or should have known of the alleged policy or custom before that date. *See Ellul v. Congregation of Christian Bros.,* 774 F.3d 791, 798 n.12 (2d Cir. 2014) ("Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint.").

### B. Federal Claims Arising from Matrimonial and Child Support Proceedings

#### 1. Claims Against the State and Justice Dawson, Support Magistrate Ryneski and Support Magistrate Clarke in Their Official Capacities

Plaintiff brings 21 claims against one or more of Justice Dawson, Support Magistrate Ryneski and Support Magistrate Clarke (collectively, the "Judicial Defendants") in their official capacities and the State for purported violations of 42 U.S.C. §§ 1983, 1985 and 1986 (Counts 1–7, 10–15, 18–24 and 33). As both the State and state officials acting in their official capacities are immune from such claims under the Eleventh Amendment, *see, e.g., Will v. Mich. Dep't of State Police,* 491 US 58, 65–66, 71 (1989); *Dean v. Univ. at Buffalo Sch. of Med. & Biomedical Scis.,* 804 F.3d 178, 193 (2d Cir. 2015), the portions of Counts 1, 2, 3, 4, 5, 6, 7, 10, 11, 12, 13, 14, 15, 18, 19, 20, 21, 22, 23, 24 and 33 that purport to bring claims against the State and the Judicial Defendants in their official capacities are dismissed.

 **\*7**  In his response memorandum, Plaintiff argues that the State has waived its Eleventh Amendment immunity as to his claims against the State and the Judicial Defendants because federal statutes can condition receipt of federal funds on a state waiver of sovereign immunity, and the State accepted federal funds to run the Social Security Administration's Title

IV-D program. This argument is unavailing. First, to the extent that Plaintiff suggests that the State's receipt of Title IV-D funds resulted in a general waiver of immunity that entitles him to sue the State and state officials, the argument is incorrect. Title IV-D of the Social Security Act, which funds agencies tasked with collecting child support payments, does not condition receipt of funds on a waiver of sovereign immunity nor does it prohibit discrimination by recipients of such funds. *See* 42 U.S.C. §§ 651–669b (Title IV-D), 2000d-7 (waiving Eleventh Amendment immunity for states who accept funds under statutes prohibiting discrimination by recipients of federal financial assistance); *Parent v. New York*, 786 F. Supp. 2d 516, 531 (N.D.N.Y. 2011) ("Moreover, Congress did not explicitly require states to waive immunity under Title IV–D.").

Second, to the extent that Plaintiff's reference to Title VI of the Civil Rights Act in his response memorandum can be liberally construed to argue that the State and state officials can be sued under Title VI by virtue of receiving Title IV-D funds, Plaintiff lacks standing to make any such claim. Though Congress has expressly abrogated state sovereign immunity for actions filed under Title VI, *see* 42 U.S.C. § 2000d-7, in order to bring a Title VI claim, Plaintiff must be the "intended beneficiar[y] of the federal spending program" about which he complains. *Scelsa v. City Univ. of N.Y.*, 806 F. Supp. 1126, 1140 (S.D.N.Y. 1992); *accord Bary v. Delta Airlines, Inc.*, 553 Fed.Appx. 51, 53 (2d Cir. 2014) (summary order). As Plaintiff is not the intended beneficiary of Title IV-D funds, he lacks standing to bring a Title VI claim.

### 2. Claims Against the Judicial Defendants in Their Individual Capacities

Plaintiff also brings 19 claims against one or more of the Judicial Defendants in their individual capacities for purported violations of 42 U.S.C. §§ 1983, 1985 and 1986 (Counts 1, 2, 4–7, 10–15, 18–23 and 33).

Of these claims, 10 are clearly based on decisions made by the Judicial Defendants in the course of presiding over various portions of Plaintiff's state court proceedings (Counts 1, 2, 5–7, 11–13, 20 and 21); 8 are vague and/or do not appear to be related to the Judicial Defendants at all (Counts 10, 14, 15, 18, 19, 22, 23 and 33); and 3 allege that the Judicial Defendants took affirmative steps to falsify evidence or otherwise engage in a cover-up (Counts 4, 11 and 20). [4]

A majority of these claims are barred by the doctrine of judicial immunity. A judge or Support Magistrate acting in a judicial capacity is entitled to absolute judicial immunity if (1) the judge or Support Magistrate had jurisdiction over the subject matter before her at the time she took the challenged action and (2) the relevant action was judicial in nature. *See, e.g.,* *Huminski v. Corsones*, 396 F.3d 53, 74–75 (2d Cir. 2005); *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009) (private actor may be afforded the absolute immunity afforded to judges if the private actor's role is "functionally comparable" to those of the judges). In determining whether an action was judicial in nature, courts look to "the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." *Bliven*, 579 F.3d at 209–10 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). A judge or Support Magistrate is not deprived of immunity because the action she took "was in error, was done maliciously, or was in excess of [her] authority; rather, [she] will be subject to liability *only when [she] has acted in the clear absence of all jurisdiction.*" *Gross v. Rell*, 585 F.3d 72, 84 (2d Cir. 2009) (citing *Stump*, 435 U.S. at 356–57). Allegations of conspiracy also do not defeat judicial immunity. *See, e.g.,* *Dorman v. Higgins*, 821 F.2d 133, 139 (2d Cir. 1987).

**\*8** Here, Counts 1, 2, 5, 6, 7, 11, 12, 13, 20 and 21 arise from decisions made by one or more of the Judicial Defendants in the course of presiding over state legal proceedings over which they had jurisdiction. *See* N.Y Const. art. VI §§ 7(b), 13(b), (c); N.Y. Fam. Ct. Act §§ 411, 439(a), 812. Even if the Court found that the state courts had no jurisdiction over Plaintiff, as he alleges in the Complaint, the *Rooker-Feldman* doctrine requires a finding that the state courts had jurisdiction over the challenged state court proceedings.

Under the *Rooker-Feldman* doctrine, federal district courts lack subject-matter jurisdiction to review a claim when "(1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154

(2d Cir. 2010). The doctrine also prohibits a district court's review of claims that are "inextricably intertwined" with a state court's determinations. *See* 🚩 ⚠️ *Kropelnicki v. Siegel,* 290 F.3d 118, 128 (2d Cir. 2002). A claim is inextricably intertwined where the plaintiff had an opportunity to litigate a claim in a state proceeding and the claim would be barred under the principles of preclusion. *See id.*

All four elements of the doctrine are present here. Plaintiff lost his cases in state court, complains of injuries as a result of the state court judgments and invites this Court to review and overturn findings that underpin the state court judgments. In addition, the state court judgments were rendered prior to the filing of the Complaint in this case. The *Rooker-Feldman* doctrine thus deprives the Court of jurisdiction to analyze whether the Judicial Defendants lacked jurisdiction to make their rulings. *See Fernandez v. Turetsky,* 645 Fed.Appx. 103, 104–05 (2d Cir. 2016) (summary order) (finding that *Rooker-Feldman* doctrine applies to bar federal court review of alleged constitutional violations resulting from state child support judgments). Consequently, the portions of Counts 1, 2, 5, 6, 7, 11, 12, 13, 20 and 21 that pertain to the judicial decisions made by the Judicial Defendants are barred by the doctrine of judicial immunity and are dismissed.

To the extent that Counts 10, 14, 15, 18, 19, 22, 23 and 33 can be read to state a claim on which relief can be granted against the Judicial Defendants—which they do not—those claims would be based upon the effects of decisions made by the Judicial Defendants in the course of their judicial duties. As explained above, such claims are barred by the doctrine of judicial immunity. Thus, the portions of Counts 10, 14, 15, 18, 19, 22, 23 and 33 that purport to sue the Judicial Defendants in their individual capacities are dismissed.

The portions of Counts 4, 11 and 20 that allege that one or more of the Judicial Defendants engaged in fraud are barred by the *Rooker-Feldman* doctrine, as Plaintiff already had an opportunity to raise his fraud claims in state court, and in fact did raise the allegations underpinning his fraud claim against Support Magistrate Ryneski before Justice Dawson. *See* 🚩 ⚠️ *Kropelnicki,* 290 F.3d at 128; 🚩 ⚠️ *Sharp v. Bivona,* 304 F. Supp. 2d 357, 363 (E.D.N.Y. 2004) (finding that plaintiff's constitutional claim arising out of alleged fraud by a state court judge was barred by the *Rooker-Feldman* doctrine).

### 3. Claims Against the Commissioner and City

**\*9** Lastly, Plaintiff brings 17 claims against one or more of the Commissioner, City and CSEU,[5] alleging violations of 🚩 42 U.S.C. §§ 1983, 🚩 1985 and 1986 (Counts 1–3, 5–7, 10, 12, 18, 20–26 and 33).

Liberally construed, the Complaint alleges that the Commissioner's conduct in enforcing Plaintiff's child support obligations violated 🚩 § 1983 by causing the loss of the marital property in violation of the First Amendment, imposing limits on Plaintiff's freedom to act on his own behalf, failing to act after receiving letters of complaint from Plaintiff, bringing a child support proceeding against Plaintiff, conspiring with the Judicial Defendants to bring Plaintiff into court and make him pay child support, developing policies to garnish wages aggressively and engaging in the "malicious prosecution" of Plaintiff's child support case (Counts 1, 2, 3, 5, 12, 24, 25 and 33). The Complaint also alleges a number of 🚩 § 1983 claims against the Commissioner that are so vague that they cannot be understood and/or do not appear to implicate actions taken by the Commissioner, no matter how liberally construed (Counts 10, 18 and 26). In addition, the Complaint alleges that the Commissioner violated 🚩 § 1985 by engaging in a racially-motivated conspiracy with the other Defendants to deny Plaintiff equal protection under law (Counts 20–22), and violated § 1986 by failing to prevent the conspiracy (Count 23).

Each of these claims is barred by the *Rooker-Feldman* doctrine for the same reasons discussed above. *See, e.g., Fernandez,* 645 Fed.Appx. at 104–05. Moreover, as the Complaint does not "plead[ ] facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct," the Commissioner is entitled to qualified immunity. *See* 🚩 *McGowan v. United States,* 825 F.3d 118, 124 (2d Cir. 2016) (quoting 🚩 *Wood v. Moss,* 134 S. Ct. 2056, 2066–67 (2014)) (affirming dismissal on a motion to dismiss based on qualified immunity although the issue was not considered by the district court). The portions of Counts 1, 2, 3, 5, 10, 12, 18, 20, 21, 22, 23, 24, 25, 26 and 33 that pertain to the Commissioner are therefore dismissed. *See, e.g., Parent,* 786 F. Supp. 2d 516 at 536–37 (finding that commissioner of county department of social services was entitled to qualified

immunity for alleged violations resulting from filing and enforcing child support petition, given that there is "no right to refuse to pay child support" and that, even if there were, it would be "objectively reasonable for [the commissioner] to believe that carrying out [his] duties and enforcing the petition did not violate plaintiff's rights.").

The Complaint further alleges that the City violated 🚩 § 1983 by garnishing Plaintiff's wages, authorizing the collection of Plaintiff's tax refund, failing to act after receiving complaints from Plaintiff and maintaining a policy of aggressively garnishing paychecks (Counts 2, 3, 4, 24 and 25), and violated 🚩 §§ 1985 and 1986 by both engaging in, and failing to prevent, the same conspiracy alleged against the Commissioner (Counts 20–23). The Complaint also alleges multiple claims against the City that do not appear to be related to the City at all (Counts 5, 6, 7 and 26).

**\*10** In order to sue a municipality under 🚩 §§ 1983 or 🚩 1985, a plaintiff must allege facts sufficient to state a claim under *Monell. See Zherka*, 459 Fed.Appx. at 12. The only claims in the Complaint that allege that the City violated Plaintiff's rights due to a "custom, policy, or usage of the municipality" pertain to the City's allegedly aggressive policy of garnishing paychecks. However, even assuming that the City was aggressive in garnishing Plaintiff's paychecks, it did so according to state court orders. Not only is such garnishment not a constitutional violation, *cf., generally,* 🚩 *McCahey v. L.P. Investors*, 774 F.2d 543 (2d Cir. 1985) (upholding post-judgment garnishment procedures against constitutional attack), but to second-guess those state court orders would violate the *Rooker-Feldman* doctrine. *See, e.g., Galtieri v. Kelly*, 441 F. Supp. 2d 447, 454–55 (E.D.N.Y. 2006) (*Rooker-Feldman* doctrine barred 🚩 § 1983 claim where fund administrator was acting pursuant to earlier state court order directing the fund be garnished for alimony payments). To the extent that any of the other claims against the City can be construed as *Monell* claims, they would also be barred by the *Rooker-Feldman* doctrine for the reasons discussed above. *See, e.g., Fernandez*, 645 Fed.Appx. at 104–05. Thus, Plaintiff cannot state a claim on the basis of the City's actions pertaining to the state court proceedings. Absent any viable 🚩 § 1985 claim against the City, Plaintiff cannot allege a § 1986 claim against the City. *See, e.g., Noonan*, 2015 WL 3948836, at \*6.

The portions of Counts 2, 3, 4, 5, 6, 7, 20, 21, 22, 23, 24, 25 and 26 that pertain to Plaintiff's family law allegations against the City are therefore dismissed.

**C. State Law Claims**
As each of Plaintiff's federal claims is dismissed for the reasons discussed above, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims, and does not address them. *See, e.g.,* 🚩 *Kroshnyi v. U.S. Pack Courier Servs., Inc.*, 771 F.3d 93, 102 (2d Cir. 2014) (a district court may decline to exercise supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction") (quoting 🚩 28 U.S.C. § 1367(c)); *accord Silverman v. Teamsters Local 210 Affiliated Health & Ins. Fund*, 761 F.3d 277, 288 (2d Cir. 2014) (noting that district courts "normally decline to retain jurisdiction in such circumstances").

**D. Motion for Leave to Amend**
Plaintiff seeks leave to amend his Complaint in the event the motion to dismiss is granted. While leave to amend should be "freely give[n] ... when justice so requires," a court may properly deny leave to amend if the amendment would be futile. 🚩 ⚠ *F5 Capital v. Pappas*, 856 F.3d 61, 88–89 (2d Cir. 2017). As detailed above, amending the Complaint would be futile as to the claims that are time barred or barred by the *Rooker-Feldman* doctrine, judicial immunity or qualified immunity. Plaintiff's request for leave to amend the Complaint is denied as to these claims.

The only claims not barred on these grounds are claims against the City arising from the May 2009 arrest and imprisonment—namely, portions of Counts 3, 14, 15, 16, 17, 18, 19, 20, 21, 22, 23, 24, 25, 26, 33 and 34. By July 31, 2017, Plaintiff may submit a letter of no more than three pages, detailing any additional facts he can plead to show a policy or practice that led to the alleged deprivation of Plaintiff's rights in conjunction with his May 2009 arrest and imprisonment. The letter shall not include information pertaining to any other issues or claims. No exhibits may be filed. Plaintiff may not submit any Amended Complaint or proposed Amended Complaint without permission from this Court. Submission of a letter longer than three pages, exhibits or an Amended Complaint will lead to an automatic denial of Plaintiff's requested motion for leave to amend.

**Chris H. v. New York, Not Reported in Fed. Supp. (2017)**

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 101 of 158

## IV. CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED. The Clerk of Court is respectfully directed to close the motions at Docket Numbers 52 and 55

and mail a copy of this Opinion and Order to the pro se Plaintiff.

**All Citations**

Not Reported in Fed. Supp., 2017 WL 2880848

## Footnotes

1    The Complaint also occasionally refers to claims against the New York Police Department ("NYPD"), which is not named as a defendant, and in any event is not a suable entity. *See* N.Y.C. Charter § 396. In light of the special solicitude afforded to pro se litigants, the Court construes Plaintiff's allegations against the NYPD as allegations against the City. *See* ⚑ *Josey v. N.Y.C. Police Dep't*, No. 07 Civ. 6420, 2008 WL 2676620, at *1 n.1 (S.D.N.Y. July 7, 2008) (substituting the City as a defendant in place of the NYPD in case with pro se plaintiff).

2    Counts 3, 15, 18, 19 and 33 are alleged against the City in addition to Officer Rios. None of these claims allege that the City acted according to a governmental custom, policy or usage, as is necessary to sue a municipality under ⚑ § 1983. *See* ⚑ *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–691 (1978). Applying the special solicitude afforded to pro se litigants, these claims are nonetheless construed as *Monell* claims against the City.

3    These claims likewise fail to allege that the City acted according to a governmental custom, policy or usage, and are liberally construed as *Monell* claims.

4    Counts 11 and 20 assert claims directly related to judicial decision-making and claims related to falsification of evidence, and are therefore counted in each category.

5    The Complaint occasionally references causes of action against the CSEU, despite not naming the CSEU as a defendant. As with the NYPD, the CSEU is a non-suable entity. *See* N.Y.C. Charter § 396. To the extent that the Complaint raises claims against CSEU, they are construed as claims against the City. *Cf.* ⚑ *Josey*, 2008 WL 2676620, at *1 n.1.

**End of Document**                                   © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:23-cv-01051-BKS-ML    Document 8    Filed 09/29/23    Page 102 of 158

Roger of the Family Forrest v. 45 C.F.R.§ 75.2 IV-D..., Not Reported in Fed....

2019 WL 4194332

Only the Westlaw citation is currently available.

United States District Court, S.D. New York.

ROGER OF THE FAMILY FORREST, Plaintiff,

v.

45 C.F.R.§ 75.2 IV-D CONTRACTOR STEVE
BANKS; 31 U.S.C. § 6305; 42 U.S.C. § 654(3) Child
Support Enforcement Franchise; 45 CFR § 75.2 New
York County; 45 C.F.R. § 75.2 IV-D Contractor
Family Court of New York County; 45 C.F.R. §
75.2 IV-D Contractor Vanessa Evans; 45 C.F.R.
§ 75.2 IV-D Contractor Joseph Fucito; 45 C.F.R.
75.2 IV-D Contractor, George Cafasso, Defendants.

18-CV-10866 (CM)
|
Signed 08/30/2019

**Attorneys and Law Firms**

Roger of the Family Forrest Party Aggrieved, Decatur, GA,
pro se.

ORDER OF DISMISSAL

COLLEEN McMAHON, Chief United States District Judge:

*1 Plaintiff, of Decatur, Georgia, brings this *pro se*
action under 🚩 42 U.S.C. § 1983.[1] He sues (1) Steven
Banks, Commissioner of the New York City Department
of Social Services and the New York City Human
Resources Administration, (2) "Child Support Enforcement
Franchise," (3) New York County,[2] (4) the New York Family
Court, New York County, (4) Vanessa Evans, a Support
Magistrate of the New York Family Court, New York County,
(5) Joseph Fucito, the Sheriff of the City of New York, and
(6) George Cafasso, the current or former First Deputy Clerk
of the New York Family Court, New York County. For the
reasons discussed below, the Court dismisses this action.

**STANDARD OF REVIEW**

The Court has the authority to dismiss a complaint, even
when the plaintiff has paid the relevant fees, if it determines
that the action is frivolous, *see Fitzgerald v. First E. Seventh*

*Tenants Corp.*, 221 F.3d 362, 363-64 (2d Cir. 2000), or that
the Court lacks subject matter jurisdiction, Fed. R. Civ. P.
12(h)(3); 🚩 *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574,
583 (1999). The Court is obliged, however, to construe *pro
se* pleadings liberally, 🚩 *Harris v. Mills*, 572 F.3d 66, 72 (2d
Cir. 2009), and interpret them to raise the "strongest [claims]
that they *suggest*," 🚩 *Triestman v. Fed. Bureau of Prisons*,
470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks
and citations omitted).

**BACKGROUND**

Plaintiff's complaint is difficult to understand. Plaintiff asserts
that in enforcing Title IV-D of the Social Security Act ("Title
IV-D"), defendants have forced him to enter into a contract
in which he must pay the defendants the child support that he
owes. He alleges that Title IV-D

> contracts create[ ] a mutually binding,
> legal relationship obligating [the
> New York City Department of
> Social Services], Family Court, Clerk
> of Court, Sheriff, Prosecutor, Law
> Enforcement Officials, Treasurer's
> Office, and other government entities
> to offer and sell [Title] IV-D services
> in order to create [Title] IV-D cases
> and perform other services of the
> [United States Department of Health
> & Human Service's ("HHS") Office of
> Child Support Enforcement].

(ECF 1, p. 2.) He alleges that the defendants, in enforcing
Title IV-D, "fraudulently induced him to become a customer
of their private for profit business against his will...." (*Id.*
p. 1.) He requests that the Court "terminate the private
for profit contractual non-judicial IV-D Collections Case
#NS71649U1 effective immediately to end the deprivation
of his rights privileges and immunities and uphold his right
to provide for his offspring in private." (*Id.* pp. 17-18.) He
also seeks damages and fees. (*Id.* pp. 18.) In addition, he asks
that the Court order the removal of "any and all negative
reporting to all credit bureau[s] affecting his private person

and professional credit reputation." (*Id.*) And he seeks a letter of apology from each of the defendants. (*Id.* p. 19.)

**\*2** Plaintiff alleges that the defendants, in a "manner in which involuntary financial servitude developed upon [him] [ ] by [the defendants'] application of" Title IV-D, placed liens on his property in an effort to collect the child support that he owes. (*Id.* p. 11.) He asserts that "[s]tate postdeprivation remedies are not available," and that the defendants deprived him of due process by not providing him with a hearing before depriving him of his property. (*Id.* pp. 5, 8.) Plaintiff seems to challenge the legal basis upon which the defendants can collect the child support that he owes. (*See id.* pp. 6-7.) And he asserts that the State of New York has waived its immunity from suit under the Eleventh Amendment with regard to suits brought against it about its duties under Title IV-D. (*See id.* pp. 7-8.)

### DISCUSSION

**A. Domestic relations exception**

The domestic relations exception to federal jurisdiction bars this Court from considering any of Plaintiff's claims in which Plaintiff seeks to nullify any determination of the New York Family Court, New York County, with regard to the assessment and collection of child support that Plaintiff owes. In *Ankenbrandt v. Richards*, the United States Supreme Court reaffirmed the continued validity of the domestic relations exception, stating that this exception divests federal courts of jurisdiction "to issue divorce, alimony and child custody decrees." 504 U.S. 689, 703 (1992); *see also Am. Airlines v. Block*, 905 F.2d 12, 14 (2d Cir. 1990) (federal courts generally decline jurisdiction when they are "asked to grant a divorce or annulment, determine support payments, or award custody of a child") (internal quotation marks and citation omitted).

While this exception arose from an interpretation of the federal diversity statute, courts "routinely apply the exception to cases brought under the federal courts' federal question jurisdiction." *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at \*2 (E.D.N.Y. Nov. 7, 2014), *aff'd on other grounds*, 645 F. App'x 103 (2d Cir. 2016) (summary order); *see also Mitchell-Angel v. Cronin*, 101 F.3d 108 (2d Cir. Mar. 8, 1996) (unpublished decision) ("District courts in this Circuit have held that the exception includes civil rights actions directed at challenging the results of domestic

relations proceedings."); *Block*, 905 F.2d at 14 ("A federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts.").

Moreover, district courts within this Circuit have specifically applied the domestic relations exception to challenges to the child support decisions of New York Family Court Support Magistrates and Judges. *See, e.g., Wahmann v. Kaur*, No. 15-CV-4326, 2015 WL 6680220, at \*3 (E.D.N.Y. Nov. 2, 2015) ("Here, Plaintiff challenges orders entered by a Family Court Support Magistrate and a Family Court Judge modifying his child support obligations and he also challenges the [New York State and Local Retirement System's] deduction of $3675 from his pension which is related to his child support obligations. The Court cannot review Plaintiff's claims as they are a matter of state domestic relations law.") (citation omitted); *Fernandez*, 2014 WL 5823116, at \*2-3; *Sobel v. Prudenti*, 15 F. Supp. 3d 340, 353-54 (E.D.N.Y. 2014); *see also Donohue v. Pataki*, 28 F. App'x 59, 60 (2d Cir. 2002) (summary order) (affirming district court's "conclusion that it lacked jurisdiction to invalidate or otherwise review the state court's decision affirming the modification of ... child support payments"); *cf. Sykes v. Bank of Am.*, 723 F.3d 399, 404 (2d Cir. 2013) (appellant "does not ask us to issue a new child support decree in this case. Instead, we are tasked only with determining the lawfulness of [a bank's and two child support enforcement agencies'] actions, pursuant to a state court's child support order, requiring [appellant] to pay portions of his [Social Security Income] benefits toward his child support arrearage. The domestic relations exception, therefore, does not bar our jurisdiction to decide this issue.").

**\*3** Plaintiff asks this Court to "terminate" a collection proceeding brought against him in what appears to be the New York Family Court, New York County, in which Plaintiff has been ordered to pay child support. Under the domestic relations exception, this Court lacks subject matter jurisdiction to do that. The Court therefore dismisses, under the domestic relations exception, Plaintiff's claims in which Plaintiff seeks to nullify a determination of the New York Family Court, New York County, with regard to the assessment and collection of child support that Plaintiff owes. *See* Fed. R. Civ. P. 12(h)(3).

**B. New York Family Court, New York County**

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 104 of 158

Roger of the Family Forrest v. 45 C.F.R.§ 75.2 IV-D..., Not Reported in Fed....

Plaintiff's claims under 42 U.S.C. § 1983 against the New York Family Court, New York County, are also barred by the doctrine of Eleventh Amendment immunity. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity or unless Congress has abrogate[d] the states' Eleventh Amendment immunity...." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (internal quotation marks and citation omitted, second alteration in original). This immunity shields States from claims for money damages, injunctive relief, and retrospective declaratory relief. *See Green v. Mansour*, 474 U.S. 64, 72-74 (1985); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984). "[T]he immunity recognized by the Eleventh Amendment extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state." *Gollomp*, 568 F.3d at 366 (internal quotation marks and citation omitted).

Congress has not abrogated the States' immunity for claims under § 1983. *See Dube v. State Univ. of N.Y.*, 900 F.2d 587, 594 (2d Cir. 1990). And the State of New York has not waived its immunity to suit in federal court. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 40 (2d Cir. 1977); *see also Chris H. v. New York*, No. 1:16-CV-6807, 2017 WL 2880848, at *7 (S.D.N.Y. July 5, 2017) ("[T]o the extent that Plaintiff suggests that the State's receipt of [federal] Title IV-D funds resulted in a general waiver of immunity that entitles him to sue the State and state officials, the argument is incorrect. Title IV-D of the Social Security Act, which funds agencies tasked with collecting child support payments, does not condition receipt of funds on a waiver of sovereign immunity nor does it prohibit discrimination by recipients of such funds."), *aff'd*, 764 F. App'x 53 (2d Cir. 2019) (summary order).

Moreover, "the New York State Unified Court System is unquestionably an 'arm of the State,' and is entitled to Eleventh Amendment sovereign immunity." *Gollomp*, 568 F.3d at 368 (citation omitted); *see Deem v. DiMella-Deem*, No. 7:18-CV-11889, 2019 WL 1958107, at *10 n.6 (S.D.N.Y. May 2, 2019) ("Any claims against the Family Court would thus be barred by the Eleventh Amendment."). The Court therefore additionally dismisses Plaintiff's § 1983 claims against the New York Family Court, New York County – a New York State court – under the doctrine of

Eleventh Amendment immunity and because those claims are frivolous. [3] *See Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.' " (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989))).

## C. Vanessa Evans and George Cafasso

**\*4** Plaintiff's claims under 42 U.S.C. § 1983 against Vanessa Evans and George Cafasso – a New York Family Court Support Magistrate and a current or former New York Family Court First Deputy Clerk – are also barred under the doctrine of judicial immunity. Under this doctrine, judges are absolutely immune from suit for claims for damages for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (§ 1983). Generally, "acts arising out of, or related to, individual cases before [a] judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because "[w]ithout insulation from liability, judges would be subject to harassment and intimidation...." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). And as amended in 1996, § 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when a judge takes action that, although judicial in nature, is taken "in the complete absence of all jurisdiction." *Mireles* 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978). District courts within this Circuit have applied this immunity doctrine to New York Family Court Support Magistrates, like Evans. *See Herbert v. Cattaraugus Cnty.*, No. 17-CV-248S, 2017 WL 5300009, at *5-6 (W.D.N.Y. Nov. 13, 2017); *Cruz v. New York*, No. 5:17-CV-0510, 2017 WL 6021838, at *17-18 (N.D.N.Y. Oct. 27,

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 105 of 158

Roger of the Family Forrest v. 45 C.F.R.§ 75.2 IV-D..., Not Reported in Fed....

2017), *report & recommendation adopted*, 2017 WL 6001833 (N.D.N.Y. Dec. 4, 2017); *Chris H.*, 2017 WL 2880848, at *7; *Corrado v. N.Y. Office of Temporary & Disability Assistance*, No. 15-CV-7316, 2016 WL 3181128, at *4-5 (E.D.N.Y. June 2, 2016).

Courts have also extended this immunity to court clerks, like Cafasso, and "others who perform functions closely associated with the judicial process" when they are performing discretionary acts of a judicial nature which are essential to the judicial process. *See* Cleavinger v. Saxner, 474 U.S. 193, 200 (1985); *see* Rodriguez v. Weprin, 116 F.3d 62, 66 (2d Cir. 1997) (extending judicial immunity to state-court clerks who were ordered by judges not to provide a litigant with documents and not to expand the record on appeal); *Fariello v. Campbell*, 860 F. Supp. 54, 67-69 (E.D.N.Y. 1994) (applying to judicial immunity to § 1983 claims against a New York Family Court clerk arising out of the performance of one of his or her duties).

Plaintiff seems to assert claims arising from the efforts of Evans, a New York Family Court Support Magistrate, to assess and collect child support that Plaintiff owes pursuant to a Family Court order, and the efforts of Cafasso to assist the Family Court in enforcing that order against Plaintiff. These defendants are therefore immune from suit under the doctrine of judicial immunity. Accordingly, the Court dismisses Plaintiff's § 1983 claims against these defendants under the doctrine of judicial immunity and because these claims are frivolous. *See* Montero, 171 F.3d at 760. [4]

**D. Defendants' enforcement of Title IV-D**

**\*5** The Court also construes Plaintiff's complaint as asserting claims under 42 U.S.C. § 1983 arising from the defendants' allegedly incorrect enforcement of Title IV-D. Title IV-D underwrites States' child-support efforts and requires States "to establish a comprehensive system to establish paternity, locate absent parents, and help families obtain support orders." Blessing v. Freestone, 520 U.S. 329, 333-34 (1997).

The United States Supreme Court has made clear, however, that "Title IV-D does not give individuals a federal right to force a state agency to substantially comply with Title IV-D." Blessing, 520 U.S. at 333. "Title IV-D contains no

private remedy – either judicial or administrative – through which aggrieved persons can seek redress. The only way that Title IV-D assures that States live up to their child support plans is through the [HHS] Secretary's oversight." *Id.* at 348; *see also* Simmons v. N.Y.S. Dep't of Soc. Servs., No. 1:19-CV-3633, 2019 WL 1988673, at *3 (S.D.N.Y. May 3, 2019) ("Because there is no private right of action for an individual to bring any claim based on an alleged failure to comply with Title IV-D, the Court dismisses Plaintiff's claim invoking Title IV-D of the Social Security Act."). Thus, because Plaintiff does not have a private right of action to sue the defendants for the incorrect enforcement of Title IV-D, the Court dismisses these claims as frivolous.

**E. Leave to amend**

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See* Hill v. Curcione, 657 F.3d 116, 123-24 (2d Cir. 2011); Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend.

**CONCLUSION**

The Court directs the Clerk of Court to assign this matter to my docket, mail a copy of this order to Plaintiff, and note service on the docket. The Court dismisses this action for lack of subject matter jurisdiction and as frivolous.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *See* Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

The Court further directs the Clerk of Court to docket this order as a "written opinion" within the meaning of Section 205(a)(5) of the E-Government Act of 2002.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2019 WL 4194332

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 106 of 158

Roger of the Family Forrest v. 45 C.F.R.§ 75.2 IV-D..., Not Reported in Fed....

# Footnotes

1       Plaintiff has paid the relevant fees to bring this action.

2       The Court understands Plaintiff's claims against New York County to be brought against the City of New York.

3       *See also Zuckerman v. Appellate Div., Second Dep't, Supreme Court*, 421 F.2d 625, 626 (2d Cir. 1970) (holding that a state court is not a "person" for the purpose of § 1983 liability); *see generally Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (holding that a state agency is not a "person" for the purpose of § 1983 liability).

4       The amendment to § 1983, allowing for injunctive relief against a judge only if a state-court declaratory decree was violated or state-court declaratory relief is unavailable, precludes Plaintiff from seeking injunctive and declaratory relief against Evans and Cafasso. This is so because Plaintiff can seek review, by a Family Court Judge, of a Support Magistrate's rulings, and if unsuccessful, appeal a Family Court Judge's decision in the state appellate courts. *See* N.Y. Family Court Act §§ 439(e), 1112; *see generally, Berlin v. Meijia*, No. 15-CV-5308, 2017 WL 4402457, at *4 (E.D.N.Y. Sept. 30, 2017) ("Here, no declaratory decree was violated and declaratory relief is available to plaintiffs through an appeal of the state court judges' decisions in state court."), *appeal dismissed*, No. 17-3589 (2d Cir. Apr. 18, 2018) (effective May 18, 2018). Federal district courts do not supervise the state courts.

---

**End of Document**                                      © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 5625440
Only the Westlaw citation is currently available.
United States District Court, E.D. New York.

Cecil Roy KING, Plaintiff,

v.

NEW YORK STATE, James Francis Mathews [sic],
William B. Rebolini, Howard Heckman, Defendants.

23-CV-3421(GRB)(ST)
|
Signed August 31, 2023

**Attorneys and Law Firms**

Cecil Roy King, Coram, NY, Pro Se.

Lori L. Pack, Office of the New York State Attorney General,
Hauppauge, NY, for Defendants New York State, James
Francis Mathews, William B. Rebolini.

**ORDER**

GARY R. BROWN, United States District Judge:

 **\*1** Before the Court is the fee paid *pro se* complaint of
Cecil Roy King ("Plaintiff") brought pursuant to 📁 42 U.S.C.
§ 1983 against New York State ("NYS") and three NYS
judges: Hon. James Francis Matthews ("Judge Matthews"),
Hon. William B. Rebolini ("Judge Rebolini"), and Hon.
Howard Heckman ("Judge Heckman" and collectively,
"Defendants"). *See* Docket Entry "DE" 1; Receipt No.
200001582. Upon initial review of Plaintiff's complaint and
Defendants' letter motion requesting a pre-motion conference
in anticipation of filing amotion to dismiss the complaint (DE
5), the Court ordered Plaintiff to show cause within thirty
days why the claims set forth in the complaint should not
be dismissed for lack of subject matter jurisdiction. (DE 7.)
Plaintiff has responded by filing a "Response to Order to
Show Cause & Temporary Restraining Order." [1] (DE 8.)

For the reasons that follow, the Court lacks subject matter
jurisdiction to adjudicate Plaintiff's claims. Accordingly, the
complaint is dismissed without prejudice pursuant to Federal
Rule of civil Procedure 12(h)(3). Given the dismissal of the
complaint, the request for a restraining order is denied.

**BACKGROUND**

**1. Summary of the Complaint**

Plaintiff's complaint is brought against NYS and three state
judges arising from an underlying state mortgage foreclosure
action and subsequent eviction proceedings. *See* DE 1. The
brief complaint is submitted on the Court's form for civil
rights actions brought pursuant to 📁 Section 1983 and has
an additional 169 pages of attachments. [2] *Id.* According to
the complaint, Defendants violated Plaintiff's civil rights by
depriving Plaintiff of property rights without due process of
law. *Id.* at ¶ II.B. In its entirety, Plaintiff's Statement of Claim
alleges:

> Mortgage was illegally assigned to
> PHH Mortgage. Original mortgage
> was Fleet Bank in 2003. Assigned
> to PHH on 12/16/10. Referee's deed
> executed 2/14/20. Referee's deed
> executed 2/14/20 and sold in a no
> due process foreclosure sale. James
> Mathew denied plaintiff's motion to
> have fair trial 11/2/22. Judge Heckman
> signed illegal foreclosure with equal
> protection of law. Promissory note was
> illegally assigned to PHH Mortgage
> on 12/16/10. Referee's deed was
> executed without due process denying
> the plaintiff equal protection of law
> and depriving plaintiff of life, liberty
> and property without due process
> or no recourse. Plaintiff's property
> was sold to Federal National Corp
> – not sure when they became the
> owner – defendant took Plaintiff to
> District Court on 9/28/22 as the owner/
> petitioner of the home. PHH Mortgage
> and Federal National Mortgage does
> not have standing. There is a title
> dispute as to who owns the property.

*Id.* at ¶ III. In the space on the form complaint that calls for
a description of any injuries sustained as a result, Plaintiff
wrote:

**\*2** The Plaintiff did not get a fair and impartial procedure/trial/ hearing in Supreme Court or District Court. The defendants conspired and acted with deliberate indifference to the Constitution and federal laws when making decisions without investigating the facts. The defendants were provided notice that there is a title dispute. Plaintiff suffered wrongful eviction, slander, libel and intentional infliction of emotional distress.

Id. at ¶ IV. For relief

plaintiff requests 20 million dollar payment on this claim to be divided among the defendants. The plaintiff requests the state and district court judges licenses to practice law revoked. The judges assets to be liquidated to pay the judgement in full. The plaintiff demands complete control of the state's corporate charter and to have all records of illegal assignments, deed and all records to the plaintiff.

Id. ¶ V.

**2. Plaintiff's Response to the Order to Show Cause**

By Order to Show Cause dated June 16, 2023, the Court ordered Plaintiff to show cause why the claims in the complaint should not be dismissed without prejudice for lack of subject matter jurisdiction. DE 7. The Court explained that Eleventh Amendment immunity, absolute judicial immunity, and the *Rooker-Feldman* doctrine appeared to divest the Court of subject matter jurisdiction and set forth the legal and factual bases for that circumstance. *Id.* at 5-9. The Court invited Plaintiff to demonstrate why these doctrines do not bar adjudication of Plaintiff's claims in this Court and suggested that Plaintiff consult with the Hofstra Law *Pro Se* Clinic. *Id.* at 9.

Plaintiff's twenty-two page response does not address any of the issues raised by the Court and, instead, re-alleges the claims set forth in the complaint and argues the merits thereof. *See* DE 8, *in toto.* The only mention of "immunity" is at page 14 of Plaintiff's submission where in a single paragraph asserts that:

The judge has qualified immunity when he/she follows the constitution and the law. The Tucker Act exposes the government to liability for certain claims. Specifically, the Act extended the court's jurisdiction to include claims for liquidated or unliquidated damages arising from the Constitution (including takings claims under the Fifth Amendment), a federal statute or regulation, and claims in cases not arising in tort. The relevant text of the Act is codified in 🏳 28 U.S.C. §§ 1346(a) and 1491. The Tucker Act (March 3, 1887, Ch. 359, 24 Stat. 505, 28 U.S.C. § 1491) is a federal statute of the United States by which the United States government has waived its sovereign immunity with respect to lawsuits pertaining to 5th Amendment violations of due process.

*Id.* at 14.

**LEGAL STANDARDS**

Regardless of whether a plaintiff has paid the Court's filing fee, a district court may *sua sponte,* that is, on its own, dismiss a frivolous *pro se* complaint. *Fitzgerald v. First E. Seventh St. Tenants Corp.,* 221 F.3d 362, 364 (2d Cir. 2000) (*per curiam*) ("[D]istrict courts may dismiss a frivolous complaint *sua sponte* even when the plaintiff has paid the required filing fee" because "as courts of first instance, district courts are especially likely to be exposed to frivolous actions, and thus have an even greater need for inherent authority to dismiss such actions quickly in order to preserve scarce judicial resources."); *Clark v. Schroeder,* 847 F. App'x 92, 93 (2d Cir. 2021) (summary order) ("District courts have the inherent power to dismiss a complaint as frivolous, even when, as here, the plaintiff has paid the filing fee."); *Hawkins-El III v. AIG Fed. Sav. Bank,* 334 F. App'x 394, 395 (2d Cir. 2009) (affirming the district court's *sua sponte* dismissal of fee paid frivolous complaint).

**\*3** A claim is "frivolous when either: (1) the factual contentions are clearly baseless, such as when allegations are the product of delusion or fantasy; or (2) the claim is based

on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). In addition, a complaint is frivolous where it seeks relief from defendants who are immune from suit. *Montero v. Travis*, 171 F.3d 757, 760 (2d Cir. 1999) ("A complaint will be dismissed as frivolous when it is clear that the defendants are immune from suit.") (internal quotation marks omitted).

*Pro se* complaints are to be examined with "special solicitude," *Tracy v. Freshwater*, 620 F.3d 90, 102 (2d Cir. 2010), and are to be "interpreted to raise the strongest arguments they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994). However, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level...." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations, brackets, and citation omitted).

Notwithstanding the liberal pleading standard afforded *pro se* litigants, federal courts are courts of limited jurisdiction and may not preside over cases if subject matter jurisdiction is lacking. *Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 70-01 (2d Cir. 2000). Lack of subject matter jurisdiction cannot be waived and may be raised at any time or by the court *sua sponte. Id.*; *see also* FED. R. CIV. P. 12(h)(3)("Whenever it appears ... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action."); *Lance v. Coffman*, 549 U.S. 437, 439 (2007) ("Federal courts must determine that they have jurisdiction before proceeding to the merits."). Although *pro se* complaints are held to less stringent standards than pleadings drafted by attorneys, *Erickson v. Pardus*, 551 U.S. 89 (2007), a *pro se* plaintiff is not exempt from "compliance with relevant rules of procedural and substantive law", *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983), and still must establish that the

Court has subject matter jurisdiction over the action. *Ally v. Sukkar*, 128 F. App'x 194, 195 (2d Cir. 2005).

Even where subject matter is established, the Court may be divested of subject matter jurisdiction in certain circumstances, such as where the defendant is immune from suit. *See*, e.g., *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (federal courts lack subject matter jurisdiction over claims against judges relating to the exercise of their judicial functions on immunity grounds); *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) ("[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity[.]").

## DISCUSSION

### I. Eleventh Amendment Immunity

**\*4** The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. Amend. XI. The Supreme Court has long held that the Eleventh Amendment bars suits against a state by one of its own citizens in federal court. *See*, e.g., *Bd. of Trs. of Univ. of Alabama v. Garrett*, 531 U.S. 356, 363 (2001). Eleventh Amendment immunity extends to state officials acting in their official capacities, including state court judges. *Thomas v. Martin-Gibbons*, No. 20-3124, 2021 WL 2065892 (2d Cir. May 24, 2021) (summary order) (affirming dismissal of *pro se* Section 1983 claims against the State of New York and a state court judge in his official capacity based on Eleventh Amendment immunity).

However, sovereign immunity "is not absolute," and the Supreme Court "ha[s] recognized ... two circumstances in which an individual may sue a State." *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999). First, "a State may waive its sovereign immunity by consenting to suit." *Id.* Second, "Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth Amendment." *Id.*; *see also* *Kimel v. Florida Bd. Of Regents*, 528 U.S. 62, 80 (2000). Neither

of these exceptions applies in this case. It is well-established that New York State has not waived its sovereign immunity from 🚩 Section 1983 claims. *Mamot v. Bd. of Regents, 367 F. App'x 191, 192 (2d Cir. 2010)* (summary order). Moreover, Congress did not abrogate that immunity when it enacted 🚩 Section 1983. *See Will v. Mich. Dep't of State Police, 491 U.S. 58, 66 (1989)* ("Congress, in passing 🚩 § 1983, had no intention to disturb the States' Eleventh Amendment immunity[.]"); *Clark v. Schroeder, 847 F. App'x 92, 93-94 (2d Cir. 2021)* ("Absent the State's express waiver or a congressional abrogation of immunity, the Eleventh Amendment renders a state immune from federal lawsuits brought either by its own citizens or by citizens of another state.").

Thus, the Eleventh Amendment precludes Plaintiff's claims against NYS and the individuals Defendants sued in their official capacities. *See, e.g., Parker v. New York, No. 22-CV-3170(GRB)(AYS), 2022 WL 2441215, at *3 (E.D.N.Y. July 1, 2022)* (finding New York state has not waived its Eleventh Amendment immunity and dismissing *pro se* plaintiff's 🚩 Section 1983 claims against New York State). Plaintiff does not argue otherwise having been given an opportunity to do so. *See* DE 8. Accordingly, the Court lacks subject matter jurisdiction to adjudicate Plaintiff's 🚩 Section 1983 claims brought against NYS and the individual Defendants in their official capacities. Thus, such claims are dismissed without prejudice pursuant to Federal Rule of Civil Procedure 12(h)(3).[3]

## II. Judicial Immunity

Judges have absolute immunity from suit for judicial acts performed in their judicial capacities. 🚩 *Mireles, 502 U.S. at 11* ("[J]udicial immunity is an immunity from suit, not just from the ultimate assessment of damages."). Indeed, "judicial acts -- even if they are alleged to have been done maliciously or corruptly -- are not subject to civil liability." *Davis v. Gillespie, No. 22-CV-6207, 2023 WL 5002553, at *5 (E.D.N.Y. Aug. 4, 2023)* (citing 🚩 *Stump v. Sparkman, 435 U.S. 349, 355-56 (1978)* (finding state court judge absolutely immune from 🚩 § 1983 suit where that judge had power to entertain and act upon motions in an underlying case)). "The Supreme Court has generally concluded that acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *See Brady v. Ostrager, 834 F.*

App'x 616, 618 (2d Cir. 2020) (quoting 🚩 *Bliven v. Hunt, 579 F.3d 204, 210 (2d Cir. 2009)*). Absolute judicial immunity "is not overcome by allegations of bad faith or malice," and a judge cannot "be deprived of immunity because the action he took was in error ... or was in excess of his authority." 🚩 *Mireles, 502 U.S. at 11* (internal quotation marks omitted); 🚩 *Bliven, 579 F.3d at 209.*

**\*5** Here, the challenged conduct of the individual Defendants occurred during the course of the underlying state court proceedings and any actions they took in those cases were judicial acts for which they are afforded absolute judicial immunity. Accordingly, Plaintiff's claims against the individual Defendants are dismissed without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3).[4]

## III. State Law Claims

Under 🚩 28 U.S.C. § 1367(a), "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." However, courts "may decline to exercise supplemental jurisdiction over a claim" if "the district court has dismissed all claims over which it has original jurisdiction." 🚩 28 U.S.C. § 1367(c)(3). The Supreme Court explained that "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine -- judicial economy, convenience, fairness, and comity -- will point toward declining to exercise jurisdiction over the remaining state-law claims." 🚩 *Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).*

Here, given the absence of a plausible federal claim, the interests of judicial economy, convenience, fairness, and comity weigh in favor of not exercising supplemental jurisdiction at this time over any state law claims that may be reasonably construed from the complaint. Accordingly, the Court declines to exercise supplemental jurisdiction over any potential state-law claims contained in Plaintiff's complaint and dismisses any such claims without prejudice.

## IV. Leave to Amend

A *pro se* plaintiff should ordinarily be given the opportunity "to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." 🚩 *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009) (internal quotation marks and citation omitted). However, leave to amend is not required where it would be futile. *See* 🚩 *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); 🚩 *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Given that Plaintiff's claims could not be cured with amendment, leave to amend would be futile and is thus, denied.

**CONCLUSION**

Based on the foregoing, Plaintiff's complaint is dismissed without prejudice for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(h)(3).

Given the dismissal of the complaint, Plaintiff's request for injunctive relief is denied and Defendants' request for a pre-motion conference is denied as moot. The Clerk of the Court shall enter judgment accordingly and mark this case closed. The Clerk of the Court shall also mail a copy of this Order to the *pro se* Plaintiff at the address of record and note service on the docket.

The Court certifies pursuant to 🚩 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in forma pauperis* status is denied for the purpose of any appeal. *See* 🚩 *Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**\*6  SO ORDERED.**

**All Citations**

Slip Copy, 2023 WL 5625440

**Footnotes**

1    Plaintiff also seeks an order "restrain[ing] the [D]efendants from any further state court action until the federal court dispute is adjudicated. Plaintiff also requests the court to vacate any state court judgments or orders in the interest of justice," (DE 8 at 21.)

2    The exhibits are largely excerpts from law treatises, copies of cases, and state and federal statutory laws, well as several reports prepared on Plaintiff's behalf concerning the mortgage at issue in the underlying state case. *See* DE 1-1.

3    Plaintiff's 🚩 Section 1983 claims against NYS are frivolous for the additional reason that New York State is not a "person" within the meaning of 🚩 Section 1983. 🚩 *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989) (State is not a "person" for the purpose of 🚩 § 1983 claims); *Zuckerman v. Appellate Div., Second Dep't Supreme Court*, 421 F.2d 625, 626 (2d Cir. 1970) (Court not a "person" within the meaning of 🚩 42 U.S.C. § 1983).

4    Given that the Eleventh Amendment and judicial immunity divest this Court of subject matter jurisdiction, the Court need not address the application of the *Rooker-Feldman* doctrine and declines to do so.

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

 © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 112 of 158

Brown v. Peters, Not Reported in F.Supp. (1997)

1997 WL 599355
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth BROWN, Plaintiff,

v.

Andrew PETERS, Warden, Watertown Correctional
Facility; Joseph Williams, Warden, Lincoln Work–
Release Center; Francis J. Herman, Senior Parole
Officer Interstate Bureau; T. Stanford, Senior Parole
Officer; Deborah Stewart, Parole Officer; John Doe #
1, Parole Agent, Watertown Correctional Facility; John
Doe # 2, Parole Agent, Lincoln Work Release Center;
Susan Bishop, Director of Interstate Compact, South
Carolina; Cecil Magee, Parole Officer, South Carolina;
Frank Barton, Parole Officer, South Carolina; John
McMahan, Parole Officer, South Carolina, Defendants.

No. Civ.A. 95CV1641RSPDS.
|
Sept. 22, 1997.

**Attorneys and Law Firms**

Kenneth Brown, State Court Institute–Greene, Waynesburg,
PA, plaintiff, pro se.

Dennis C. Vacco, New York State Attorney General, The
Capitol Albany, NY, for defendants Peters, Herman Stewart,
Doe # 1, Doe # 2, and Williams, Jeffrey M. Dvorin, Assistant
Attorney General, Carl N. Lundberg, Chief Legal Counsel,
South Carolina Department of Probation, Columbia, SC, for
defendants Bishop, Magee, Barton, McMahan, and Stanford,
Carl N. Lundberg, of Counsel.

DECISION AND ORDER

POOLER, J.

**\*1** The above matter comes to me following a Report–
Recommendation by Magistrate Judge Daniel Scanlon, Jr.,
duly filed on April 17, 1997. Following ten days from the
service thereof, the Clerk has sent me the entire file, including
any and all objections filed by the parties herein.

Plaintiff Kenneth Brown commenced this Section 1983 civil
rights action on November 17, 1995. On February 12,

1996, Magistrate Judge Scanlon ordered Brown to submit an
amended complaint alleging the specific acts committed by
the individuals named as defendants which Brown claimed
violated his constitutional rights. Brown filed an amended
complaint on March 21, 1996. In his amended complaint,
Brown alleged that defendants violated his rights under the
Eighth and Fourteenth Amendments by failing to process
properly his interstate compact paperwork, resulting in Brown
being imprisoned pursuant to a parole hold when in fact
he had never violated the conditions of his parole. For a
more complete statement of Brown's claims, see his amended
complaint. Dkt. No. 5.

On August 5, 1996, defendants Peters and Williams made
a motion to dismiss for failure to state a claim pursuant to
Fed.R.Civ.P. 12(b)(6). Dkt. No. 13; Dkt. No. 14, at 2. On
August 19, 1996, defendants Bishop, Magee, Barton, and
McMahan made a motion to dismiss the complaint against
them or, in the alternative, for summary judgment. Dkt. No.
20. On October 17, 1996, defendants Herman, Stewart, and
Stanford made a motion to dismiss for failure to state a
claim. Dkt. No 34. On April 17, 1996, Magistrate Judge
Scanlon recommended that all defendants' motions to dismiss
be granted and that the complaint be dismissed. Dkt. No. 50.

On June 9, 1997, Brown filed objections to the
magistrate judge's report-recommendation, having been
granted additional time in which to do so. Dkt. No. 52. In
addition, Brown filed on June 9, 1997, a motion for leave to
file a second amended complaint and a copy of his proposed
amended complaint. Dkt. No. 53. I turn first to the last motion
filed, Brown's motion for leave to amend his complaint a
second time.

Brown seeks to file a second amended complaint "setting
forth in detail the personal involvement of each defendant
and how their acts of commission and omission served to
deprive plaintiff of Constitutionally secured rights." Dkt. No.
53. The district court has discretion whether to grant leave
to amend. Ruffolo v. Oppenheimer & Co., 987 F.2d 129,
131 (2d Cir.1993). In exercising that discretion, the court
should freely grant leave to amend when justice so requires.
Fed.R.Civ.P. 15(a). However, the court need not grant leave
to amend where it appears that amendment would prove to be
unproductive or futile. Ruffolo, 987 F.2d at 131.

Here, Brown moved to amend his complaint to add additional
allegations against the named defendants. However, the

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 5:23-cv-01051-BKS-ML    Document 8    Filed 09/29/23    Page 113 of 158

additional allegations fail to cure the deficiency which forms the basis of defendants' motion to dismiss— the absence of defendants' personal involvement in a constitutional deprivation. Section 1983 imposes liability upon an individual only when personal involvement of that individual subjects a person to deprivation of a federal right.

*See* Monell v. Dep't of Soc. Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). A complaint is fatally defective if it fails to allege personal involvement sufficient to establish that a supervisor was "directly and personally responsible for the purported unlawful conduct." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir.1987).

 *2  Brown's proposed amended complaint alleges in conclusory fashion that defendants acted "in a grossly negligent and concerted manner which breached their duties owed to Plaintiff and is the proximate cause of [the violation of plaintiff's constitutional rights]." Proposed Am. Compl., at 3. Brown continues in the same vein, stating that defendants owed duties to plaintiff to carry out their jobs in a professional manner and they failed to carry out those duties appropriately. The complaint states that defendants held specific responsibilities, such as checking for outstanding warrants, which if performed properly should have alerted them to a problem. However, nowhere does the complaint set forth allegations that these defendants either participated directly in any constitutional infraction or that they were even aware of such an infraction. The proposed amended complaint merely alleges that these defendants failed in performing their supervisory and ministerial functions. "These bare assertions do not state a claim under 42 U.S.C. § 1983." *Smiley v. Davis,* 1988 WL 78306, *2 (S.D.N.Y.).

This plaintiff previously has had the opportunity to amend his complaint for the same reason asserted here, to allege personal involvement on the part of defendants. Brown's first amended complaint failed to accomplish that task, and it appears that even if allowed to amend again Brown would be unable to make the requisite allegations with sufficient specificity to sustain his complaint. Consequently, I find that amendment would be futile, and I deny Brown's motion for leave to amend his complaint.

I turn now to the magistrate judge's report-recommendation and defendants' motions. The magistrate judge recommends that I grant defendants' motions and dismiss the complaint as to all defendants. The report-recommendation clearly describes the grounds on which the magistrate judge

recommends dismissal as to each defendant. Fed.R.Civ.P. 72(b) requires the district judge to make a *de novo* determination on "any portion of the magistrate's disposition to which specific, written objection has been made." Brown's objections fail to address directly any of the analysis. Brown's objections state (1) that he has been deprived of his constitutional rights; (2) that he has stated a cause of action; (3) that the court wrongly refused to appoint an attorney for him and wrongly stayed discovery pending the outcome of these motions; (4) that he seeks to file an amended complaint; (5) the standard of review for a Fed.R.Civ.P 12(b)(6) motion; (6) that he disagrees with the magistrate judge's recommendation to grant defendants' motions because the allegations in his complaint, which he repeats, show that his rights were violated; and (7) the text of the Fourteenth and Eighth Amendments.

Even affording the objections the liberal reading required for *pro se* pleadings, I find that these objections fail to state any basis whatsoever, much less a specific one, for the court not to adopt the magistrate judge's rulings. They simply re-state the relief sought and the facts on which Brown grounds his complaint and conclude that the magistrate judge's conclusions are wrong. When the parties make only frivolous, conclusive, or general objections, the court reviews the report-recommendation for clear error. *See* Camardo v. General Motors Hourly–Rate Employees Pension Plan, 806 F.Supp. 380, 382 (W.D.N.Y.1992) (court need not consider objections which are frivolous, conclusive, or general and constitute a rehashing of the same arguments and positions taken in original pleadings); *Chambrier v. Leonardo,* 1991 WL 44838, *1 (S.D.N.Y.) (restatement of allegations already before the court and assertion that valid constitutional claim exists insufficient to form specific objections); *Schoolfield v. Dep't of Correction,* 1994 WL 119740, *2 (S.D.N.Y.) (objections stating that magistrate judge's decisions are wrong and unjust, and restating relief sought and facts upon which complaint grounded, are conclusory and do not form specific basis for not adopting report-recommendation); *Vargas v. Keane,* 1994 WL 693885, *1 (S.D.N.Y.) (general objection that report does not address violation of petitioner's constitutional rights is a general plea that report not be adopted and cannot be treated as objection within the meaning of 28 U.S.C. § 636), *aff'd,* 86 F.3d 1273 (2d Cir.), *cert. denied,* 519 U.S. 895, 117 S.Ct. 240, 136 L.Ed.2d 169 (U.S.1996). *See also* Scipio v. Keane, 1997 WL 375601, *1 (1997) (when objections fail to address analysis directly, court reviews report-recommendation for clear error); Fed.R.Civ.P.

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:23-cv-01051-BKS-ML    Document 8    Filed 09/29/23    Page 114 of 158

72(b), Advisory Comm. Note (when no specific, written objections filed, "court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation").

**\*3** Because Brown fails to make specific objections or provide any basis for his general objections, I review the report-recommendation for clear error. After careful review, I conclude that the magistrate judge's report-recommendation is well-reasoned and is not clearly erroneous.[1] The magistrate judge employed the proper standard, accurately recited the facts, and reasonably applied the law to those facts. Consequently, I adopt the report-recommendation.

## CONCLUSION

Because plaintiff's proposed amendment demonstrates that amendment would be futile, I deny plaintiff's motion for leave to amend his complaint. I approve the magistrate judge's recommendation and grant defendants' motions to dismiss. Plaintiff's complaint is dismissed in its entirety.

IT IS SO ORDERED.

## ORDER and REPORT–RECOMMENDATION

This matter was referred to the undersigned for report and recommendation by the Hon. Rosemary S. Pooler, United States District Judge, by Standing Order dated November 12, 1986. Currently before this Court are a number of motions. Defendants Peters and Williams have filed a motion to dismiss (dkt.13); defendants Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative to dismiss (dkt.20); and defendants Herman, Stewart and Stanford also have filed a motion to dismiss (dkt.34). Plaintiff opposes these three motions (dkts.27, 29, 33, 38). Defendants Bishop, Magee and McMahan have filed a motion to stay discovery (dkt.41) and plaintiff has filed a motion to extend time (dkt.44) in which to file opposition to the latter motion for a stay of discovery.

The Court addresses these issues *seriatim*.

## BACKGROUND

Plaintiff's amended complaint, which he has brought pursuant to 42 U.S.C. § 1983, alleges the following facts. In October, 1991, plaintiff was incarcerated in the Watertown Correctional Facility in Watertown, New York. He applied for an interstate compact because he wanted to return to South Carolina to live with his common law wife, Pamela Reid. During the application process, he was interviewed by the facility's parole officer, identified only as defendant John Doe # 1. After signing the necessary papers, his application was forwarded to defendant Andrew Peters, the facility's superintendent, who reviewed, signed and forwarded the papers to the Interstate Bureau. Amend. Compl. at ¶¶ 1–2; Exs. A, B.

On or about January 15, 1992, while his compact was waiting for review at the Interstate Bureau, plaintiff was approved for work release and sent to the Lincoln Work Release Center in New York City. While at the center, plaintiff spoke to a parole officer, defendant John Doe # 2, and told him that he was seeking a compact that would return him to South Carolina upon his conditional release. Plaintiff claims the parole officer told him that he would handle the necessary paperwork, although the officer had had no experience with an interstate compact. Amend. Compl. at ¶¶ 3, 4.

**\*4** Plaintiff, meanwhile, asked Reid whether any officials had contacted her in South Carolina regarding his prospective residence in that state. Upon discovering no one had contacted her, plaintiff asked a lawyer he knew, Navron Ponds, to inquire as to his compact status. In March, 1992, the lawyer spoke with defendant Susan Bishop, who is the director of the interstate compact program in South Carolina. Bishop allegedly told Ponds that plaintiff "was disapproved because there was a discrepancy about approving plaintiff['s] compact." The "discrepancy" was the fact that plaintiff owed the state of South Carolina eighty-six days of confinement from a previous sentence. Plaintiff claims Bishop told Ponds to contact defendants Cecil Magee and Frank Barton, who worked for the South Carolina Parole Department. Sometime in March, 1992, Ponds made some calls to Barton and Magee. A verbal agreement was reached, and plaintiff, upon speaking with Barton and Magee was told that his compact had been approved. He also was told that he should report to the South Carolina Department of Parole upon being released. Amend. Compl. at ¶¶ 5–7.

Prior to leaving the Lincoln Work Release Center, plaintiff processed paperwork related to his interstate compact. His paperwork was sent by Doe # 2 to defendant Joseph Williams,

the superintendent of the center. Williams reviewed, signed and returned the paperwork to plaintiff. On May 1, 1992, upon his release from the center, plaintiff traveled to South Carolina. Three days later, he entered a South Carolina parole office and promptly was arrested because of the eighty-six days of confinement that he owed the state. Plaintiff's paperwork was given to defendant John McMahan, a parole officer. Plaintiff claims that McMahan never returned this paperwork to him. On May 20, 1992, the state of South Carolina revoked plaintiff's parole and plaintiff was returned to prison to serve the eighty-six days that he owed. When he asked McMahan what would happen to his one year of parole from New York, the officer allegedly told him that his New York parole would run concurrently with his South Carolina parole, and that when he finished his South Carolina parole, he would not owe any parole whatsoever. Plaintiff served the eighty-six days he owed and was released on July 31, 1992. Amend. Compl. at ¶¶ 8–10.

In February, 1993, plaintiff was arrested on robbery charges in South Carolina. The charges ultimately were dropped, but he apparently encountered some difficulties regarding this arrest as a result of a parole hold that New York state had placed upon him. Bishop's office told him that it had nothing to do with his parole hold and that any problem that he had was between him and the state of New York. He talked to authorities in Albany, New York regarding the parole hold, but was not successful in his efforts to have the hold removed. On September 30, 1993, after had been extradited to New York as a fugitive from justice, plaintiff was given a preliminary hearing at Riker's Island, New York. The hearing officer found no probable cause that plaintiff had violated any condition of parole. He was released. Amend. Compl. at ¶¶ 11–14; Exs. C–J.

**\*5** Plaintiff claims that he would not have suffered hardships if his interstate compact had been handled correctly. He alleges that defendant Deborah Stewart failed to follow up and see whether plaintiff had arrived in South Carolina. If she had, he argues, she would have discovered that he had been arrested upon his arrival. He alleges that defendant Francis Herman, a parole officer at the Interstate Bureau failed to do his job by not investigating plaintiff's violation reports. Amend. Compl. at ¶¶ 15–17; Exs. F–I.

Plaintiff asserts that the foregoing amounts violations of his Eighth and Fourteenth Amendment rights, wherefore he both compensatory and declaratory relief.

## DISCUSSION

A. Motion to Dismiss by Williams and Peters.

Williams and Peters have filed a motion to dismiss plaintiff's complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that it fails to state a claim upon which relief may be granted. In a Rule 12(b)(6) motion, all factual allegations in the complaint must be taken and construed in plaintiff's favor. *See LaBounty v. Adler,* 933 F.2d 121, 122 (2d Cir.1991) (citing *Ortiz v. Cornette,* 867 F.2d 146, 149 (1989)). The Court's role is not to assess whether plaintiffs have raised questions of fact or demonstrated an entitlement to a judgment as a matter of law, as in a motion made pursuant to FED.R.CIV.P. 56 for summary judgment, but rather to determine whether plaintiff's complaint sufficiently alleges all of the necessary legal elements to state a claim under the law. *See Christopher v. Laidlaw Transit, Inc.* 899 F.Supp. 1224, 1226 (S.D.N.Y.1995), (citing *Ricciuti v. New York City Transit Authority,* 941 F.2d 119, 124 (2d Cir.1991)). Factual allegations in brief or memoranda may not be considered. *Fonte v. Board of Managers of Continental Towers Condominium,* 848 F.2d 24, 25 (2d Cir.1988). The Court now turns to the issues presented.

Personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994). As superintendents at New York State Correctional facilities, Williams and Peter may be found personally involved in the alleged deprivation of plaintiff's constitutionally protected rights by a showing that they: (1) directly participated in the infraction; (2) knew of the infraction, but failed to remedy the wrong; (3) created or continued a policy or custom under which unconstitutional practices occurred; or (4) were grossly negligent in managing subordinates who caused unlawful conditions or events. *Id.,* (quoting *Williams v. Smith,* 781 F.2d 319, 323–24 (2d Cir.1986)). Supervisory liability also may be imposed against Williams or Peters with a showing of gross negligence or deliberate indifference to plaintiff's constitutional rights. *Id.* Absent some personal involvement by Williams or Peters in the allegedly constitutionally infirm conduct of their subordinates, neither can be held liable under § 1983. *Gill v. Mooney,* 824 F.2d 192, 196 (2d Cir.1987).

Brown v. Peters, Not Reported in F.Supp. (1997)

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 116 of 158

**\*6** Plaintiff has not provided any evidence linking either Williams or Peters to his alleged constitutional deprivations. All that plaintiff has alleged is that Williams and Peters, as superintendents, have reviewed and signed paperwork relating to plaintiff's compact. Though it has long been held that *pro se* complaints are held to "less stringent standards than formal pleadings drafted by lawyers" for the purpose of a motion to dismiss under Rule 12(b)(6), *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), plaintiff has not explained how the ministerial conduct of these two defendants was violative of the Constitution. Their motion to dimiss should be granted.

**B. Motion for Summary Judgment or to Dismiss by Bishop, Magee, Barton and McMahan.**

Bishop, Magee, Barton and McMahan have filed a motion for summary judgment, or in the alternative a motion to dismiss. The Court will treat their motion as a motion to dismiss. "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Adams,* 810 F.2d 358, 363 (2d Cir.1987). Plaintiff has not alleged specifically how the conduct of these four defendants infringed upon his constitutional rights. In his amended complaint, he contends that defendants violated the Constitution by "continuously breaching [[[their] duty" to him. This language underscores the defect with the complaint: if it alleges anything at all, it alleges that defendants were negligent in handling plaintiff's interstate compact and parole. To state a cognizable § 1983 claim, the prisoner must allege actions or omissions sufficient to demonstrate deliberate indifference; mere negligence will not suffice. *Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 620 (2d Cir.1996); *Morales v. New York State Dep't of Corrections,* 842 F.2d 27, 30 (2d Cir.1988) (section 1983 does not encompass a cause of action sounding in negligence).

The Court finds that the claims against Bishop, Magee, Barton and McMahan should be dismissed.

**C. Motion to Dismiss by Herman, Stewart and Stanford.**

Plaintiff's claim against Stewart is that she failed to follow up and see whether plaintiff had arrived in South Carolina. Herman, he likewise asserts, failed to do his job because he did not investigate plaintiff's violation reports. Plaintiff has not alleged how these actions run afoul of the Constitution; and again, these claims seem to be grounded in negligence, which is not actionable under § 1983. *Hayes,* 84 F.3d at 620.

Plaintiff's claim against Stanford must fail because his complaint literally fails to state a claim against that defendant. Aside from naming Stanford as a defendant, and alleging that he was the appointed Senior Parole Officer at plaintiff's September 30, 1993 revocation hearing at Riker's Island, plaintiff does not detail how Stanford violated his constitutional rights. Absent some personal involvement by Stanford in the allegedly constitutionally infirm conduct of his subordinates, he cannot be held liable under § 1983. *Gill,* 824 F.2d at 196.

**\*7** Accordingly, the Court finds that Stanford, Stewart and Herman's motion to dismiss should be granted.

**D. Plaintiff's "John Doe" Claims.**

In so far as neither John Doe # 1 nor John Doe # 2 have been identified and served in this matter, the Court does not have jurisdiction over these parties and does not reach the merits of plaintiff's claims against them.

**E. Discovery Motions.**

Defendants Bishop, Magee and McMahan have filed a motion to stay discovery until the Court has made a ruling on their motion to dismiss. Plaintiff has filed a motion to extend the time in which he may file opposition to defendants' motion. Plaintiff, however, has filed his opposing response (dkt.47), therefore his instant discovery motion is denied as moot. In that the Court recommends granting defendants' motion to dismiss, discovery in this matter would be fruitless. Accordingly, defendants' motion for a stay of discovery pending the resolution of their motion to dismiss is granted.

**CONCLUSION**

WHEREFORE, based upon the foregoing analysis, it is hereby

ORDERED, that plaintiff's motion to extend the time to file an opposing reply (dkt.44) is denied as moot; and it is further

**Brown v. Peters, Not Reported in F.Supp. (1997)**

Case 5:23-cv-01051-BKS-ML    Document 8    Filed 09/29/23    Page 117 of 158

ORDERED, that defendants Bishop, Magee and McMahan's motion to stay discovery until their motion to dismiss is decided (dkt.41) is granted; and it is further

RECOMMENDED, that defendants Peters and Williams' motion to dismiss (dkt.13) be granted; and it is further

RECOMMENDED, that defendants Bishop, Magee, Barton and McMahan's motion to dismiss (dkt.20) be granted; and it is further

RECOMMENDED, that defendants Herman, Stewart and Stanford's motion to dismiss (dkt.34) be granted.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have ten (10) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. *FAILURE TO OBJECT TO THIS REPORT WITHIN TEN (10) DAYS WILL PRECLUDE APPELLATE REVIEW.* *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993) (citing *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir.1989)); 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 6(a), 6(e) and 72.

**All Citations**

Not Reported in F.Supp., 1997 WL 599355

## Footnotes

1    I note, however, that the report-recommendation would survive even *de novo* review.

    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 118 of 158

1995 WL 316935
Only the Westlaw citation is currently available.
United States District Court,
N.D. New York.

Mina POURZANDVAKIL, Plaintiff,

v.

Hubert HUMPHRY, Judisicial Systeam of The State of Minnesota and Olmested County Court Systeam, and State of Minnesota, Saint Peter State Hospital, Doctor Gammel Stephelton, et el Erickson, North West Bank and Trust, Olmested County Social Service, J.C. Penny Insurnce, Metmore Finicial, Traveler Insurnce, Comecial Union Insurnce, Hirman Insurnce, Amrican State Insurnce, Farmers Insurnce, C. O Brown Insurnce, Msi Insurnce, Steven Youngquist, Kent Chirstain, Micheal Benson, United Airline, Kowate Airline, Fordmotor Cridite, First Bank Rochester, George Restwich, British Airways, Western Union, Prudenial Insurnce, T.C.F. Bank, Judge Sandy Kieth, Judge Niergari, Olmestead County Judgering, Judge Mores, Judge Jacobson, Judge Challien, Judge Collin, Judge Thomase, Judge Buttler, Judge Morke, Judge Moweer, Sera Clayton, Susan Mudhaul, Ray Schmite, Defendants. [1]

Civ. A. No. 94-CV-1594.
|
May 23, 1995.

## Attorneys and Law Firms

Hubert H. Humphrey, III, Atty. Gen. of the State of Minn., St. Paul, MN, Jerome L. Getz, Asst. Atty. Gen., of counsel, for Hubert H. Humphry, III, Judicial System of the State of Minnesota, St. Peter Regional Treatment Center, Gerald Gammell, MD, William Erickson, MD, Thomas Stapleton, MD, the Honorable James L. Mork, Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen, and Judge Lawrence Collins.

Condon & Forsyth, P.C., New York City, Stephen J. Fearon, Michael J. Holland, of counsel, for British Airways, P.L.C. and Kuwait Airways Corp.

Dunlap & Seeger, P.C., Rochester, MN, Gregory J. Griffiths, of counsel, for Olmsted County, Raymond Schmitz, Susan Mundahl, Norwest Bank Minnesota, N.A. (the Northwest Bank & Trust), C.O. Brown Agency, Inc.

Arthur, Chapman, McDonough, Kettering & Smetak, P.A., Minneapolis, MN, Eugene C. Shermoen, Jr., of counsel, for J.C. Penney Ins. Co. and Metropolitan Ins. Co.

Shapiro & Kreisman, Rochester, NY, John A. DiCaro, of counsel, for Metmor Financial, Inc.

Costello, Cooney & Fearon, Syracuse, Paul G. Ferrara, Robert J. Smith, of counsel, for Travelers Ins. Companies; Hirman Ins.; Commercial Union Ins. Companies.

Smith, Sovik, Kendrick & Sugnet, P.C., Syracuse, Thomas N. Kaufmann, of counsel, for American States Ins. Co. and Prudential Ins. Co.

Steven C. Youngquist, Rochester, MN, pro se.

Thomas J. Maroney, U. S. Atty., Syracuse, NY, William F. Larkin, Asst. U. S. Atty., of counsel, for Michael Benson, Postmaster N. D. of New York.

George F. Restovich & Associates, Rochester, MN, George F. Restovich, of counsel, for George F. Restovich.

Conboy, McKay, Bachman & Kendall, L.L.P, Watertown, NY, George K. Myrus, of counsel, for Western Union.

Richard Maki, Rochester, MN, pro se.

## MEMORANDUM-DECISION AND ORDER

POOLER, District Judge.

### INTRODUCTION

**\*1** In the four and one-half months since she filed this action, plaintiff Mina Pourzandvakil has filed three amended complaints and ten motions. She also has sought and received entry of default against ten defendants, none of whom she properly served. She twice has sought and been denied temporary restraining orders. She has included in her action defendants with no apparent connection to this forum, that were vindicated in actions she brought in other forums.

In response, several individual defendants and groups of defendants have filed a total of twelve motions, some seeking vacation of the defaults entered against them, some seeking dismissal and others seeking both. We grant defendants' motions insofar as they seek vacation of the clerk's entries of default and dismissal of the complaint. We vacate *sua sponte*

Case 5:23-cv-01051-BKS-ML    Document 8    Filed 09/29/23    Page 119 of 158

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

the entries of default against the non-moving defendants. Finally, we dismiss the complaint in its entirety against all defendants.


BACKGROUND

Pourzandvakil commenced this action by filing a complaint in the Office of the Clerk on December 9, 1994 (Docket No. 1). The complaint named as defendants the Attorney General of the State of Minnesota, the State of Minnesota and Olmsted County, Minnesota judicial systems, various Minnesota judges and prosecutors, St. Peter State Hospital in Minnesota and various doctors who worked at St. Peter's. Without specifying the time or defendant involved, the complaint accused the defendants of kidnapping Pourzandvakil and her daughter, torturing Pourzandvakil in the Mayo Clinic since April 1985, and causing Pourzandvakil and her daughter to suffer physically, financially and emotionally. Pourzandvakil twice requested that we issue a temporary restraining order. We denied both requests. *See* Order entered December 14, 1994 (Docket No. 4) and Memorandum-Decision and Order entered December 22, 1994 (Docket No. 6).

On December 27, 1994, Pourzandvakil filed an amended complaint (the "first amended complaint") (Docket No. 7) that appears to differ from the original complaint by adding British Airways as a defendant without making any allegations against British Airways. The first amended complaint also differs by requesting additional damages for prior cases and adding descriptions of several previous cases. Annexed to the first amended complaint is another document labeled amended complaint (the "annexed amended complaint") (Docket No. 7) whose factual allegations differ substantially from both the original complaint and the first amended complaint. The annexed amended complaint also adds British Airways as a party but specifies only that Pourzandvakil has travelled on that airline and that British Airways, along with other airlines on which Pourzandvakil has travelled, is aware of all the crimes committed against her.

Pourzandvakil filed yet another amended complaint on January 13, 1995 (the "second amended complaint") (Docket No. 11). The second amended complaint adds as defendants several banks, other financial institutions, insurance companies, insurance agents or brokers, attorneys and airlines as well as the Postmaster of Olmsted County and Western Union. The allegations against these defendants defy

easy summarization and will be addressed only insofar as they are relevant to the various motions.

**\*2** The Clerk of the Court has entered default against the following defendants: J.C. Penny Insurnce (*sic*)[2] ("J.C. Penney"), British Airways, Kowate (*sic*) Airline ("Kuwait"), MSi Insurnce (*sic*) ("MSI"), Judge Mork, Steven Youngquist ("Youngquist"), Prudncial Insurnce (*sic*) ("Prudential"), Ford Motor Credit ("Ford"), First Bank Rochester, and TCF Bank ("TCF"). Based on the submissions Pourzandvakil made in support of her requests for entry of default, it appears that she served these defendants by certified mail.

The court has received answers from the following defendants: Hubert H. Humphrey III, St. Peter Regional Treatment Center, and Drs. Gerald H. Gammell, William D. Erickson, and Thomas R. Stapleton (joint answer filed January 9, 1995); Olmsted County, Ray Schmitz ("Schmitz"), Susan Mundahl ("Mundahl"), C.O. Brown Agency, Inc. ("C.O. Brown") (answer to amended complaint filed January 23, 1995); George Restovich ("Restovich") (answer to complaint or amended complaint filed January 30, 1995); Norwest Corporation ("Norwest") (answer to amended complaint filed January 31, 1995, amended answer of Norwest Bank Minnesota, N.A. to amended complaint filed February 13, 1995); Travelers Insurance Company ("Travelers") (answer filed February 1, 1995); Michael Benson ("Benson") (answer filed February 6, 1995); Hirman Insurance ("Hirman") (answer filed February 6, 1995); Richard Maki ("Maki") (answer to complaint or amended complaint filed February 17, 1995); Western Union (answer filed February 21, 1995); Steven C. Youngquist ("Youngquist") (answer to complaint or amended complaint filed February 23, 1995); Kuwait (answer filed March 6, 1995); J.C. Penney (answer filed March 22, 1995); Susan E. Cooper[3] (answer to amended complaint filed March 24, 1995); and Chief Judge Anne Simonett, Judge Jack Davies, Judge Roger Klaphke, Judge Dennis Challeen and Judge Lawrence Collins (joint answer filed April 3, 1995).

The court has also received a total of ten motions from Pourzandvakil since February 27, 1995. She moved for a default judgment against defendants J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways, and TCF. She moved for immediate trial and "venue in a different place" against several defendants and also requested action according to law and criminal charges. Finally, she made motions opposing defendants' motions.

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

The court also has received a total of thirteen motions [4] from defendants. Several of the defendants moved for dismissal either under Rule 56 or Rule 12 of the Federal Rules of Civil Procedure. For instance, Commercial Union Insurance Companies ("Commercial") moved for dismissal of Pourzandvakil's complaint pursuant to Fed. R. Civ. P. 12(b) or, in the alternative, for a more definite statement. Commercial argued that Pourzandvakil's complaint against it is barred by *res judicata* and collateral estoppel and that this court does not have subject matter jurisdiction over the complaints against Commercial. American States Insurance Company ("ASI") moved for dismissal based on plaintiff's failure to state a claim upon which relief can be granted. ASI further moved for an order enjoining Pourzandvakil from further litigation against it. Maki moved for summary judgment based on lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim upon which relief can be granted, and lack of subject matter jurisdiction. Hubert H. Humphrey, III, the Judicial System of the State of Minnesota, Judge James L. Mork, St. Peter Regional Treatment Center and Drs. Gammell, Erickson and Stapleton (collectively, the "state defendants") moved for summary judgment alleging lack of personal jurisdiction, improper venue, plaintiff's failure to state a claim on which relief can be granted, lack of subject matter jurisdiction, sovereign immunity, and, on behalf of Judge Mork and the judicial system, absolute judicial immunity. The state defendants also requested costs and attorney's fees. Travelers moved for summary judgment based on *res judicata* and/or collateral estoppel, frivolity, lack of subject matter jurisdiction, and improper venue. Travelers sought a transfer of venue to Minnesota in the alternative. Hirman moved for summary judgment based on frivolity, lack of subject matter jurisdiction, and improper venue. Hirman also sought transfer of venue in the alternative. Olmsted County, Schmitz, Mundahl, C.O. Brown and Norwest sought dismissal based on lack of personal jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. With respect to Schmitz and Mundahl, defendants sought dismissal based on absolute prosecutorial immunity, and with respect to C.O. Brown, defendants sought dismissal on *res judicata* grounds. Metmor Financial, Inc. ("Metmor") sought dismissal based on lack of personal jurisdiction, lack of subject matter jurisdiction, improper venue, and plaintiff's failure to state a claim upon which relief can be granted. Finally, Restovich moved for dismissal based on lack of personal jurisdiction. [5]

**\*3** Four defendants, British Airways, Kuwait, Prudential, and Youngquist, sought vacatur of the defaults entered against them. Prudential coupled its request with a request for an order enjoining plaintiff from filing or intervening in any litigation against it. Youngquist also requested dismissal of the complaint based on lack of personal jurisdiction and lack of subject matter jurisdiction.

ANALYSIS

The Defaults

We vacate the defaults entered in this matter because plaintiff improperly served defendants. Each application for entry of default shows service by certified mail, which is not permitted by relevant federal, New York or Minnesota rules. Under the Federal Rules of Civil Procedure, service on an individual may be made by (1) delivery to the named defendant; or (2) delivery to a person of suitable age and discretion at the defendant's dwelling house or usual place of abode; or (3) delivery to an agent authorized by law or by the defendant to receive service of process. Fed. R. Civ. P. 4(e)(2). Service on an individual also can be accomplished through a method authorized by the state in which the district court sits or in which the individual is located. Fed. R. Civ. P. 4(e)(1). Service on a corporation may be accomplished in a judicial district of the United States (1) pursuant to a method authorized by the law of the state in which the court sits or in which the corporation is located; or (2) by delivering a copy of the summons and complaint to an officer, managing or general agent, or to any other agent authorized by statute to receive service and, if the statute so requires, by also mailing a copy to the defendant. Fed. R. Civ. P. 4(h)(1) and 4(e)(1). Neither New York nor Minnesota law authorizes personal service on an individual or corporation by certified mail. *See* N.Y. Civ. Prac. L. & R. §§ 308, 311 (McKinney Supp. 1995); N.Y. Bus. Corp. Law § 306 (McKinney Supp. 1995); Minn. Stat. § 543.08 (1995); Minn. R. 4.03 (1995). Finally, service on states, municipal corporations or other governmental organizations subject to suit can be effected by (1) delivering a copy of the summons and complaint to the state's chief executive officer; or (2) pursuant to the law of the state in which the defendant is located. Fed. R. Civ. P. 4(j)(2). Minnesota law does not authorize service on a governmental entity by certified mail. *See* Minn. R. 4.03(d) and (e) (1995).

We therefore grant the motions by British Airways, Prudential, Kuwait, and Youngquist to vacate the defaults entered against them based both on the defective service and also on the meritorious defenses discussed below. We vacate *sua sponte* the entries of default against MSI, Ford, First Bank

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 121 of 158

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Rochester and TCF, all of whom were served improperly and preserved the service issue by raising it or declining to waive it. Concomitantly, we deny Pourzandvakil's motion for a default judgment against J.C. Penney, First Bank Rochester, Prudential, Ford, MSI, British Airways and TCF. We vacate *sua sponte* the entry of default against J. C. Penney, which preserved the issue of service in its answer. By moving to dismiss or for summary judgment without raising the issue of service, Judge Mork may have waived the service issue. However Judge Mork objected to personal jurisdiction as inconsistent with due process and otherwise presented meritorious defenses. We therefore treat his motion for summary judgment as including a motion to vacate the entry of default and accordingly grant it.

II. The Jurisdictional Arguments

 **\*4** In addition to raising various other grounds for dismissal, such as plaintiff's failure to state a claim on which relief can be granted and *res judicata,* most of the moving defendants urge (1) that this court lacks jurisdiction over either their persons or the subject matter of the controversy or (2) that this action is improperly venued. As we must, we examine jurisdiction and venue first.

A. Personal Jurisdiction

Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich and Youngquist each allege that this court cannot exercise personal jurisdiction over them consistent with due process constraints. In support of their motions, these defendants present affidavits showing that they have had no significant contacts with the state of New York relevant to this lawsuit and that their contacts with Pourzandvakil all occurred in Minnesota. Nothing in plaintiff's voluminous submissions links any of these defendants with New York. Plaintiff's extraterritorial service of process can be effective only under any of the following circumstances: (1) if defendants could be subjected to the jurisdiction of a court of general jurisdiction in New York State; (2) if the defendant is subject to federal interpleader jurisdiction; (3) if the defendant is joined pursuant to Rule 14 or Rule 19 of the Federal Rules of Civil Procedure and is served within a judicial district of the United States and not more than 100 miles from the place from which the summons issues; (4) if a federal statute provides for long-arm jurisdiction; or (5) if plaintiff's claims arise under federal law and the defendants could not be subject to jurisdiction in the courts of general jurisdiction in any state of the United States. Fed. R. Civ. P. 4(k). Defendants

are not subject to federal interpleader jurisdiction and they were not joined pursuant to Rule 14 or Rule 19. In addition, no federal long-arm statute is argued as a basis for jurisdiction, and the moving defendants all would be subject to jurisdiction in Minnesota. Therefore, we must look to New York's long-arm statute to determine whether plaintiff's extraterritorial service of process could be effective under the one ground remaining pursuant to Rule 4(k). *See* N.Y. Civ. Prac. L. & R. § 302 (McKinney Supp. 1995). This rule provides that in order to obtain jurisdiction over a non-domiciliary, the plaintiff must show both certain minimal contacts between the defendant and the state (such as transacting any business in the state) and that the harm plaintiff suffered springs from the act or presence constituting the requisite contact. *Id.* §302(a). The moving defendants have demonstrated that plaintiff does not claim harm stemming from acts or contacts within the purview of Section 302(a). Therefore, we grant these defendants' motions to dismiss the complaint for lack of personal jurisdiction.

B. Subject Matter Jurisdiction

Pourzandvakil's complaint does not contain the jurisdictional allegations required by Fed. R. Civ. P. 8(a)(1). Several defendants move for dismissal based either on this pleading defect or on an affirmative claim that no subject matter jurisdiction exists. Commercial, Travelers and Hirman (collectively, the "moving insurance companies") moved for dismissal because plaintiff has not pled the complete diversity of citizenship required for subject matter jurisdiction. The state defendants, relying on *District of Columbia Court of Appeals v. Feldman,* argue that we lack subject matter jurisdiction over any issue that was determined in a state court proceeding to which plaintiff was a party.

⚑ *District of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482 (1983). These issues include plaintiff's hospitalization at St. Peter Regional Treatment Center. Finally, Metmor also moved for dismissal based on lack of subject matter jurisdiction because plaintiff has failed to plead a jurisdictional basis.

 **\*5** The moving insurance companies note correctly that insofar as the claims against them can be deciphered, plaintiff states that Traveler's and Commercial did not pay for damages to Pourzandvakil's property, harassed her and cancelled her policy. Pourzandvakil does not mention Hirman in her complaint, but Hirman's attorney states that Pourzandvakil informed him in a telephone conversation that her complaint against Hirman stemmed from actions it took as an agent of

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 122 of 158

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

Travelers in denying Pourzandvakil's 1985 property damage claim.

The moving insurance companies argue that this court has no jurisdiction over the state insurance law claims absent complete diversity of citizenship between plaintiff and the defendants. ⚑ 28 U.S.C. § 1332. They point out that plaintiff lists a Syracuse, New York address for herself and that Kuwait's address as listed in the complaint is also in New York. Therefore, they argue, there is no complete diversity and this court lacks subject matter jurisdiction absent a basis for pendent jurisdiction under ⚑ 28 U.S.C. § 1367(a).

⚑ Section 1367(a) requires a relationship between the state and federal claims so that "they form part of the same case or controversy." *Id.* Because plaintiff's claims of denial of insurance coverage bear no apparent relationship to her other claims of rape, torture, harassment and kidnapping, we do not believe that an adequate basis for supplemental jurisdiction exists. *Id.* Plaintiff's complaint therefore shows no basis for subject matter jurisdiction against the moving insurance companies, and we dismiss as against them. [6]

We also agree with the state defendants that state court decisions may render certain of plaintiff's claims against them unreviewable either because of *res judicata* or lack of subject matter jurisdiction. However, because plaintiff's claims are so generally stated and so lacking in specifics, we are unable to discern at this juncture what parts of her complaint would be outside the jurisdiction of the court. In any case, we already have determined that the state defendants are clearly entitled to dismissal on personal jurisdiction grounds. As for Metmor, we believe that plaintiff may be attempting to state a civil rights claim by alleging a conspiracy to murder in connection with a judge although she fails to articulate an actionable claim. We note that we already have determined, in any case, that Metmor is entitled to dismissal on personal jurisdiction grounds.

### C. Venue

Metmor, Travelers, Maki, Hirman, Norwest, Olmsted County, C.O. Brown, Schmitz and Mundahl also allege that Pourzandvakil's action is not properly venued in this court. Although these defendants are entitled to dismissal on independent grounds, improper venue also would support dismissal as to these defendants. The general venue statute provides that a diversity action, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which the defendants are subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

**\*6** ⚑ 28 U.S.C. § 1391(a). ⚑ Section 1391(b) provides that federal question actions, except as otherwise provided by law, may be brought only in

> (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

⚑ *Id.* § 1391(b). The majority of the defendants in this action are residents of Minnesota and all of the events of which Pourzandvakil complains occurred in Minnesota. No defendant resides in the Northern District of New York, and none of the conduct plaintiff complains of occurred in this district. Therefore, venue in the Northern District of New York is clearly improper. Where venue is laid in the wrong district, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." *Id.* § 1406(a). Because, as we will explain below, Pourzandvakil's complaint not only fails to state a claim upon which relief can be granted but is also frivolous, we do not deem it to be in the interest of justice to

Case 5:23-cv-01051-BKS-ML    Document 8    Filed 09/29/23    Page 123 of 158

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

transfer this case to another district. The purpose of the court's discretionary authority to transfer rather than dismiss in cases of improperly laid venue is "to eliminate impediments to the timely disposition of cases and controversies on their merits."

*Minnette v. Time Warner,* 997 F.2d 1023, 1027 (2d Cir. 1993) (holding that it was an improper exercise of discretion to dismiss rather than transfer when the statute of limitations on a timely filed complaint ran between filing and dismissal). In this case, as discussed below, a review of the complaint and the plaintiff's submissions on these motions indicates that her claims are frivolous. We therefore dismiss as to the moving defendants both on venue grounds and on the other grounds already identified as applicable. We note also that plaintiff has made claims similar to those in this action against many of the same defendants in the United States District Court for the District of Minnesota. *Pourzandvakil v. Price,* Civ. No. 4-93-207 (D.Minn. 1993). This action was dismissed by Order to Show Cause entered April 12, 1993.

III. Failure to State a Claim on Which Relief Can be Granted and Frivolity

Defendants ASI, Travelers, Hirman, Norwest, C.O. Brown, Olmsted County, Schmitz, Mundahl, Prudential, Metmor, and Youngquist as well as the state defendants have attacked the sufficiency of plaintiff's complaint. Travelers and Hirman urge that the complaint is frivolous while the remaining defendants argue only that the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). [7] We already have dismissed against all the moving parties except ASI on jurisdictional grounds and therefore have the power to address the Rule 12(b)(6) issue only on ASI's motion. *See* *Bell v. Hood,* 327 U.S. 678, 682-83 (1946) (subject matter jurisdiction); *Arrowsmith v. United Press Int'l,* 320 F.2d 219, 221 (2d Cir. 1963) (personal jurisdiction). We grant ASI's motion and note in passing that were we empowered to reach the merits regarding the remaining moving defendants, we also would dismiss the complaint against them for failure to state a claim upon which relief can be granted. We also dismiss *sua sponte* as frivolous the complaint against all defendants who have not been granted dismissal previously on jurisdictional grounds.

**\*7** Pourzandvakil has not specified a statutory or constitutional basis for her claims against ASI or any of the other defendants. She alleges that certain of the insurance company defendants denied her claims for damages without alleging that the denial was in any respect wrongful. She also alleges in general terms that the defendants harassed, tortured, kidnapped and raped her and perhaps were involved in a murder plot but does not supply (1) the dates on which these actions occurred, except to say that they began in 1984 and 1985; (2) the names of the specific defendants involved in any particular conduct; or (3) a description of any particular conduct constituting the harassment, torture or kidnapping. She suggests without further detail that ASI was involved in a plot to murder her by placing her in the Mayo Clinic. Although plaintiff does not allege specific constitutional provisions or statutes that defendants have violated, we assume -- largely because many of the defendants involved are state officials or state employees and she appears to complain of certain aspects of various trials -- that she wishes to complain of violations of her civil rights. Complaints that rely on civil rights statutes are insufficient unless "they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams,* 810 F.2d 358, 363 (2d Cir. 1987). A *pro se* plaintiff's complaint must be construed liberally and should be dismissed only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (quotation omitted). Pourzandvakil has not satisfied even this minimal test; her complaint and submissions on this motion demonstrate that she cannot prove any set of facts in support of her claim which would entitle her to relief. Her complaint consists of a "litany of general conclusions" rather than "specific allegations of fact". *Barr,* 810 F. 2d at 363.

Ordinarily we would allow plaintiff an opportunity to replead to state specific allegations against ASI, but three factors militate against this course of action. First, our December 22, 1994, Memorandum - Decision and Order denying plaintiff's request for a temporary restraining order indicated that she had not shown a likelihood of success on the merits of her claim because she had not pled any specific actionable facts. Despite the fact that plaintiff since has filed three amended complaints, she still fails to set forth specific actionable conduct. Second, the defendants' motions themselves have alerted plaintiff to the need to show specific actionable facts, and yet her voluminous submissions in opposition to the motions contain no specific actionable facts. Finally, plaintiff has asserted similar allegations against many of the same defendants sued in this action -- although not ASI -- as well as others in several different jurisdictions. *See Pourzandvakil v. Blackman,* [8] Civ. No. 94-C944 (D.D.C. 1994), *Pourzandvakil*

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 124 of 158

Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)

*v. Doty* (E.D.N.Y. 1993), *Pourzandvakil v. Price,* Civ. No. 7 (D.Minn. 1993). Where the results are known to us these actions resulted in dismissals for failure to state a claim upon which relief can be granted. *Pourzandvakil v. Price,* Civ. No. 4-93-207, Order to Show Cause entered April 12, 1993; *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, Order entered April 28, 1994, *aff'd* Civ. No. 94-5139 (D.C. Cir. 1994) (per curiam). In the Minnesota case, dismissal took place after the district court offered plaintiff an opportunity to amend her pleading and plaintiff still was not able to offer specifics. [9] Even *pro se* complaints must show "some minimum level of factual support for their claims." *Pourzandvakil v. Blackman,* Civ. No. 94-C-94, (quoting *White v. White,* 886 F. 2d 721, 724 (4th Cir. 1989)). We therefore dismiss plaintiff's complaint against ASI for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

**\*8** We note that in *Pourzandvakil v. Blackman,* Judge John H. Pratt dismissed plaintiff's *in forma pauperis* complaint *sua sponte* under 28 U.S.C. §1915(d), holding both that it failed to state a claim on which relief can be granted and that it was frivolous. We consider here whether we have the authority to dismiss *sua sponte* plaintiff's complaint, which was not filed *in forma pauperis,* as frivolous as against all non-moving defendants. The Supreme Court explicitly has acknowledged a district court's power under Section 1915(d) to dismiss as frivolous a complaint which "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). The Supreme Court explicitly declined to rule, however, on whether a district court has the authority to dismiss *sua sponte* frivolous complaints filed by non-indigent plaintiffs. *Id.* at 329 n.8. The law in this circuit is that a district court may *sua sponte* dismiss a frivolous complaint even if the plaintiff has paid the filing fee. *See Tyler v. Carter,* 151 F.R.D. 537, 540 (S.D.N.Y. 1993), *aff'd* 41 F.3d 1500 (2d Cir. 1994); *cf. Pillay v. I.N.S.,* 45 F.3d 14, 17 (2d Cir. 1995) (*per curiam*) (dismissing *sua sponte* appeal for which appellant had paid normal filing fee). We believe that *sua sponte* dismissal is appropriate and necessary here because (1) plaintiff's claims lack an arguable basis in law and fact; (2) plaintiff has repeatedly attempted to replead her claims without being able to articulate actionable conduct; (3) some of plaintiff's claims have been tested in other courts and found to be without merit; and (4) the issue of frivolity has been presented by at least some of the moving defendants.

We therefore dismiss with prejudice plaintiff's complaint as frivolous as to all defendants -- regardless of whether they have moved for dismissal -- that have not been granted dismissal on jurisdictional grounds. We direct the clerk to return plaintiff's filing fee to her. *Tyler,* 151 F.R.D. at 540.

### IV. Requests for Sanctions, Costs, Attorney's Fees and Injunction Against Filing Further Actions

Because plaintiff is *pro se* and appears to have a belief in the legitimacy of her complaint, we do not believe that the purpose of Rule 11 would be served by awarding sanctions. *See Carlin v. Gold Hawk Joint Venture,* 778 F. Supp. 686, 694-695 (S.D.N.Y. 1991). Moreover, her litigiousness has not yet reached the point at which courts in this circuit have justified injunctive relief. *See id.* at 694 (and collected cases). We therefore deny the requests of ASI and Prudential for injunctive relief. Our refusal to grant sanctions and injunctive relief, however, is conditioned on this dismissal putting an end to plaintiff's attempts to sue these defendants on these claims in this forum. Any further attempts by plaintiff to revive these claims will result in our revisiting the issue of sanctions. *Id.* at 695.

### CONCLUSION

**\*9** All defaults entered by the clerk are vacated. Plaintiff's complaint is dismissed in its entirety against all moving and non-moving defendants. The dismissal of the complaint against Maki, the state defendants, Olmsted County, Schmitz, Mundahl, C.O. Brown, Norwest, Metmor, Restovich, Youngquist, Commercial, Travelers and Hirman is without prejudice as it is premised on this court's lack of power either over the person of the defendant or the subject matter of the controversy. *See Voisin's Oyster House, Inc. v. Guidry,* 799 F.2d 183, 188-9 (5th Cir. 1986) (dismissal for lack of subject matter jurisdiction is not a dismissal on the merits); *John Birch Soc'y. v. National Broadcasting Co.,* 377 F.2d 194, 199 n.3 (2d Cir. 1967) (dismissal for lack of subject matter jurisdiction implies no view of merits); *Orange Theatre Corp. v. Rayherstz Amusement Corp.,* 139 F.2d 871, 875 (3d Cir.) *cert. denied,* 322 U.S. 740 (1944) (dismissal for lack of personal jurisdiction is not a dismissal on the merits). The dismissals against the remaining defendants are with prejudice. All requests for sanctions and attorney's fees are denied. The requests of defendants ASI and Prudential for an injunction with respect to future litigation is denied.

**Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)**

Case 5:23-cv-01051-BKS-ML   Document 8   Filed 09/29/23   Page 125 of 158

However, plaintiff is cautioned that any litigation in this forum attempting to revive the claims addressed herein may subject her to sanctions. Plaintiff's motions are denied as moot.

IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp., 1995 WL 316935

## Footnotes

1      Names in the caption are spelled to reflect plaintiff's complaint.

2      Plaintiff's spelling is idiosyncratic, and we preserve the spelling in its original form only where absolutely necessary for accuracy of the record. Otherwise we substitute the word we believe plaintiff intended for the word she actually wrote, e.g., "tortured" for "tureared."

3      Susan E. Cooper is not named as a defendant in the original complaint or any amended complaint filed with this court. From correspondence with Cooper's attorney, it appears that plaintiff sent Cooper a copy of a different version of the complaint. Because the original of this version was not filed with the court, no action against Cooper is pending in this court.

4      The court has also received three additional motions returnable May 22, 1995. The first -- from Judges Davies, Klaphake, Challeen, Collins and Chief Judge Simonett requests summary judgment dismissing the complaint based on lack of personal jurisdiction. The second by Western Union also requests summary judgment based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. The third, by British Airways, also requests dismissal based, *inter alia,* on plaintiff's failure to state a claim on which relief can be granted. All three motions are mooted by this memorandum-decision and order which dismisses the complaint in its entirety against non-moving defendants for failure to state a claim on which relief can be granted.

5      The court also received an affidavit and memorandum of law in support of summary judgment from J.C. Penney. However, the documents were not accompanied by a notice of motion.

6      We ordinarily would offer plaintiff an opportunity to amend her complaint because her submissions and Kuwait's answer indicate two bases on which plaintiff might be able to argue diversity of citizenship. First, although plaintiff lists her address in Syracuse, New York, she also has indicated on the civil cover sheet that she is an Iranian Citizen and we are not aware of her residence status. As a permanent resident, she would be deemed a citizen of the state in which she resides. 28 U.S.C. § 1332(a). However, if she lacks permanent resident status, her citizenship would be considered diverse from that of all the defendants. *Id.* § 1332(a)(2). Second, Kuwait has submitted an answer in which it claims to be a foreign state within the meaning of 28 U.S.C. § 1603. If Kuwait is correct, plaintiff may have an independent basis for jurisdiction over Kuwait. *See* 28 U.S.C. § 1330. If Pourzandvakil could show subject matter jurisdiction over Kuwait without resort to diversity of citizenship, then Kuwait's residence in New York may not be relevant to the issue of whether this court has diversity jurisdiction under Section 1332. *Cf. Hiram Walker & Sons, Inc. v. Kirk Line,* 877 F.2d 1508, 1511-1512 (11th Cir. 1989), *cert. denied,* 115 S.Ct. 1362 (1995) (holding that the joinder of a non-diverse defendant sued under federal question jurisdiction did not destroy diversity as to the remaining defendant). Here, however, plaintiff's complaint is subject to so many other meritorious defenses -- including complete failure to state a cause of action -- that an amendment would be an exercise in futility. Additionally, plaintiff has not requested permission to amend, proffered an amended pleading, or indeed even supplied an

**Pourzancvakil v. Humphry, Not Reported in F.Supp. (1995)**

Case 5:23-cv-01051-BKS-ML    Document 8    Filed 09/29/23    Page 126 of 158

affidavit stating her residency status or alleging a basis of jurisdiction over her claims against Kuwait other than diversity under ⚑ 28 U.S.C. § 1332.

7    J.C. Penney also submits an affidavit requesting dismissal on this basis and others, but has not filed or served a notice of motion.

8    Former Supreme Court Justice Harry A. Blackmun.

9    We note also that plaintiff has not requested leave to amend in this action.

---

**End of Document**                                  © 2023 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW    © 2023 Thomson Reuters. No claim to original U.S. Government Works.    9

2022 WL 2341420
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,

v.

Dr. Mary O'CONNOR, Defendants.

1:22-cv-581 (DNH/TWD)
|
Signed June 29, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, pro se, 757 Taborton
Road, Sand Lake, NY 12153.

**<u>ORDER AND REPORT-RECOMMENDATION</u>**

THÉRÈSE WILEY DANCKS, United States Magistrate
Judge

**\*1** Alisha Clark Walker ("Plaintiff") initiated this action
*pro se* on June 2, 2022, claiming Dr. Mary O'Connor
("Defendant") violated 42 U.S.C. § 1983 and § 1985.
(Dkt. No. 1.) Plaintiff simultaneously moved to proceed
*in forma pauperis* ("IFP"). (Dkt. No. 2.) Having reviewed
Plaintiff's motion to proceed IFP, the undersigned GRANTS
the motion for purposes of this review. *See id.* The
undersigned now considers the sufficiency of the allegations
set forth in the Complaint under 28 U.S.C. § 1915(e). For
the reasons discussed below, the undersigned recommends
that the Court dismiss Plaintiff's Complaint in its entirety with
leave to amend. (Dkt. No. 1.)

**I. SUMMARY OF THE COMPLAINT** [1]
This is the second of two actions Plaintiff initiated against
various individuals stemming from a child custody dispute in
New York State Family Court. (*See* Dkt. No. 1; *see also* Case
No. 1:22-cv-560, Dkt. No. 1.) In the first (hereinafter, "*Walker
I*"), Plaintiff claimed several New York State Family Court
Judges, two private attorneys, and the Averill Park School
District violated her First and Fourteenth Amendment rights.
(Case No. 1:22-cv-560, Dkt. No. 1.) In this case, Plaintiff
restates and reasserts many of the same claims against Dr.
Mary O'Connor, a private individual ordered by the New State

Family Court to render forensic psychological evaluations in
the underlying custody dispute. (*See* Dkt. No. 1 at 1-2, 8.)
Here, as in *Walker I*, Plaintiff invokes this Court's jurisdiction
under 28 U.S.C. § 1331 and § 1343, purporting to advance
several causes of action under 42 U.S.C. § 1983 and §
1985. (Dkt. No. 1 at 4.)

Plaintiff claims "the policies, practices, procedures, and
standards established and/or maintained by Defendant/s [sic]
violate the Right to Free speech under the First Amendment,
and the Due Process and Equal Protection clauses of the
Fourteenth Amendment to the U.S. Constitution." *Id.* at
4. Plaintiff accordingly recycles many of the same claims
against Dr. O'Connor that she asserted against the Defendants
in *Walker I. See id.* at 9-31. Through the first cause of action,
Plaintiff claims Dr. O'Connor "religiously discriminated
against" her in violation of the First Amendment. *Id.* at 9.
In her second cause of action, Plaintiff claims Dr. O'Connor
retaliated against her in violation of the First Amendment.
*Id.* at 10. By her third cause of action, Plaintiff claims
Dr. O'Connor "deprived [her] of the rights of a mother to
her children and due process and freedom of speech" in
violation of the First and Fourteenth Amendments. *Id.* at
12-13. Through her fourth cause of action, Plaintiff claims
Dr. O'Connor discriminated against her. *Id.* at 14-19. In her
fifth cause of action, Plaintiff claims Dr. O'Connor used her
position to "maliciously intentionally inflict harm and pain
on the Plaintiff." *Id.* at 20. By her sixth and final cause of
action, Plaintiff claims Dr. O'Connor engaged in sex bias
discrimination. *Id.* at 25.

**II. STANDARD OF REVIEW**
**\*2** This Court must conduct an initial review of complaints
filed *in forma pauperis*, and "complaints in which a prisoner
seeks redress from a governmental entity or officer or
employee of a governmental entity." 28 U.S.C. § 1915(e)
(2)(B) (governing complaints filed *in forma pauperis*); 28
U.S.C. § 1915A (governing complaints filed by prisoners
against the government). When reviewing these types of
complaints, this Court must "identify cognizable claims or
dismiss the complaint, or any portion of the complaint, if
the complaint ... is frivolous, malicious, or fails to state a
claim upon which relief may be granted; or ... seeks monetary
relief from a defendant who is immune from such relief." 28
U.S.C. § 1915A; 28 U.S.C. § 1915(e)(2)(B); *see also Allen
v. Stringer*, No. 20-3953, 2021 WL 4472667, at \*1 (2d Cir.
Sept. 30, 2021) (applying Section 1915(e)(2)(B)); *Carr v.*

*Dvorin*, 171 F.3d 115, 116 (2d Cir. 1999) (applying Section 1915A).[2]

This Court must exercise caution when determining whether to *sua sponte* dismiss a *pro se* complaint on the grounds that it is frivolous. *See Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991); *Anderson v. Coughlin*, 700 F.2d 37, 41 (2d Cir. 1983). "An action is frivolous when either: (1) the factual contentions are clearly baseless such as when the claims are the product of delusion or fantasy; or (2) the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). "A claim is based on an indisputably meritless legal theory when either the claim lacks an arguable basis in law, or a dispositive defense clearly exists on the face of the complaint." *Id.*

When undertaking this initial review, the Court must construe *pro se* pleadings with the utmost leniency. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding that a *pro se* litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers"); *see also Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). To survive dismissal for failure to state a claim, a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This short and plain statement of the claim must be "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The statement of the claim must do more than present "an unadorned, the-defendant-harmed-me accusation." *Iqbal*, 556 U.S. 662, 678. It must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Twombly*, 550 U.S. 544, 555; *see also* Fed. R. Civ. P. 8(a)(2).

In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

## III. SUFFICIENCY OF THE COMPLAINT

**\*3** Plaintiff's Complaint should be dismissed because it fails to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B). Moreover, just like *Walker I*, Plaintiff's claims are likely barred by either the *Younger* abstention or the *Rooker-Feldman* doctrine.

### A. Plaintiff's Section 1983 Claims

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1983. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).[3] Plaintiff purports to bring this action against Dr. O'Connor, a court-appointed forensic psychologist, under 42 U.S.C. § 1983. (*See* Dkt. No. 1 at 3-4.) "To prevail on a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that some person has deprived him of a federal right, and (2) that the person who has deprived him of that right acted under color of state law." *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005). "[P]rivate individuals ... cannot be sued under 42 U.S.C. § 1983 absent a plausible allegation that they acted under color of state law." *Basile v. Connolly*, 538 F. App'x 5, 7 (2d Cir. 2013). A conclusory allegation that a private individual acted in concert with a state actor does not constitute a plausible allegation that the private individual acted under color of state law. *See Ciambriello v. Cnty. of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002); *see, e.g.*, *Asensio v. DiFiore*, No. 18-CV-10933 (RA), 2019 WL 4392743, at *8 (S.D.N.Y. Sept. 13, 2019) (concluding the plaintiff's "conclusory allegations" of conspiracy were "plainly insufficient to support a finding that [the defendant] has acted under color of state law."); *Bornschein v. Herman*, 304 F. Supp. 3d 296, 301 (N.D.N.Y. 2018) (same).

Plaintiff's Section 1983 claims against Dr. O'Connor are inadequately pled because she failed to allege Dr. O'Connor acted under color of state law. *See* 42 U.S.C. § 1983;

*Velez*, 401 F.3d at 84. Plaintiff's conclusory allegations that Dr. O'Connor acted in concert with state actors do not plausibly allege that Dr. O'Connor acted under color of state law. *See Asensio*, 2019 WL 4392743, at *8; *Bornschein*, 304 F. Supp. 3d at 301. Similarly, Plaintiff's allegation that Dr. O'Connor was ordered by the court to issue a forensic evaluation does not give rise to the reasonable inference that she was acting under color of state law. *See, e.g., Markham v. Rosenbaum*, No. 20-CV-6039-FPG, 2020 WL 3316099, at *9 (W.D.N.Y. June 18, 2020), *appeal dismissed*, No. 20-2223, 2021 WL 3027159 (2d Cir. May 13, 2021) (concluding a court-appointed psychologist was not a state actor for purposes of a claim brought pursuant to 42 U.S.C. § 1983 arising out of child custody dispute); *Elmasri v. England*, 111 F. Supp. 2d 212, 221 (E.D.N.Y. 2000) (same); *see generally Estiverne v. Esernio-Jenssen*, 910 F. Supp. 2d 434, 444 (E.D.N.Y. 2012) ("Dr. Jenssen's cooperation in the [Administration for Children's Services] investigation, by providing medical information and opinion, does not transform her into a state actor."). The undersigned accordingly recommends that the Court dismiss all claims asserted under 42 U.S.C. § 1983 on the grounds that Plaintiff failed to adequately allege Dr. O'Connor acted under color of state law. *See* 28 U.S.C. 1915(e)(2)(B)(ii).

**\*4** Moreover, Plaintiff has failed to adequately allege Dr. O'Connor violated one of her federal rights. *See* 42 U.S.C. § 1983; *see also Velez*, 401 F.3d at 84. Plaintiff repeatedly claims Dr. O'Connor violated her First and Fourteenth Amendment rights. (*See* Dkt. No. 1 at 4, 9-31.) Yet, Plaintiff failed to support this general claim with sufficient factual allegations to give rise to the reasonable inference that Dr. O'Connor's conduct amounted to *an actual violation* of her First and Fourteenth Amendment rights. *See Iqbal*, 556 U.S. at 678. Because Plaintiff failed to plausibly allege that Dr. O'Connor violated one or more of her federal rights, the undersigned recommends that the Court dismiss every cause of action Plaintiff asserts under Section 1983 for failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); *see, e.g., Perez v. Colon*, No. 9:19-CV-0722 (BKS), 2019 WL 5102612, at *6 (N.D.N.Y. Oct. 11, 2019) ("In the absence of factual allegations sufficient to plausibly suggest that the defendant was personally involved in conduct that violated Plaintiff's constitutional rights, the complaint fails to state a cognizable claim against him/her."); *Hamilton v. New York*

*State Dep't of Corr. & Cmty. Supervision*, No. 9:18-CV-1312 (MAD), 2019 WL 2352981, at *7 (N.D.N.Y. June 4, 2019) (same).

**B. Plaintiff's Section 1985 Claims**

Construing Plaintiff's Complaint liberally, *Sealed Plaintiff*, 537 F.3d at 191, the undersigned concludes Plaintiff has failed to state a claim for relief under 42 U.S.C. § 1985. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).[4] To state a conspiracy claim under 42 U.S.C. § 1985(3), a plaintiff must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Cine SK8, Inc. v. Town of Henrietta*, 507 F.3d 778, 791 (2d Cir. 2007); *see also DeRouseau*, 2022 WL 1747859, at *3. Further, the "conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Cine SK8, Inc.*, 507 F.3d at 791. "Complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *DeRouseau*, 2022 WL 1747859, at *3; *see, e.g., Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) ("The plaintiffs have not alleged, except in the most conclusory fashion, that any such meeting of the minds occurred among any or all of the defendants. Their conspiracy allegation must therefore fail."); *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 340 (E.D.N.Y. 2010), *aff'd*, 417 F. App'x 96 (2d Cir. 2011) (concluding the § 1985 conspiracy claim failed because "Plaintiff has provided only conclusory, vague and unsupported allegations ... as a basis for asking the Court to find the existence of a conspiracy."). Moreover, a § 1985 conspiracy claim fails as a matter of law where there is no underlying constitutional violation. *See, e.g., Oliver v. Penny*, No. 21-111, 2022 WL 2165814, at *3 (2d Cir. June 16, 2022) (concluding plaintiff's § 1985 conspiracy claim "failed because she did not plausibly allege an underlying constitutional violation"); *Tirse v. Gilbo*, No. 6:15-CV-0987

(GTS) (ATB), 2016 WL 4046780, at *18 (N.D.N.Y. July 27, 2016) ("Because the Court has found that Plaintiff has failed to allege facts plausibly suggesting a conspiracy and/or an underlying constitutional violation, Plaintiff's 🔖 § 1985 claim is likewise dismissed.").

**\*5** Here, Plaintiff failed to advance any non-conclusory factual allegations suggesting Dr. O'Connor targeted and discriminated against her on the basis of sex. (*See generally* Dkt. No. 1; *see, e.g., Doe v. Fenchel*, 837 F. App'x 67, 68 (2d Cir. 2021) (concluding plaintiff failed to plead any facts in support of the "conclusory allegations" that defendants "targeted him and discriminated against him based on his race, color, gender, sex, veteran status, disability status, and so forth.").) Although Plaintiff alleges Dr. O'Connor "acted in malice with bias" and "routinely engag[ed] in sex bias and discrimination," she fails to advance any factual allegations to support this conclusory statement. (*See* Dkt. No. 1 at 5, 25.) "Such naked assertions devoid of further factual enhancement are insufficient to give rise to a plausible entitlement to relief." *Doe*, 837 F. App'x at 68.

Plaintiff also failed to adequately allege Dr. O'Connor conspired with other individuals to engage in unlawful conduct against her. (*See generally* Dkt. No. 1 at 13-14.) Plaintiff advanced the general allegation that Dr. O'Connor acted in concert with others during the custody dispute before the New York State Family Court, but advanced no factual allegations indicating that Dr. O'Connor agreed to engage in *unlawful conduct* against her. *See id.* As explained above, the Complaint lacks sufficient factual allegations to give rise to the reasonable inference that Dr. O'Connor violated Plaintiff's First and Fourteenth Amendment rights. *See* 🔖 *Iqbal*, 556 U.S. at 678. The general allegation that Dr. O'Connor acted in concert with others, without more, does not give rise to the inference that she agreed to engage in *unlawful conduct* against Plaintiff. *See, e.g.,* 🔖 *Webb*, 340 F.3d at 110-11; *Alston v. Sebelius*, No. 13-CV-4537 (SJF) (ARL), 2014 WL 4374644, at *18 (E.D.N.Y. Sept. 2, 2014); 🔖 *Morpurgo*, 697 F. Supp. 2d at 340.

Finally, Plaintiff failed to allege facts plausibly suggesting an underlying constitutional violation. (*See generally* Dkt. No. 1 at 9-31; *see, e.g., Tirse*, 2016 WL 4046780, at *18 (dismissing a 🔖 § 1985 conspiracy claim because "Plaintiff has failed to allege facts plausibly suggesting ... an underlying constitutional violation.").) Plaintiff alleged

in conclusory fashion that Dr. O'Connor violated her First and Fourteenth Amendment rights, but her Complaint lacks factual allegations to support this claim. (*See generally* Dkt. No. 1 at 4, 6, 9-31.) Those conclusory allegations fail to plausibly allege a constitutional violation. *See id.*; *see also* 🔖 *Iqbal*, 556 U.S. at 678. Plaintiff has accordingly failed to state a claim for relief under 🔖 42 U.S.C. § 1985(3). *See, e.g., Oliver*, 2022 WL 2165814, at *3; *Tirse*, 2016 WL 4046780, at *18; *Alston*, 2014 WL 4374644, at *18. The undersigned therefore recommends that the Court dismiss every cause of action Plaintiff asserts under 🔖 42 U.S.C. § 1985(3) for failure to state a claim. *See* 🔖 28 U.S.C. § 1915(e)(2)(B)(ii). [5]

### C. Jurisdiction

Although the nature of Plaintiff's Complaint makes it difficult to precisely determine which doctrines apply, her claims are likely barred by *Younger* abstention and/or the *Rooker-Feldman* doctrine. (*See* Dkt. No. 1; *see, e.g., Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *10-11 (N.D.N.Y. Jan. 26, 2022) (concluding plaintiff's claims, which stemmed from an underlying New York State Family Court custody dispute, were likely barred by *Younger* abstention and the *Rooker-Feldman* doctrine).)

**\*6** First, in the event the underlying family court proceedings are pending, such claims are likely barred by the *Younger* abstention doctrine. *See generally* 🔳 *Younger v. Harris*, 401 U.S. 37 (1971); *see, e.g., Amato*, 2022 WL 226798, at *11. In 🔖 *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* abstention doctrine is limited to three exceptional circumstances, including: (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." 🔖 *Id.* at 72-73; *see also id.* ("This Court has extended *Younger* abstention to particular state civil proceedings that are akin to criminal prosecutions ... or that implicate a State's interest in enforcing the orders and judgments of its courts").

Here, Plaintiff seeks injunctive relief from a child custody dispute before New York State Family Court. (Dkt. No. 1 at 1-2, 32.) "[I]t is well-settled that a custody dispute

raises important state interests." *Stumpf v. Maywalt*, No. 21-CV-06248 (EAW), 2022 WL 2062613, at \*3 (W.D.N.Y. June 6, 2022) (collecting cases); *see also Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-00459 (PKC), 2015 WL 1120120, at \*3 (E.D.N.Y. Mar. 12, 2015). Accordingly, to the extent the custody dispute is continuing in New York State Family Court, this Court should abstain from interfering with that process. *See, e.g.*, *Stumpf*, 2022 WL 2062613, at \*3 (applying *Younger* abstention in an action stemming from an ongoing child custody dispute); *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK) (CFH), 2020 WL 3503158, at \*4 (N.D.N.Y. June 29, 2020) (applying *Younger* abstention in an action seeking declaratory relief over a child custody dispute); *Graham*, 2015 WL 1120120, at \*3 (applying *Younger* abstention in an action seeking injunctive relief over a child custody dispute); *Rhee-Karn v. Burnett*, No. 13 CIV. 6132 (JPO), 2014 WL 4494126, at \*7 (S.D.N.Y. Sept. 12, 2014) (applying *Younger* abstention in an action seeking declaratory and injunctive relief over a child custody dispute).

Second, in the event the relevant underlying state court proceedings are concluded, such claims are likely barred by the *Rooker-Feldman* doctrine. *See* *Phifer v. City of New York*, 289 F.3d 49, 57 (2d Cir. 2002) ("There is no question that *Rooker–Feldman* bars Phifer's challenges to the family court's decisions regarding custody, neglect, and visitation."); *Fernandez v. Turetsky*, No. 1 2-CV-4092 (SLT) (MDG), 2014 WL 5823116, at \*4 (E.D.N.Y. Nov. 7, 2014), *aff'd*, 645 F. App'x 103 (2d Cir. 2016) ("Courts have repeatedly invoked the [*Rooker-Feldman*] doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears.") (collecting cases). "The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases." *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021); *see also* *Sykes v. Mel S. Harris & Assocs. LLC*, 780 F.3d 70, 94 (2d Cir. 2015). The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Dorce*, 2 F.4th 82, 101; *Sykes*, 780 F.3d at 94.

Here, it appears Plaintiff "lost" in New York State Family Court, complains of injuries caused by that court's judgments, and asks this Court to invalidate those judgments on the grounds that they violated her due process rights. (*See* Dkt. No. 1 at 32 (requesting an "injunction barring Defendant from continuing their [sic] illegal acts," and a "permanent restraining order to be placed on the defendant [sic]").) Thus, as currently drafted, Plaintiff's Complaint is likely barred under the *Rooker-Feldman* doctrine. *See, e.g.*, *Phifer*, 289 F.3d at 57; *Stumpf*, 2022 WL 2062613, at \*4 n.4; *Amato*, 2022 WL 226798, at \*10; *Fernandez*, 2014 WL 5823116, at \*4.

## IV. CONCLUSION

**\*7** For the foregoing reasons, the undersigned recommends that the Court dismiss Plaintiff's Complaint with leave to amend. (Dkt. No. 1.)

**ACCORDINGLY**, it is hereby

**ORDERED** that Plaintiff's IFP Application (Dkt. No. 2) is **GRANTED** solely for purposes of initial review; and it is further

**ORDERED** that the Clerk provide Plaintiff with a copy of this Order and Report-Recommendation, along with copies of the unpublished decisions cited herein in accordance with *Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam); and it is further

**RECOMMENDED** that Plaintiff's Complaint (Dkt. No. 1) be **DISMISSED WITH LEAVE TO AMEND** pursuant to 28 U.S.C. § 1915(e)(2)(B).

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.[6] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**All Citations**

Slip Copy, 2022 WL 2341420

# Footnotes

1    The following recitation of facts is drawn from the Complaint, which the Court accepts as true for purposes of initial review. *See, e.g.*, *LaTouche v. Rockland County*, No. 22-CV-1437 (LTS), 2022 WL 953111, at *1 (S.D.N.Y. Mar. 29, 2022); *Walker v. City of New York*, No. 20-CV-5240 (PKC) (LB), 2021 WL 1838277, at *1 n.1 (E.D.N.Y. May 7, 2021).

2    Unless otherwise indicated, in quoting cases, all alterations, internal quotation marks, emphases, footnotes, and citations are omitted. *See, e.g.*, *Sczepanski v. Saul*, 946 F.3d 152, 157 n.4 (2d Cir. 2020).

3    Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. (*See generally* Dkt. No. 1 at 9-31.) The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1983. *See* *Sealed Plaintiff*, 537 F.3d at 191.

4    Plaintiff does not explain or distinguish which of her six causes of action are advanced under 42 U.S.C. § 1983, and which are advanced under 42 U.S.C. § 1985. (*See generally* Dkt. No. 1 at 9-31.) The undersigned accordingly considers whether *any* of Plaintiff's six causes of action state a claim for relief under 42 U.S.C. § 1985. *See* *Sealed Plaintiff*, 537 F.3d at 191.

5    The undersigned notes that, nested within Plaintiff's third cause of action, she purports to assert a "civil rights action brought pursuant to Title VII of the Civil Rights Act of 1964." (Dkt. No. 1 at 4, 14.) That claim fails, however, because Plaintiff did not allege she is or was an employee of Dr. O'Connor, and she did not allege any employment discrimination. *See, e.g.*, *Amato v. McGinty*, No. 1:21-CV-00860 (GLS) (TWD), 2022 WL 226798, at *8 (N.D.N.Y. Jan. 26, 2022) (dismissing plaintiff's Title VII claim as frivolous because she did not "allege employment discrimination or that she is or was an employee of Judge McGinty") (collecting cases).

6    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

---

**End of Document**                                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2014 WL 5823116
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Edwin FERNANDEZ, Plaintiff,

v.

Vicky TURETSKY, et al., Defendants.

No. 12–cv–4092 (SLT)(MDG).
|
Signed Nov. 5, 2014.
|
Filed Nov. 7, 2014.

**Attorneys and Law Firms**

Edwin Fernandez, Staten Island, NY, pro se.

Kathleen Anne Mahoney, United States Attorneys Office, Elizabeth A. Forman, Attorney General of the State of New York, Gloria Mihee Yi, NYC Law Department, Omar Hani Tuffaha, New York City Law Department Office of the Corporation Counsel, New York, NY, for Defendants.

**MEMORANDUM & ORDER**

TOWNES, District Judge.

**\*1** Plaintiff Edwin Fernandez, proceeding *pro se,* alleges that his constitutional right to due process was violated by (1) federal defendants: Vicki Turetsky and Joyce A. Thomas, respectively, the Commissioner and Regional Administrator of the U.S. Department of Health and Human Services, Office of Child Support Enforcement; (2) state defendants: Thomas H. Mattox and C. Duncan Kerr, respectively, the Commissioner and Deputy Tax Commissioner of the New York State Department of Taxation and Finance, Office of Child Support Enforcement; and three Tax Compliance Agents employed by the New York State Department of Taxation and Finance, Child Support Enforcement Section– Patty Whitford, Georgia Brown, and Margaret Ramsay; and (3) a municipal defendant: Robert Doar, a former Commissioner of the New York City Human Resources Administration. Plaintiff alleges that his vehicles and funds were seized, wages garnished, and tax refunds intercepted in order to collect child support arrears even though "Plaintiff was in compliance paying child support arrears." [Dkt. 4,

Amd. Compl. ¶ 26.] This action was reassigned to this Court on March 18, 2014, after Judge Mauskopf entered a recusal order on March 17, 2014. Currently before the Court is state defendants' ("Defendants") motion to dismiss for, *inter alia,* lack of subject matter jurisdiction. [1]

**Legal Standard**

Defendants move to dismiss on the grounds that this Court lacks subject matter jurisdiction. *Remy v. New York State Dep't of Taxation & Fin.,* 507 F. App'x 16, 18 (2d Cir.2013) ("A challenge under the *Rooker–Feldman* doctrine is for lack of subject matter jurisdiction.") (quoting *Moccio v. N.Y. State Office of Court Admin.,* 95 F.3d 195, 198 (2d Cir.1996)). "A case may properly be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) 'when the district court lacks the statutory or constitutional power to adjudicate it.' " *Sobel v. Prudenti,* 12 CV 3258 DRH WDW, 2014 WL 2750364, at \*10 (E.D.N.Y. June 18, 2014) (quoting *Makarova v. United States,* 201 F.3d 110, 113 (2d Cir.2000)). Unlike on a motion to dismiss for failure to state a claim under Rule 12(b)(6), a "plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." ' *Mac Pherson v. State St. Bank & Trust Co.,* 452 F.Supp.2d 133, 136 (E.D.N.Y.2006) *aff'd,* 273 F. App'x 61 (2008) (quoting *Makarova,* 201 F.3d at 113). In resolving a motion to dismiss under Rule 12(b)(1), the Court is not limited to the face of the complaint, but may also consider evidence such as affidavits submitted by the parties. *Robinson v. Government of Malaysia,* 269 F.3d 133, 141 (2d Cir.2001).

**Factual History**

According to the factual recitation in the May 13, 2008 Decision and Order of the Honorable Francois A. Rivera, Justice of the Supreme Court of the State of New York, Kings County dismissing Plaintiff's CPLR Article 78 petition, Plaintiff's obligation to pay child support to his ex-wife, custodial parent of their child, arises out of a June 7, 1990 divorce decree. After Plaintiff did not comply with his child support obligations, in June 1999, his ex-wife requested that the New York City Support Collection Unit assist her in enforcing Plaintiff's support obligations. Justice Rivera's May 13, 2008 Order finds that although the child support order

was terminated *nunc pro tunc* to January 9, 2007, the day that the subject child turned 21 Plaintiff still owed outstanding support arrears. Subsequently, a Supreme Court of the State of New York, Kings County Family Court Support Magistrate, at an October 23, 2007 hearing, set Plaintiff's child support arrears at $33,468.80. Justice Rivera's Order rejects Plaintiff's contention "that he has paid the required child support and now that the child is emancipated, he no longer owes any money," because "[i]n actuality, though Mr. Fernandez's [*sic*] paid child support through an income execution of his wages, and the child in question is now emancipated, *he is still in arrears for prior child support payments that he never paid.*" (emphasis added). Accordingly, Justice Rivera dismissed Plaintiff's CPLR Article 78 petition.

**\*2** Plaintiff filed the instant lawsuit pursuant to 42 U.S.C. § 1983 against employees of federal, state, and municipal child support enforcement agencies alleging that, because his ongoing support obligations were terminated *nunc pro tunc* to January 9, 2007 when his child turned 21, he had no further obligations and all subsequent child support collection efforts were unconstitutional.[2] In his papers, Plaintiff challenges the October 23, 2007 decision of a Family Court Support Magistrate setting Plaintiff's child support arrears at $33,468.80. Although he does not mention his unsuccessful CPLR Article 78 petition in his pleadings, he, in effect, asks this Court to reconsider Justice Rivera's May 13, 2008 Order finding that Plaintiff owed money under a valid child support arrears decree. Defendants have moved to dismiss Plaintiff's action for, *inter alia,* lack of subject matter jurisdiction based on the domestic relations exception to federal jurisdiction and the *Rooker–Feldman* doctrine.

### Discussion

#### A. *Domestic Relations Exception to Jurisdiction*

Defendants contend that this Court lacks subject matter jurisdiction over the action under the domestic relations exception to federal court jurisdiction. *See Ankenbrandt v. Richards,* 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992). The so-called "domestic relations exception" dates back to 1858, when the Supreme Court announced that federal courts have no jurisdiction over suits for divorce or the allowance of alimony. *Barber v. Barber,* 62 U.S. 582, 584, 21 How. 582, 16 L.Ed. 226 (1858); *Ankenbrandt,* 504 U.S. at 703 (explaining that exception "divests the

federal courts of power to issue divorce, alimony, and child custody decrees.") Although courts frequently use broad language when characterizing the exception, the Supreme Court has clarified that, in actuality, the exception is narrow, and "encompasses *only* cases involving the issuance of a divorce, alimony, or child custody decree." *Ankenbrandt,* 504 U.S. at 704 (emphasis added). Thus, where a lawsuit "in no way seeks such a decree," the exception's invocation is inappropriate. *Id.; Williams v. Lambert,* 46 F.3d 1275, 1283 (2d Cir.1995) ("[T]he exception is very narrow."); *but see McKnight v. Middleton,* 699 F.Supp.2d 507, 516–17 (E.D.N.Y.2010) *affd,* 434 F. App'x 32 (2d Cir.2011) (observing that in *Schottel v. Kutyba,* 06–1577–CV, 2009 WL 230106 (2d Cir. Feb.2, 2009), the Second Circuit expanded the exception to claims that, in fact, challenge domestic relations decrees, even where they are recast as actions seeking monetary relief).

The domestic relations exception is rooted in an understanding that "[t]he whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the states, and not to the laws of the United States." *In re Burrus,* 136 U.S. 586, 593–94, 10 S.Ct. 850, 34 L.Ed. 500 (1890). "[T]he exception is grounded, not in the Constitution, but as a matter of 'statutory construction' of the federal diversity statute." *Tilley v. Anixter Inc.,* 283 F.Supp.2d 729, 733–34 (D.Conn.2003) (citing *Ankenbrandt,* 504 U.S. at 703). Despite its origins in the federal diversity statute, courts in this district routinely apply the exception to cases brought under the federal courts' federal question jurisdiction. *See Mitchell–Angel v. Cronin,* 101 F.3d 108 (2d Cir.1996) ("District courts in this Circuit have held that the exception includes civil rights actions directed at challenging the results of domestic relations proceedings.") (citing *McArthur v. Bell,* 788 F.Supp. 706, 708 (E.D.N.Y.1992)); *see also Sobel,* 2014 WL 2750364, at \*11 (finding exception strips federal court of jurisdiction where "Plaintiff's complaint is, in effect, a civil rights action directed at challenging the results of domestic relations proceedings, and, in particular, a state court's decisions regarding child support."); *Sullivan v. Xu,* No. 10–CV–3626 (ENV), 2010 WL 3238979, at \*2 (E.D.N.Y. Aug.13, 2010) ("Although plaintiff invokes his constitutional rights, the substance of his claims concern state law domestic relations matters."). That said, the Second Circuit recently noted in a summary order that the Circuit "expressly decline[s] to address whether the domestic relations exception to federal subject matter

jurisdiction applies to federal question actions." *See Ashmore v. Prus,* 12–2760–CV, 2013 WL 362998, at *2 (2d Cir. Jan.31, 2013) (summary order); *see also Ahlawat v. State of Connecticut Superior Court,* 3:12–CV–1042 JBA, 2013 WL 3338572, at *1 n. 2 (D.Conn. July 2, 2013) (noting that "the Second Circuit has not resolved whether [the domestic relations] exception would provide a further bar to Plaintiff's federal question lawsuit.").

**\*3** Here, if Plaintiff's claim is read to challenge the enforcement of a child support decree on the grounds it is erroneous, his lawsuit, even though framed as a civil rights action, would be barred by the domestic relations exception. However, reading *pro se* Plaintiff's complaint to "raise the strongest arguments that they suggest," 🚩 *Triestman,* 470 F.3d at 474, Plaintiff's complaint can be read more narrowly to seek monetary damages for violations of his due process rights that occurred during the enforcement of a *valid* child support decree. 🚩 *Ankenbrandt,* 504 U.S. at 704 (noting that the exception has no application where the lawsuit "in no way seeks [a domestic relation] decree"). Even so, some courts in this district have held that lawsuits seeking monetary relief for purportedly unlawful conduct undertaken to enforce valid support decrees are also barred by the domestic relations exception. *See Joseph v. Stewart,* 13–CV–1678 NGG LB, 2013 WL 3863915, at *2 (E.D.N.Y. July 24, 2013) (applying domestic relations exception where "Plaintiff challenges the enforcement and effect of his child support obligations, and although he invokes his constitutional rights, the essence of his allegations concern state law domestic relations matters.").[3] This Court need not resolve whether such a narrow challenge would be barred by the domestic relations exception because the Court lacks subject matter jurisdiction over this action under, *inter alia,*[4] the *Rooker–Feldman* doctrine.

**B. *Rooker–Feldman Doctrine***

The so-called *Rooker–Feldman* doctrine divests federal courts of jurisdiction to consider suits which seek to overturn state court judgments. 🚩 *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005). Additionally, the doctrine "bars federal courts from considering claims that are 'inextricably intertwined' with a prior state court determination." 🚩⚠ *Johnson v. Smithsonian Inst.,* 189 F.3d 180, 185 (2d Cir.1999) (citations and internal quotation marks omitted). In *Exxon Mobil,* the

Supreme Court reined in the use of the doctrine, explaining that the doctrine "is confined to cases ... brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Id.* In the wake of *Exxon Mobil,* the Second Circuit revisited its prior precedents and limited the application *of Rooker–Feldman* to cases satisfying four "requirements":

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment [.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"-i.e., *Rooker–Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

**\*4** 🚩 *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 85 (2d Cir.2005) (quoting 🚩 *Exxon Mobil,* 544 U.S. at 284); *see also* 🚩 *McKithen v. Brown,* 626 F.3d 143, 154 (2d Cir.2010).

Courts have repeatedly invoked the doctrine in cases, like the one currently before the Court, in which plaintiffs challenge family court decrees setting child support arrears. *See Sorenson v. Suffolk Cnty. Child Support Enforcement Bureau,* 07–CV–03755JFBAKT, 2009 WL 580426, at *6–7 (E.D.N.Y. Mar.5, 2009) (finding plaintiff, who previously unsuccessfully sought to have child support "arrears vacated ... in state court" cannot "utilize the federal courts to, in essence, challenge the existing judgment regarding child support arrears, or the County's enforcement of that judgment."); *Remy,* 507 F. App'x at 18–19 (finding that court was barred under *Rooker–Felman* from exercising jurisdiction over suit challenging "Family Court's arrears order[, where plaintiff] ... had a full and fair opportunity to litigate [the arrears order in state court]."); *Chestnut v. Gabler,* No. 06 Civ. 34E(F), 2007 WL 529556, at *3 (W.D.N.Y.Feb.13, 2007) ("Construed liberally, the complaint essentially alleges that plaintiff's constitutional rights were violated during the course of the Family Court proceedings and plaintiff now seeks, in part, to challenge in this Court the orders issued in those proceedings. To the extent plaintiff is asking this Court to review the proceedings before the

Allegany County Family Court, said review by this Court is barred by the *Rooker–Feldman* doctrine and the complaint must be dismissed accordingly."). In *Sorenson,* the Court explained that although the plaintiff attempted to recast his claims as alleging "improper enforcement of the Family Court judgment rather than [challenging] the judgment itself[,] ... *Rooker–Feldman* also bars such claims because the enforcement is inextricably intertwined with the state court judgment." *Sorenson,* 2009 WL 580426, at *7 (collecting cases).

Plaintiff expressly asks this Court to review the October 23, 2007 family court order setting arrears on the grounds that the decision was erroneous because he had complied with all previous child support obligations and thus could not be liable for arrears. Under the *Rooker–Feldman* doctrine, this Court may not do so. As in *Sorenson,* to the extent Plaintiff recasts his claims as alleging improper enforcement of the child support arrears decree, under these circumstances, the enforcement of the arrears decree is inextricably intertwined with the validity of the decree, itself. Thus this Court is barred under the *Rooker–Feldman* doctrine from reviewing the claim. Additionally, this Court is precluded from reviewing Plaintiff's claims for the separate reason that Plaintiff has already brought an Article 78 petition in state court raising these exact arguments. Thus, the instant lawsuit, in effect, challenges not only the October 23, 2007 arrears order, but also the May 13, 2008 decision of Justice Rivera dismissing the Article 78 petition. Plaintiff's attempts to appeal to this Court the decisions of the Family Court Support Magistrate and Justice Rivera are barred by the *Rooker–Feldman* doctrine. Accordingly, Defendant's motion to dismiss is granted.

**\*5** The above reasoning applies with equal force to Plaintiff's claims against the other defendants who allegedly enforced the child support arrears decree. Thus, this Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims against all of the remaining defendants in the action. Given that this Court has determined that it lacks subject matter jurisdiction over the entire action, the Court, *sua sponte,* dismisses Plaintiff's claims against the remaining defendants and dismisses Plaintiff's complaint in its entirety. *Morris v. Rosen,* 12–3143–CV, —— F. App'x ——, 2014 WL 4233392, at *1 (2d Cir. Aug.28, 2014) (affirming district court's *sua sponte* dismissal of *pro se* plaintiff's complaint for lack of subject matter jurisdiction under the *Rooker–Feldman* doctrine.)

### Conclusion

For the foregoing reasons, the State Defendant's motion to dismiss is granted on the grounds that this Court lacks subject matter jurisdiction over the instant action under the *RookerFeldman* doctrine. For the same reasons, the Court *sua sponte* dismisses the action against all other defendants. The Clerk of Court is respectfully directed to enter judgment accordingly and close the case.

**SO ORDERED.**

**All Citations**

Not Reported in F.Supp.3d, 2014 WL 5823116

### Footnotes

1    Defendants also seeks to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that Plaintiff's claims are time-barred. This Court need not reach the issue because it lacks subject matter jurisdiction over the case.

2    *Pro se* complaints "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 474 (2d Cir.2006) (internal quotation marks omitted).

3    *But see* *King v. Comm'r & New York City Police Dep't,* 60 F. App'x 873, 874–75 (2d Cir.2003) (summary order) ("The instant appeal is brought pursuant to the court's federal question jurisdiction, not its diversity

jurisdiction. Nevertheless, the City argues that the domestic relations exception is not limited to diversity cases. Although this seems contrary to precedent, the city does cite language to support its argument. We need not examine this question, however, because even under the broadest interpretation of the exception, it applies only to cases that seek issuance or modification of divorce, alimony, or child custody decrees. Appellant is not seeking a domestic relations award, and he is not asking that his parental rights be reinstated. Instead, his complaint seeks monetary damages. The domestic relations exception to federal jurisdiction is therefore irrelevant to this action.") (citation and parenthetical explanation omitted).

4    Even if this Court has jurisdiction, "[a] federal court presented with matrimonial issues or issues 'on the verge' of being matrimonial in nature should abstain from exercising jurisdiction so long as there is no obstacle to their full and fair determination in state courts." *Am. Airlines, Inc. v. Block,* 905 F.2d 12, 14 (2d Cir.1990).

---

**End of Document**                                                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.

2022 WL 2805462
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Alisha Clark WALKER, Plaintiff,

v.

Dr. Mary O'CONNOR, Defendant.

1:22-CV-581
|
Signed July 18, 2022

**Attorneys and Law Firms**

ALISHA CLARK WALKER, Plaintiff, Pro Se, 757 Taborton
Road, Sand Lake, NY 12153.

**ORDER ON REPORT & RECOMMENDATION**

DAVID N. HURD, United States District Judge

 **\*1**  On June 2, 2022, *pro se* plaintiff Alisha Clark Walker
("plaintiff") filed this action alleging that defendant, a
private individual ordered by a state court to render forensic
psychological evaluations in an underlying child custody
dispute, discriminated against her. Dkt. No. 1. Along with her
complaint, plaintiff sought leave to proceed *in forma pauperis*
("IFP Application"). Dkt. No. 2.

On June 29, 2022, U.S. Magistrate Judge Thérèse Wiley
Dancks granted plaintiff's IFP Application for the purpose of
an initial review and advised by Report & Recommendation
("R&R") that plaintiff's complaint be dismissed with leave

to amend. Dkt. No. 4. Although Judge Dancks observed that
plaintiff's claims were almost certainly barred by various
jurisdictional or immunity principles, in light of plaintiff's
*pro se* status Judge Dancks concluded that plaintiff should be
given an opportunity to amend. *Id.*

Plaintiff has not filed objections, and the time period in which
to do so has expired. *See* Dkt. No. 4. Upon review for clear
error, the R&R will be accepted and adopted in all respects.
*See* FED. R. CIV. P. 72(b).

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED with leave to amend;

3. Plaintiff shall have thirty days from the date of this
Order in which to amend her pleading in accordance with
the instructions set forth in Judge Dancks's Report &
Recommendation and this Order; and

4. If plaintiff does not file an amended complaint within this
thirty-day period, the Clerk of the Court shall enter a judgment
accordingly and close the file without further Order of this
Court.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2022 WL 2805462

---

2022 WL 226798
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Francesca AMATO, Plaintiff,

v.

Anthony MCGINTY, Defendant.

1:21-cv-00860 (GLS/TWD)

|

Signed 01/26/2022

**Attorneys and Law Firms**

FRANCESCA AMATO, Plaintiff, pro se, PO Box 774, Marlboro, NY 12542.

**ORDER AND REPORT-RECOMMENDATION**

THÉRÈSE WILEY DANCKS, United States Magistrate Judge

**\*1** Francesca Amato ("Plaintiff" or "Amato"), proceeding *pro se*, filed an action against Ulster County Family Court Judge Anthony McGinty ("Defendant" or "Judge McGinty"). (Dkt. No. 1.) This case is related to *Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD). (Dkt. No. 5.[1]) Plaintiff has not paid the filing fee, but instead seeks leave to proceed *in forma pauperis* ("IFP"). (Dkt. No. 16.) For the reasons discussed below, the Court grants Plaintiff's fourth IFP application (Dkt. No. 16) and recommends dismissal of the amended complaint (Dkt. No. 6) in its entirety.

**I. BACKGROUND**
Plaintiff initiated this action and moved to proceed IFP on July 30, 2021. (Dkt. Nos. 1, 2.) However, the initial pleading was not signed and Plaintiff was directed to submit a signed copy of the complaint. (Dkt. No. 5.) On August 13, 2021, Plaintiff submitted a signed copy of the complaint, but also attached five exhibits that were not submitted with the original pleading. (Dkt. No. 6.) As such, the signed pleading was docketed as the amended complaint.

Thereafter, by Orders filed October 28, 2021, November 17, 2021, and December 17, 2021, this Court denied Plaintiff's motions to proceed IFP. (Dkt. Nos. 8, 11, 14.) In the December 17, 2021, Order, Plaintiff was afforded one final opportunity

to submit a fully completed IFP application or pay the entire filing fee by January 6, 2022. (Dkt. No. 14.) Despite the foregoing directive, Plaintiff's fourth IFP application was not filed until January 10, 2022. (Dkt. No. 16.)

**II. IFP APPLICATION**
Plaintiff declares in her fourth IFP application that she is unable to pay the filing fee. (Dkt. No. 16.) After reviewing the submission, the Court finds Plaintiff meets the requirement for economic need and thus her IFP application is granted.

**III. SUFFICIENCY OF THE AMENDED COMPLAINT**

**A. Legal Standard**
28 U.S.C. § 1915(e) directs that, when a plaintiff seeks to proceed *in forma pauperis*, "the court shall dismiss the case at any time if the court determines that – ... (B) the action ... (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). To survive dismissal for failure to state a claim, a complaint must plead enough facts to state a claim that is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While Rule 8(a) of the Federal Rules of Civil Procedure, which sets forth the general rules of pleading, "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.*

**\*2** In determining whether a complaint states a claim upon which relief may be granted, "the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor." *Hernandez v. Coughlin*, 18 F.3d 133, 136 (2d Cir. 1994) (citation omitted). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to

legal conclusions." 🚩 *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

A *pro se* litigant's pleadings are held to a less strict standard than attorney drafted pleadings. *See* 🚩 *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) ("Even in the formal litigation context, *pro se* litigants are held to a lesser pleading standard than other parties."). Because Plaintiff is proceeding *pro se*, the Court construes her pleadings "to raise the strongest arguments that they suggest." *See* 🚩 *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (per curiam) (internal quotation marks omitted). However, this "does not exempt [Plaintiff] from compliance with relevant rules of procedural and substantive law." 🚩 *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).

**B. Summary of the Amended Complaint**

Plaintiff brings this action against Defendant in both his "judicial" and "individual" capacity. (Dkt. No. 6 at 1. [2]) The amended complaint is written on a form complaint brought pursuant to the American with Disabilities Act ("ADA"). *Id.* at 1-4. Plaintiff also lists her minor child, C.A.B., as a plaintiff. *Id.* at 1, 5 ("Plaintiffs Francesca Amato & C.A.B. (hereafter, the 'Plaintiffs')—hereby makes these allegations against Defendant herein as follows[.]").

Her disabilities are listed as "ptsd" and "LAS", which she defines as "Legal Abuse Syndrome caused by defendant's actions and inactions." *Id.* at 2. She complains of the following conduct: denial of participation in public service or program, failure to make alterations to accommodate disability, retaliation, and others "in federal suit." *Id.* at 3. However, the section of the form complaint titled "Facts" is blank. *See id.* As to the "Prayer for Relief", Plaintiff states "see attached lawsuit." *Id.* at 4.

The "attached lawsuit" consists of 24 typewritten, single spaced pages, *id.* at 5-29, along with an additional 56 pages of exhibits. (Dkt. Nos. 6-1 through 6-5.) The "attached lawsuit" references the related action, *Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), and Plaintiff states she is "requesting the right to re plead [and] I am also filing a new verified complaint due to ongoing abuse by the defendant." *Id.* at 5.

Plaintiff's amended complaint also references 🚩 42 U.S.C. § 1983. *See id.* at 5-6. Plaintiff claims the "policies, practices, procedures and standards established and/or maintained by Defendant violate the Due Process and Equal Protection Clauses of the Fourteenth Amendments to the U.S. Constitution." *Id.* at 5. She also claims that "[u]nder color of authority, Anthony McGinty deprived me of my rights to my child, due process, and ADA rights were completely violated." *Id.* Plaintiff seeks compensatory and punitive damages, along with injunctive and declaratory relief. *Id.* at 5-6. She further states:

> **\*3** I demand my son's immediate return to his home with me at once and that a permanent restraining order is placed on this highly abusive Judge Anthony McGinty and also in his individual capacity as I feel he is a threat and danger to my family within his political power and lack of professionalism and boundaries. I'm also concerned with his mental state and feel he is unfit and I have overwhelming information and belief that he is an addict.

*Id.* at 26.

According to Plaintiff, "this is also a civil rights action brought pursuant to Title VII of the Civil Rights Acts of 1964" because Defendant authorized "unconstitutional, gender-biased contested Judgment of Custody polices, practices, procedures and standards." *Id.* at 6. Plaintiff contends Judge McGinty's "policies, practices, procedures and standards are gender biased, unconstitutional, have disparate impact on women and violate women's NYS entitled equal economic, property ownership and custody rights in contested Judgement of Custody Orders when domestic violence ("DV") exists." *Id.* at 7. Judge McGinty "has a history of court orders that change custody to abusive fathers and remove them from safe, loving caretakers with an extreme general bias against mothers." *Id.* at 11. Defendant also ignores the ACP address confidentially program of New York State. *Id.*

Generally, Plaintiff alleges that from "February 2019 to Ongoing" Defendant "enforced polices, practices, procedures, and standards that prevented Plaintiff from proving the Custody Orders issued by trial were based on the wrong legal standards, erroneous facts, a biased unconstitutional trial. And prevented me from being able to have my witnesses and my own testimony." *Id.* at 7. Defendant also "denied Plaintiff child access to his Service dogs and home status quo and private bedroom and consistent life needed to heal from past abuse." *Id.*

Plaintiff alleges Judge McGinty denied her "all ADA accommodations requested over and over orally and in writing and further abuse[d] his power by forcing plaintiff to draft own motions and train all parties in the ADA in order to protect my rights that continually are denied." *Id.*

She further claims Judge McGinty is "intentionally practicing and inflicting highly unlawful Discriminatory abuse upon [Plaintiff] due to [her] years of reputable advocacy and exposure of him." *Id.* at 6. He has also retaliated against her because of her "two time best-selling book, *Punished 4 Protecting: The Injustice of Family Court.*" *Id.* [3]

Plaintiff explains that "anytime I enter the Family Court it will be the three of them [4] against me leaving an extremely unfair disadvantage, further harm and suffering and full control. I am constantly bullied and they cooperate together to continue to retaliate against me by using my child as their pawn. McGinty's actions have caused my son and I irreparable injury and each second this continues threatens to harm us indefinitely." *Id.* at 11.

**\*4** Plaintiff claims "having pre diagnosed ptsd and LAS received zero ADA Accommodations requested and missed a court appearance on March 8, 2020." *Id.* at 12. According to Plaintiff, she missed the court appearance "due to stress and denial of rights combined with fear of [the] court causing further harm to my son and family and fear of further McGinty retaliation causing ptsd to be triggered." *Id.* She has "no recollection of being handed a slip" and did not put the March 8, 2020, court date on her calendar. *Id.* Plaintiff claims Defendant:

refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3rd trial. I was thrown into trial and discriminated further bc I "did such a good job, I couldn't possibly have ptsd" this only proves that I didn't willfully miss a court date two days before

our Country was on COVID quarantine but that with ptsd memory issues occur during high stress moments. McGinty used it as a legal loophole to strip me of all custody giving my son to his estranged father who barely had visits of 8 hours a month and abandoned the child in California after he was released from jail. McGinty was clearly Aware of all of this as he testified to it during the 2020 trial.

*Id.* at 13.

Plaintiff also claims Judge McGinty "intentionally ignores all emergency motions and puts them out months and months at a time; and takes hearsay from the father without any evidence or fact finding violating and taking/ away more rights." *Id.* at 14.

Plaintiff references the related case, and states that her ADA claims against Judge McGinty were dismissed in *Orr v. McGinty*, without prejudice and with leave to replead. *Id.* at 15. [5] According to Plaintiff, she is pursuing her "right to replead and add ongoing violations in current proceedings against Judge Antony McGinty and his ongoing abuse to me and my son C.A.B." *Id.* She explains that she "didn't continue at that time to fight this case because my son was returned to my sole custody on September 17, 2017[,] and we were healing from the damages and severe trauma." *Id.*

Plaintiff states that she was diagnosed in 2016 and "orally and in writing has requested ADA Accommodations" "numerous" times to "let the court know" that Defendant has "withheld" her child's "full service therapy dogs" since October 2, 2020, amounting to "intentional and deliberate indifference." *Id.* at 15.

According to Plaintiff, "Anthony McGinty continues his abuse in the form of retaliation, abuse of power, extreme harm and pain and suffering, violations of ADA title ii [which resulted] in a final order dated October 2, 2020. Granting Patrick Beesmer sole physical custody [of C.A.B.] and all decision making power...." *Id.*

Plaintiff lists several ways Judge McGinty has "denied" her "reasonable accommodations" and "basic rights." *Id.* at 16-17. For example, she claims Judge McGinty failed to recuse himself and denied her a fair trial. *Id.* at 16. He also denied C.A.B. his "full service therapy dogs since October 2, 2020." *Id.* Judge McGinty denied and restricted communication between Plaintiff and C.A.B., conspired with C.A.B.'s and Beesmer's attorneys, and omitted "strong

evidence off the record," and "pushed several emergency motions out far past their legal requirements." *Id.* at 16-17. She also complains of "ongoing discrimination." *Id.* Plaintiff also alleges Judge McGinty failed to replace C.A.B.'s attorney with an "ethical" attorney. *Id.*

**\*5** She further alleges Judge McGinty lied in the October 2, 2020, Order which cited "concerns" in Plaintiff's home, without evidence, and falsely stated C.A.B.'s father's home "has no domestic violence." *Id.*

Additionally, on June 3, 2021, Judge McGinty denied C.A.B.'s "rights to his service dog again" and "showed preference to fathers" in that he gave C.A.B.'s father a "courtesy call" when he missed "virtual court" but did not extend the same courtesy to Plaintiff on March 8, 2021, when she failed to appear in court. *Id.* at 16. When she questioned Judge McGinty, he "falsely" explained that "virtual court is different from physical Court when someone doesn't show up we call them." *Id.*

Under a section of the amended complaint labeled "Damages" Plaintiff lists twelve "counts." *Id.* at 17-19. Plaintiff also lists five "counts" under Title II ADA Violations. *Id.* at 19. Plaintiff also devotes several pages to what appears to be excerpts and summaries of what she refers to as "Title II ADA Case Law re: Accommodations." *See id.* at 19-26.

As relief, Plaintiff seeks a temporary restraining order, a permanent restraining order, and preliminary injunction. *Id.* at 26, 28. Plaintiff is "seeking injunctive relief and a permanent restraining order against [Judge McGinty] to stop his abuse and allow us to have a fair trial with an unbiased Judge without any connections to him whatsoever to avoid any further harm." *Id.* at 9. She requests declaratory relief "to the effect" that Defendant's "actions were illegal and violative of Plaintiff's right to due process of the law and to equal protection of the laws." *Id.* at 28.

Plaintiff seeks damages in the amount of at least $3,000,000. *Id.* at 27-28. Plaintiff asks this Court to "assume jurisdiction over this matter." *Id.* Plaintiff also wants this Court to "restore" her sole custody rights over her minor child. *Id.* at 28. She also asks for any further relief as the Court shall deem just and proper. *Id.* [6]

For a complete statement of Plaintiff's claims, reference is made to the amended complaint. (*See generally* Dkt. No. 6.)

### C. Discussion

Initially, the Court finds the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure. Rule 8 of the Federal Rules of Civil Procedure provides that a pleading which sets forth a claim for relief shall contain, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The purpose of this Rule "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Hudson v. Artuz*, No. 95 CIV 4768, 1998 WL 832708, \*1 (S.D.N.Y. Nov. 30, 1998) (citations omitted). The statement should be "short and plain" because "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage." *Salahuddin v. Cuomo*, 861 F.2d 40, 41-42 (2d Cir. 1998) (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1281, at 365 (1969)). Moreover, Rule 10 of the Federal Rules of Civil Procedure provides, in part:

> **\*6** (b) Paragraphs; Separate Statements. A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.

Fed. R. Civ. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" *Flores v. Graphtex*, 189 F.R.D. 54, 55 (N.D.N.Y. 1999) (quotation marks and citations omitted).

A complaint that does not comply with these Rules "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [the plaintiff's] claims," and may properly be dismissed by the court. *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised."

*Artuz*, 1998 WL 832708, at *2 (internal quotation marks omitted).

The amended complaint contains rambling legal arguments, numerous disjointed sentences, and repeated conclusory allegations. (Dkt. No. 6.) Moreover, while the amended complaint contains some numbered sections, the numbering is of limited value since some of the numbered sections contain numerous sentences, and/or contain multiple paragraphs, and/or are repeated. *Id.* As a result, it is difficult for the Court to determine the sufficiency of Plaintiff's allegations, and it would be difficult for Defendant to shape a comprehensive defense. As such, the amended complaint fails to comply with Rules 8 and 10 of the Federal Rules of Civil Procedure.

However, the Court refrains from recommending dismissal on this basis alone because the amended complaint does not quite rise to the level of being "so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Rather, this action represents yet another lawsuit whereby Plaintiff is complaining of Defendant's handing of and decisions issued in family court proceedings. Construed liberally, Plaintiff seeks to nullify family court and custody determinations issued by Defendant, and asks this Court to restore her sole custody, requests declaratory and injunctive relief, and monetary compensation. As such, in accordance with 28 U.S.C. § 1915(e), the Court will review the sufficiency of the amended complaint.

### 1. Minor Plaintiff

As Plaintiff is aware, an individual "who has not been admitted to the practice of law may not represent anybody other than himself." *Amato v. McGinty*, No. 1:17-CV-00593 (MAD/ATB), 2017 WL 4083575, at *4 (N.D.N.Y. Sept. 15, 2017) (quoting *Guest v. Hansen*, 603 F.3d 15, 20 (2d Cir. 2010) (citing *Lattanzio v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007))); *see also Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 1 n.1, 13 (plaintiff-mothers cannot bring an action "as next of friend for their minor children" and directing the Clerk to amend the caption to remove all references to the minor children). Similarly, "a non-attorney parent must be represented by counsel in bringing an action on behalf of his or her child." *Amato v. McGinty*, 2017 WL 4083575, at *4 (quoting *Cheung v.*

*Youth Orchestra Found. of Buffalo, Inc.*, 906 F.2d 59, 61 (2d Cir. 1990)).

*\*7 Therefore, the Court does not construe the amended complaint to include any claims or causes of action brought on behalf of C.A.B. The Court also recommends that the Clerk be directed to amend the docket to remove all references to C.A.B.

### 2. Section 1983

Section 1983 provides redress for a deprivation of federally protected rights by persons acting under color of state law. 42 U.S.C. § 1983; *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155-57 (1978). To state a claim under Section 1983, a plaintiff must allege both that: (1) a right secured by the Constitution or laws of the United States was violated, and (2) the right was violated by a person acting under the color of state law, or a "state actor." *West v. Atkins*, 487 U.S. 42, 48-49 (1988).

As noted, Plaintiff has named Judge McGinty as the sole defendant in his "judicial" and "individual" capacity. However, and as Plaintiff was previously informed in the related action, Plaintiff's Section 1983 claims against Judge McGinty are barred by the Eleventh Amendment and judicial immunity.[7] *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at *4 (dismissing Amato's Section 1983 claims against Judge McGinty with prejudice); *Treistman v. McGinty*, No. 1:16-cv-1403, 2018 WL 4078262, at *1 (N.D.N.Y. Aug. 27, 2018) (finding the plaintiff's claims against the individual defendants in their official capacity as Family Court employees are barred by the Eleventh Amendment); *see also Amato v. McGinty*, 2017 WL 4083575, at *4. The same result is required here.

Judges are absolutely immune from suit for damages for any actions taken within the scope of their judicial responsibilities. *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "Even allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209 (citations omitted). This is because,

"[w]ithout insulation from liability, judges would be subject to harassment and intimidation [.]" *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). In addition, Section 1983 provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983.

Judicial immunity does not apply when the judge takes action "outside" his judicial capacity, or when the judge takes action that, although judicial in nature, is taken "in absence of jurisdiction." *Mireles*, 502 U.S. at 9-10; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

**\*8** As detailed above, Plaintiff has brought several allegations against Judge McGinty, including that he violated her constitutional rights, conspired with other individuals, endangered the welfare of C.A.B., denied her "accommodations," and retaliated against her for being outspoken about Judge McGinty's purported abuses and discrimination against mothers and children. However, all of the acts described in the amended complaint arise out of family court proceedings before Judge McGinty, the functions complained of were ones normally performed by a judge, and Plaintiff was a party who dealt with Judge McGinty in his judicial capacity. Plaintiff has not alleged that Judge McGinty took nonjudicial actions or that he acted in the absence of jurisdiction. Notwithstanding Plaintiff's allegations that Judge McGinty made improper adverse rulings against Plaintiff during the custody proceedings with malice or in retaliation for her "exposing" abuses in Family Court, Judge McGinty was still performing judicial functions and presiding over Plaintiff's custody action in Ulster County Family Court. As stated above, a judge does not lose his or her judicial immunity because he is accused of acting with malice or corruptly. Accordingly, Judge McGinty is entitled to judicial immunity. *See Mireles*, 502 U.S. at 12-13; *Bliven*, 579 F.3d at 210.

Judge McGinty is also protected under sovereign immunity. In *Gollomp v. Spitzer*, the Court held that the New York Unified Court System is an "arm of the State" and affirmed

the dismissal of a Section 1983 claim against a judge under sovereign immunity. 568 F.3d 355, 365-68 (2d Cir. 2009). Likewise, Plaintiff has filed her complaint against Judge McGinty, a member of the Ulster County Family Court, which is part of the New York Unified Court System. N.Y. Const. Art. VI, §§ 1, 13. All of Judge McGinty's alleged constitutional violations occurred while he acted within his official capacity as a Family Court judge in adjudicating a custody dispute. Therefore, all claims against Judge McGinty should be dismissed, because "a suit against a state official in his official capacity is, in effect, a suit against the state itself, which is barred." *Walker v. Fam. Ct. Judge Catherine Cholakis*, No. 1:19-CV-1288 (LEK/CFH), 2020 WL 3503158, at \*7 (N.D.N.Y. June 29, 2020) (citations omitted).

Moreover, Plaintiff is not entitled to injunctive relief because she "allege[d] neither the violation of a declaratory decree, nor the unavailability of declaratory relief." *See Montero v. Travis*, 171 F.3d 757, 761 (2d Cir. 1999). Nor is Plaintiff entitled to declaratory relief because she alleges only past conduct and does not seek to prevent an ongoing or future violation of federal law. *See Shtrauch v. Dowd*, 651 F. App'x 72, 74 (2d Cir. 2016) (citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 698 (3d Cir. 1996) (concluding that relief sought was not prospective where the "specific allegations target[ed] past conduct" and the "remedy [was] not intended to halt a present, continuing violation of federal law")).

The Court therefore recommends dismissing Plaintiff's Section 1983 claims against Judge McGinty under the doctrines of judicial and sovereign immunity and as frivolous. *See* 28 U.S.C. § 1915(e)(2)(B)(i), (iii); *see also Montero*, 171 F.3d at 760 ("A complaint will be dismissed as 'frivolous' when 'it is clear that the defendants are immune from suit.' " (quoting *Neitzke*, 490 U.S. at 327)).

### 3. Title VII

Title VII provides that "[i]t shall be unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such

individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a); *see Vega v. Hempstead Union Sch. Dist.*, 801 F.3d 72, 86 (2d Cir. 2015) (A plaintiff asserting a Title VII discrimination claim must allege facts showing that "(1) the employer took adverse action against him and (2) his race, color, religion, sex, or national origin was a motivating factor in the employment decision.").

Here, Plaintiff claims in conclusory fashion that Judge McGinty "discriminates" against women in violation of Title VII. Plaintiff does not, however, allege employment discrimination or that she is or was an employee of Judge McGinty and, therefore, the claim is frivolous. [8] *See Jones v. Thomas*, No. 20-CV-5581, 2020 WL 5077026, at *4 (S.D.N.Y. Aug. 27, 2020) (dismissing plaintiff's claims pursuant to Title VII where the plaintiff did not allege that he is or was an employee of any of the defendants); *Basora-Jacobs v. Palevsky*, No. 20-CV-1675, 2020 WL 3868710, at *2 (E.D.N.Y. July 10, 2020) (dismissing the plaintiff's Title VII claims because "[t]he complaint does not list Plaintiff's employer as a defendant in the case caption."). Since Title VII claims are to be raised against a plaintiff's employer, there is no proper Title VII defendant in this case. *Militinska-Lake v. Kirnon*, No. 1:20-CV-443 (TJM/CFH), 2021 WL 3569807, at *9 (N.D.N.Y. Aug. 11, 2021) ("As a general rule, the proper defendant in a Title VII case against a State entity is the actual department or agency that employs the plaintiff.") (citation omitted).

**\*9** Accordingly, the Court recommends that Plaintiff's Title VII claims against Judge McGinty be dismissed.

### 4. ADA

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To plead an ADA claim, a plaintiff must allege: "(1) that [s]he is a qualified individual with a disability; (2) that [s]he was excluded from participation in a public entity's services, programs or activities or was otherwise discriminated against by a public entity; and (3) that such exclusion or discrimination was due to [her] disability." *Fulton v. Goord*, 591 F.3d 37, 43 (2d Cir. 2009) (internal quotation marks and citation omitted).

As discussed, Plaintiff has utilized a form ADA complaint, largely alleges disability due to PTSD, and claims Judge McGinty denied her "accommodations" and "retaliated" against her during family court proceedings. For reasons set forth below, Plaintiff's purported disability-based claims under the ADA must also be dismissed.

First, to the extent Plaintiff asserts ADA claims against Judge McGinty in his individual capacity, such claims fail as a matter of law because there is no individual liability under Title II of the ADA. *See Garcia v. SUNY Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 107 (2d Cir. 2001) (holding that defendants cannot be sued in their individual capacities for violating Title II of the ADA); *see also Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010) ("the retaliation provision of the ADA ... cannot provide for individual liability"); *Myers v. N.Y.-Dep't of Motor Vehicles*, No. 06-CV-4583, 2013 WL 3990770, at *9 (E.D.N.Y. Aug. 5, 2013) ("[N]umerous district courts in this [C]ircuit have persuasively held that there is no individual liability under Title I or Title II of the ADA, regardless of whether the claim is brought in an individual or official capacity."); *Netti v. Ayers*, No. 17-CV-976, 2017 WL 7542494, at *18 (Oct. 5, 2017) ("individuals cannot be held liable under the ADA") (citing cases). Thus, Plaintiff's ADA claims against Judge McGinty, insofar as he is sued in his individual capacity, must be dismissed. [9]

Even if the Court assumes for purposes of initial review only, that Plaintiff was disabled during the state court proceedings within the meaning of the ADA, and Judge McGinty was a proper defendant in his official capacity, [10] her assertions do not show that Judge McGinty discriminated or retaliated against her because of her PTSD. It is not enough for Plaintiff to state that she is disabled and that bad things happened to her in the state court proceedings; she must allege facts from which a reasonable trier of fact could infer that these things happened to her because of discrimination on the basis of her disability. The use of "buzz words" such as "disability," "accommodation," and "retaliation" does not cure a pleading defect such as the one herein. *See Barr v. Abrams*, 810 F.2d 358, 362 (2d Cir. 1986) (the Second Circuit has repeatedly held, "complaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning"). She

does not allege any facts suggesting a plausible connection between her alleged PTSD and "LAS" and the actions that were taken against her in the state court proceedings. Rather, Plaintiff merely states she "has no recollection of being handed a slip" regarding the March 8, 2020, court date that she missed. Moreover, Plaintiff's passing reference that she "requested audio of the court hearings so that I can have time to listen to prepare as *pro se* for continuing proceedings" or that Judge McGinty "refused to give me enough time to get proper expensive counsel needed to fight such a traumatic 3rd trial" are insufficient to state a claim. (Dkt. No. 6 at 13, 14.)

**\*10** In light of the foregoing, the Court recommends dismissing Plaintiff's ADA claims, if any, against Judge McGinty. *See* 28 U.S.C. § 1915(e)(2)(B)(ii).

### 5. Domestic Relations Exception, *Rooker-Feldman* [11] Doctrine, and *Younger* [12] Abstention

Due to the nature of Plaintiff's amended complaint, it is difficult to precisely determine exactly which doctrines apply, but based upon the relief sought, even if Plaintiff had sued an appropriate defendant, her claims are also likely barred by the *Rooker-Feldman* doctrine, domestic relations exception, and/or *Younger* abstention.

#### a. Domestic Relations Exception

Under the domestic relations exception to the jurisdiction of federal courts, cases involving divorce, alimony, and child custody remain outside federal court jurisdiction. *Marshall v. Marshall*, 547 U.S. 293, 308 (2006). This exception is based upon a policy dictating that the states have traditionally adjudicated marital and child custody disputes, developing "competence and expertise in adjudicating such matters, which federal courts lack." *Thomas v. N.Y. City*, 814 F. Supp. 1139, 1146 (E.D.N.Y. 1993).

Here, in order to return custody of C.A.B. to Plaintiff, or to "enjoin" the state court's orders, this Court would have to re-determine Judge McGinty's decision in the custody matter. This would also involve resolving factual disputes regarding custody and visitation. This court is divested of jurisdiction to make such determinations. *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992); *Hernstadt v. Hernstadt*, 373

F.2d 316, 317 (2d Cir. 1967) (it has been uniformly held that federal courts do not adjudicate cases involving the custody of minors and rights of visitation); *Sobel v. Prudenti*, 25 F. Supp. 3d 340, 353 (E.D.N.Y. 2014) (the domestic relations exception "divests the federal courts of power to issue divorce, alimony, and child custody decrees"). Accordingly, to the extent the amended complaint is seeking a child custody decree from the Court, the court lacks jurisdiction to adjudicate such a claim. *See, e.g.*, *Amato v. McGinty*, No. 17-CV-593 (MAD/ATB), 2017 WL 9487185, at *8 (N.D.N.Y. Jun. 6, 2017) *report and recommendation adopted* by 2017 WL 4083575 (N.D.N.Y. Sept. 15. 2017).

#### b. *Rooker-Feldman* Doctrine

In the event the relevant underlying state court proceedings are concluded, such claims may be barred by the *Rooker-Feldman* doctrine. This doctrine divests the federal court of jurisdiction to consider actions that seek to overturn state court judgments. *Fernandez v. Turetsky*, No. 12-CV-4092, 2014 WL 5823116, at *3 (E.D.N.Y. Nov. 7, 2014) (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) ("The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court is the only federal court with jurisdiction over such cases.")). The doctrine also bars the federal court from considering claims that are "inextricably intertwined" with a prior state court determination. *Fernandez v. Turetsky*, 2014 WL 5823116, at *3 (quoting *Johnson v. Smithsonian Inst.*, 189 F.3d 180, 185 (2d Cir. 1999)).

**\*11** The *Rooker-Feldman* doctrine applies where the federal court plaintiff: (1) lost in state court, (2) complains of injuries caused by the state court judgment, (3) invites the district court to review and reject the state court judgment, and (4) commenced the district court proceedings after the state court judgment was rendered. *Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014).

Here, it appears Plaintiff "lost" in state court, complains of injuries caused by the state court judgments, and asks this Court to invalidate the state court's judgments regarding child custody. *See* Dkt. No. 6 at 29. Thus, as currently drafted,

the amended complaint is likely barred under the *Rooker-Feldman* doctrine.

### c. *Younger* Abstention

In the event the underlying state court proceedings remain pending, Plaintiff's request for this Court's involvement may also implicate the *Younger* abstention doctrine. *See generally Younger v. Harris*, 401 U.S. 37 (1971). Under the *Younger* doctrine, "federal courts [must] abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002); *see also Huffman v. Pursue, Ltd.*, 420 U.S. 592, 602 n.16 (1975) (extending the equitable principles that required abstention with respect to injunctive relief in *Younger* apply to requests for declaratory relief as well).

In *Sprint Communications, Inc. v. Jacobs*, 571 U.S. 69 (2013), the Supreme Court clarified that the *Younger* doctrine is limited to three exceptional circumstances, including (1) state criminal prosecutions; (2) civil enforcement, or "quasi-criminal," proceedings; and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Id.* at 72-73. "[T]here can be no doubt that a custody dispute ... raises important state interests." *Graham v. N.Y. Ctr. for Interpersonal Dev.*, No. 15-CV-459, 2015 WL 1120121, at *2-3 (E.D.N.Y. Mar. 12, 2015) (holding that plaintiff's claim for injunctive relief was barred by *Younger* when the plaintiff sought to challenge an ongoing family court custody proceeding) (citation omitted).

Accordingly, to the extent that the child custody issues are continuing in Family Court, the Court should abstain from interfering with that process. *See, e.g., Cogswell v. Rodriguez*, 304 F. Supp. 2d 350, 357 (E.D.N.Y. 2004) (applying *Younger* abstention in child support matter); *Lomtevas v. New York State*, No. 03-CV-2359, 2003 WL 22937688, at *2 (E.D.N.Y. Nov. 13, 2003) (same).

### IV. LEAVE TO AMEND

Generally, when the court dismisses a *pro se* complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to replead may be

denied where any amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). Futility is present when the problem with the plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

Here, better pleading could not cure the Court's lack of subject matter jurisdiction based on the immunities described above, which appear to apply to all claims except for Plaintiff's ADA claim seeking prospective injunctive relief.

**\*12** Nevertheless, in light of Plaintiff's *pro se* status and in an abundance of caution, as was the case in the related action, better pleading—addressing the deficiencies outlined above—could potentially save Plaintiff's ADA claim for prospective injunctive relief against Judge McGinty from being *sua sponte* dismissed on initial review. *See, e.g., Orr v. McGtiny*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 10-11. [13] As such, the Court recommends this claim be dismissed without prejudice and with leave to amend. [14]

### V. PLAINTIFF'S ADDRESS

Under this Court's rules, an unrepresented litigant is under a duty to inform the Court of any address changes in writing. L.R. 10.1(c)(2). For the orderly disposition of cases, it is essential that litigants honor their continuing obligation to keep the Court informed of address changes. To date, all the Court's Orders mailed to Plaintiff's address on file have been returned as undeliverable. (Dkt. Nos. 10, 12, 15.)

In an extraordinary display of special solicitude to Plaintiff as a *pro se* litigant, the Clerk was directed to mail a one-time courtesy copy of each Order at the confidential and redacted address indicated on the envelope of Plaintiff's submissions to the Court and as verbally provided to the Clerk on December 1, 2021. (*See generally* Docket Report; *see* Dkt. Nos. 11, 14. [15]) However, Plaintiff must file a change of address IN WRITING within thirty days, and she must continue to submit any address changes to the Court as long as her action is pending. "Failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action." L.R. 41.2(b).

### VI. CONCLUSION

**WHEREFORE**, after carefully considering this matter, and for the reasons explained above, it is hereby

**ORDERED** that Plaintiff's IFP application (Dkt. No. 16) is **GRANTED**; [16] and it is further

**\*13 RECOMMENDED** that Plaintiff's amended complaint (Dkt. No. 6) be *sua sponte* dismissed in its entirety pursuant to 28 U.S.C. § 1915(e); and it is further

**RECOMMENDED** that all claims be **DISMISSED WITH PREJUDICE** except that Plaintiff's ADA claim for prospective injunctive relief be **DISMISSED WITHOUT PREJUDICE AND WITH LEAVE TO REPLEAD**; and it is further

**RECOMMENDED** that the Clerk be directed to amend the docket to remove all references to C.A.B., and it is further

**ORDERED** that Plaintiff must file a **CHANGE OF ADDRESS** within **THIRTY DAYS** of the date of the Report-Recommendation, and she must continue to submit any address changes to the Court as long as this action is pending; failure to notify the Court of a change of address in accordance with L.R. 10.1(c)(2) may result in the dismissal of any pending action; and it is further

**ORDERED** that the Clerk mail a copy of this Order and Report-Recommendation to Plaintiff at the address listed on the docket and to mail a **FINAL** one-time courtesy copy to the confidential and redacted address indicated on the envelope of Dkt. No. 16 and as verbally provided to the Clerk on December 1, 2021.

Pursuant to 28 U.S.C. § 636(b)(1), Plaintiff has fourteen days within which to file written objections to the foregoing report. [17] Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1) (Supp. 2013); Fed. R. Civ. P. 72, 6(a).

**All Citations**

Slip Copy, 2022 WL 226798

## Footnotes

1    Amato was terminated as party plaintiff in the related action by Order entered August 7, 2019. *See Orr v. McGinty*, 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 73. The Court assumes familiarity with the related case.

2    Page references to documents identified by docket number refer to the numbers assigned by the CM/ECF docketing system maintained by the Clerk's Office. Unless otherwise indicated, excerpts from the record are reproduced exactly as they appear in the original and errors in spelling, punctuation, and grammar have not been corrected.

3    Plaintiff explains the book "talks about the ongoing abuse of Anthony McGinty and his ongoing abuse to my family for exposing him. I have been publicly outspoken long before he was put on my case in 2016. I've been exposing him since 2014 and my best selling book was published in 2018. He refuses to recuse from this case which I orally explained pre trial in 2019 that I would not only never receive a fair trial but that having to come before him after the tremendous harm he caused my son...." (Dkt. No. 6 at 14.)

4    Plaintiff appears to be referring to Defendant, along with "Child Attorney Amy Ingram and opposing Counsel Andy Gilday." (Dkt. No. 6 at 11.) The Court notes Amy Ingram was named as a defendant in the related case and all claims asserted against her were dismissed with prejudice. *See Orr v. McGinty*, No. 1:17-cv-1280 (GLS/TWD), ECF Dkt. No. 47 at 13. The Court takes judicial notice that Amato, along with others, also filed suit against Judge McGinty, Amy Ingram, and Attorney Andrew Gilday (for his role as assigned counsel

to Patrick Beesmer, C.A.B.'s father), Beesmer, and another individual in a previous action, also captioned *Amato v. McGinty*, 1:17-cv-00593 (MAD/ATB), ECF Dkt. No. 1. In that case, although Amato paid the filing fee, United States Magistrate Judge Baxter recommended, *inter alia*, that Amato's ⚑Section 1983 claims against Judge McGinty be dismissed with prejudice as barred by judicial immunity. *See id.*, ECF Dkt. No. 11. United States District Judge D'Agostino adopted the report-recommendation in its entirety and judgment was entered accordingly on September 15, 2017. *See id.* at ECF Dkt. Nos. 19, 20.

5    However, and contrary to Plaintiff's assertion, in the related action she was not afforded the "right to replead and add current ongoing violations" rather, Amato's ⚑Section 1983 claims against Judge McGinty were dismissed with prejudice and her Title II ADA claims were dismissed for failure to state a claim upon which relief may be granted. *Orr v. McGinty*, 1:17-CV-01280 (GLS/TWD), ECF Dkt. Nos. 47, 74.

6    Plaintiff also seeks attorneys fees pursuant to ⚑42 U.S.C. § 1988 and the Equal Access to Justice Act. (Dkt. No. 6 at 28.) However, as she was informed in the related action, *pro se* plaintiffs are not entitled to such fees. *Orr v. McGinty*, No. 1:17-cv-01280, ECF Dkt. No. 47 at 3 n.6 (citing *SEC v. Price Waterhouse*, 41 F.3d 805, 808 (2d Cir. 1994)).

7    Judicial immunity shields judges from suit to the extent that they are sued in their individual capacities. *See* ⚑*Ying Jing Gan v. City of N.Y.*, 996 F.2d 522, 529 (2d Cir. 1993); *Martinez v. Queens Cty. Dist. Attorney*, No. 12-CV-06262, 2014 WL 1011054, at *8 n. 8 (E.D.N.Y. Mar. 17, 2014), *aff'd*, 596 F. App'x 10 (2d Cir. 2015); ⚑*McKnight v. Middleton*, 699 F.Supp.2d 507, 521-25 (E.D.N.Y. 2010), *aff'd*, 434 F. App'x 32 (2d Cir. 2011). The Eleventh Amendment, on the other hand, shields judges from suit to the extent that they are sued in their official capacities. *See* ⚑*Ying Jing Gan*, 996 F.2d at 529 ("To the extent that ... a claim is asserted against the state official in his official capacity, he may assert the state's Eleventh Amendment immunity against suit.").

8    Moreover, "[i]t is axiomatic that 'Title VII does not impose liability on individuals.' " *Hamlett v. City of Binghamton*, No. 3:20-CV-880 (GLS/ML), 2021 WL 3723091, at *2 (N.D.N.Y. Aug. 23, 2021) (quoting ⚑*Lore v. City of Syracuse*, 670 F.3d 127, 169 (2d Cir. 2012) (citations omitted)); *see also Golden v. Syracuse Reg'l Airport Auth.*, No. 5:20-CV-1566 (MAD/TWD), 2021 WL 485731, at *1 (N.D.N.Y. Feb. 10, 2021) ("[I]ndividuals are not subject to liability under Title VII.") (quotation marks and citation omitted).

9    The Court notes judicial immunity also extends to Plaintiff's ADA claims for damages. *See Orr v. McGinty*, No. 1:17-cv-01280, Dkt. No. 47 at 5 (citing *Brooks v. Onondaga Cty. Dep't of Children & Family Servs.*, 5:17-CV-1186, ⚑2018 WL 2108282, at *4 (N.D.N.Y. Apr. 9, 2018) (collecting cases)).

10   As observed in the related case, "It is questionable whether defendants, even when sued in their official capacities, are public entities." *Orr v. McGinty*, No. 1:17-cv-01280, Dkt. No. 74 at 4 n.4 (citing *Santiago v. Garcia*, 70 F. Supp. 2d 84, 89 (D. P.R. 1999) (holding state court judge sued in official capacity was not "public entity" under Title II); *but see Shollenberger v. N.Y. State Unified Court Sys.*, 18 CV 9736, 2019 WL 2717211, at *5 (S.D.N.Y. June 28, 2019) (allowing ADA claims seeking prospective injunctive relief to proceed against Chief Judge of the State of New York and Chief Administrator of the New York State Unified Court System because "a plaintiff need only allege the defendant[s] ha[ve] responsibility for the alleged conduct and the ability to redress the alleged violations")).

11   ⚑*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and ⚑*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414-17 (1923).

12    ⬚ *Younger v. Harris*, 401 U.S. 37 (1971).

13    At this juncture, the Court expresses no opinion on the sufficiency of any such claim.

14    If the District Court adopts this Report-Recommendation, and if Plaintiff chooses to file a second amended complaint, the pleading must comply with Rules 8 and 10 of the Federal Rules. The revised pleading will replace the amended complaint, and must be a wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court. *See* 🚩 *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect."). The revised pleading should not attempt to resurrect any claims dismissed with prejudice in this action and/or claims brought or could have been brought in the related case. *See Lopez v. Jet Blue Airways*, No. 12-CV-0057, 2012 WL 213831, at *2 (E.D.N.Y. Jan. 24, 2012) ("Under the doctrine of *res judicata*, once a final judgment has been entered on the merits of a case, that judgment will bar any subsequent litigation by the same parties or those in privity with them concerning the transaction, or series of connected transactions, out of which the [first] action arose.").

15    While not entirely clear to the Court, it appears this "confidential" address differs from Plaintiff's residence, while the PO Box on file is the business address for Plaintiff's "home office" Punished 4 Protecting. (*See* Dkt. No. 16.)

16    Plaintiff should note that although her IFP application has been granted, she will still be required to pay fees that she may incur in this action, including copying and/or witness fees.

17    If you are proceeding *pro se* and are served with this Order and Report-Recommendation by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Order and Report-Recommendation was mailed to you to serve and file objections. Fed. R. Civ. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Fed. R. Civ. 6(a)(1)(C).

---

2023 WL 3079611
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth T. MEYERS, Plaintiff,

v.

Donna BECKER, et al., Defendants.

No. 1:23-CV-173 (DNH/CFH)

|

Signed April 5, 2023

**Attorneys and Law Firms**

Kenneth T. Meyers, 18604, Schoharie County Jail, P.O. Box
159, Howes Cave, New York 12902, Plaintiff pro se.

**REPORT-RECOMMENDATION AND ORDER**

Christian F. Hummel, United States Magistrate Judge

### I. Background

**\*1** Plaintiff pro se Kenneth T. Meyers ("plaintiff")
commenced this action on February 8, 2023, by filing a
complaint. See Dkt. No. 1 ("Compl."). He did not pay the
Court's filing fee or submit a motion to proceed in forma
pauperis ("IFP"), and the Court administratively closed the
action. See Dkt. No. 3. Plaintiff filed an IFP motion on
February 23, 2023, and the Court reopened the case. See
Dkt. Nos. 5, 6, 7, 8. The undersigned has reviewed plaintiff's
IFP application and determines that he financially qualifies to
proceed IFP for the purpose of filing. [1]

### II. Initial Review

#### A. Legal Standard

Section 1915 [2] of Title 28 of the United States Code
directs that, when a plaintiff seeks to proceed IFP, "the court
shall dismiss the case at any time if the court determines
that ... the action or appeal (i) is frivolous or malicious;
(ii) fails to state a claim on which relief may be granted;
or (iii) seeks monetary relief against a defendant who is
immune from such relief." 28 U.S.C. § 1915(e)(2)(B). It

is a court's responsibility to determine that a plaintiff may
properly maintain his complaint before permitting him to
proceed with his action.

Where, as here, the plaintiff proceeds pro se, "the court
must construe his [or her] submissions liberally and interpret
them to raise the strongest arguments that they suggest."
Kirkland v. Cablevision Sys., 760 F.3d 223, 224 (2d Cir.
2014) (per curiam) (citation and internal quotation marks
omitted). This does not mean the Court is required to accept
unsupported allegations that are devoid of sufficient facts
or claims. Although detailed allegations are not required at
the pleading stage, the complaint must still include enough
facts to provide the defendants with notice of the claims
against them and the grounds on which these claims are based.

See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell
Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Pro se
litigants are "not exempt ... from compliance with relevant
rules of procedural and substantive law[.]" Traguth v.
Zuck, 710 F.2d 90, 95 (2d Cir. 1983) (citation omitted).
Ultimately, the plaintiff must plead "enough facts to state a
claim to relief that is plausible on its face." Twombly,
550 U.S. at 570. "A claim has facial plausibility when the
plaintiff pleads factual content that allows the court to draw
the reasonable inference that the defendant is liable for the
misconduct alleged." Iqbal, 556 U.S. at 678 (citation
omitted).

**\*2** Pleading guidelines are set forth in the Federal Rules
of Civil Procedure ("Fed. R. Civ. P."). Specifically, Rule
8 provides that a pleading which sets forth a claim for
relief shall contain "a short and plain statement of the claim
showing that the pleader is entitled to relief." FED. R. CIV.
P. 8(a)(2). "The purpose ... is to give fair notice of the
claim being asserted so as to permit the adverse party the
opportunity to file a responsive answer, prepare an adequate
defense and determine whether the doctrine of res judicata is
applicable." Flores v. Graphtex, 189 F.R.D. 54, 55 (N.D.N.Y.
1999) (internal quotation marks and citations omitted). Rule
8 also requires the pleading to include "a short and plain
statement of the grounds for the court's jurisdiction" and "a
demand for the relief sought...." FED. R. CIV. P. 8(a)(1), (3).
Although "[n]o technical form is required," the Federal Rules
make clear that each allegation contained in the pleading
"must be simple, concise, and direct." Id. at 8(d)(1).

Further, Rule 10 provides in pertinent part that:

[a] party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. A later pleading may refer by number to a paragraph in an earlier pleading. If doing so would promote clarity, each claim founded on a separate transaction or occurrence – and each defense other than a denial – must be stated in a separate count or defense.

FED. R. CIV. P. 10(b). This serves the purpose of "provid[ing] an easy mode of identification for referring to a particular paragraph in a prior pleading[.]" Flores, 189 F.R.D. at 55 (internal quotation marks and citations omitted). A complaint that fails to comply with the pleading requirements "presents far too [ ] heavy [a] burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." Gonzales v. Wing, 167 F.R.D. 352, 355 (N.D.N.Y. 1996). The Second Circuit has held that "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative ... to dismiss the complaint." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988) (citation omitted). However, "[d]ismissal ... is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Id. (citation omitted). If dismissal is warranted and the plaintiff is pro se, the court generally affords the plaintiff leave to amend the complaint. See Simmons v. Abruzzo, 49 F.3d 83, 86-87 (2d Cir. 1995).

### B. Plaintiff's Complaint

Plaintiff submitted his complaint on a civil rights form against Donna Becker, the Commissioner of the Schoharie County Department of Social Services ("DSS"); and Bryanna Folk, who appears to be the mother of his children. See Compl. at 1-3. Plaintiff alleges that "Bryanna Folk falsely accused me of multiple accusations and lies to Schoharie County Department of Social Services to receive welfare assistance.

Donna Becker without proof wrote said accusations on paper to verify. Donna Becker states that said accusations from Bryanna Folk are true." Id. at 3. He contends that "Donna Becker has no right to what she is doing. Bryanna Folk has manipulated Schoharie County DSS." Id. Further, plaintiff alleges that "Donna Becker states that it is true to her own knowledge that I am a violent person. That I use illegal substances. Donna Becker duly sworn on a statement on the 14 $^{th}$ day of October 2022 and lied on said statement." Id. Plaintiff asserts that "Bryanna Folk wrote false statements and continues to do so. She had my children taken from me and she states that she will do whatever it takes to keep my newborn son from me and my six year old step daughter." Id. Plaintiff checked a box to indicate that he was bringing the complaint against federal official as "a Bivens claim[,]" he references the Due Process Clause of the Fourteenth Amendment, and he seeks $100,000 for his "mental anguish." Id. at 4-5.

### C. Analysis

#### 1. Claims Against Bryanna Folk

**\*3** "Federal jurisdiction is limited, and specified by statute.... Federal courts exercise jurisdiction in cases that present a federal question, or in cases of diversity jurisdiction[.]" Zido v. Werner Enterprises, Inc., 498 F. Supp. 2d 512, 513 (N.D.N.Y. 2006) (citing 28 U.S.C. §§ 1331, 1332). As for diversity jurisdiction, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between [ ] citizens of different States." 28 U.S.C. § 1332(a)(1). "Diversity jurisdiction requires that 'all of the adverse parties in a suit ... be completely diverse with regard to citizenship.' " Handelsman v. Bedford Village Assocs. Ltd. P'ship, 213 F.3d 48, 51 (2d Cir. 2000) (quoting E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co., 160 F.3d 925, 930 (2d Cir. 1998)). "[A] party's citizenship depends on his [or her] domicile. Domicile has been described as the place where a person has 'his [or her] true fixed home and principal establishment, and to which, whenever he [or she] is absent, he [or she] has the intention of returning.' " Linardos v. Fortuna, 157 F.3d 945, 948 (2d Cir. 1998) (citation omitted).

Plaintiff lists his and Bryanna Folk's addresses as being in New York. See Compl. at 2. Plaintiff lists his current address as Schoharie County Jail. See id. Attached to his complaint, plaintiff provided an affidavit that was submitted in a Schoharie County Supreme Court case against Donna Becker and Bryanna Folk in which he stated that he has resided in New York for the past ten years. See Dkt. No. 1-2 at 2. Based on the information provided, as both parties appear to be domiciled in the same state, plaintiff has not established diversity jurisdiction.

Next, plaintiff references the Fourteenth Amendment and fills out his complaint on a civil rights form. See Compl. at 1, 4. However, stating a constitutional amendment does not establish federal question jurisdiction. 42 U.S.C. § "1983 allows a plaintiff to assert a claim for deprivation of rights secured by the Constitution or laws of the United States, if the defendant was acting under color of state law when he deprived plaintiff of his rights." Gonzalez v. L'Oreal USA, Inc., 489 F. Supp. 2d 181, 186 (N.D.N.Y. 2007) (citing 42 U.S.C. § 1983). "For a defendant to be determined to be acting under color of state law, he [or she] must 'fairly be said to be a state actor.' " Id. (quoting American Mfrs. Mut. Ins. Co. v. Sullivan, 526 US 40, 50 (1999)). "A private person can be subject to liability under this statute 'if he or she willfully collaborated with an official state actor in the deprivation of the federal right.' " Id. (quoting Dwares v. City of New York, 985 F.2d 94, 98 (2d Cir. 1993), overruled on other grounds by Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993)).

"[S]ection 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." Gonzalez, 489 F. Supp. 2d at 186 (quoting Sullivan, 526 U.S. at 50). "The conduct of private actors can be attributed to the State ... if (1) the State compelled the conduct, (2) there is a sufficiently close nexus between the State and the private conduct, or (3) the private conduct consisted of activity that has traditionally been the exclusive prerogative of the State." Hogan v. A.O. Fox Mem'l Hosp., 346 F. App'x 627, 629 (2d Cir. 2009)[3] (summary order) (citing Sybalski v. Indep. Grp. Home Living Program, Inc., 546 F.3d 255, 257 (2d Cir. 2008) (per curiam)). "[A] private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state." Zavalidroga v. Hester, No. 6:19-CV-1412

(GTS/TWD), 2020 WL 210812, at *9 (N.D.N.Y. Jan. 14, 2020) (citation omitted), report and recommendation adopted, 2020 WL 633291 (N.D.N.Y. Feb. 11, 2020). "However, a 'conclusory allegation that a private entity acted in concert with a state actor does not suffice to state a § 1983 claim against the private entity.' " Id. (quoting Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002)).

**\*4** Bryanna Folk is a private person and plaintiff does not plead any state action or any facts that could be construed as asserting a willful collaboration with a state actor. See Compl. at 2-5. Plaintiff alleges that Commissioner Donna Becker "states that said accusations from Bryanna Folk are true." Id. at 3. However, plaintiff has not alleged any conduct from Bryanna Folk that is conduct typically attributed to a state actor. As such, plaintiff cannot state a § 1983 against Bryanna Folk and it is recommended that the complaint be dismissed without prejudice for lack of subject matter jurisdiction. See Heendeniya v. St. Joseph's Hosp. Health Ctr., No. 5:15-CV-01238 (GTS/TWD), 2015 WL 13638618, at *14 (N.D.N.Y. Nov. 30, 2015) ("Because the [ ] [d]efendants are private actors not acting under color of state law with respect to [the p]laintiff's § 1983 claims against them, the Court recommends that [the p]laintiff's § 1983 claims against the St. Joseph's Defendants be dismissed[.]"), report and recommendation adopted, 2016 WL 756537 (N.D.N.Y. Feb. 25, 2016).

### 2. Claims Against Donna Becker

As an initial matter, "state governments and their agencies may not be sued in federal court unless they have waived their Eleventh Amendment immunity or there has been a valid abrogation of that immunity by Congress." Jackson v. Battaglia, 63 F. Supp. 3d 214, 219-20 (N.D.N.Y. 2014). Although Eleventh Amendment immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of a state, [i]t does not [ ] extend to suits prosecuted against a municipal corporation or other governmental entity which is not an arm of the State." Mulvihill v. New York, 956 F. Supp. 2d 425, 427 (W.D.N.Y. 2013) (quoting Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ., 466 F.3d 232, 236 (2d Cir. 2006)). As such, the claims against Donna Decker, as the Commissioner of the Schoharie County Department of Social Services, are not barred by the Eleventh Amendment.

Plaintiff indicated in his complaint a desire to sue Commissioner Decker in her individual and official capacities. See Compl. at. 2. To the extent he seeks to sue her in her official capacity, "[c]laims against a government employee in his [or her] official capacity [are] treated as a claim against the municipality." Guarneri v. Schoharie Cnty. Dep't of Soc. Serv., No. 1:21-CV-0991 (TJM/ML), 2021 WL 6050305, at *7 (N.D.N.Y. Dec. 21, 2021) (quoting Malay v. City of Syracuse, 638 F. Supp. 2d 203, 311 (N.D.N.Y. 2009)), report and recommendation adopted, 2022 WL 1472562 (N.D.N.Y. May 10, 2022); see also Hines v. City of Albany, 542 F. Supp. 2d 218, 227 (N.D.N.Y. 2008) ("[C]laims against a government employee in his official capacity are treated as a claim against the municipality[.]"). Similarly, insofar as plaintiff could be seen as bringing a claim against the Schoharie County DSS, "[u]nder New York law, departments that are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot be sued." Mulvihill, 956 F. Supp. 2d at 428 (alteration in original) (quoting Omnipoint Comm'ns, Inc. v. Town of LaGrange, 658 F.Supp.2d 539, 552 (S.D.N.Y. 2009)). The appropriate entity would be Schoharie County. See Jones v. Westchester Cnty. Dep't of Corr. Med. Dep't, 557 F. Supp. 2d 408, 416, n.4 (S.D.N.Y. 2008) ("The Department of Corrections Medical Department is a County agency, so the proper party [d]efendant is Westchester County.").

As to Schoharie County, "a municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of E. Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell v. Department of Social Services, 436 U.S. 658, 690-91 (1978)). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a respondeat superior basis for the tort of its employee." Id.; see also Parent v. New York, 786 F. Supp. 2d 516, 537 (N.D.N.Y. 2011) ("In an official capacity suit against a municipal employee, a plaintiff must show that the acts were performed pursuant to a policy or custom."), aff'd, 485 F. App'x 500 (2d Cir. 2012) (summary order).

**\*5**  In plaintiff's case caption he names "Schoharie County Social Services Donna Becker." Compl. at 1. Throughout his complaint, plaintiff does not state any allegations against Schoharie County DSS or Schoharie County. See id. at

2-5. Liberally construing plaintiff's complaint, there are no allegations of a policy or custom sufficient to withstand initial review. Rather, the complaint contains allegations concerning only Commissioner Becker's individual conduct. See id. at 2-5. As such, it is recommended that any purported claims against Donna Becker in her official capacity and against the Schoharie County DSS be dismissed as they are not the appropriate entity to sue, and plaintiff has not stated a claim for municipal liability. See Schweitzer v. Crofton, 935 F. Supp. 2d 527, 551 (E.D.N.Y. 2013) ("[The p]laintiffs' claim against the Suffolk County Department of Social Services must be dismissed because it is not a suable entity."), aff'd, 560 F. App'x 6 (2d Cir. 2014) (summary order); Trombley v. O'Neill, 929 F. Supp. 2d 81, 101 (N.D.N.Y. 2013) ("[The p]laintiff has failed to allege the existence of any policy, custom, or failure to train, as a basis for his § 1983 claims. Accordingly, because [the p]laintiff has failed to state a basis for the liability of Essex County on any of his claims, all claims against [the d]efendants in their official capacities must be dismissed.").

To the extent plaintiff seeks to bring this action against Commissioner Becker in her individual capacity, plaintiff has not sufficiently stated a due process claim. "The Fourteenth Amendment requires that, 'except in emergency circumstances, judicial process must be accorded both parent and child before removal of the child from his or her parent's custody may be effected.' " Santos v. Syracuse Police Dep't, No. 5:22-CV-1102 (MAD/ATB), 2022 WL 16949542, at *7 (N.D.N.Y. Nov. 15, 2022) (quoting Southerland v. City of New York, 680 F.3d 127, 142 (2d Cir. 2012)). "The emergency exception allows 'government officials [to] remove a child from his or her parents' custody before a hearing is held where there is an objectively reasonable basis for believing that a threat to the child's health or safety is imminent.' " Id. (quoting Gottlieb v. County of Orange, 84 F.3d 511, 518, 520 (2d Cir. 1996)). "Courts 'examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient.' " Phillips v. County of Orange, 894 F. Supp. 2d 345, 372 (S.D.N.Y. 2012) (quoting Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989)). "For purposes of procedural due process analysis, parents have 'a constitutionally protected liberty interest in the care, custody

and management of their children[.]' " Kia P. v. McIntyre, 235 F.3d 749, 759 (2d Cir. 2000) (quoting Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999)). [4]

Additionally, "a parent may [ ] bring suit under a theory of violation of his or her right to substantive due process." Santos, 2022 WL 16949542, at *7 (quoting Southerland, 680 F.3d at 142). "Such a claim can only be sustained if the removal of the child would have been prohibited by the Constitution even had the [parents] been given all the procedural protections to which they were entitled." Id. (citation and quotation marks omitted). "To state a claim for a violation of this substantive due process right of custody, a plaintiff must demonstrate that the state action depriving him of custody was 'so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." Cox v. Warwick Valley Cent. Sch. Dist., 654 F.3d 267, 275 (2d Cir. 2011) (citation omitted). "It is not enough that the government act be 'incorrect or ill-advised'; it must be 'conscience-shocking.' " Id. (citation omitted).

   **6** Plaintiff has not sufficiently alleged a procedural or substantive due process claim against Commissioner Becker in her individual capacity. The only allegations plaintiff asserts against Commissioner Becker are that she stated in a sworn affidavit that plaintiff is a violent person who used illegal substances and she affirmed the truth of Bryanna Folk's statements against plaintiff. See Compl. at 3. Plaintiff alleges that Commissioner Becker's sworn statements are false. See id.

Plaintiff has not alleged any facts concerning his custody of his children, the procedures taken to remove the children from his custody, or the duration of the deprivation. See Compl. at 4-5. There are no facts asserting what context Commissioner Becker allegedly lied in or if there were any formal proceedings concerning the Bryanna Folk's of Commissioner's Becker's statements, or the children's removal. See id. at 3-5. As plaintiff has not alleged any procedures that occurred concerning the removal of his children, let alone ones that were deficient, he has failed to state a procedural due process claim. Additionally, other than plaintiff's plain assertion that Commissioner Becker was lying, there are no allegations to indicate that she engaged in conduct that is so egregious or shocking as to state a substantive due process claim, particularly, where it appears

that Commissioner Becker swore to the truthfulness of her statements. See Compl. at 3. Plaintiff's bare allegations that Commissioner Becker lied in sworn affidavit are insufficient to state a claim for which relief could be granted under either substantive or procedural due process. As such, it is recommended that the complaint against Commissioner Becker in her individual capacity be dismissed.

## III. Leave to Amend

Generally, "[a] *pro se* complaint should not be dismissed without the Court granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Nielsen v. Rabin, 746 F.3d 58, 62 (2d Cir. 2014) (citation omitted). "However, if the problems with a complaint are 'substantive' rather than the result of an 'inadequately or inartfully pleaded' complaint, an opportunity to re-plead would be 'futile' and 'should be denied.' " Edwards v. Penix, 388 F. Supp. 3d 135, 144-45 (N.D.N.Y. 2019) (quoting Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000)).

As it is not an entirely foregone conclusion that plaintiff could amend his complaint to state a claim against Bryanna Folk, Schoharie County, and Commissioner Donna Becker in her individual capacity, it is recommended that plaintiff be afforded an opportunity to amend his complaint to address the deficiencies outlined within this Report-Recommendation and Order.

## IV. Conclusion

**WHEREFORE**, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's application to proceed in forma pauperis (Dkt. No. 5) is **GRANTED** for purposes of filing only; and it is further

**RECOMMENDED**, that plaintiff's complaint (Dkt. No. 1) be **DISMISSED WITHOUT PREJUDICE and WITH LEAVE TO AMEND**; and it is

**RECOMMENDED**, that should the District Judge adopt this Report-Recommendation and Order, plaintiff be given thirty (30) days from the date of the Order adopting this Report-Recommendation and Order to file an amended complaint,

and if plaintiff does not file an amended complaint, it will be deemed as an abandonment of any claims for which leave to replead has been granted and will result in judgment being entered against plaintiff on these claims without further order by the Court; and it is

**\*7 ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order in accordance with Local Rules.

**IT IS SO ORDERED**.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written

objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**. Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993) (citing Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989)); see also 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a). [5]

**All Citations**

Slip Copy, 2023 WL 3079611

## Footnotes

1      Plaintiff is advised that although he has been granted IFP status, he is still required to pay any fees and costs he may incur in this action.

2      The language of 1915 suggests an intent to limit availability of IFP status to prison inmates. See 28 U.S.C. § 1915(a)(1) (authorizing the commencement of an action without prepayment of fees "by a person who submits an affidavit that includes a statement of all assets such prisoner possesses"). The courts have construed that section, however, as making IFP status available to any litigant who can meet the governing financial criteria. See, e.g., Fridman v. City of N.Y., 195 F. Supp. 2d 534, 536 n.1 (S.D.N.Y. 2002).

3      All unpublished opinions cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff.

4      Insofar as plaintiff mentions not being allowed to see his stepdaughter, he does not explain whether he has custody over her. See Compl. at 3. Cases within the Second Circuit have noted that there does not appear to be an established constitutionally protected interest in a non-custodial parent's visitation rights. See Uwadiegwu v. Dep't of Soc. Servs. of the Cnty. of Suffolk, 91 F. Supp. 3d 391, 396 (E.D.N.Y. 2015) (citing Young v. County of Fulton, 999 F. Supp. 282, 286-87 (N.D.N.Y. 1998) ("The plaintiff has failed to set forth even one case that establishes that visitation, as opposed to custody is a constitutionally protected liberty interest of a parent who does not have custody."), aff'd, 160 F.3d 899 (2d Cir. 1998)) ("Plaintiff fails to offer any case law—and the Court's independent research has not produced any—that establishes a non-custodial parent's fundamental liberty interest in visitation."), aff'd, 639 F. App'x 13 (2d Cir. 2016); see also Dabah v. Franklin, No. 19-CV-10579 (ALC), 2022 WL 973834, at \*5 (S.D.N.Y. Mar. 31, 2022).

5      If you are proceeding pro se and are served with this Report-Recommendation & Order by mail, three (3) additional days will be added to the fourteen (14) day period, meaning that you have seventeen (17) days from the date the Report-Recommendation & Order was mailed to you to serve and file objections. FED R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. Id. § 6(a)(1)(c).

**End of Document**

© 2023 Thomson Reuters. No claim to original U.S. Government Works.

2023 WL 3073495
Only the Westlaw citation is currently available.
United States District Court, N.D. New York.

Kenneth T. MEYERS, Plaintiff,

v.

Donna BECKER et al., Defendants.

1:23-CV-173
|
Signed April 25, 2023

**Attorneys and Law Firms**

KENNETH T. MYERS, Plaintiff, Pro Se, 18604, Schoharie
County Jail, P.O. Box 159, Howes Cave, NY 12092.

## <u>ORDER ON REPORT & RECOMMENDATION</u>

DAVID N. HURD, United States District Judge

 **\*1**  On February 8, 2023, *pro se* plaintiff Kenneth T. Meyers
("plaintiff") filed this action alleging, *inter alia*, that one of
the named defendants violated his civil rights by making false
statements about him in order to receive public assistance.
Dkt. No 1. This action was initially closed because plaintiff
failed to pay the filing fee or file an application to proceed *in
forma pauperis* ("IFP Application"). Dkt. No. 3. Thereafter,
plaintiff filed an IFP Application, Dkt. No. 5, along with the
inmate authorization form and prisoner trust fund account
statement required of incarcerated litigants, Dkt. Nos. 7, 8.

On April 5, 2023, U.S. Magistrate Judge Christian F. Hummel
granted plaintiff's IFP Application for the purpose of filing

and advised by Report & Recommendation ("R&R") that
plaintiff's complaint be dismissed with leave to amend. Dkt.
No. 9. As relevant here, Judge Hummel recommended that
plaintiff be given thirty days in which to file an amended
pleading. *Id.*

Plaintiff has not filed objections. The time period in which to
do so has expired. *See* Dkt. No. 9. Instead, plaintiff skipped
ahead to the next step in this process: he submitted an
amended complaint for review. Dkt. No. 10.

Upon review for clear error, the R&R will be accepted
and adopted with a slight modification. *See* FED. R. CIV.
P. 72(b). Because the thirty-day period for amendment
initially recommended by Judge Hummel has been rendered
unnecessary by plaintiff's unilateral filing of a new pleading,
Dkt. No. 10, the amended complaint will be referred directly
to Judge Hummel for review.

Therefore, it is

ORDERED that

1. The Report & Recommendation is ACCEPTED;

2. Plaintiff's complaint is DISMISSED without prejudice;

3. Plaintiff's amended complaint is REFERRED to the
assigned Magistrate Judge for review.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2023 WL 3073495

---

**End of Document**                    © 2023 Thomson Reuters. No claim to original U.S. Government Works.